James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Proposed Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) | Case No. 09-23529 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF MILLER BUCKFIRE & CO., LLC AS
FINANCIAL  ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS AND
DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

The Reader's Digest Association, Inc. ("**Reader's Digest**") and certain of its affiliates, as

debtors and debtors in possession (collectively, the "**Debtors**"),[1] file this application (the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas
Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306);
Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings
Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299);
Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742);
Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc.
(4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing
Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509);
RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's
Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial
Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc.
(2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman
Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc.
(9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home
Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A.

"*Application*") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Miller Buckfire & Co., LLC ("*Miller Buckfire*") as their financial advisor and investment banker in connection with their chapter 11 cases *nunc pro tunc* to the Commencement Date (as defined herein). In support of this Application, the Debtors submit the Declaration of Jeffrey E. Finger, a Director of Miller Buckfire (the "*Finger Declaration*"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors have submitted the Declaration of Thomas A. Williams, Chief Financial Officer and Senior Vice President of The Reader's Digest Association, Inc., in Support of First Day Pleadings [Docket No. 3] (the "*Williams Declaration*"). In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "*Bankruptcy Code*"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and rule 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "*Local Rules*").

## Introduction

4.      As described in the Williams Declaration, the Debtors and their non-debtor affiliates (collectively, the "*Company*") are a global multi-brand media and direct marketing

---

Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

company that markets books, magazines, home entertainment products, online networking websites and educational products. With its global headquarters located in Pleasantville, New York, the Company has over 3,000 employees worldwide, including approximately 1,500 in the United States, and achieves annual sales of approximately $2.2 billion.

5.      Despite their leading industry position, the Debtors have not been immune to the global financial crisis. The current recession has resulted in reductions in the Debtors' advertising, retail and subscription revenues, placing pressure on the Debtors' financial performance. Withdrawal of certain international lines of credit and heightened pressures from trade creditors have also weakened the Debtors' liquidity position. In short, as the economy continues to deteriorate in several of the Debtors' markets, the Debtors are struggling to maintain working capital sufficient to conduct operations while facing progressively unsustainable debt service obligations under a highly-leveraged capital structure.

6.      To ensure they maintain competitive operations, the Debtors have engaged in extensive negotiations with their prepetition secured lenders regarding a comprehensive debt restructuring. After weeks of discussions, the Debtors are before the Court with a pre-arranged restructuring plan that will reduce the Debtors' total funded debt by approximately 75%, provide the Debtors with adequate exit financing and provide substantial recoveries to the Debtors' valued suppliers that continue to do business with the reorganized company.

7.      To evidence their support of the Debtors' restructuring, prepetition secured lenders holding more than 80% of the Debtors' bank debt have executed a restructuring support agreement, which attaches a term sheet that sets forth the terms for a chapter 11 plan that is supported by these parties. The Debtors intend to file shortly a proposed chapter 11 plan consistent with the terms contained in the plan term sheet.

8.	On August 24, 2009 (the "***Commencement Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has ordered joint administration of these chapter 11 cases for procedural purposes.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  No committees have been appointed or designated.

9.	A description of the Debtors' businesses and operations, their capital structure, the circumstances leading up to and precipitating the commencement of these chapter 11 cases and the relief sought from this Court to facilitate a smooth transition into chapter 11, are set forth in the Williams Declaration.

<u>**Background**</u>

**A.	Miller Buckfire's Qualifications**

10.	The Debtors seek to retain Miller Buckfire as their financial advisor and investment banker because, among other things, Miller Buckfire has extensive experience in, and an excellent reputation for, providing high-quality investment banking services to debtors in bankruptcy reorganizations and other restructurings.

11.	Miller Buckfire is an independent firm that, among other things, provides strategic and financial advisory services in large-scale corporate restructuring transactions.  Miller Buckfire is principally owned and controlled by its employees.  Miller Buckfire currently has approximately 75 employees.

12.	Miller Buckfire's professionals have extensive experience in providing financial advisory and investment banking services to financially distressed companies and to creditors, equity holders and other constituencies in reorganization proceedings and complex financial

restructurings, both in- and out-of-court. For instance, Miller Buckfire's professionals are providing or have provided financial advisory, investment banking and other services in connection with the restructuring of numerous companies: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Gate Gourmet; Grand Union Co.; Grupo TMM; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc.; Loewen Group; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; SI Corporation; The Spiegel Group; Sunbeam Corporation; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; U.S. Office Products; and Women First Healthcare, Inc. Miller Buckfire's professionals are also providing or have provided mergers and acquisitions advisory

services in connection with whole or partial company sale transactions involving companies across a wide range of industries, including Atwood Mobile Products (Dura Corporation); Aurora Foods; Burlington Industries; Calpine Corporation; Cambridge Industries; Career Blazers; Conversent Communications; Country Road Communications; Dana Corporation; Focal Communications; Global Valley Networks; IMPATH; Pegasus Broadcast Television; Pegasus Satellite Communications; PSINet; and Polaroid Corporation.

13.     Since February 28, 2009, when the Debtors retained Miller Buckfire pursuant to an engagement letter, dated February 28, 2009, and amended July 30, 2009 (including the indemnification agreement attached thereto, the "***Engagement Letter***"), a copy of which is annexed as **Exhibit 1** to <u>Exhibit A</u> attached hereto and incorporated by reference herein, Miller Buckfire has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

(a)     familiarized itself with the assets and operations of the Debtors;

(b)     analyzed the Debtors' current liquidity and projected cash flows;

(c)     examined and sought to implement potential strategic alternatives to de-leverage the Debtors' balance sheet;

(d)     developed materials for, and participated in, numerous meetings of the Debtors' board of directors;

(e)     assisted the Debtors and their other professionals in the development of materials for, and participated in, numerous meetings with key creditor and equity constituents;

(f)     engaged in negotiations with the steering committee of secured lenders, certain other stakeholders and their respective advisors regarding the terms of a consensual balance sheet restructuring;

(g)     assisted the Debtors and their other professionals in developing the budget used for purposes of securing debtor in possession financing;

(h)     assisted the Debtors in structuring and negotiating the debtor in possession financing;

(i)      assisted the Debtors in the identification of potential alternative financing sources;

(j)      assisted the Debtors in evaluating their restructuring alternatives; and

(k)      assisted the Debtors in evaluating the sale of certain non-core assets, including but not limited to CompassLearning, Inc.

14.      In providing professional services to the Debtors, Miller Buckfire has worked closely with the Debtors' officers and management and has become well-acquainted with the Debtors' businesses, capital structure, financial affairs and related matters. The experience Miller Buckfire gained before the Commencement Date will facilitate the provision of the services required by the Debtors in the chapter 11 cases. Accordingly, Miller Buckfire is both well qualified and uniquely able to represent the Debtors in the chapter 11 cases in an efficient and timely manner.

**B.      Services to Be Provided**[2]

15.      The parties have entered into the Engagement Letter, which governs the relationship between Miller Buckfire and the Debtors. The terms and the conditions of the Engagement Letter were negotiated between the Debtors and Miller Buckfire and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Subject to further order of the Court and consistent with the Engagement Letter, Miller Buckfire will provide a broad range of necessary financial advisory and investment banking services (the "*Services*") as Miller Buckfire and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including but not limited to the following:

(a)      review and analysis of the Debtors' business, operations and financial projections;

---

[2]    The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

(b)     financial and valuation advice and assistance to the Debtors in developing and seeking approval of a restructuring plan under the Bankruptcy Code;

(c)     advise and assist the Debtors in structuring any new securities to be issued under a restructuring plan;

(d)     assist with the development and preparation of a memorandum to be used in soliciting potential investors, if requested by the Debtors;

(e)     assist with and/or participate in negotiations with potential investors, and/or entities or groups affected by a restructuring plan;

(f)     advise and assist the Debtors in the potential sale of CompassLearning, Inc. and any other non-core assets as requested by the Debtors;

(g)     assist the Debtors with administrative obligations arising out the chapter 11 filing, including preparing management for any organizational or ongoing meetings of creditors; and

(h)     participate in hearings, as necessary, before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice.

16.     The Services that Miller Buckfire will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  All of the services that Miller Buckfire will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these chapter 11 cases, including AlixPartners, LLP ("*AlixPartners*").  Miller Buckfire and AlixPartners are being retained to perform distinct functions.  Miller Buckfire is being retained to provide general financial advisory and investment banking services, including structuring, evaluating and assisting with the consummation of a financial restructuring and any related financings and/or sale transactions, while AlixPartners is being retained to provide operational consulting services.  Miller Buckfire has agreed with the Debtors to coordinate with AlixPartners and the Debtors' other retained professionals to avoid duplication of services.

### C. Professional Compensation

17. Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and any other applicable procedures and orders of the Court, the Debtors will compensate Miller Buckfire in accordance with the terms and conditions of the Engagement Letter, which provides in relevant part for the following compensation structure (the "***Fee and Expense Structure***"):[3]

(a) <u>Monthly Fees</u>:  A Monthly Advisory Fee of $200,000.  Fifty percent of any Monthly Advisory Fees paid to Miller Buckfire shall be credited against any Completion Fee (described below).

(b) <u>Financing Fee</u>:  Financing fees in accordance with the following schedule:

    (i) 1% of the gross proceeds of any indebtedness issued that is secured by a first lien;

    (ii) 3% of the gross proceeds of any indebtedness issued that (A) is secured by a second or more junior lien, (B) is unsecured and/or (C) is subordinate; and

    (iii) 5% of the gross proceeds of any equity or equity-linked securities or obligations issued;

*provided that* (x) in each case, no Financing Fee shall be payable in respect of any such proceeds actually funded by the Debtors' prepetition shareholders and (y) a DIP Financing Fee of $1,500,000 paid prior to the Commencement Date shall be credited against any Financing Fee payable in respect of any Financing raised in an "exit" Financing.

(c) <u>Completion Fee</u>:  A Completion Fee of $3,750,000, payable upon consummation of a Restructuring or Comprehensive Sale. [4]

---

[3]    This summary is presented for convenience purposes only.  The terms set forth in the Engagement Letter are controlling in all respects.  Capitalized terms used herein not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

[4]    The Engagement Letter provides for a Completion Fee of $7,500,000, 50% of which was earned and paid prior to the Commencement Date as provided by the Engagement Letter.  Accordingly, $3,750,000 remains to be paid, subject to applicable crediting and approval by the Court.

(d)     <u>Partial Sale Fee</u>:  A Partial Sale (*i.e.*, a sale other than a Comprehensive Sale) fee of $500,000 in respect of the sale of the Debtors' CompassLearning, Inc business.

(e)     <u>Reimbursement of Expenses</u>:  In addition to the fees described above, and regardless of whether any Transaction occurs, the Debtors shall promptly reimburse Miller Buckfire on a monthly basis for travel and other reasonable out-of-pocket expenses incurred in connection with Miller Buckfire's activities under the Engagement Letter, including all fees, disbursements and other charges of counsel and other consultants and advisors to be retained by Miller Buckfire.

18.     The Fee and Expense Structure is comparable to compensation generally charged by investment banking firms of similar stature to Miller Buckfire for comparable engagements, both in and out of bankruptcy. Miller Buckfire and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based. In determining the level of compensation to be paid to Miller Buckfire and its reasonableness, the Debtors compared Miller Buckfire's fee proposal to the other proposals received by the Debtors in the investment banking selection process. The Debtors also compared Miller Buckfire's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases. In both instances, the Debtors found Miller Buckfire's proposed fees to be reasonable and within the range of other comparable transactions.

19.     The Debtors submit that Miller Buckfire has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Commencement Date and that Miller Buckfire is both well qualified and uniquely able to perform these services and assist the Debtors in the chapter 11 cases. Moreover, the Debtors believe that Miller Buckfire's services will assist the Debtors in a successful outcome of the chapter 11 cases.

20.     The Debtors believe that the Fee and Expense Structure is consistent with Miller Buckfire's normal and customary billing practices for comparably sized and complex cases, both

in- and out-of-court, involving the services to be provided in the chapter 11 cases.  The Debtors submit that the foregoing compensation arrangements are both reasonable and market-based.

21.     To induce Miller Buckfire to do business with the Debtors in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Miller Buckfire expects to undertake and the potential for failure.

22.     Although Miller Buckfire does not charge for its services on an hourly basis, Miller Buckfire will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in the chapter 11 cases.  Miller Buckfire requests that it be permitted to file time records in one half (.5) hour increments.  Miller Buckfire is seeking a waiver, pursuant to Local Bankruptcy Rule 2016-2(g) of the requirement to bill activities in one-tenths (.1) of an hour.

23.     Miller Buckfire's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Miller Buckfire's engagement hereunder, were important factors in determining the Fee and Expense Structure. The Debtors believe that the ultimate benefit of Miller Buckfire's services hereunder cannot be measured by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services.

24.     In addition, the Fee and Expense Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals hereunder and in light of the fact that such commitment may foreclose other opportunities for Miller Buckfire and that the actual time and commitment

required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month.

25.    In sum, in light of the foregoing and given the numerous issues which Miller Buckfire may be required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Miller Buckfire's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

26.    Accordingly, as more fully described below, the Debtors believe that the Court should approve Miller Buckfire's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Miller Buckfire's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

27.    Miller Buckfire has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

**D.    Indemnification Provisions**

28.    The Debtors have agreed to indemnify and to make certain contributions to Miller Buckfire in accordance with the indemnification provisions (the "***Indemnification Provisions***") set forth in the Engagement Letter, as modified by the proposed retention order.    The indemnification provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for financial advisors and investment bankers such as Miller Buckfire for proceedings both out of court and in chapter 11.    The terms of the Engagement Letter including the Indemnification Provisions were fully negotiated between the Debtors and Miller Buckfire at

arm's-length and the Debtors respectfully submit that the Indemnification Provisions, as modified by the order requested herein, are reasonable and in the best interests of the Debtors, their estates and creditors. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions as modified by the Debtors' proposed order.

**E.     Miller Buckfire's Disinterestedness**

29.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Finger Declaration:  (a) Miller Buckfire is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates; and (b) Miller Buckfire has no connection to the Debtors, their creditors or their related parties except as may be disclosed in the Finger Declaration.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Miller Buckfire's retention are discovered or arise, Miller Buckfire will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Relief Requested**

30.     By this Application, the Debtors request entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1 authorizing the Debtors to retain and employ Miller Buckfire as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter, as modified by the proposed retention order, effective *nunc pro tunc* to the Commencement Date.

**Basis for Relief**

31.     The Debtors seek approval of the Fee and Expense Structure, the Engagement Letter and the Indemnification Agreement pursuant to section 328(a) of the Bankruptcy Code,

which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions.  Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum (In re National Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).  To mitigate this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See, e.g., In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. May 15, 2009); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. April 15, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009); *In re Wellman, Inc.*, Case No. 08-10595 (S.D.N.Y. April 2, 2008); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. April 26, 2006); *see also In re Source Interlink Cos., Inc.*, Case No. 09-11424 (Bankr. D. Del. May 22, 2009); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (Bankr. D. Del. Sept. 10, 2008); *In re Mervyn's Holdings, LLC*, Case

No. 08-11586 (Bankr. D. Del. Aug. 27, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (Bankr. D. Del. June 19, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (Bankr. D. Del. May 30, 2008); *In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. April 8, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (Bankr. D. Del. April 26, 2007); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006); *In re FLYi, Inc.*, Case No. 05-20011 (Bankr. D. Del. Dec. 2, 2005); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (Bankr. D. Del. Oct. 17, 2005).

32.     The Fee and Expense Structure appropriately reflects the nature and scope of services to be provided by Miller Buckfire, Miller Buckfire's substantial experience with respect to investment banking services, and the fee and expense structures typically utilized by Miller Buckfire and other leading investment banks that do not bill their clients on an hourly basis.

33.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g., In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. May 1, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Solutia Inc.*, Case No. 03-17949 (Bankr. S.D.N.Y. April 13, 2003); *see also In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005).

34.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee* basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added).  This change makes clear that debtors are able to retain a professional on a fixed fee basis with bankruptcy court approval, such as the Fee and Expense Structure for Miller Buckfire.

35.     The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure adequately reflects:  (a) the nature of the services to be provided by Miller Buckfire; and (b) fee and expense structures and indemnification provisions typically utilized by Miller Buckfire and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis.  In particular, the Debtors believe the Fee and Expense Structure creates a proper balance between fixed, monthly fees and contingency fees based on the successful consummation of certain sales of the Debtors' assets, raises of new capital and the overall success of these chapter 11 cases.  Moreover, Miller Buckfire's substantial experience with respect to investment banking services, coupled with the nature and scope of work already performed by Miller Buckfire before the Commencement Date, further suggest the reasonableness of the Fee and Expense Structure.

36.     Likewise, indemnification arrangements similar to the Indemnification Provisions have been approved and implemented in other large chapter 11 cases by courts in this jurisdiction and others.  *See e.g., In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. May 15, 2009); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. April 15, 2009); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. April 7, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. April 26, 2006); *In re Joan & David Halpern, Inc.*, 248 B.R. 43

(Bankr. S.D.N.Y. 2000) (overruling United States Trustee's objection to indemnity provisions); *see also In re Hines Horticulture, Inc.*, Case No. 08-11922 (Bankr. D. Del. Sept. 10, 2008); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (Bankr. D. Del. Aug. 27, 2008); *In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. Apr. 8, 2008); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006); *In re FLYi, Inc.*, Case No. 05-20011 (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (Bankr. D. Del. Oct. 17, 2005).

## Motion Practice

37.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Application.  Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## Notice

38.     The Debtors have provided or will provide notice of this Application by electronic mail, facsimile and/or by overnight mail to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the agent for the Debtors' proposed postpetition secured lenders; (d) counsel to the agent for the Debtors' prepetition secured lenders; (e) counsel to the indenture trustee for the Debtors' senior subordinated notes; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) any persons who have filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required

## No Prior Request

39.     No prior application for the relief requested herein has been made to this or any other court.

*[Concluded on the following page.]*

WHEREFORE, for the reasons set forth herein and in the Finger Declaration, the Debtors respectfully request that the Court (a) enter an order substantially in the form attached hereto as Exhibit A, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

New York, New York
Dated: August 28, 2009

By: _____

Name: Thomas A. Williams
Title: Chief Financial Officer and Senior Vice President of The Reader's Digest Association, Inc.

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, | ) Case No. 09-23529 (RDD) |
| INC., *et al.*, | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MILLER BUCKFIRE & CO., LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the application (the "***Application***")[1] of The Reader's Digest Association, Inc.

("***Reader's Digest***") and certain of its affiliates, as debtors and debtors in possession

(collectively, the "***Debtors***"),[2] for entry of an order (this "***Order***") authorizing the Debtors to

employ and retain Miller Buckfire & Co., LLC ("***Miller Buckfire***") as their financial advisor and

investment banker effective as of the date the Debtors filed their chapter 11 petitions, pursuant to

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

sections 327 and 328(a) of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "***Local Rules***"); and upon the Declaration of Jeffrey E. Finger, a Director of Miller Buckfire in support of the Application (the "***Finger Declaration***"); and upon the Declaration of Thomas A. Williams, Chief Financial Officer and Senior Vice President of The Reader's Digest Association, Inc., in Support of First Day Pleadings (the "***Williams Declaration***"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. § 1408; and Miller Buckfire not holding or representing interests adverse to the Debtors' estates; Miller Buckfire being a "disinterested person" as such term is defined under section 101(14), as modified by section 1107(b), of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest; and notice of the Application appearing adequate and appropriate under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "***Hearing***"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED THAT:

1.     The Application is granted to the extent set forth herein.

2.     The Debtors are authorized pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1 to employ and retain Miller Buckfire as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter attached hereto as **Exhibit 1** as modified by this Order, effective *nunc pro tunc* to the Commencement Date, and to pay fees to Miller Buckfire on the terms and at the times specified in the Engagement Letter.

3.     Miller Buckfire shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any applicable orders of the Court.

4.     Notwithstanding the prior paragraph, the fees payable to Miller Buckfire pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

5.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, orders of this Court or any guidelines regarding submission and approval of fee applications, Miller Buckfire and its professionals (a) shall only be required to maintain time records for services rendered postpetition, in half-hour increments and (b) shall not be required to provide or conform to any schedule of hourly rates.

6.     The Indemnification Provisions of the Engagement Letter are approved, subject to the following modifications during the pendency of the chapter 11 cases:

(a)     all requests of Indemnified Persons (as defined in the Engagement Letter) for payment of indemnity, contribution or otherwise pursuant to the indemnification

3

provisions of the Engagement Letter shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and other orders of this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Indemnified Persons;

(b)     in no event shall Indemnified Persons be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtors or a representative of the Debtors' estate asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Indemnified Person; and

(c)     in the event an Indemnified Person seeks reimbursement of attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be attached to Miller Buckfire's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter and this Order, the terms of this Order shall govern.

8.     Notwithstanding anything to the contrary herein, the United States Trustee retains all rights to object to Miller Buckfire's interim and final fee applications (including expense reimbursement) on all grounds including but not limited to the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

9.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

K&E 15091187.

10.     The requirements set forth in Local Rule 9013-1(b) are satisfied by the contents of the Motion.

11.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____ ____, 2009

_____
United States Bankruptcy Judge

5

# EXHIBIT 1



MILLER BUCKFIRE

Miller Buckfire & Co., LLC
153 East 53rd Street, 22nd Floor
New York, New York 10022
www.millerbuckfire.com

February 28, 2009
As amended and restated on July 30, 2009

The Reader's Digest Association, Inc.
Reader's Digest Road
Pleasantville, NY 10570-7000

Attention:    Thomas A. Williams
                Senior Vice President and Chief Financial Officer

Dear Mr. Williams:

This letter agreement confirms the terms under which The Reader's Digest Association, Inc. and RDA Holding Co. (collectively, the "Company") have engaged Miller Buckfire & Co., LLC ("Miller Buckfire") as its financial advisor and investment banker with respect to a possible Restructuring, Note Offer, Financing and/or Sale (each as defined below) and with respect to such other financial matters as to which the Company and Miller Buckfire may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes subsidiaries of the Company and any entity that the Company or its subsidiaries may form or invest in to consummate a Restructuring, Financing and/or Sale, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates. This letter agreement amends and restates in its entirety the letter agreement dated February 28, 2009.

1.      Miller Buckfire, as exclusive financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services:

          a.      General Financial Advisory and Investment Banking Services. Miller Buckfire will:

                    i.      to the extent it reasonably deems customary, necessary, appropriate and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company; and

      ii.      if the Company determines to undertake a Restructuring, Note Offer, Financing and/or Sale, advise and assist the Company in structuring and effecting the financial aspects of such a transaction or transactions, subject to the terms and conditions of this agreement.

b.      <u>Note Offer Services</u>: If the Company pursues a Note Offer, Miller Buckfire will:

      i.      if requested by the Company, advise and assist the Company in structuring and effecting the financial aspects of such a transaction;

      ii.      if requested by the Company, assist the Company in identifying and contacting and negotiating the Note Offer with entities or groups affected by the Note Offer and entering into a dealer manager agreement on mutually agreeable terms.

For purposes of this agreement, the term "<u>Note Offer</u>" means an offer to tender (including a self-tender offer), purchase or exchange all or a portion of the Company's 9% Senior Subordinated Notes due 2017 (the "<u>Notes</u>") for new loans extended, cash or other consideration, as determined by the Company in its sole discretion, and any related solicitation of consents to amend the terms, conditions or covenants of the Notes.

c.      <u>Restructuring Services</u>. If the Company pursues a Restructuring, Miller Buckfire will:

      i.      provide financial advice and assistance to the Company in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "<u>Plan</u>"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u>. <u>seq</u>. (the "<u>Bankruptcy Code</u>");

      ii.      if requested by the Company, in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

      iii.      if requested by the Company, assist the Company and/or participate in negotiations with entities or groups affected by the Plan; and

      iv.      if requested by the Company, participate in hearings before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other indebtedness, obligations or liabilities (including preferred stock, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations.

      d.     Financing Services. If the Company pursues a Financing, if requested by the Company and agreed by Miller Buckfire, Miller Buckfire will:

          i.     provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

          ii.     assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "Financing Offering Memorandum") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) except to solicit potential Investors as contemplated by this subparagraph (d)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

          iii.     assist the Company and/or participate in negotiations with potential Investors.

For purposes of this agreement, the term "Financing" shall mean (i) a private issuance, sale or placement of equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors except to the extent issued to existing security holders of the Company in exchange for their existing securities, (ii) any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or (iii) a rights offering (each such lender or investor, an "Investor").

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Miller Buckfire to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

e.    <u>Sale Services</u>.  If the Company pursues a Sale, Miller Buckfire will:

    i.    provide financial advice and assistance to the Company in connection with a Sale, identify potential acquirors and, at the Company's request, contact such potential acquirors;

    ii.    at the Company's request, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "<u>Sale Memorandum</u>") to be used in soliciting potential acquirors, it being agreed that (A) the Sale Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Sale Memorandum, and (C) except to solicit potential acquirors as contemplated by this subparagraph (e)(ii), the Sale Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

    iii.    if requested by the Company, assist the Company and/or participate in negotiations with potential acquirors.

For purposes of this agreement, the term "<u>Sale</u>" shall mean the disposition to one or more third parties in one or a series of related transactions of (x) all or a portion of the equity securities of the Company by the security holders of the Company or (y) all or a portion of the assets (including the assignment of any executory contracts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, provided that a Sale of all or substantially all of the equity securities, assets or business of the Company shall be a "<u>Comprehensive Sale</u>" and any other Sale shall be a "<u>Partial Sale</u>".

For purposes of this agreement, the term "<u>Transaction</u>" shall mean (x) a Restructuring, (y) Comprehensive Sale or (z) any combination thereof.

In rendering its services to the Company hereunder, Miller Buckfire is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction. The Company agrees that Miller Buckfire shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company

confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

In order to coordinate effectively the Company's and Miller Buckfire's activities to effect a Restructuring, Financing or Sale, the Company will promptly inform Miller Buckfire of any discussions, negotiations or inquiries regarding a possible Restructuring, Financing or Sale (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to the date of this agreement).

The Company shall make available to Miller Buckfire all information concerning the business, assets, operations, financial condition and prospects of the Company that Miller Buckfire reasonably requests in connection with the services to be performed for the Company hereunder and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Miller Buckfire shall deem appropriate; provided, however, that Miller Buckfire recognizes the confidential nature of the terms of this engagement and the potential transactions contemplated hereby, and shall use its discretion when speaking with any such individuals. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this engagement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

2.  Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:

    a.  A monthly financial advisory fee of $100,000, which shall be due and paid by the Company upon the execution of this agreement and 30 days after the date hereof, provided that immediately before filing of a chapter 11 case by the Company, then the Monthly Advisory Fee payable under subparagraph 2(b) shall be payable, provided further that either (x) 100% of the fees payable pursuant to this subparagraph 2(a) shall be credited against any Note Offer Fee or (y) 50% of the fees payable pursuant to this subparagraph 2(a) shall be credited against any Completion Fee.

    b.  A monthly financial advisory fee (the "Monthly Advisory Fee") of $200,000, which shall be due and paid by the Company commencing upon the earlier of the date that is (x) 60 days after the date hereof and (y) the date immediately preceding the date on which the Company files a chapter 11 case, and on each monthly anniversary of such date thereafter during the term of this engagement. 50% of any Monthly Advisory Fees shall be credited against any Completion Fee.

c.    If at any time during the term of this engagement or within the six full months following the termination of this engagement by the Company (including the term of this engagement, the "Note Offer Fee Period"), any Note Offer is consummated, Miller Buckfire shall be entitled to receive a transaction fee (a "Note Offer Fee"), contingent upon the consummation of a Note Offer and payable at the closing thereof, of 1.25% of the positive difference (the "Discount") between: (i) the aggregate principal amount of the Notes exchanged pursuant to the Note Offer and (ii) the sum of the aggregate principal amount of new loans extended in exchange for Notes and/or cash paid to repurchase or redeem Notes, in each case pursuant to the Note Offer. Notwithstanding the foregoing, (i) fees paid hereunder and (ii) amounts paid by the Company in satisfaction of accrued but unpaid interest through the date of consummation of the Note Offer shall be excluded from the calculation of the Discount. 100% of any Note Offer Fee shall be credited against any Completion Fee.

d.    If at any time during the term of this engagement or within the twelve full months following the termination of this engagement by the Company (including the term of this engagement, the "Fee Period"), (x) any Transaction is consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Transaction is entered into and (2) concurrently therewith or at any time during the Fee Period, such Transaction is consummated, Miller Buckfire shall be entitled to receive a transaction fee (a "Completion Fee"), contingent upon the consummation of a Transaction and payable at the closing thereof (and, in the case of a Comprehensive Sale, out of the proceeds of such Sale), equal to $7,500,000.

Notwithstanding anything to the contrary in this agreement, in connection with any Transaction that is intended to be effected, in whole or in part, as a prepackaged, partial prepackaged or prearranged plan of reorganization anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Company, from holders of any class of the Company's securities, indebtedness or obligations (a "Prepackaged Plan") the Completion Fee shall be payable (x) (i) in the case of a Prepackaged Plan that takes the form of prepackaged or partial prepackaged plan or reorganization, 50% upon receipt of votes from the Company's creditors necessary to confirm such Prepackaged Plan or (ii) in the case of a Prepackaged Plan that takes the form of a prearranged plan of reorganization, 50% upon obtaining indications of support from the Company's creditors that in the good faith judgment of the Board of Directors of the Company are sufficient to justify filing such Prepackaged Plan, and (y) the balance shall be payable upon consummation of such Transaction; provided, however, Miller Buckfire shall refund any amount of the Completion Fee paid pursuant to (x)(i) or (ii) of this paragraph in connection with the filing of a Prepackaged Plan if no Transaction is consummated or no other event triggering a fee pursuant to this agreement occurs during the Fee Period.

e.   If at any time during the Fee Period, (x) any Partial Sale is consummated or (y)(1) an agreement in principle or definitive agreement to effect a Partial Sale is entered into, and (2) concurrently therewith or during the Fee Period any Partial Sale is consummated, Miller Buckfire shall be entitled to receive a transaction fee to be agreed upon by the Company and Miller Buckfire.

f.   If the Company has requested Miller Buckfire to provide Financing services pursuant to subparagraph 1(d) and Miller Buckfire has agreed to so provide such services, then if at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time during the Fee Period such Financing is consummated, the Company will pay to Miller Buckfire at the closing thereof the following (either as underwriting discounts, placement fees or other compensation):

    i.    1% of the gross proceeds of any indebtedness issued that is secured by a first lien;

    ii.   3% of the gross proceeds of any indebtedness issued that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;

    iii.  5% of the gross proceeds of any equity or equity-linked securities or obligations issued; and

    iv.   with respect to any other securities or indebtedness issued, such underwriting discounts, placement fees or other compensation as shall be customary under the circumstances and mutually agreed by the Company and Miller Buckfire;

    provided that no Financing fee shall be payable in respect of Financing proceeds to the extent actually funded by the shareholders of the Company as of the date hereof, including, but not limited to, Ripplewood Holdings, LLC, Ripplewood Partners II, LP, J. Rothschild Group (Guernsey) Ltd., GoldenTree Asset Management, LP, GSO Capital Partners, Merrill Lynch Capital Corporation, Magnetar Capital, Solar Capital, LLC, C.V. Starr & Co., Inc. and their respective affiliates.

Notwithstanding anything to the contrary in this subparagraph 2(f), if at any time during the Fee Period, the Company obtains a written commitment for a debtor-in-possession Financing, Miller Buckfire shall be entitled to receive a financing fee of 1.00% of the

aggregate amount of such commitment, which fee shall be due and payable no later than the date immediately preceding the date on which the Company files a chapter 11 case; provided that any DIP Financing fee shall be credited against any Financing fee payable in respect of any indebtedness raised in an "exit" Financing.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, Miller Buckfire shall be entitled to its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of the Fee Period, so long as one or more of such stages is consummated during the Fee Period.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards. In addition, the Company and Miller Buckfire acknowledge and agree that more than one fee may be payable to Miller Buckfire under subparagraphs 2(c), 2(d), 2(e) and/or 2(f) hereof in connection with any single transaction or a series of transactions, and in each case, each such fee shall be paid to Miller Buckfire, subject to the application of any credits provided for under the terms of this letter.

3.   In addition to any fees payable by the Company to Miller Buckfire hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Miller Buckfire on a monthly basis for its travel and other reasonable out-of-pocket expenses incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by this engagement or in the enforcement of Miller Buckfire's rights hereunder (including all fees, disbursements and other charges of counsel to be retained by Miller Buckfire, and of other consultants and advisors retained by Miller Buckfire with the Company's consent). The Company shall also reimburse Miller Buckfire, at such times as Miller Buckfire shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this engagement. Such reimbursements shall be

made promptly upon submission by Miller Buckfire of statements for such expenses. Miller Buckfire will notify the Company when expenses exceed $50,000.

4.  The Company agrees to indemnify Miller Buckfire and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Miller Buckfire's engagement hereunder.

5.  The Company agrees that none of Miller Buckfire, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Covered Person; provided, however, that in no event shall the Covered Persons' aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Miller Buckfire actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination of willful misconduct specified in this sentence.

6.  This agreement and Miller Buckfire's engagement hereunder may be terminated by either the Company or Miller Buckfire at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Miller Buckfire's engagement hereunder shall not affect the Company's continuing obligation to indemnify Miller Buckfire and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination by the Company, Miller Buckfire shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (c) any termination of Miller Buckfire's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof.

7.  Miller Buckfire has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party  The advice (oral or written) rendered by Miller Buckfire pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to

Miller Buckfire be made by the Company, without the prior written consent of Miller Buckfire.

8.      The Company agrees that Miller Buckfire shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that Miller Buckfire will submit a copy of any such advertisement to the Company for its approval, which approval shall not be unreasonably withheld or delayed.

9.      This agreement shall be deemed to be made in New York.  This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law.  The Company hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, during any such case, any such claims will be heard and determined in the Bankruptcy Court (as defined below).  The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing.  ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH MILLER BUCKFIRE'S ENGAGEMENT IS HEREBY WAIVED.

10.     This agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument.  This agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan).  This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the indemnified persons referenced in the Indemnification Provisions contained herein and the Covered Persons referenced above.  This agreement (including the Indemnification Provisions) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof, except

the Confidentiality Agreement dated February 3, 2009. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

11. The Company and Miller Buckfire do not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is either a prohibited party according to other U.S. government regulatory or enforcement agencies.

12. The Company hereby acknowledges that affiliates of Miller Buckfire engage in the hedge fund and/or principal investment business, which affiliates are separated by ethical walls to prevent the improper sharing of client information. The Company hereby acknowledges and agrees that such affiliates may from time to time have a long or short position in, buy and sell or otherwise effect transactions for their own accounts or for the accounts of investment pools managed by them in the securities, loans or other obligations or instruments of the Company or those of other companies or entities so long as the personnel involved in performing such activities have not received access to the Company's confidential information from Miller Buckfire, including this engagement.

13. In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall apply promptly to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this agreement and Miller Buckfire's retention by the Company under the terms of this agreement, subject only to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. In any such chapter 11 case or cases, the Company agrees that Miller Buckfire's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall further be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Miller Buckfire the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. The Company shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in such chapter 11 case or cases (a) permits the use of cash collateral and financing proceeds for the full and prompt payment of all of Miller Buckfire's

fees and expenses contemplated hereby (including, without limitation, all fees contingent upon the occurrence of transactions), and (b) contains the agreements by the lenders (or parties whose cash collateral is being used) that Miller Buckfire's fees and expenses shall be paid at the times and from the sources specified herein. The Company shall supply Miller Buckfire and its counsel with a draft of such application and the proposed order authorizing Miller Buckfire's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Miller Buckfire and its counsel to review and comment thereon. Miller Buckfire shall have no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Miller Buckfire's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Miller Buckfire in all respects. Miller Buckfire acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 12, payment of Miller Buckfire's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Miller Buckfire's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications including any record keeping or reporting requirements. In the event that the Company becomes a debtor under the Bankruptcy Code and Miller Buckfire's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Miller Buckfire hereunder as promptly as practicable in accordance with the terms hereof. In so agreeing to seek Miller Buckfire's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Miller Buckfire's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Miller Buckfire's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Miller Buckfire hereunder are reasonable regardless of the number of hours to be expended by Miller Buckfire's professionals in performance of the services to be provided hereunder. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Miller Buckfire in cash.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____
Name: Jeffrey E. Finger
Title:    Director

Accepted and Agreed to:

THE READER'S DIGEST ASSOCIATION, INC.

By: _____
Name:    Thomas A. Williams
Title:    Senior Vice President and Chief Financial Officer

# INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor to The Reader's Digest Association, Inc., the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Miller Buckfire's activities under Miller Buckfire's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of the person seeking indemnification hereunder. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of February 28, 2009, between Miller Buckfire and The Reader's Digest Association, Inc., of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Miller Buckfire and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each other indemnified person hereunder from all liability arising out of such claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the indemnified person), the Company and Miller Buckfire will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault

of the Company, on the one hand, and Miller Buckfire, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire from the Company pursuant to Miller Buckfire's engagement referred to above. It is hereby agreed that for purposes of this paragraph, the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company or the Company's stockholders, claims holders or contract parties, as the case may be, pursuant to the transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee paid or proposed to be paid to Miller Buckfire in connection with such engagement. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company further agrees that it will promptly reimburse Miller Buckfire and any other indemnified person hereunder for all expenses (including fees and disbursements of counsel) as they are incurred by Miller Buckfire or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Miller Buckfire or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.

**EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) Case No. 09-23529 (RDD) |
| | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## DECLARATION OF JEFFREY E. FINGER IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MILLER BUCKFIRE & CO., LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

I, Jeffrey E. Finger, under penalty of perjury, declare as follows:

1.      I am a Director with Miller Buckfire & Co., LLC ("***Miller Buckfire***"), a financial advisory services and investment banking firm with its principal office located at 601 Lexington Avenue, 22nd Floor, New York, New York 10022.   I am duly authorized to make this Declaration on behalf of Miller Buckfire in support of the application (the "***Application***")[1] of the above-captioned debtor and certain its affiliates (collectively, the "***Debtors***")[2] for entry of an

---

[1]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom

order authorizing the employment and retention of Miller Buckfire as financial advisors and investment bankers, *nunc pro tunc* to the Commencement Date, under the terms and conditions set forth in the Engagement Letter, as modified by the proposed order, attached as <u>Exhibit A</u> to the Application.  I submit this Declaration in accordance with sections 327 and 328 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "***Local Rules***").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## A.     Miller Buckfire's Qualifications

2.     Miller Buckfire is an independent firm that, among other things, provides strategic and financial advisory services in large-scale corporate restructuring transactions. Miller Buckfire is principally owned and controlled by its employees.  Miller Buckfire currently has approximately 75 employees.

3.     Miller Buckfire's professionals have extensive experience in providing financial advisory and investment banking services to financially distressed companies and to creditors, equity holders and other constituencies in reorganization proceedings and complex financial restructurings, both in- and out-of-court.  For instance, Miller Buckfire's professionals are providing or have provided financial advisory, investment banking and other services in connection with the restructuring of numerous companies: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company;

---

Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is:  1 Reader's Digest Road, Pleasantville, NY 10570.

K&E 15091187.

Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Gate Gourmet; Grand Union Co.; Grupo TMM; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc.; Loewen Group; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; SI Corporation; The Spiegel Group; Sunbeam Corporation; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; U.S. Office Products; and Women First Healthcare, Inc. Miller Buckfire's professionals are also providing or have provided mergers and acquisitions advisory services in connection with whole or partial company sale transactions involving companies across a wide range of industries, including Atwood Mobile Products (Dura Corporation); Aurora Foods; Burlington Industries; Calpine Corporation; Cambridge Industries; Career Blazers; Conversent Communications; Country Road Communications; Dana Corporation; Focal

3

Communications; Global Valley Networks; IMPATH; Pegasus Broadcast Television; Pegasus Satellite Communications; PSINet; and Polaroid Corporation.

4. Since February 28, 2009, when the Debtors retained Miller Buckfire, Miller Buckfire has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

(a)     familiarized itself with the assets and operations of the Debtors;

(b)     analyzed the Debtors' current liquidity and projected cash flows;

(c)     examined and sought to implement potential strategic alternatives to de-leverage the Debtors' balance sheet;

(d)     developed materials for, and participated in, numerous meetings of the Debtors' board of directors;

(e)     assisted the Debtors and their other professionals in the development of materials for, and participated in, numerous meetings with key creditor and equity constituents;

(f)     engaged in negotiations with the steering committee of secured lenders, certain other stakeholders and their respective advisors regarding the terms of a consensual balance sheet restructuring;

(g)     assisted the Debtors and their other professionals in developing the budget used for purposes of securing debtor in possession financing;

(h)     assisted the Debtors in structuring and negotiating the debtor in possession financing;

(i)     assisted the Debtors in the identification of potential alternative financing sources;

(j)     assisted the Debtors in evaluating their restructuring alternatives; and

(k)     assisted the Debtors in evaluating the sale of certain non-core assets, including but not limited to CompassLearning, Inc.

5. In providing professional services to the Debtors, Miller Buckfire has worked closely with the Debtors' officers and management and has become well-acquainted with the Debtors' businesses, capital structure, financial affairs and related matters. The experience Miller Buckfire gained before the Commencement Date will facilitate the provision of the

K&E 15091187.

services required by the Debtors in the chapter 11 cases. Accordingly, Miller Buckfire is both well qualified and uniquely able to represent the Debtors in the chapter 11 cases in an efficient and timely manner.

**B.      Services to Be Provided**[3]

6.      The parties have entered into the Engagement Letter, which governs the relationship between Miller Buckfire and the Debtors. The terms and the conditions of the Engagement Letter were negotiated between the Debtors and Miller Buckfire and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Subject to further order of the Court and consistent with the Engagement Letter, Miller Buckfire will provide a broad range of necessary financial advisory and investment banking services (the "*Services*") as Miller Buckfire and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including, but not limited to, the following:

(a)      review and analysis of the Debtors' business, operations and financial projections;

(b)      financial and valuation advice and assistance to the Debtors in developing and seeking approval of a restructuring plan under the Bankruptcy Code;

(c)      advise and assist the Debtors in structuring any new securities to be issued under a restructuring plan;

(d)      assist with the development and preparation of a memorandum to be used in soliciting potential investors, if requested by the Debtors;

(e)      assist with and/or participate in negotiations with potential investors and/or entities or groups affected by a restructuring plan;

(f)      advise and assist the Debtors in the potential sale of CompassLearning, Inc. and any other non-core assets as requested by the Debtors;

---

[3]      The summaries of the Engagement Letter contained in this declaration are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

K&E 15091187.

(g)     assist the Debtors with administrative obligations arising out of the chapter 11 filing, including preparing management for any organizational or ongoing meetings of creditors; and

(h)     participate in hearings, as necessary, before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice.

7.     The Services that Miller Buckfire will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  All of the services that Miller Buckfire will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these chapter 11 cases, including AlixPartners, LLP ("*AlixPartners*").  Miller Buckfire and AlixPartners are being retained to perform distinct functions.  Miller Buckfire is being retained to provide general financial advisory and investment banking services, including structuring, evaluating and assisting with the consummation of a financial restructuring and any related financings and/or sale transactions, while AlixPartners is being retained to provide operational consulting services.  Miller Buckfire has agreed with the Debtors to coordinate with AlixPartners and the Debtors' other retained professionals to avoid duplication of services.

## C.     Professional Compensation

8.     Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and any other applicable procedures and orders of the Court, the Debtors will compensate Miller Buckfire in accordance with the terms and conditions of the Engagement Letter, which provides in relevant part for the following compensation structure (the "*Fee and Expense Structure*"):[4]

---

[4]   This summary is presented for convenience purposes only.  The terms set forth in the Engagement Letter are controlling in all respects.  Capitalized terms used herein not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

K&E 15091187.

(a)  <u>Monthly Fees</u>:  A Monthly Advisory Fee of $200,000.  Fifty percent of any Monthly Advisory Fees paid to Miller Buckfire shall be credited against any Completion Fee (described below).

(b)  <u>Financing Fee</u>:  Financing fees in accordance with the following schedule:

   (i)   1% of the gross proceeds of any indebtedness issued that is secured by a first lien;

   (ii)  3% of the gross proceeds of any indebtedness issued that (A) is secured by a second or more junior lien, (B) is unsecured and/or (C) is subordinate; and

   (iii) 5% of the gross proceeds of any equity or equity-linked securities or obligations issued;

   *provided* that (x) in each case, no Financing Fee shall be payable in respect of any such proceeds actually funded by the Debtors' prepetition shareholders and (y) a DIP Financing Fee of $1,500,000 paid prior to the Commencement Date shall be credited against any Financing Fee payable in respect of any Financing raised in an "exit" Financing.

(c)  <u>Completion Fee</u>:  A Completion Fee of $3,750,000, payable upon consummation of a Restructuring or Comprehensive Sale.[5]

(d)  <u>Partial Sale Fee</u>:  A Partial Sale (*i.e.*, a Sale other than a Comprehensive Sale)fee of $500,000 in respect of the Sale of the Debtors' CompassLearning, Inc. business.

(e)  <u>Reimbursement of Expenses</u>:  In addition to the fees described above, and regardless of whether any Transaction occurs, the Debtors shall promptly reimburse Miller Buckfire on a monthly basis for travel and other reasonable out-of-pocket expenses incurred in connection with Miller Buckfire's activities under the Engagement Letter, including all fees, disbursements and other charges of counsel and other consultants and advisors to be retained by Miller Buckfire.

9.  Miller Buckfire has obtained valuable institutional knowledge of the Debtors'

businesses and financial affairs as a result of providing services to the Debtors prior to the

Commencement Date.  Miller Buckfire submits that it is both well qualified and uniquely able to

---

[5] The Engagement Letter provides for a Completion Fee of $7,500,000, 50% of which was earned and paid prior to the Commencement Date as provided by the Engagement Letter.  Accordingly, $3,750,000 remains to be paid, subject to applicable crediting and approval by the Court.

K&E 15091187.

perform these services and assist the Debtors in the chapter 11 cases. Moreover, Miller Buckfire believes that its services will assist the Debtors in a successful outcome of the chapter 11 cases.

10. The Fee and Expense Structure is consistent with Miller Buckfire's normal and customary billing practices for comparably sized and complex cases, both in- and out-of-court, involving the services to be provided in the chapter 11 cases. Miller Buckfire believes that the foregoing compensation arrangements are both reasonable and market-based.

11. To induce Miller Buckfire to do business with the Debtors in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Miller Buckfire expects to undertake and the potential for failure.

12. Although Miller Buckfire does not charge for its services on an hourly basis, Miller Buckfire will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in the chapter 11 cases. Miller Buckfire requests that it be permitted to file time records in one half (.5) hour increments. Miller Buckfire is seeking a waiver, pursuant to Local Bankruptcy Rule 2016-2(g) of the requirement to bill activities in one-tenths (.1) of an hour.

13. Miller Buckfire's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Miller Buckfire's engagement hereunder, were important factors in determining the Fee and Expense Structure. Miller Buckfire believes that the ultimate benefit of Miller Buckfire's services hereunder cannot be measured by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services.

14.     In addition, the Fee and Expense Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals hereunder and in light of the fact that such commitment may foreclose other opportunities for Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month.

15.     In sum, in light of the foregoing and given the numerous issues which Miller Buckfire may be required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Miller Buckfire's services for engagements of this nature both out-of-court and in a chapter 11 context, Miller Buckfire believes that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

16.     Accordingly, and for the reasons more fully described in the Application, Miller Buckfire believes that the Court should approve Miller Buckfire's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Miller Buckfire's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

17.     Miller Buckfire has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

18.     Prior to the Commencement Date, Miller Buckfire received total monthly fees of $1,000,000, pursuant to section 2(a) and 2(b) of the Engagement Letter, a DIP Financing Fee of

$1,500,000 pursuant to section 2(f) of the Engagement Letter, $3,750,000 representing 50% of the Completion Fee pursuant to section 2(d) of the Engagement Letter and $46,955.71 for reimbursement of expenses incurred from February 28, 2009, through the Commencement Date. Miller Buckfire also received a fee and expense retainer of $410,000. To the extent that Miller Buckfire has received payment in excess of the amount actually incurred, Miller Buckfire will credit such overage to future incurred expenses. In total, Miller Buckfire received $6,706,955.71 prior to the Commencement Date.

**D. Indemnification Provisions**

19. The Engagement Letter further provides that the Debtors will indemnify, hold harmless and defend Miller Buckfire and its affiliates and its respective directors, officers, members, managers, shareholders, employees, agents and controlling persons and its respective successors and assigns (collectively, the "***Indemnified Parties***") under certain circumstances (such indemnification obligation being referred to as the "***Indemnification Provisions***"), which provisions are attached to and made a part of the Engagement Letter. These are standard provisions, both in chapter 11 cases and outside chapter 11, and, as modified by the proposed retention order, reflect the qualifications and limits on the Indemnification Provisions that are customary in this jurisdiction and others.

**E. Miller Buckfire's Disinterestedness**

20. The Debtors have numerous creditors, equity holders and other parties with whom they maintain business relationships. In connection with its proposed retention by the Debtors in the chapter 11 cases, Miller Buckfire undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. To check and clear potential conflicts of interest in the chapter 11 cases,

Miller Buckfire reviewed its client relationships to determine whether it had any relationships with the following entities (collectively, the "***Potential Parties in Interest***"):

(a)     the Debtors and certain of their affiliates;

(b)     significant secured lenders;

(c)     significant senior note holders;

(d)     significant equity holders;

(e)     the Debtors' largest unsecured trade creditors;

(f)     significant customers;

(g)     the Company's insurance providers;

(h)     the Company's landlords, lessors and counterparties to significant executory contracts;

(i)     the Debtors' present and former officers and directors;

(j)     parties to significant litigation with the Debtors;

(k)     United States Trustee employees;

(l)     the attorneys and other professionals that the Debtors have identified for employment in the chapter 11 cases;

(m)     other professionals retained by the Debtors; and

(n)     other significant parties in interest.

21.     The identities of the Potential Parties in Interest were provided to Miller Buckfire by the Debtors.

22.     Miller Buckfire is an independent and privately-owned investment bank and financial advisory firm. Miller Buckfire is wholly owned by MB Advisory Group, LLC ("***MB Advisory***"), a limited liability company organized under the laws of the State of Delaware. The principal owner of MB Advisory is MB Capital Co., LLC ("***MB Capital***"), which is also a Delaware limited liability company. MB Capital owns 90% of the membership interests in MB

Advisory, and Sal. Oppenheim North America Corporate Finance Holding LLC (the "*Investor*") owns the remaining 10%. The Investor is a Delaware limited liability company formed in 2007 by Sal. Oppenheim Jr. & Cie.KGaA ("*Oppenheim*"), a leading European private bank that provides investment banking and asset management services in various countries in Europe. In March 2007, at the time the Investor acquired its interest in MB Advisory, Miller Buckfire also entered into an agreement (the "*Strategic Collaboration Agreement*") with Oppenheim. Pursuant to the Strategic Collaboration Agreement, Miller Buckfire will work with Oppenheim to provide financial restructuring services to clients located in Germany, Austria and Switzerland. Miller Buckfire and Oppenheim also will work together on potential cross-border mergers and acquisitions transactions and may from time to time act as joint advisors in such mergers and acquisitions transactions. However, the Strategic Collaboration Agreement does not apply to the provision of investment banking and financial advisory services for restructuring purposes to clients in the United States.

23.     The Investor and Oppenheim will have no involvement in Miller Buckfire's provision of services in the chapter 11 cases, and they will have no access to any of Miller Buckfire's records or other non-public information relating to this case. Given their limited relationships, Miller Buckfire does not have access to Oppenheim's conflicts databases for purposes of the disclosures being made herein. Miller Buckfire has, however, reviewed the lists of parties in interest provided by the Debtors to determine if Oppenheim or any affiliates of Oppenheim known to Miller Buckfire (based on a limited review of publicly available information) are parties in interest in the chapter 11 cases. To the best of my knowledge, information and belief, none of the parties in interest identified to Miller Buckfire are affiliated with Oppenheim or its affiliates.

12

24.     Miller Buckfire does not believe that the Investor's minority stake in MB Advisory, the strategic relationship between Miller Buckfire and Oppenheim or Oppenheim's limited connections with potential parties in interest, are material to Miller Buckfire's work in this case.

25.     An affiliate of Miller Buckfire serves as manager for an investment fund (the "***Managed Fund***").  The Managed Fund is intended principally for investments by third parties unrelated to Miller Buckfire.  However, such investors also may include financial institutions (some of which may be parties in interest in the chapter 11 cases) or affiliates of Miller Buckfire and various of its officers and employees (some of which may include Miller Buckfire employees providing services in connection with the chapter 11 cases).  The Managed Fund may invest from time to time in claims or securities of or relating to the Debtors or parties in interest in the chapter 11 cases.  However, Miller Buckfire employees working in connection with the Debtors' chapter 11 cases have no control over or involvement in investment decisions or business decisions made for the Managed Fund.  The fund managers of the Managed Fund maintain investment control over investment decisions.  In addition, no confidential information concerning the Debtors is permitted to be communicated to any persons working for the manager of the Managed Fund.  Miller Buckfire does not believe that the relationships outlined above constitute adverse interests or render Miller Buckfire not disinterested in the chapter 11 cases.

26.     A number of business executives, including Harvey Golub, former chairman of the Board of Directors of The Reader's Digest Association, Inc., are members of an informal strategic advisory committee (the "***Strategic Committee***") of MB Advisory, which is the parent company of Miller Buckfire.  The Strategic Committee is an informal group of business executives who have agreed to consult with and advise Miller Buckfire's parent generally on the

13

strategic direction of the Miller Buckfire company group and future business trends. The members of the Strategic Committee have no direct financial stake in Miller Buckfire engagements and no role in the management of Miller Buckfire. They have not been consulted concerning any matter relating to the chapter 11 cases, nor will they be so consulted in the future. Members of the Strategic Committee, and entities for whom they work, may have relationships with creditors or other parties in interest in the chapter 11 cases. However, in light of the limited role of the Strategic Committee (and the fact that its members play no role in the chapter 11 cases), Miller Buckfire is not collecting and providing detailed information regarding such possible relationships.

27.     As part of its diverse practice, Miller Buckfire appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties in interest in the chapter 11 cases. Further, Miller Buckfire has in the past, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, Miller Buckfire has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or the chapter 11 cases in which it works with or against other professionals involved in the chapter 11 cases. Based on our current knowledge of the professionals involved in the chapter 11 cases, and to the best of my knowledge, none of these business relations constitute interests adverse to the Debtors.

28.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Miller Buckfire, nor any of its professional employees has any connection with the Debtors, their creditors, the United States Trustee or any other Potential

Parties in Interest in the chapter 11 cases or their respective attorneys or accounts, except as follows:

(a)     Prior to the commencement of the chapter 11 cases, Miller Buckfire's professionals performed professional services for the Debtors.

(b)     The Debtors have many creditors. From time to time, Miller Buckfire may perform or may have performed services for, or maintained other commercial or professional relationships with, certain creditors of the Debtors and various other parties that are adverse to the Debtors, in each case in matters unrelated to the chapter 11 cases.

(c)     Miller Buckfire has been in the past, and in some cases is currently, involved in unrelated matters with certain creditors of the Debtors, including, but not limited to, Bank of America, Merrill Lynch, Citigroup, Credit Suisse, Deutsche Bank AG, GE Commercial Finance, JPMorgan Chase Bank N.A., Morgan Stanley, , Davidson Kempner Capital Management, Ares Management, Eaton Vance Management and their respective affiliates, among others.

(d)     Miller Buckfire advised a group of creditors in the EaglePicher chapter 11 cases (the "*EaglePicher Committee*"), including JPMorgan. The representation of the EaglePicher Committee concerned matters unrelated to the Chapter 11 Cases;

(e)     Miller Buckfire advised a group of creditors in the Mirant Corporation chapter 11 case (the "*Mirant Committee*"), including Citigroup and Deutsche Bank. The representation of the Mirant Committee concerned matters unrelated to the Chapter 11 Cases;

(f)     Harvey Golub, former chairman of the Board of Directors of The Reader's Digest Association, Inc., is a member of the Strategic Committee of MB Advisory, which is the parent company of Miller Buckfire;

(g)     James M. Lucania, an associate of Miller Buckfire and part of the Miller Buckfire team proposed to represent the Debtors in the Chapter 11 Cases, was a former employee of an affiliate of Genesis CLO 2007-2 Ltd., a secured lender to the Debtors. Mr. Lucania is no longer affiliated with Genesis CLO 2007-2 Ltd.; and

(h)     Henry S. Miller's daughter is employed by Kirkland & Ellis, LLP ("*K&E*") on a full-time basis. While I understand that Mr. Miller's daughter is part of the K&E team proposed to represent the Debtors in these chapter 11 cases, Mr. Miller has no active involvement with Miller Buckfire's proposed representation of the Debtors.

29.     From time to time, Miller Buckfire also may have had dealings (either as co-advisers or in another capacity) on other unrelated matters with certain of the other professionals

who are providing, or are expected to provide, services in the chapter 11 cases, including, without limitation:

(a)     Kirkland & Ellis LLP (the Debtors' proposed counsel);

(b)     AlixPartners, LLP;

(c)     Simpson Thacher & Bartlett LLP;

(d)     Moelis & Company; and

(e)     Curtis, Mallet-Prevost, Colt & Mosle LLP.

30.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, Miller Buckfire has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the chapter 11 cases.  If Miller Buckfire's proposed retention by the Debtors is approved by the Court, Miller Buckfire will not accept any engagement or perform any service for any entity or person other than the Debtors in the chapter 11 cases.  Miller Buckfire will, however, continue to provide professional service to entities or persons that may be creditors of the Debtors or parties in interest in the chapter 11 cases, provided that such services do not relate to, or have any direct connection with, the chapter 11 cases or the Debtors.

31.     Insofar as I have been able to determine after reasonable inquiry, Miller Buckfire and the employees of Miller Buckfire that will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and Miller Buckfire is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Miller Buckfire, its professionals and employees:

(a)     are not creditors, equity security holders or insiders of the Debtors;

16

(b)    were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer or employee of the Debtors; and

(c)    do not have an interest materially adverse to the Debtors, their respective estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

32.    I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of Miller Buckfire who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York, the United States Trustee for the Southern District of New York or any employee in the Office of the United States Trustee for the Southern District of New York.

33.    To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the employees of Miller Buckfire working on this engagement on the Debtors' behalf has had, or will have in the future, direct contact concerning the chapter 11 cases with the Debtors' creditors, other parties in interest, the United States Trustee or anyone employed in the Office of the United States Trustee other than in connection with performing financial advisory and investment banking services on behalf of the Debtors.

34.    If Miller Buckfire discovers any additional information that requires disclosure, Miller Buckfire will promptly file a supplemental declaration with the Court.

*[Concluded on the following page.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  August 24, 2009

Jeffrey E. Finger
Director
Miller Buckfire & Co. LLC