**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) ) ) ) | Case No. 09-23529 (RDD) |
| Debtors. | ) ) ) | Jointly Administered |

## FINAL ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND LIEN CLAIMANTS AND APPROVING RELATED PROCEDURES AND (B) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED PAYMENT REQUESTS

Upon the motion (the "***Motion***")[1] of The Reader's Digest Association, Inc. ("***Reader's Digest***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"),[2] for entry of an interim and final order (this "***Order***") (a) authorizing the Debtors to pay certain prepetition claims of critical trade creditors and approving related procedures and (b) authorizing and directing financial institutions to receive, process, honor and pay all related

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

checks issued and electronic payment requests; and upon the Declaration of Thomas A. Williams, Chief Financial Officer and Senior Vice President of The Reader's Digest Association, Inc., in Support of First Day Pleadings (the "**Williams Declaration**"); and upon the declaration of Albert Perruzza, Senior Vice President, Global Operations, Information Technology and Business Redesign of Reader's Digest (the "**Perruzza Declaration**"); and the Court having found that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and notice of the Motion appearing adequate and appropriate under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found that relief requested in the Motion is necessary to prevent immediate and irreparable harm; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED THAT:

1.     The Motion is granted on a final basis to the extent set forth herein.

2.     The Debtors are authorized, but not directed, subject to the review procedures set forth in Paragraph 4 below (if applicable), to pay or honor all or part of the prepetition claims of certain critical vendors (collectively, the "**Critical Vendors**," whose claims shall be identified as

2

the "***Critical Vendor Claims***") whom the Debtors determine, in the reasonable exercise of their business judgment based on the criteria set forth in the Motion, are critical to their ability to conduct postpetition operations and who agree to continue to supply goods or services to the Debtors postpetition on terms and conditions acceptable to the Debtors in their sole discretion in accordance with the payment procedures set forth on Exhibit 1 attached hereto, which are approved on a final basis to the extent provided herein, in an aggregate amount not to exceed $25 million (inclusive of Critical Vendor Claims paid pursuant to the interim order entered in respect of the Motion).

3. Subject to the review procedures set forth in paragraph 4 below to the extent applicable, the Debtors shall undertake all appropriate and reasonable efforts to condition payment of Critical Vendor Claims upon the execution of a trade agreement, and the Debtors are authorized, but not required, to enter into such Trade Agreements when and if the Debtors determine, in the exercise of their sole reasonable business judgment, that it is appropriate to do so; *provided*, *however*, that the Debtors' inability to enter into a Trade Agreement shall not preclude them from paying a Critical Vendor Claim when, in the exercise of their sole reasonable business judgment, such payment is necessary to the Debtors' operations.

4. Notwithstanding anything herein to the contrary, prior to making any payment to a Critical Vendor in excess of $350,000, on a cumulative basis to any one Critical Vendor, pursuant to the terms of this Order, the Debtors shall abide by the following procedures to obtain consent of the Committee Professionals (as defined herein), which consent shall not be unreasonably withheld:

  a. From and after entry of this Order, the Debtors shall provide to counsel to the official committee of unsecured creditors (the "***Committee***," and counsel thereto, "***Committee Counsel***") and any financial advisor retained by the Committee (the "***Committee Financial Advisor***," and together with

the Committee Counsel, the "***Committee Professionals***") a list, which may be provided by electronic mail, of any payments over $350,000, on a cumulative basis to any one Critical Vendor, that the Debtors seek to make to Critical Vendors on account of Critical Vendor Claims pursuant to this Order (the "***Critical Vendor List***").[3] The Critical Vendor List will include: (i) the name of the Critical Vendor proposed to be paid; (ii) the reason(s) the Debtors believe such vendor is a Critical Vendor; (iii) the maximum amount of the proposed payment; (iv) a brief summary of the key terms of any Trade Agreement; and (v) to what extent the Critical Vendor's prepetition claim will be waived.

b. Each Committee Professional shall treat the Critical Vendor List and all information set forth thereon as confidential and shall not disclose the same to anyone, including any individual member of the Committee or its representatives, without obtaining prior written consent from the Debtors.

c. The Committee Professionals shall have until 5:00 p.m. prevailing Eastern Time on the next business day from their receipt of the Critical Vendor List to review and notify the Debtors of any objection to a payment proposed by the Debtors with respect to any Critical Vendor Claim listed on the Critical Vendor List (the "***Review Period***"); *provided*, *however*, that if any Critical Vendor List has more than 15 proposed Critical Vendors, the Committee Professionals shall have for each set of additional Critical Vendors of up to 15, an additional 24 hours to review such payments (such that the Committee Professionals will not have to review more than 15 proposed Critical Vendor payments in any 24-hour period).

d. If the Committee Professionals do not notify the Debtors of any issues with the proposed payments identified on the Critical Vendor List before expiration of the Review Period, or if the Committee Professionals consent to the proposed Critical Vendor payment(s) before expiration of the Review Period, the Debtors shall, subject to the terms of this Order, be permitted to make such payments without further order of the Court.

e. If the Committee Professionals object to a proposed payment listed on the Critical Vendor List before the Review Period expires, the Committee Professionals shall notify counsel to the Debtors via email or telephone of any such objection and will confer with the Debtors in good faith to resolve the objection. If the parties are able to consensually resolve the objection within 12 hours, the Debtors shall be permitted to make such payment without further Court order. If the parties fail to resolve the objection within 12 hours, the Debtors may seek expedited review of the payment in question by the Court.

---

[3] The Committee will provide the Debtors with at least one and no more than three Committee Professionals that shall receive copies of any Critical Vendor List.

5. The Debtors shall also maintain a matrix summarizing payments made to Critical Vendors pursuant to this Order on account of Critical Vendor Claims that shall include the name of the Critical Vendor, the amount of the payment and a brief description of the goods or services provided by the Critical Vendor (the "***Critical Vendor Matrix***"). The Debtors shall provide copies of the Critical Vendor Matrix on a bi-monthly basis to the United States Trustee for the Southern District of New York, Committee Professionals and counsel to the agent for the Debtors' postpetition secured lenders (the "***Notice Parties***") solely for notification purposes. The Notice Parties shall be bound by the terms of this Order, and shall keep the Critical Vendor Matrix confidential and not disclose any of the information in the Critical Vendor Matrix to any party whatsoever, including any individual member of the Committee or its representatives, without obtaining the prior written consent from the Debtors. Any party that receives any of the information in the Critical Vendor Matrix shall be informed of the confidential nature of such information and shall be directed to treat the same in accordance with the terms of this Order by the applicable Notice Party (it being understood that such disclosing Notice Party shall be responsible for any improper use by a recipient party of any information disclosed by them).

6. The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the prepetition claims of certain third parties who may be entitled to assert various liens against the Debtors or their property or other assets if Debtors fail to pay for prepetition goods or services (collectively, the "***Lien Claimants***," whose claims shall be identified as the "***Lien Claims***") in an aggregate amount not to exceed $8 million (inclusive of Lien Claims paid pursuant to the interim order entered in respect of the Motion).

K&E 15575027.

7. In accordance with this Order (or other order of this Court), each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized and directed to (a) receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on or subsequent to the Commencement Date, and have no duty to inquire otherwise.

8. The Debtors are authorized to issue postpetition checks or to make additional electronic payment requests with respect to payment of a Critical Vendor Claim or Lien Claim in the event prepetition checks or electronic payment requests are dishonored or rejected.

9. Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtors, an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code or a waiver of the right of the Debtors, or shall impair the ability of the Debtors, to contest the validity and amount of any payment made pursuant to this Order.

10. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied by the contents of the Motion.

11. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

K&E 15575027.

12. The requirements set forth in Local Rule 9013-1(b) are satisfied by the contents of the Motion.

13. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York  /s/Robert D. Drain
Date: September 17, 2009  United States Bankruptcy Judge

K&E 15575027.

# **EXHIBIT 1**

K&E 15575027.

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Proposed Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) Case No. 09-23529 (RDD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## CRITICAL VENDOR PAYMENT PROCEDURES

On August 24, 2009 (the "*Commencement Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On August 31, 2009, the United States Trustee for the Southern District of New York (the "*U.S. Trustee*") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "*Committee*").

On August 26, 2009, the Bankruptcy Court entered an order [Docket No. 27] (the "*Order*") authorizing the Debtors, in their discretion based on their reasonable business judgment, to pay all or part of certain amounts due and owing to certain critical third-party trade creditors on account of goods delivered and received and/or services rendered prior to the Commencement Date for which invoices have not yet been received or have been received but not yet paid (the "*Critical Vendors*").

To ensure the continued postpetition delivery of goods and services on favorable terms, including credit terms, and facilitate orderly negotiations relating thereto, the Bankruptcy Court approved the procedures set forth herein (the "*Payment Procedures*") for the payment of the prepetition trade claims of certain Critical Vendors the Debtors determine, in their sole discretion based on their sound business judgment, are essential to their ongoing business operations and

K&E 15575027.

who agree to, among other things, provide postpetition goods and/or services to the Debtors on Customary Trade Terms (defined below), subject to the terms and conditions of the Order.

1. <u>Customary Trade Terms</u>. The Debtors will use their best efforts to condition the payment of Critical Vendor Claims on the agreement of individual Critical Vendors to continue to supply goods and/or services to the Debtors on the normal and customary trade terms, practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs), applicable to the Debtors in light of industry practices (the "***Customary Trade Terms***"). The Debtors reserve the right to negotiate trade terms with Critical Vendors who demand less favorable terms for the postpetition delivery of goods and services (to the extent the Debtors determine such terms are necessary to obtain such goods or procure such services), subject to the terms and conditions herein and in the Order.

2. <u>Trade Agreement</u>. To commit Critical Vendors to Customary Trade Terms, the Debtors are authorized, but not directed, to enter into letter agreements, or other agreements with Critical Vendors who receive Critical Vendor Payments, which will constitute a legally binding contractual arrangement among the Debtors and the Critical Vendor that will govern the parties' postpetition commercial relationship (once executed, each, a "***Trade Agreement***").

3. <u>Termination</u>. All Trade Agreements will be deemed to have terminated, together with the other benefits to Critical Vendors set forth in the Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Further, if a Critical Vendor breaches the terms and conditions of its respective Trade Agreement, the Debtors may declare, in their discretion and without further order of the Bankruptcy Court or action by any person or entity, that the respective Trade Agreement is terminated and that payments received by the breaching Critical Vendor on account of its Critical Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed. Upon such declaration, the breaching Critical Vendor shall immediately repay the Debtors any payments made to it on account of its Critical Vendor Claim to the extent such payment exceeds postpetition amounts owed, if any, to the Critical Vendor outstanding at that time, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims or otherwise.

4. <u>Reinstatement</u>. To the extent a Trade Agreement is terminated on account of breach of the terms or conditions thereof by a Critical Vendor, such terminated Trade Agreement may nevertheless be reinstated as the result of one or more of the following:

- after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Trade Agreement for good cause shown that the Debtors' determination was materially incorrect;

- the Critical Vendor fully cures the underlying default of the Trade Agreement within five (5) business days from the date of receipt of notice of termination of the Trade Agreement; or

2

K&E 15575027.

- the Debtors, in their discretion, reaches a favorable alternative agreement with the Critical Vendor.

5. <u>Reservation of Rights</u>. Nothing contained herein, in the Order or as a result of any payment made pursuant thereto, is intended to or should be construed as an admission of the validity, priority or extent of any claim or lien against the Debtors, a waiver of the Debtors' rights to dispute any claim or lien or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve the right to contest any demand for payment made with respect to the subject matter of this Motion under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended to and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

6. <u>Waiver</u>. Any Critical Vendor who accepts payment from the Debtors on account of a Critical Vendor Claim shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, (a) any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and members and any funds and other property held in trust by the Debtors that do not constitute "property of the estate" under section 541 of the Bankruptcy Code and (b) the right to demand a lump-sum payment for amounts outstanding but not yet payable upon consummation of the Debtors' plan of reorganization.

K&E 15575027.