**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, | ) Case No. 09-23529 (RDD) |
| INC., *et al.*, | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## ORDER AUTHORIZING THE DEBTORS'
## EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS
## RESTRUCTURING ADVISOR NUNC PRO TUNC TO THE COMMENCEMENT DATE

Upon the application (the "***Application***")[1] of The Reader's Digest Association, Inc.

("***Reader's Digest***") and certain of its affiliates, as debtors and debtors in possession

(collectively, the "***Debtors***"),[2] for entry of an order (this "***Order***") authorizing the Debtors to

employ and retain AlixPartners, LLP ("***AlixPartners***") as their restructuring advisor *nunc pro*

*tunc* to the Commencement Date; and upon the Declaration and Supplemental Declaration of

Lawrence Young, a Managing Director of AlixPartners (collectively, the "***Young Declarations***")

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

in support of the Application; and upon the Declaration of Thomas A. Williams, Chief Financial

Officer and Senior Vice President of The Reader's Digest Association, Inc., in Support of First

Day Pleadings (the "***Williams Declaration***"); and the United States Bankruptcy Court (the

"***Bankruptcy Court***") having jurisdiction to consider the Application and the relief requested

therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and venue being

proper before this Bankruptcy Court pursuant to 28 U.S.C. § 1408; and the Court having

reviewed the Application and the Young Declarations; and the Bankruptcy Court being satisfied

based on the representations made in the Application and the Young Declarations that

(a) AlixPartners does not hold or represent an interest adverse to the Debtors' estates and

(b) AlixPartners is a "disinterested person" as defined in Section 101(14) of the Bankruptcy

Code and as required by Section 327(a) of the Bankruptcy Code; and notice of the Application

appearing adequate and appropriate under the circumstances; and the Court having found that no

other or further notice need be provided; and the Court having reviewed the Application and

having heard statements in support of the Application at the October 5, 2009 hearing held before

the Court (the "***Hearing***"); and the Court having determined that the legal and factual bases set

forth in the Application and at the Hearing establish just cause for the relief granted herein; and

any objections to the relief requested herein having been withdrawn or overruled on the merits;

and after due deliberation and sufficient cause appearing, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to employ and retain AlixPartners as their

restructuring advisor in accordance with the terms and conditions set forth in the Engagement

Letter, as annexed to the Application and as modified herein, *nunc pro tunc* to the

Commencement Date.

3.  AlixPartners will provide the following financial advisory services to the Debtors:

    a.  assist the Debtors and their non-US subsidiaries in developing a global operating plan and long term business plan which will facilitate the development of potential cost reduction opportunities, management financial matrices, and key reporting matrices for the Debtors.

    b.  assist the Debtors and their non-US subsidiaries in developing and implementing a global cash management system, processes and procedures that provide management visibility across operations.

    c.  advise the Debtors' senior management with respect to the negotiation and implementation of restructuring initiatives such as assistance with implementing the Debtors' cost reductions, assistance in selected financial planning and analysis functions, assistance in negotiation of vendor discussions and settlements, and assistance in developing due diligence support and analysis.

    d.  assist the Debtors in managing the "working group" professionals who are assisting the Debtors in the reorganization process or who are working for the Debtors' various stakeholders to improve coordination of their effort and individual work product to be consistent with the Debtors' overall restructuring goals ; AlixPartners will use best efforts to avoid duplication of efforts with the Debtors' other professionals.

    e.  assist in obtaining and presenting information required by parties in interest in the Debtors' bankruptcy process including official committees appointed by the United States Trustee.

    f.  assist the Debtors in other business and financial aspects of a chapter 11 proceeding, including, but not limited to, development of a Disclosure Statement and Plan of Reorganization.

    g.  assist with the preparation of the statements of financial affairs, schedules and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.

    h.  assist the Debtors in managing the claims and claims reconciliation processes, except that AlixPartners will not provide any "claims agent" services to the Debtors ; AlixPartners will use best efforts to avoid duplication of efforts with the Debtors' other professionals.

    i.  assist in developing and implementing contingency plans outside of the United States.

4.      To the extent that the Debtors request additional services not set forth herein, AlixPartners and the Debtors may enter into additional engagement letters, as necessary, and will file and serve a notice of presentment of an order to the Bankruptcy Court for approval of any such additional engagement letters and serve such engagement letters upon the Debtors, the United States Trustee, the Creditors' Committee and all other parties required to be served under the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

5.      If at any time AlixPartners increases the rates for its services, AlixPartners will cause a notice to be filed with the Bankruptcy Court setting forth the increase in such rates and serve such notice upon the United States Trustee, the Debtors and the Creditors' Committee in these chapter 11 cases.

6.      The United States Trustee reserves all rights to review and object to the allowance and payment for services rendered by AlixPartners to non-U.S. subsidiaries upon a showing by AlixPartners of the reasonableness thereof pursuant to Bankruptcy Code Section 330.

7.      All requests of AlixPartners for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final, as applicable) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall AlixPartners be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

8.      In no event shall AlixPartners be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, AlixPartners' own bad faith, self dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.     In the event that AlixPartners seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, such attorneys' fees shall be sought solely in connection with indemnity claims made by or against AlixPartners, and the invoices and supporting time records from such attorneys shall be included in AlixPartners' own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's Guidelines for Compensation and Reimbursement of Expenses (the "*UST Guidelines*") and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code.

10.     AlixPartners will not be engaging any independent contractors as part of this engagement, any language regarding independent contractors in the Engagement Letter (including the General Terms and Conditions therein) is deemed deleted in its entirety. To the extent that AlixPartners wishes to retain independent contractors, AlixPartners will file a supplemental retention application.

11.     Notwithstanding anything in the Engagement Letter to the contrary, the retainer shall not be an "evergreen" retainer. Rather, AlixPartners shall apply any remaining amounts of its prepetition retainer as a credit toward post-petition fees and expenses, as such post-petition fees and expenses become payable by the Debtors to AlixPartners.

12.     Notwithstanding anything in the Engagement Letter to the contrary, for the avoidance of doubt, the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with AlixPartners' engagement by the Debtors and the Engagement Letter, including, without limitation, the indemnification provisions outlined in the Engagement Letter.

13.     In respect of AlixPartners' Limit of Liability, as set forth in the paragraph of same title within Section 11 of the General Terms and Conditions to the Engagement Letter, such

paragraph shall be deemed, during the pendency of the Debtors' chapter 11 cases, to be deleted in its entirety.

14.	The first sentence of Section 3 of the General Terms and Conditions of the Engagement Letter is amended and restated in its entirety as follows: "AlixPartners has been retained under this agreement as an independent contractor with no agency relation to the Company or to any other party, it being understood that AlixPartners shall have no authority to bind, represent or otherwise act as an agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall AlixPartners have the authority (except in advising Company personnel) to manage money or property of the Company."

15.	 AlixPartners shall not seek or be entitled to payment of the portion of the Contingent Success Fee related to the Timing Metric and any reference to the Timing Metric in the Engagement Letter is hereby deemed to be stricken. The Creditors' Committee shall not object to and will affirmatively support AlixPartners' right to payment of the full remainder of the Contingent Success Fee related to the Project California and the EBITDA Metrics based on the formulas or metrics set forth in the Engagement Letter. Notwithstanding the foregoing, the Creditors' Committee, to the extent it remains in existence at the time the metric is earned, shall have the right to verify that AlixPartners has met the metrics set forth in the Engagement Letter so as to be entitled to the Contingent Success Fee related to the Project California Metric and/or the EBITDA Improvement Metric. Provided that the Creditors' Committee remains in existence at the time the metric is earned, AlixPartners and/or the Debtors shall provide the Creditors' Committee and the United States Trustee with documentation that supports, demonstrates and/or verifies that AlixPartners has earned the Project California Metric and/or the EBITDA Improvement Metric pursuant to the terms of the Engagement Letter (the "Supporting Documentation"), and the Creditors' Committee shall have the right to object to that portion of

the Contingent Success Fee related to the Project California Metric and/or the EBITDA Improvement Metric on the sole basis that AlixPartners has not earned the Project California Metric using the formulas contained in the Engagement Letter and based on the Supporting Documentation. For the avoidance of doubt, the Creditors' Committee's retained right to object to whether AlixPartners has earned the Contingent Success Fee on the basis of the Project California Metric and/or the EBITDA Improvement Metric shall not include the right to object to the reasonableness of the Project California Metric and/or the EBITDA Improvement Metric.

16. AlixPartners will file fee applications for interim and final allowance of compensation, including the Contingent Success Fee or any individual metric, and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules and Local Bankruptcy Rules, the UST Guidelines and any applicable procedures or guidelines as may be fixed by orders of the Bankruptcy Court. AlixPartners may file applications for approval and payment of each metric of the Contingent Success Fee as soon as AlixPartners believes it has earned each of the Project California Metric and the EBITDA Improvement Metric. Without limiting the foregoing, the United States Trustee reserves all rights to review and object, pursuant to Section 330 of the Bankruptcy Code, to the allowance and payment of all fees incurred and expenses sought to be reimbursed by AlixPartners including, without limitation, the Contingent Success Fee or individual metrics, including, without limitation, as to whether the Contingent Success Fee or individual metric was earned, and whether the allowance and payment of any Contingent Success Fee or individual metric is reasonable pursuant to Section 330 of the Bankruptcy Code.

17. To the extent that there is any inconsistency between the terms of the Application, the Engagement Letter (including the General Terms and Conditions therein), or this Order, the terms of this Order shall govern.

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

19.     The requirements set forth in Local Rule 9013-1(b) are satisfied by the contents of the Motion.

20.     The Bankruptcy Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York                              /s/ Robert D. Drain
Date:  October 6, 2009                          United States Bankruptcy Judge