UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) Case No. 09-23529 (RDD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND
364(e) AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND
(III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS

Upon the motion, dated August 24, 2009 (the "Motion"), of RDA Holding Co. (the "Parent"), The Reader's

Digest Association, Inc. (the "Borrower") and each direct and indirect domestic subsidiary of the Borrower, each as

debtor and debtor in possession (collectively, the "Debtors")[1] in the above-captioned cases (the "Cases")

commenced on August 24, 2009 (the "Petition Date") for interim and final orders under sections 105, 361, 362,

363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101,

et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the United States Bankruptcy

Court for the Southern District of New York (the "Bankruptcy Court"), seeking:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

(I)        authorization (a) for the Borrower to obtain $150,000,000 in aggregate principal amount of postpetition financing (the "<u>DIP Financing</u>") on the terms and conditions set forth in the Interim Order (as defined below), this final order (this "<u>Order</u>") and the Credit Agreement (substantially in the form annexed to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time, the "<u>DIP Agreement</u>"; [2] together with all agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "<u>DIP Documents</u>"), among the Borrower, the Guarantors (as defined below), JPMorgan Chase Bank, N.A. ("<u>JPMorgan</u>"), as Administrative Agent (in such capacity, the "<u>DIP Agent</u>") for itself and a syndicate of other financial institutions (collectively, the "<u>DIP Lenders</u>"), and (b) for each of the Debtors, other than the Borrower (the "<u>Guarantors</u>"), to guaranty on a secured basis the Borrower's obligations in respect of the DIP Financing;

(II)        authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)        authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 11 below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 3(b) below) and (b) provide adequate protection to the lenders (including lenders or their affiliates which entered into, on a prepetition basis, Secured Hedge Agreements (as defined in the Prepetition Credit Agreement) or are owed Cash Management Obligations (as defined in the Prepetition Credit Agreement), collectively, the "<u>Prepetition Secured Lenders</u>") under the Credit Agreement, dated as of March 2, 2007 (as amended, supplemented or otherwise modified, the "<u>Prepetition Credit Agreement</u>"; and together with any other security, pledge or guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "<u>Prepetition Loan Documents</u>"), among the Borrower, the Parent, foreign and domestic

---

[2]        Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

509600-0292-11363-Active.11755983.6

subsidiaries of the Borrower, the Prepetition Secured Lenders and JPMorgan, as administrative agent and collateral agent (in such capacity, the "Prepetition Agent") for the Prepetition Secured Lenders;

(IV)     authorization for the DIP Agent to accelerate the Loans and terminate the Commitments under the DIP Agreement (subject to the terms thereof) upon the occurrence and continuance of an Event of Default, including without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtors' assets having a value in excess of $1,000,000, which constitutes an "Extraordinary Provision" (an "Extraordinary Provision") under General Order No. M-274 of the Bankruptcy Court (the "General Order");

(V)     subject to entry of this Order, authorization to grant liens to the DIP Lenders on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"), which grant constitutes an Extraordinary Provision under the General Order;

(VI)     subject to entry of this Order, the waiver by the Debtors of any right to seek to surcharge the DIP Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable law or principle of equity, which constitutes an Extraordinary Provision under the General Order;

(VII)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of an interim order (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement an aggregate principal amount not to exceed $100,000,000 at any time outstanding prior to the entry of this Order, to be used for working capital and general corporate purposes of the Debtors and their respective subsidiaries, including investments and loans into and for the benefit of foreign subsidiaries, (b) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral, including to cash collateralize letters of credit issued pursuant to the Prepetition Credit Agreement, (in each case, with respect to clauses (a) and (b), subject to the

3

terms and conditions of the DIP Agreement) and (c) granting adequate protection to the Prepetition Secured Lenders; and

(VIII)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "<u>Final Hearing</u>") for this Court to consider entry of this Order authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the Borrower on a final basis to utilize the DIP Financing and for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms of the DIP Documents.

The Interim Hearing having been held by this Court on August 25, 2009, and the Interim Order granting the interim relief sought in the Motion having been entered by this Court on August 26, 2009 and the notice requirements set forth in the Interim Order having been complied with; and upon the record made by the Debtors at the Interim and Final Hearings, including, without limitation, the admission into evidence of the Declaration of Thomas A. Williams, Chief Financial Officer and Senior Vice President of The Reader's Digest Association, Inc., in Support of First Day Pleadings and the Declaration of Jeffrey E. Finger, a Director of Miller Buckfire & Co., LLC, the Debtors' proposed financial advisor and investment banker, both of which were filed contemporaneous with the Motion, and the other evidence submitted or addressed and the arguments of counsel made at the Interim and Final Hearings; and after due deliberation, and consideration and sufficient cause appearing therefore,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Final Hearing was served by the Debtors on their thirty largest (on a consolidated basis) unsecured creditors, the DIP Agent, the Prepetition Agent, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), the statutory committee of unsecured creditors appointed in the Cases by the U.S. Trustee on August 31, 2009 (the "<u>Committee</u>"), and all other parties who requested service pursuant to Bankruptcy Rule 2002.  The notice given by the Debtors of the Motion, the relief requested therein and the Final Hearing constitutes due and sufficient notice thereof and complies with

4

Bankruptcy Rules 4001(b) and (c), the Local Rules of the Southern District of New York and the Interim Order, and no further notice of the relief sought at the Final Hearing is necessary or required.

3. *Debtors' Stipulations*. Subject to the limitations contained in paragraphs 17 and 18 below, the Debtors (for themselves, but not their estates) admit, stipulate, and agree that:

(a) as of the Petition Date, the Debtors were truly and justly indebted and liable to the Prepetition Secured Lenders, without objection, defense, counterclaim or offset of any kind, (i) in the aggregate principal amount of not less than $1,582,545,556 in respect of loans made under the Prepetition Credit Agreement, (ii) $6,300,000 in undrawn available amounts under letters of credit issued pursuant to the Prepetition Credit Agreement, plus amounts owed under Secured Hedge Agreements with the Hedge Banks (as defined in the Prepetition Credit Agreement), accrued and unpaid interest, any Cash Management Obligations owed to any Prepetition Secured Lender, all Secured Obligations (as defined in the Prepetition Credit Agreement) and fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Loan Documents and applicable Secured Hedge Agreements (collectively, the "Prepetition Obligations");

(b) the liens and security interests granted to the Prepetition Agent to secure the Prepetition Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition Credit Agreement) liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Prepetition Loan Documents in respect of the Prepetition Obligations (together with the prepetition Cash Collateral, the "Prepetition Collateral"), (ii) not subject to valid objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 6(b) below) and the liens and security interests granted to secure the DIP Financing and the Adequate Protection Obligations (as defined in paragraph 13 below), and (B) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such permitted liens are senior to the liens securing the Prepetition Obligations (the "Permitted Prepetition Liens"); provided that, notwithstanding anything herein to the contrary, the L/C Cash Collateral (as defined in paragraph 13(c) below) shall not be subject to the Carve Out or the security interests or liens granted to secure the DIP Financing or the claims thereunder or the Adequate Protection Liens (as defined in paragraph 13(a) below) and claims of the Prepetition

5

Secured Parties (other than the issuing lender of the letters of credit for whose benefit the L/C Cash Collateral is granted);

(c)        the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); and

(d)        (i) no portion of the Prepetition Obligations is subject to valid objection, defense, counterclaim, offset, avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses, setoff or recoupment rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Agent, the Prepetition Secured Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors.

4.        *Findings Regarding The DIP Financing.*

(a)        Good cause has been shown for the entry of this Order.

(b)        The Debtors require the remainder of the DIP Financing and need to continue to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors and their domestic and foreign subsidiaries, and satisfy payroll obligations and other working capital and general corporate purposes of the Debtors and their domestic and foreign subsidiaries.   The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' businesses and estates.

(c)        The Debtors are unable to obtain financing, when taken as a whole, on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.   The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting (i) the priming DIP Liens (as defined in paragraph 7 below) and (ii) the Superpriority Claims (as defined in paragraph 6(a) below), in each case on the terms and conditions set forth in this Order and the DIP Documents.

6

(d)      The terms of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are appropriate under the circumstances and constitute reasonably equivalent value and fair consideration.

(e)      The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the informal steering committee of the Prepetition Secured Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all Loans made to the Debtors pursuant to the DIP Agreement and (ii) all other obligations of the Debtors under the DIP Documents and this Order now and hereafter owing to the DIP Agent or any DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)      Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

5.      *Authorization Of The DIP Financing And The DIP Documents.*

(a)      The Debtors are hereby authorized to continue to perform under the DIP Documents and, in the case of the Borrower, to borrow the remainder of the DIP Financing for working capital and other general corporate purposes of the Debtors, including, without limitation, to pay interest, fees and expenses in connection with the DIP Financing and to make intercompany loans to foreign subsidiaries to the extent permitted by the DIP Agreement.

(b)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts (to the extent such acts were authorized by the Interim Order and have already occurred, such acts are hereby ratified) and to execute and deliver all instruments and documents that the

7

DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)        the execution, delivery and performance of the DIP Documents;

(ii)       the execution, delivery and performance of the guarantees of the obligations of the Borrower by the other Debtors;

(iii)      the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans, (B) increase the Commitments or the rate of interest payable on the Loans under the DIP Agreement, or (C) change any Event of Default, add any covenants or amend the covenants therein, in each case as applicable to the Debtors, in any such case to be materially more restrictive; provided, however, that, prior to any such amendment, waiver that requires a fee, consent or other modification (other than a waiver without a fee) becoming effective, a copy of any such amendment, waiver that requires a fee, consent or other modification (other than a waiver without a fee) shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the Committee, in each case three (3) Business Days prior to its effectiveness, provided, further, that, after any waiver that does not require a fee becomes effective, a copy of any such waiver shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the Committee;

(iv)      the non-refundable payment to the DIP Agent, its affiliates and the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents and the separate fee letters with the DIP Agent or its affiliates; and

(v)       the performance of all other acts required under or in connection with the DIP Documents.

(c)       The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation,

8

under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(d)     The Debtors shall maintain books and records with respect to intercompany transfers, including, without limitation, loans and investments made to domestic and foreign subsidiaries of the Borrower. Intercompany obligations among the Debtors constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided that such intercompany Superpriority Claim shall be subordinate and subject to the prior payment in full, in cash of the DIP Obligations, the Carve Out and the 507(b) Claims of the Prepetition Secured Lenders (and may not be enforced or collected prior thereto) and may be subject to compromise pursuant to a chapter 11 plan of reorganization.

6.     *Superpriority Claims.*

(a)     Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed Superpriority Claims against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided that, notwithstanding anything herein to the contrary, the L/C Cash Collateral shall not be subject to the Superpriority Claims and such Superpriority Claims shall not be paid from the L/C Cash Collateral.

(b)     For purposes hereof, the "Carve Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of

509600-0292-11363-Active.11755983.6

title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first Business Day after the occurrence and during the continuance of an Event of Default under the DIP Agreement and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors and the Committee (the "Carve Out Notice"), to the extent allowed at any time, whether before or after delivery of a Carve Out Notice, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid professional fees, costs and expenses (collectively, the "Professional Fees") incurred by persons or firms retained by the Debtors and the Committee and allowed by this Court, in an aggregate amount not exceeding $10,000,000 (the "Carve Out Cap") (plus all unpaid Professional Fees allowed by this Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice); provided that the Carve Out Cap shall be inclusive of any professional fees, costs and expenses incurred by any Chapter 7 trustee, such professional fees, costs and expenses in an amount not to exceed $100,000 in the aggregate; provided further that (A) the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Secured Lenders or the Prepetition Agent (each in its capacity as such), (B) so long as no Event of Default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under sections 328, 330, 331 and 1103(a) of the Bankruptcy Code, and (C) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.  For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Documents, or in the Prepetition Credit Agreement and related documents and agreements, the Carve Out shall be senior to all liens securing the DIP Obligations, the Adequate Protection Liens, all claims and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and Prepetition Obligations granted or recognized as valid, including the liens and security interests granted to the Prepetition Secured Lenders; provided that the L/C Cash Collateral shall not be subject to the Carve Out and the L/C Cash Collateral shall not be used for the payment of the Carve Out or any portion thereof. Upon delivery of a Carve Out Notice, prior to making any distributions, the Debtors shall deposit an amount equal to the Professional Fees incurred and unpaid as of such time, plus an amount equal to the Carve Out Cap in a segregated account to be utilized solely for the payment of Professional Fees, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall not

509600-0292-11363-Active.11755983.6

hinder or delay the Debtors' compliance with the foregoing deposit requirement. Notwithstanding the foregoing deposit, no portion of the Professional Fees otherwise within the Carve Out shall cease to be within the Carve Out.

7.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected as of the date of the Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"; provided that, notwithstanding anything herein to the contrary, the DIP Collateral shall not include, and the DIP Liens shall not attach to, the L/C Cash Collateral), subject only to the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"):

(a)     First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Debtors have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including, without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of the Parent or any other Debtor and the proceeds of all of the foregoing; provided that, the Debtors shall not pledge in excess of 65% of the capital stock of their direct foreign subsidiaries or any of the capital stock or interests of indirect foreign subsidiaries without further order of this Court; provided further that the Unencumbered Property shall not include the Avoidance Actions and any assets upon which security may not be lawfully granted, but Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)     Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property in which the Debtors have an interest (other than the property

11

described in paragraph 7(c), as to which the DIP Liens will be as described in such clause, the L/C Cash Collateral and the Carve Out), whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(c)     Liens Priming Prepetition Secured Lenders' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all now or hereafter acquired Prepetition Collateral (other than the L/C Cash Collateral) and all proceeds thereof.  The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Agent and the Prepetition Secured Lenders (including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(a) below)), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the Prepetition Collateral that were valid and senior to the liens of the Prepetition Agent and the Prepetition Secured Lenders as of the Petition Date, including as permitted by section 546(b) of the Bankruptcy Code.

(d)     Liens Senior To Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise; provided that if any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code was senior and superior to, or *pari passu* with, such Adequate Protection Lien (or related prepetition lien) immediately prior to avoidance, then such avoided lien that is preserved for the benefit of the estate shall maintain its relative priority status to the Adequate Protection Liens (and related prepetition liens) as in effect immediately prior to avoidance.

8.     *Remedies After Event of Default.*

(a)     The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than

12

those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and following the giving of seven Business Days' prior written notice to the Debtors (with a copy to lead counsel for the Debtors, lead counsel to the Committee and to the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender and the right to prohibit further use of Cash Collateral), in each case subject to the funding requirement set forth in paragraph 6(b) of this Order. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

(b) Following an Event of Default, the Prepetition Secured Lenders may not exercise any rights or remedies under the Prepetition Loan Documents or this Order (other than with respect to the L/C Cash Collateral) unless and until all DIP Obligations have been paid in full in cash and all commitments thereunder have been terminated. After all DIP Obligations have been paid in full in cash and all commitments thereunder have been terminated, the Prepetition Secured Lenders may prohibit further use of the Cash Collateral and/or exercise such other rights or remedies as provided herein or in the Prepetition Loan Documents, in each case subject to the funding requirement set forth in paragraph 6(b) of this Order. If, prior to the payment in full in cash of all DIP Obligations and all commitments thereunder having been terminated, the Prepetition Secured Lenders receive any DIP Collateral or proceeds thereof, the DIP Lenders shall have the right to seek to recover any such DIP Collateral or proceeds.

9. *Limitation On Charging Expenses Against Collateral*. Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral, the L/C Cash Collateral or any amounts segregated in accordance with

13

paragraph 6(b) for purposes of the Carve Out, whether pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the DIP Agent or the Prepetition Agent, as the case may be, or the Debtors and the Committee with respect to the segregated account that may be established pursuant to paragraph 6(b) for purposes of the Carve Out, and no such consent shall be implied from any other action or inaction by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders or, with respect to the segregated account, the Debtors or the Committee.

10.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Secured Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, subject, however, to section 506 of the Bankruptcy Code.

11.     *The Cash Collateral.*  Subject to the limitations contained in paragraphs 17 and 18 below, the Debtors (for themselves, but not their estates) admit, stipulate and agree that all of the Debtors' cash, including, without limitation, all cash and other amounts from time to time on deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

12.     *Use Of Prepetition Collateral (including Cash Collateral).*  The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date under the DIP Agreement for working capital and general corporate purposes in accordance with and subject to the terms and conditions of this Order and the DIP Agreement; provided that, (a) the Prepetition Secured Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

13.     *Adequate Protection.*  The Prepetition Agent and the Prepetition Secured Lenders are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors of any Prepetition Collateral, including the Cash Collateral, the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens, the imposition of the automatic stay pursuant to section 362 of the

14

Bankruptcy Code or for any other reason that adequate protection may be permitted by the Bankruptcy Code, to the extent provided for under section 507(b) of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").  As adequate protection, the Prepetition Agent and the Prepetition Secured Lenders are hereby granted the following:

(a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Prepetition Agent (for itself and for the benefit of the Prepetition Secured Lenders) is hereby granted (effective and perfected as of the date of the Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens, and (iii) the Carve Out; provided that the Adequate Protection Liens shall not attach to, and be secured by, the property or proceeds recovered from any Avoidance Action; provided further that the Prepetition Secured Lenders shall ratably participate with other general unsecured creditors in the distribution of any property or proceeds recovered from each Avoidance Action to the full extent of the Prepetition Secured Lenders' allowed deficiency claim and shall not be deemed to have waived the benefits of any applicable subordination or turnover provision (it being understood and agreed that each party reserves its rights with respect to the amount of any allowed unsecured deficiency claim).

(b)    Section 507(b) Claim.  The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 726, 1113 and 1114 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations (it being understood and agreed that such 507(b) Claims shall not be payable from the L/C Cash Collateral or the Carve Out).  Except to the extent expressly set forth in this Order (including with respect to the L/C Cash Collateral and the Carve Out), the Prepetition Agent and the Prepetition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the payment in full in cash of all obligations arising under or relating to the Loans under the DIP Agreement and the termination of the commitments under the DIP Agreement (the "Discharge of the DIP Obligations"); provided, however, that, the Prepetition Secured Lenders shall have irrevocably agreed, pursuant to section 1129(a)(9) of the

Bankruptcy Code, that such 507(b) Claims may be paid under any plan of reorganization in any combination of cash, debt, equity or other property having a value on the effective date of the plan equal to the allowed amount of such claims; provided further that the 507(b) Claims may not be paid from the property or proceeds recovered from any Avoidance Action (and such property and proceeds shall not be subject to the 507(b) Claims) so long as the Prepetition Secured Lenders shall ratably participate with other general unsecured creditors in the distribution of any property or proceeds recovered from each Avoidance Action to the full extent of the Prepetition Secured Lenders' allowed deficiency claim and nothing herein shall be deemed a waiver of the benefits of any applicable subordination or turnover provision (it being understood and agreed that each party reserves its rights with respect to the amount of any allowed deficiency claim).

(c)    L/C Cash Collateral.  The Debtors have, in accordance with the Interim Order, irrevocably cash collateralized each undrawn and unexpired letter of credit issued under the Prepetition Credit Agreement in an amount equal to 105% of the face amount of such letter of credit, and the Debtors shall irrevocably cash collateralize each letter of credit issued hereafter on a bilateral basis (to the extent permitted by the DIP Agreement) in an amount equal to 105% of the face amount of such letter of credit (such cash collateral, together with the cash collateral backstopping each undrawn letter of credit issued under the Prepetition Credit Agreement, as required by the Interim Order, the "L/C Cash Collateral").  The L/C Cash Collateral shall be subject to documentation in form and substance reasonably satisfactory to the issuing lender thereof and the Debtors and the issuing lender thereof shall be irrevocably authorized to immediately, and without further notice or action, debit amounts from the L/C Cash Collateral to: (i) pay all accrued and unpaid fees with respect to the letters of credit and (ii) reimburse itself for each drawing under such letter of credit.  For the avoidance of doubt, the Debtors are hereby authorized to enter into such cash collateral arrangements and to incur obligations with respect thereto (including causing the issuance of new letters of credit).

(d)    Fees and Expenses.  Subject to the notice provisions set forth below and the resolution of any objections referenced below, the Prepetition Agent and the DIP Agent each shall receive from the Debtors reimbursement of all fees and expenses incurred or accrued, whether prior to or after the Petition Date, by the Prepetition Agent under the Prepetition Loan Documents, including, without limitation, the reasonable fees and disbursements of one financial advisor (which may include an additional accounting firm) and one lead counsel (in each relevant jurisdiction) to the Prepetition Agent, Specified Lenders and the Lead Arranger.  None of the fees and

expenses payable pursuant to this paragraph 13(d) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided, however, that the Prepetition Agent and the DIP Agent each shall submit copies of the invoices for such fees and expenses to the Debtors, and the Debtors shall provide copies of such invoices to the Committee and the U.S. Trustee no later than one (1) Business Day following the Debtors' receipt thereof; provided, further, that the Committee and the U.S. Trustee shall have eleven (11) days after the delivery of such invoices to the Debtors to object to the reasonableness of the fees and expenses included in any invoice. Any objection must (A) be in writing, (B) be submitted to counsel for the Debtors, the Committee, the U.S. Trustee and the Prepetition Agent or DIP Agent (as applicable), and (C) describe with particularity the items or categories of fees and expenses that are the subject of the objection and provide the specific basis for the objection to each such item or category. If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at the next regularly-scheduled omnibus hearing in these Cases; provided that the Debtors shall pay any undisputed portion of the fees, costs and expenses within fifteen (15) days of the initial presentment of such invoice. The Debtors shall, or shall cause their subsidiaries to, pay "breakage" costs suffered by the Euro Term Lenders (as defined in the Prepetition Credit Agreement) on account of their Euro Term Loans (as defined in the Prepetition Credit Agreement) as determined in accordance with the Prepetition Credit Agreement and, in any event, not to exceed $20,000.

(e)     Information.  The Debtors shall promptly provide to the Prepetition Agent and to counsel to the Committee any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders, with such information and reporting being subject to the confidentiality undertakings set forth in the Prepetition Credit Agreement for purposes of the Prepetition Agent and the Prepetition Secured Lenders.

(f)     Application of Proceeds.  So long as the Discharge of the DIP Obligations and all other DIP Obligations has not occurred, all proceeds of any Prepetition Collateral pursuant to the enforcement of any of the Prepetition Loan Documents or the exercise of any remedial provision thereunder or under this Order, together with all other proceeds received by any Prepetition Secured Lender as a result of any such enforcement or the exercise of any such remedial provision or as a result of any distribution of or in respect of any Prepetition Collateral

(whether or not expressly characterized as such), or the application of any Prepetition Collateral (or proceeds thereof) to the payment thereof or any distribution of Prepetition Collateral (or proceeds thereof) upon the liquidation or dissolution of any Debtor, shall be turned over by the Prepetition Agent to the DIP Agent until the Discharge of the DIP Obligations has occurred. Upon the Discharge of the DIP Obligations, subject to the terms hereof, the DIP Agent shall deliver to the Prepetition Agent any proceeds of Prepetition Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct, to be applied by the Prepetition Secured Lenders in such order as specified in the Prepetition Loan Documents.

14. *Reservation of Rights of Prepetition Secured Lenders.*

(a) Based upon the consent of the Prepetition Secured Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Secured Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Secured Lenders pursuant hereto is without prejudice to the right of the Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Except as expressly provided herein and without limiting the provisions of paragraphs 17 and 18 hereof, nothing contained in this Order (including, without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent or any Prepetition Secured Lender. The consent of the Prepetition Agent and the Prepetition Secured Lenders to the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Financing and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Agent or the Prepetition Secured Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

(b) In the event that the DIP Financing is repaid in full and terminated, the Debtors will continue to be bound by the covenants and subject to the Events of Default contained in the DIP Agreement (as in effect immediately prior to its termination), which will be for the benefit of the Prepetition Secured Lenders.

15. *Perfection Of DIP Liens And Adequate Protection Liens.*

509600-0292-11363-Active.11755983.6

(a)     The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action required to validate and perfect the liens and security interests granted to them pursuant to the Interim Order and this Order. Whether or not the DIP Agent or the Prepetition Agent shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of the Interim Order.

(b)     A certified copy of the Interim Order or this Order may, in the discretion of the DIP Agent or the Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of DIP Liens or Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders or the Prepetition Secured Lenders in accordance with the terms of the DIP Documents or this Order.

16.     *Preservation Of Rights Granted Under The Order.*

(a)     No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be granted or

19

allowed and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; <u>provided</u> that if any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code was senior and superior to, or *pari passu* with, such Adequate Protection Lien (or related prepetition lien) immediately prior to avoidance, then such avoided lien that is preserved for the benefit of the estate shall maintain its relative priority status to the Adequate Protection Liens (and related prepetition liens) as in effect immediately prior to avoidance.

(b)　　　　The Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent, or (ii) an order converting or dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the Superpriority Claims, the 507(b) Claims, the other administrative expense claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, the 507(b) Claims, the other administrative expense claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c)　　　　If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or

any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents.

(d) Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative expense claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash.

(e) Neither the DIP Liens nor this Order shall adversely affect, invalidate and/or prime any valid setoff and/or recoupment rights any parties have or may have and such rights are hereby preserved and shall continue to be enforceable at all times that any of the Cases are pending.

17. *Effect Of Stipulations On Third Parties*.  The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 11 of this Order, shall be binding solely upon the Debtors in all circumstances.  The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 11 of this Order, shall be binding upon all other parties in interest, including without limitation, the Debtors' estates and the Committee, unless (a) the Committee or any other party-in-interest, in each case, with requisite

standing, has duly filed an adversary proceeding (subject to the limitations contained herein, including, without limitation, in paragraph 18) by no later than the date that is the later of (i) in the case of any such adversary proceeding filed by a party-in-interest with requisite standing other than the Committee, 75 days after the date of entry of this Order, (ii) in the case of any such adversary proceeding filed by the Committee, 90 days after the appointment of the Committee, and (iii) any such later date agreed to in writing by counsel to the Prepetition Agent and counsel to the Committee, or as may be granted by this Court for cause, (A) challenging the validity, enforceability, priority or extent (except for purposes of sections 506(a) and (b) of the Bankruptcy Code) of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Agent or any of the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding; provided that, as to the Debtors (but not their estates), all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding is duly filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Obligations, the Prepetition Agent and the Prepetition Secured Lenders, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by the Committee or any other party-in-interest, and such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding is duly filed, the stipulations and admissions contained in paragraphs 3 and 11 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this

22

paragraph) on the Committee and any other party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Debtor to secure any of the foregoing; provided that the Committee may seek such standing, including on an expedited basis, so long as the Prepetition Agent and the Debtors are given prior notice thereof and an opportunity to be heard, and nothing herein shall be deemed to limit the rights of the Prepetition Agent and the Debtors with respect to objecting to any such motion for standing. Nothing herein shall limit any party's right to challenge, at any time, valuations proposed by any other party or Claims and Defenses resulting from such a valuation determination.

18. *Limitation On Use Of DIP Financing And DIP Collateral*. The Debtors shall use the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, DIP Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Loan Documents or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents; provided that, no more than an aggregate of $250,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the DIP

Collateral or the Carve Out (the "Investigation Budget") may be used by the Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations, or investigate any Claims and Defenses or other causes action against the Prepetition Agent or the Prepetition Secured Lenders. Valuation issues shall not be limited by the Investigation Budget.

19.    *Insurance*. To the extent the Prepetition Agent is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Obligations.

20.    *Master Proof of Claim*.

(a)    To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized (but not required) to file a single master proof of claim on behalf of itself and the Prepetition Secured Lenders on account of their claims arising under the Prepetition Loan Documents and hereunder against all Debtors (the "Master Proof of Claim"), and the Prepetition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Bankruptcy Rules in any of the Cases.

(b)    Upon filing of the Master Proof of Claim, the Prepetition Agent, each Prepetition Secured Lender and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Prepetition Loan Documents and the claims (as defined in section 101 of the Bankruptcy Code) of the Prepetition Agent and each Prepetition Secured Lender (and each of their respective successors and assigns) named in the Master Proof of Claim shall be allowed as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the Master Proof of Claim; provided that the Prepetition Agent may, but shall not be required, to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c)    The provisions set forth in paragraphs (a) and (b) above and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of

24

the Debtors, the Committee, the Prepetition Agent, the Prepetition Secured Lenders or any other party in interest or their respective successors in interest, including without limitation, the right of each Prepetition Secured Lender (or its successor in interest) to vote separately on any plan of reorganization proposed in the Cases.

21. *Order Governs*. Except as specifically amended, supplemented or otherwise modified by this Order, all of the provisions of the Interim Order shall remain in effect and are hereby ratified by this Order. In the event of any inconsistency between the provisions of this Order, the Interim Order and the DIP Documents, the provisions of this Order shall govern.

22. *Binding Effect; Successors And Assigns*. The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23. *Limitation of Liability*. In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Lenders are not deemed to be in control of the operations of the Debtors and are not deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders any liability for any claims arising

509600-0292-11363-Active.11755983.6

from the pre-petition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

24.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

Dated:     October 6, 2009
           New York, New York

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

26