James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | Case No. 09-23529 (RDD) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE DEBTORS TO IMPLEMENT THE EMPLOYEE TALENT PLAN**

**PLEASE TAKE NOTICE** that a hearing on the attached motion (the "*Motion*") of The Reader's Digest Association, Inc. ("*Reader's Digest*") and certain of its affiliates, as debtors and debtors in possession (collectively, the "*Debtors*"), will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at 300 Quarropas Street, White Plains, NY 10601 (the "*Court*") on **November 20, 2009, at 10:00 a.m. prevailing Eastern Time** (the "*Hearing*").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion or proposed Order (attached to the Motion as Exhibit A), together with proof of service, **must**: (1) be made in writing; (2) conform to the Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules for the Southern District of New York (the "*Local Bankruptcy Rules*") and that certain Order Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 92] (the "*Case Management Order*"); (3) be filed, in accordance with General Order M-242, electronically with the Court, with a hard copy marked "Chambers Copy" delivered to chambers pursuant to Local Bankruptcy Rule 9028-1; and (4) be served in accordance with the Case Management Order so it is **actually received no later than 4:00 p.m. prevailing Eastern Time on November 13, 2009** (the "*Objection Deadline*"), by the Master Service List, the 2002 List and any Affected Party (as each is defined in the Case Management

Order). A hard copy of any objection to the Motion or proposed Order must also be delivered via first class mail to the Office of the United States Trustee for the Southern District of New York, Attn: Andrea B. Schwartz, 33 Whitehall Street, 21st Floor, New York, New York 10004, within one business day of the Objection Deadline.[1]

**PLEASE TAKE FURTHER NOTICE** that, if no objections are timely filed and served with respect to the Motion in accordance with this notice, the Debtors shall submit an Order, substantially in the form attached to the Motion, to the Court on or after the Objection Deadline, which the Court may enter with no further notice or opportunity to be heard.

---

[1] Copies of the Motion, the Case Management Order, the Master Service List, the 2002 List and all pleadings and other papers filed in these chapter 11 cases may be obtained, free of charge, by visiting the Debtors' restructuring website at: http://www.kccllc.net/readers.

K&E 15822047.1

Dated: October 30, 2009
      New York, New York

/s/ Nicole L. Greenblatt
James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Counsel to the Debtors
and Debtors in Possession

K&E 15822047.1

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) | Case No. 09-23529 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE DEBTORS TO IMPLEMENT THE EMPLOYEE TALENT PLAN**

The Reader's Digest Association, Inc. ("***Reader's Digest***") and certain of its affiliates, as

debtors and debtors in possession (collectively, the "***Debtors***"),[1] submit this motion for entry of

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home

an order, substantially in the form of **Exhibit A**, authorizing the Debtors to implement an employee bonus plan (the "*Talent Plan*"), a copy of which is annexed to the proposed order as Exhibit 1. The facts and circumstances supporting this motion are set forth in the Declaration of Thomas A. Williams, Chief Financial Officer and Senior Vice President of The Reader's Digest Association, Inc., attached hereto as **Exhibit B**. In further support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court under 28 U.S.C. § 1408.

3.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "*Bankruptcy Code*").

## Background

4.      On August 24, 2009 (the "*Commencement Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On August 31, 2009, the United States Trustee for the Southern District of

---

Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

K&E 15822047.1

New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Committee**").

5.     On October 10, 2009 the Debtors filed the Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 163] and the Disclosure Statement for the Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 162] (the "**Disclosure Statement**").

**Relief Requested**

6.     By this motion, the Debtors seek authorization, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to implement the Talent Plan and make certain bonus payments to encourage the retention of and performance by certain of the Debtors' non-insider, rank and file employees who the Debtors have determined are necessary to their reorganization efforts (the "**Talent Plan Employees**").   As a result of prepetition restructuring initiatives and a thorough review of their compensation plans, the Debtors have eliminated their historic bonus programs, which were generally applicable to all levels of employees.   As a result, the Talent Plan Employees are no longer eligible to receive  bonus payments for fiscal year 2010 under the Debtors' historic bonus programs.  Because the Talent Plan Employees provide essential services to the Debtors that are necessary both during and after the Debtors' reorganization under chapter 11, the Debtors believe the Talent Plan is necessary and appropriate to improve morale, prevent attrition and maximize enterprise value.

7.     As set forth herein, the Talent Plan provides for bonus payments in an aggregate amount not to exceed $500,000 to a maximum of 100 employees (with individual bonus payments representing 3-6% of a participant's annual base salary).   The maximum total expenditure of $500,000 is contemplated by the Debtors' business plan and is included in the

6

operating expenses reflected in the cash flow projections set forth in the Disclosure Statement that has been filed with the Court.

8.      The first proposed payment under the Talent Plan is scheduled for November 23, 2009 at which time the Talent Plan Employees will receive 25% of their total bonus payment, with the remaining 75% payable upon emergence from chapter 11.  Because the first payment is due during the course of these chapter 11 cases, the Debtors are seeking the Court's authorization to implement the plan at this time.  The Debtors expect that aggregate payments to be made on November 23 will be approximately $86,950, and that the remaining payments will be made post-emergence.  The Debtors believe that the requested investment in their human capital is cost-effective, reasonable and will aid in the preservation of enterprise value.

## The Talent Plan

### A. The Talent Plan Employees

9.      The Talent Plan Employees consist of certain individual employees of the Debtors at level 8 or below who provide a wide variety of functions critical to the Debtors' ongoing operations and restructuring efforts, including in the areas of accounting, financial analysis, editing, human resources, legal and operations.  Eligible participants in the Talent Plan have been selected by the Debtors based upon their unique skills, responsibilities, performance and value to the Debtors' operations.  Specifically, the executive leads in each of the areas of the Debtors' operations nominated certain employees to the Talent Plan.  To be nominated, the employee must play a necessary role to the Debtors' operations and be essential to aid the Debtors in a successful restructuring.  The Talent Plan Employees (like all of the Debtors' employees) possess important experience, relationships and familiarity with the Debtors' operating systems, procedures and infrastructure that would be incredibly difficult (and costly) to replace.

K&E 15822047.1

### B. The Need for the Talent Plan

10. As a result of the chapter 11 filing, the Talent Plan Employees have experienced significant increases in their workloads. In connection with preparing for chapter 11 and associated pre-filing analyses, employee workload began to increase significantly in July 2009, and has only intensified with the fast-pace of the chapter 11 cases. Specifically, many of the Talent Plan Employees have been asked to assist the Debtors with analyses related to claims, schedules, contracts, potential contingent liabilities and other critical items, including vendor, customer and employee communications related to the filing. It is only because of the efforts of the Debtors' employees that the Debtors have successfully transitioned into chapter 11 operations. Although the Debtors' employees are proud of their efforts and support the Debtors' restructuring efforts, they are now educated enough about the chapter 11 process and related reporting and other requirements to understand that the workload will remain at high intensity through emergence.

11. At the same time, the Talent Plan Employees are aware that, as a result of the chapter 11 filing and the Debtors' prepetition restructuring and cost-saving initiatives, the Debtors have modified their incentive and bonus structure for fiscal year 2010 to generate significant cost savings. As a result, the Talent Plan Employees are no longer eligible to receive bonuses under the Debtors' historic annual incentive plan.

### C. The Talent Plan

12. The Talent Plan, which will go effective immediately upon (and subject to) Court approval, is a short-term plan designed to incentivize and retain the Talent Plan Employees during the chapter 11 cases and through emergence.[2] Awards under the Talent Plan are

---

[2] As previously stated, a copy of the Talent Plan is annexed as <u>Exhibit 1</u> to the order. To the extent there is any inconsistency between this motion and the Talent Plan, the Talent Plan shall govern.

K&E 15822047.1

denominated as a percentage of each participant's base salary, and range from 3% to 6% of each participant's base salary. The Plan contemplates payment in two installments: (i) the first 25% will be paid only if the participant remains employed as of November 23, 2009 and (ii) the remaining 75% will be paid only if the participant remains employed as of the date of emergence from chapter 11. Payment of Talent Plan awards is conditioned only on continued employment with the Debtors through actual receipt of payment. The awards are expected to be paid within ten days following the occurrence of each target payment date.

13.     As set forth above, the maximum amount of aggregate payments to be made to employees under the Talent Plan cannot exceed $500,000 under the terms of the Talent Plan. At this time, the Debtors have identified approximately 91 employees who will receive payments under the Talent Plan for a total cost of approximately $348,000.[3] Although the Talent Plan permits the Debtors to make payments to a maximum of 100 employees and in amounts not to exceed $500,000, the Debtors do not expect total payments under the Talent Plan to reach that threshold amount.

## Basis for Relief

14.     Sections 363 and 503(c) of the Bankruptcy Code govern a debtor's use of estate assets to implement employee bonus and incentive plans. Section 363(b) of the Bankruptcy Code authorizes a debtor to implement a bonus or incentive plan outside the ordinary course of business after notice and hearing if the plan represents an exercise of the debtor's sound business judgment. Section 503(c) of the Bankruptcy Code restricts certain transfers or payments by debtors to insiders and/or other employees unless such transfers or payments satisfy certain criteria or are otherwise justified by the facts and circumstances of the case. As discussed

---

[3]     The Debtors will provide a schedule of these employees to the Committee and the U.S. Trustee.

K&E 15822047.1

in more detail below, the Talent Plan represents an exercise of the Debtors' sound business judgment and the Debtors believe implementing the Talent Plan will foster employee morale and productivity during their chapter 11 restructuring. Furthermore, the Talent Plan does not implicate any of the prohibitions set forth in section 503(c) of the Bankruptcy Code. Accordingly, the Court should authorize the Debtors to implement the Talent Plan.

**A.    The Bonus Payments Pursuant to the Talent Plan
Are an Exercise of the Debtors' Sound Business Judgment.**

15.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "sound business purpose" that justifies such action. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith and supported by a good business reason); *In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997); *In re Ionosphere clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

16.    When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147

K&E 15822047.1

B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

17.     Section 105(a) of the Bankruptcy Code confers upon the Court broad equitable powers to fashion an order or decree that is in the interests of preserving and protecting the value of the Debtors' assets. *See, e.g., In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *In re Chinichian*, 784 F.2d 1440, 1443 (2d Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern"); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

18.     In this case, the Talent Plan is designed to motivate the Talent Plan Employees and incentivize them to remain in the Debtors' employ and thereby help to ensure the successful completion of the Debtors' restructuring efforts, and maximization of the value of the Debtors' estates for the benefit of creditors and all parties in interest. Indeed, courts have found that establishing transaction-related incentive pay accomplishes a "sound business purpose." *See, e.g., In re Nobex Corp.*, No. 05-20050, 2006 WL 4063024, at *2-3 (Bankr. D. Del. Jan. 19, 2006) (authorizing incentive pay related to proposed sale of debtor's assets where incentive was

structured to compensate management for additional involvement in due diligence process and sale negotiations in seeking a bid higher than the stalking horse bid).

19.    The Debtors have a sound business justification for making the payments contemplated under the Talent Plan.  The Debtors' employees are among the most important providers of services to the Debtors during the restructuring efforts.  The Talent Plan Employees possess indispensable institutional knowledge, experience and relationships and have been identified as critical to the Debtors operations and successful restructuring.  Payment of the bonus payments under the Talent Plan will provide the Talent Plan Employees with a greater sense of financial security and encourage them to remain focused on their work during this critical period rather than seek other employment.

20.    The Debtors believe that the Talent Plan bonus payments are reasonable, fully warranted and necessary to the success of these chapter 11 cases.  Notably, the Talent Plan payments will be made only to a subset of the Debtors' non-management employees who have been identified as among the most beneficial and cost-effective to the Debtors' restructuring efforts and continued operations.  The Debtors believe that the Talent Plan bonus payments will be key to preserving and bolstering employee morale and loyalty at a time when employee support is critical and certain employees are likely to seek alternate employment, perhaps with the Debtors' competitors.  The loss of valuable employees, with the resulting loss of institutional knowledge and the need to identify and recruit new employees, would be distracting and costly at this critical time.

21.    Further, the amount of the bonus payments under the Talent Plan are, in the aggregate, relatively insignificant in comparison to the expected benefits making these payments will afford the Debtors.  Indeed, the bonus payments on an individual basis are relatively de

K&E 15822047.1

minimis in the scope of these chapter 11 cases, but are significant to the Talent Plan Employees. Moreover, this investment in human capital is particularly warranted for these employees as they are not eligible to participate in any other bonus or incentive plans that may be proposed by the Debtors in their chapter 11 plan. For all of these reasons, approving the Talent Plan and the bonus payments thereunder will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption, engendering the Debtors' employees and encouraging their continued participation in the effective and efficient reorganization of the Debtors.

**B.      The Talent Plan Does Not Provide for Any Payments Prohibited by Section 503(c) of the Bankruptcy Code.**

22.      The Talent Plan does not implicate the restrictions set forth in section 503(c) of the Bankruptcy Code. Section 503(c)(1) limits payments to "insiders"[4] to the extent such payments are made "for the purpose of inducing such person to remain with the debtor's business." 11 U.S.C. § 503(c). Section 503(c)(2) of the Bankruptcy Code also restricts "severance payments" to "insiders." *Id.* Neither section 503(c)(1) or 503(c)(2) is applicable here because the proposed Talent Plan does not include retention payments to "insiders" or severance payments of any kind.

23.      Section 503(c)(3) of the Bankruptcy Code provides:

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid

> (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of,

---

[4]   Section 101(31) of the Bankruptcy Code defines "insider," in relevant part, as (a) a director of the debtor, (b) an officer of the debtor, (c) person in control of the debtor, (d) partnership in which the debtor is a general partner, (e) general partner of the debtor or (f) relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C. § 101(31).

13

> officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3). Section 503(c)(3) of the Bankruptcy Code is inapplicable to the Talent Plan because the Talent Plan Employees were not hired after the Petition Date. Even if it could be argued that such payments are outside the ordinary course because the Talent Plan specifically was not in effect prepetition (even though the Debtors' previously have paid bonuses to their employees) as set forth above, the payments proposed herein are justified by the facts and circumstances of these cases.

24. For all of the foregoing reasons, implementing the Talent Plan and honoring the Debtors' obligations thereunder are sound exercises of the Debtors' business judgment, necessary and appropriate for the preservation of the Debtors' estates and are in the best interests of the Debtors' businesses and employees.

25. In addition, payment obligations under the Talent Plan, to the extent they are not made before the Debtors' emergence from chapter 11, should be accorded administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code.

## Motion Practice

26. This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Rule 9013-1(a) of the Local Rules of Bankruptcy Procedure for the Southern District of New York.

## Notice

27. The Debtors have provided notice of this motion by electronic mail, facsimile and/or by overnight mail to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the agent for the Debtors' prepetition and postpetition secured lenders; (d) the Internal Revenue

14

Service; (f) the Securities and Exchange Commission; and (e) any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtors respectfully submit that further notice of this motion is neither required nor necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an order, substantially in the form annexed hereto as **Exhibit A,** authorizing the Debtors to implement the Talent Plan, and (b) granting such other and further relief as is just and proper.

Dated: October 30, 2009
      New York, New York

*/s/ Nicole L. Greenblatt*
James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel to the Debtors
and Debtors in Possession

**Exhibit A**

**Proposed Order**

K&E 15822047.1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | Case No. 09-23529 (RDD) |
| Debtors. | Jointly Administered |

## ORDER AUTHORIZING THE DEBTORS TO
## IMPLEMENT THE EMPLOYEE TALENT PLAN

Upon the motion (the "***Motion***")[1] of The Reader's Digest Association, Inc. ("***Reader's Digest***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"),[2] for entry of an order for entry of an order pursuant to sections 105 and 363(b) of title 11 of the United States Code (the "***Bankruptcy Code***") authorizing the Debtors to implement the Talent Plan; and the Court having found that this Court has jurisdiction over this

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

1

matter pursuant to 28 U.S.C. § 1334; and the Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and notice of the Motion appearing adequate and appropriate under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to implement the Talent Plan and the Debtors are authorized to make the payments contemplated thereby.

3.      The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate and fully perform under and in accordance with the Talent Plan, including, without limitation, making the payments thereunder.

4.      The payments due under the Talent Plan shall be deemed an allowed administrative priority expense of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

5.     The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the construction and enforcement of the procedures established by this Order, the transactions consummated thereunder and the implementation of this Order.

6.     All time periods set forth in this order shall be calculated in accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

Date: _____, 2009                    _____
                                          United States Bankruptcy Judge

K&E 15822047.1

# EXHIBIT 1

The Reader's Digest Association, Inc.

Talent Plan

(Effective as of October 26, 2009)

1. <u>Purpose</u>. This The Reader's Digest Association, Inc. (the "<u>Company</u>") Talent Plan (the "<u>Plan</u>") is designed to motivate eligible key employees of the Company and its subsidiaries to remain continuously employed by the Company and its subsidiaries. This Plan is intended to induce such employees to continue in the employ of the Company and maximize their contribution to greater profitability and efficient utilization of capital, particularly during the current restructuring of the Company and its subsidiaries.

2. <u>Adoption of the Plan</u>. The Company, intending to be legally bound, hereby adopts this Plan effective as of October 26, 2009 (the "<u>Effective Date</u>"). The Plan shall be in effect from the Effective Date and shall continue until terminated by the Board (the "<u>Term</u>"); provided that no such termination may occur prior to the Company's emergence from its Chapter 11 Proceedings (the "<u>Emergence Date</u>"). The termination of the Plan or the expiration of the Term shall not in any event reduce or adversely affect any amounts due to any Participant hereunder.

3. <u>General</u>. The compensation provided under the Plan is intended to be in addition to all other compensation payable to Participants under any employment agreement or incentive plan or program in effect with the Company or its direct or indirect subsidiaries.

4. <u>Definitions</u>. For purposes of this Plan:

    (a)    "<u>Administrator</u>" shall mean the Compensation Committee of the Board of Directors of the Company.

    (b)    "<u>Board</u>" means the Company's Board of Directors.

    (c)    "<u>Chapter 11 Proceedings</u>" shall mean the Company's Chapter 11 reorganization proceeding instituted pursuant to the United States Bankruptcy Code on August 24, 2009.

    (d)    "<u>Participant</u>" shall have the meaning ascribed thereto in <u>Section 5</u> hereof.

    (e)    "<u>Talent Bonus</u>" shall mean, in the case of any Participant, the bonus payable to such Participant during the Term as determined pursuant to <u>Section 7</u> below.

5. <u>Eligible Participants</u>. The individuals (each, a "Participant") who are eligible to participate in this Plan and receive a Talent Bonus are employees of the Company at Level 8 and below or equivalent who are designated by the Administrator as participants, including, without limitation, employees in accounting, financial analysis, editing, and functional employees in human resources, legal and operations; <u>provided</u> that the total number of Participants shall not exceed 100 and the total amount that may be paid to all Participants under the Plan may not exceed $500,000. The total amount of each Participant's Talent Bonus shall be between 3% and 6% of such Participant's annual base salary.

6. <u>Term of Participation</u>. Subject to the provisions of this Plan, each Participant shall be eligible to earn a Talent Bonus only if such Participant remains employed by the Company or any of its subsidiaries as required under this Plan.

7. <u>Payment of the Talent Bonus</u>. Twenty-five percent (25%) of the Participant's Talent Bonus shall be paid if, and only if, a Participant remains continuously employed by the Company and its subsidiaries or affiliates until the earlier of (i) November 23, 2009; and (ii) the Emergence Date. The remaining 75% of the Participant's Talent Bonus will be paid if, and only if, a Participant remains continuously employed by the Company and its subsidiaries or affiliates until the

Emergence Date. Payment of the applicable portion of a Participant's Talent Bonus shall be made in a cash lump sum within 10 days following satisfaction of the respective continued employment condition, provided, however, that Participant must remain continuously employed until each such date the Talent Bonus (or portion thereof) is actually paid in order to receive such payment.

8. <u>Plan Administration</u>. This Plan shall be administered by the Administrator. The Administrator is given full authority and discretion within the limits of this Plan to establish such administrative measures as may be necessary to administer and attain the objectives of this Plan. The Administrator shall have full power and authority to construe and interpret this Plan and any interpretation by the Administrator shall be accorded the maximum deference permitted by law.

9. <u>General</u>.

   (a)    All rights and interests of Participants under this Plan shall be non-assignable and nontransferable, and otherwise not subject to pledge or encumbrance, whether voluntary or involuntary, other than by will or by the laws of descent and distribution. In the event of any sale, transfer or other disposition of all or substantially all of the Company's assets or business, whether by merger, stock sale, consolidation or otherwise, the Company may assign this Plan.

   (b)    Payment of amounts due under the Plan shall be provided to Participant in the same manner (i.e., by direct deposit or by internal mail delivery) as Participant receives his or her regular paycheck or by mail at the last known address of Participant in the possession of the Company, at the discretion of Administrator. The Company will deduct federal, state and local taxes and any other withholdings required to be withheld with respect to the payment of any award pursuant to this Plan.

   (c)    The Company shall not be required to establish any special or separate fund or to make any other segregation of assets to ensure the payment of any award provided for hereunder.

   (d)    The Company, in its sole discretion, shall have the right to modify, supplement, suspend or terminate this Plan at any time. Subject to the foregoing, the Plan shall terminate upon the satisfaction of all obligations of the Company or its successor entities hereunder.

   (e)    Nothing contained in this Plan shall in any way affect the right and power of the Company to discharge any Participant or otherwise terminate his or her employment at any time or for any reason or to change the terms of his or her employment in any manner.

   (f)    Except as otherwise provided under this Plan, any expense incurred in administering this Plan shall be borne by the Company.

   (g)    Captions preceding the Sections hereof are inserted solely as a matter of convenience and in no way define or limit the scope or intent of any provision hereof.

   (h)    In the event of any inconsistency between the terms of this Plan and the terms of a Participant's employment agreement, the terms of this Plan shall govern with respect to such Participant.

(i)     The administration of the Plan shall be governed by the laws of the State of New York, without regard to the conflict of law principles of any state.  Any persons or corporations who now are or shall subsequently become parties to the Plan shall be deemed to consent to this provision.

\*   \*   \*   \*

# **EXHIBIT B**

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611

Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Counsel to the Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, | ) | Case No. 09-23529 (RDD) |
| INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF THOMAS A. WILLIAMS, CHIEF FINANCIAL
OFFICER AND SENIOR VICE PRESIDENT OF THE READER'S
DIGEST ASSOCIATION, INC. IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO IMPLEMENT THE EMPLOYEE TALENT PLAN**

Under 28 U.S.C. § 1746, Thomas A. Williams, declares as follows under the penalty of

perjury:

1.      I am the Chief Financial Officer and Senior Vice President of The Reader's

Digest Association, Inc. ("***Reader's Digest***"), a privately-held corporation organized under the

laws of the state of Delaware and a debtor and debtor in possession in the above-captioned cases

of Reader's Digest and certain of its affiliates (collectively, the "**Debtors**").[1]  In such capacity, I

am generally familiar with the Debtors' businesses, day-to-day operations and financial affairs.

2.     I submit this declaration (this "**Declaration**") in support of the Debtors' Motion

for an Order Authorizing the Debtors to Implement the Employee Talent Plan (the "**Motion**").[2]

## Background

3.     On August 24, 2009 (the "**Commencement Date**"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order authorizing the joint

administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy

Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these

chapter 11 cases.  On August 31, 2009, the United States Trustee for the Southern District of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is:  1 Reader's Digest Road, Pleasantville, NY 10570.

[2]     Capitalized terms used but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

New York (the "*U.S. Trustee*") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "*Committee*").

4.      On October 10, 2009 the Debtors filed the Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 163] and the Disclosure Statement for the Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 162] (the "*Disclosure Statement*").

### The Talent Plan is Necessary to Maintain Employee<br>Focus and Morale and Complete a Successful Chapter 11 Restructuring

5.      The Talent Plan Employees who will receive bonus payments under the proposed Talent Plan consist of certain individual employees at level 8 or below (junior manager and lower) who provide a wide variety of functions critical to the Debtors' ongoing operations and restructuring efforts, including in the areas of accounting, financial analysis, editing, human resources, legal and operations.  Eligible participants in the Talent Plan have been selected through a nomination process, whereby the executive leads in each of the areas of the Debtors' operations nominated employees who play a necessary role in the Debtors' operations and are integral to the Debtors' restructuring efforts.  The Talent Plan Employees (like all of our employees) possess important experience, relationships and familiarity with our operating systems, procedures and infrastructure that, I believe, would be incredibly difficult (and costly) to replace.

6.      As a result of the chapter 11 filing, the Talent Plan Employees have experienced significant increases in their workloads.  In connection with preparing for chapter 11 and associated pre-filing analyses, employee workload began to increase significantly in July 2009 and has only intensified with the fast-pace of the chapter 11 cases.  Specifically, many of the

Talent Plan Employees have been asked to assist the Debtors with analyses related to claims, schedules, contracts, potential contingent liabilities and other critical items, including vendor, customer and employee communications related to the filing. I believe that it is only because of the efforts of our employees that the Debtors have successfully transitioned into chapter 11 operations and achieved significant milestones on an accelerated basis. Although our employees are proud of their efforts and support the Debtors' restructuring efforts, the employees are now educated enough about the chapter 11 process and related reporting and other requirements to understand that the workload will remain at high intensity through emergence.

7.     At the same time, the Talent Plan Employees are aware that, as a result of the chapter 11 filing and the Debtors' prepetition restructuring and cost-saving initiatives, the Debtors have modified their incentive and bonus structure for fiscal year 2010 to generate significant cost savings, which included elimination of the Debtors' historic bonus programs. As a result, the Talent Plan Employees are no longer eligible to receive bonuses under the Debtors' annual incentive plan as they had in prior years. Because the Talent Plan Employees provide essential services that are necessary both during and after our reorganization under chapter 11, and because the selected individuals are working extremely hard to assist the Debtors through this process, I believe the Talent Plan is necessary and appropriate to improve morale, prevent attrition and maximize enterprise value. Indeed, the Debtors submit, and I agree, that the continued focused participation of the Talent Plan Employees is necessary to the Debtors' successful emergence from chapter 11.

8.     The Talent Plan provides for bonus payments in an aggregate amount not to exceed $500,000 to a maximum of 100 employees (with individual bonus payments representing 3-6% of a participant's annual base salary). The maximum total expenditure of $500,000 is

contemplated by the Debtors' business plan and included in the operating expenses reflected in the cash flow projections set forth in the Disclosure Statement that has been filed with the Court. To date, the Debtors have selected 91 employees to receive bonus payments under the proposed Talent Plan for a total cost of approximately $348,000.

9.      The first proposed payment under the Talent Plan is scheduled for November 23, 2009, at which time the Talent Plan Employees will receive 25% of their total bonus payment, with the remaining 75% payable upon emergence from chapter 11. The Debtors expect that aggregate payments to be made on November 23 will be approximately $86,950, and that the remaining payments will be made post-emergence.

10.     The Debtors and I believe that the requested investment in human capital is cost-effective, reasonable and will aid in the preservation of enterprise value. Further, I believe that the estimated amount to be paid under the Talent Plan is relatively small in comparison to the significant value the Talent Plan Employees provide to the Debtors' estates. The Talent Plan is intended to retain the Talent Plan Employees during the restructuring process and the Debtors' emergence from these chapter 11 cases by providing the Talent Plan Employees with a reasonable degree of certainty with respect to their compensation. The Debtors and I believe that payment of the bonus payments under the Talent Plan will provide the Talent Plan Employees with a greater sense of financial security and encourage them to remain focused on their work during this critical period rather than seek other employment.

11.     Given the accelerated timing of these chapter 11 cases, the Debtors cannot afford, either in terms of time or expense, to train new employees in these roles. Notably, the Talent Plan payments will be made only to a subset of the Debtors' non-management employees who have been identified as among the most beneficial and cost-effective to the Debtors'

C:\

restructuring efforts and continued operations. I believe that the loss of valuable employees, with the resulting loss of institutional knowledge and the need to identify and recruit new employees, would be distracting and costly at this critical time.

12.    For all of these reasons, the Debtors submit and I believe that approving the Talent Plan and the bonus payments thereunder will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption, engendering the Debtors' employees and encouraging their continued participation in the effective and efficient reorganization of the Debtors.

13.    The Debtors and I submit that none of the Talent Plan Employees are insiders as defined in section 101(31) of the Bankruptcy Code and do not fall into any of the categories defined therein. Though work performed by the Talent Plant Employees is integral to the Debtors' business, none of them have a degree of control over the Debtors such that they can be considered a "person in control."

I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: October 30, 2009
      New York, New York

_____

Thomas A. Williams

Chief Financial Officer and Senior Vice President of Readers Digest Association, Inc.