**<u>Exhibit A</u>**

**Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) Case No. 09-23529 (RDD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER (A) APPROVING AND AUTHORIZING BIDDING
PROCEDURES WITH STALKING HORSE BID PROTECTIONS IN
CONNECTION WITH THE SALE OF THE COMPASSLEARNING, INC.
BUSINESS; (B) APPROVING THE FORM AND MANNER OF NOTICE
OF THE SALE BY AUCTION AND SALE HEARING; (C) APPROVING
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND NOTICING AND DETERMINING
CURE AMOUNTS RELATED THERETO; (D) SCHEDULING THE SALE HEARING
AND OTHER RELATED DATES AND DEADLINES; AND (E) AUTHORIZING ONE-
TIME SALE-RELATED INCENTIVE PAYMENTS TO CERTAIN NON-INSIDERS**

Upon the portion of the motion (the "***Motion***")[1] of The Reader's Digest Association, Inc.

and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"),[2]

for entry of an order (a) authorizing and approving bidding procedures with stalking horse bid

protections in connection with the sale of the CompassLearning, Inc. ("***CompassLearning***")

business; (b) approving the form and manner of notice of the auction by sale and sale hearing;

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

K&E 15982335.

(c) approving procedures for the assumption and assignment of contracts and leases and noticing of related cure amounts; (d) scheduling the sale hearing and setting other related dates and deadlines; and (e) authorizing and approving one-time, sale-related payments to certain non-insider employees pursuant to sections 105(a), 363 and 365 of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rules 2002-1, 6004-1, 6006-1 and 9006-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Bankruptcy Rules***") and the Sale Guidelines for the Conduct of Asset Sales established and adopted by the United States Bankruptcy Court for the Southern District of New York pursuant to General Order M-331 (the "***Sale Guidelines***"); and upon the Declaration of John M. Cesarz in support of the Motion; and the Court having found that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and a hearing having been held on December 18, 2009 (the "***Hearing***"); and the Court having reviewed the Motion and the exhibits thereto and the arguments of counsel made and the evidence proffered or adduced, as applicable, at the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having found the form and manner of notice of the Hearing is good, sufficient and appropriate under the circumstances and that no other or further notice need be provided or is necessary; and after due deliberation and sufficient cause appearing therefor, the Court FINDS AND DETERMINES THAT:

A.    Bidding Procedures.  The Debtors have articulated good and sufficient reasons for

authorizing and approving the Bidding Procedures annexed as Exhibit B to the Motion (the

"**Bidding Procedures**"), which are fair, reasonable and appropriate under the circumstances and

designed to maximize the recovery on, and realizable value of, the Acquired Assets.

B.    Stalking Horse Bid Protections.  The Debtors have demonstrated a compelling

and sound business justification for authorizing the payment of the break-up fee and the expense

reimbursement (the "**Bid Protections**") to the Stalking Horse Bidder under the circumstances,

including, without limitation, that:

i.    the Bid Protections are the product of negotiations among the Debtors and
the Stalking Horse Bidder conducted in good faith and at arm's-length,
and the APA (including the Bid Protections) is the culmination of a
process undertaken by the Debtors and their professionals to negotiate a
transaction with a bidder who was prepared to pay the highest or otherwise
best purchase price to date for the Acquired Assets in order to maximize
the value of CompassLearning, Inc.'s estate;

ii.    the Bid Protections are an actual and necessary cost and expense of
preserving the respective Debtors' estates;

iii.    the Bid Protections are fair, reasonable and appropriate in light of, among
other things, the size and nature of the proposed Sale under the APA, the
substantial efforts that have been and will be expended by the Stalking
Horse Bidder, notwithstanding that the proposed sale is subject to higher
or better offers, and the substantial benefits the Stalking Horse Bidder has
provided to the Debtors, their estates and creditors and all parties in
interest herein, including, among other things, by increasing the likelihood
that the best possible price for the Acquired Assets will be received;

iv.    the protections afforded to the Stalking Horse Bidder by way of the Bid
Protections were material inducements for, and express conditions of, the
Stalking Horse Bidder's willingness to enter into the APA, and were
necessary to ensure that the Stalking Horse Bidder would continue to
pursue the proposed acquisition on terms acceptable to the Debtors in their
sound business judgment, subject to competitive bidding; and

v.    the assurance of the payment of the Bid Protections has promoted more
competitive bidding by inducing the Stalking Horse Bidder's bid, which
otherwise would not have been made, without which competitive bidding
would be limited, and which may be the highest and best available offer

3

for the Acquired Assets, induced the Stalking Horse Bidder to conduct due diligence with respect to CompassLearning's business, assets, operations and liabilities, and propose the Sale contemplated by the APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Acquired Assets.

C.     Sale Notice.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the APA; (vi) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of contracts and leases to the Stalking Horse Bidder pursuant to the APA (or to another Successful Bidder arising from the Auction, if any), the proposed cure amounts relating thereto and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

D.     Assumption Procedures.  The Motion and the Contract Assumption Notice are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any Cure Amounts relating thereto and the Assumption and Assignment Procedures.

E.     Closing Incentive Plan.  The closing incentive bonus plan (the "***Closing Incentive Plan***") represents a sound exercise of the Debtors' business judgment and is necessary and in the best interests of the Debtors, their estates, their creditors and other parties in interest.

4

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is granted to the extent set forth herein.

## I.      **Important Dates and Deadlines**

2.      **Sale Hearing**.  January [11], 2010, at [10:00 a.m.] prevailing Eastern Time, is the date and time the sale hearing (the "*Sale Hearing*") will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, at:  the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, Room 116, 300 Quarropas Street, White Plains, New York  10601-4140.  Any obligations of the Debtors set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the APA are authorized as set forth herein and are fully enforceable as of the date of entry of this order.  **Please take notice that:** the Sale Hearing may be adjourned without further notice other than by announcement in open Court or on the Court's calendar.

3.      **Sale Objection Deadline**.  January 4, 2010 at 4:00 p.m. prevailing Eastern Time, is the deadline to object to entry of the proposed Sale Order (the "*Sale Objection Deadline*").  Objections, if any, **must**:  (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 92] (the "*Case Management Order*"); (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so *actually received* no later than the Sale Objection Deadline by the following parties (the "*Notice Parties*"):

| Debtors | Counsel to Debtors |
|---|---|
| The Reader's Digest Association, Inc.<br>1 Reader's Digest Road<br>Pleasantville, New York, 10570<br>Attn:  Andrea Newborn, Senior Vice President,<br>General Counsel and Corporate Secretary | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Paul M. Basta and Nicole L. Greenblatt |

K&E 15982335.

| Counsel to the Creditors' Committee | United States Trustee |
|---|---|
| Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York 10169<br>Attn: Scott L. Hazan and David M. Posner | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Andrea Schwartz |
| **Counsel to the Agent for the<br>Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attn: Peter V. Pantaleo and Morris J. Massel | Latham & Watkins LLP<br>355 South Grand Avenue<br>Los Angeles California 90071-1560<br>Attn: Gregory O. Lunt and Christopher R. Pflug |

**The failure to timely file an objection in accordance with this order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, including the assumption and assignment of contracts and leases to the Successful Bidder pursuant to the APA, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

4.     **Response Deadline**.  January 8, 2010, is the deadline for filing a response to any timely-filed objection to entry of the Sale Order with the Court; *provided*, that such deadline may be extended by agreement of the Debtors and the affected objecting party.

5.     **Competitive Bidding**.  The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

a.     **Preliminary Bid Deadline**:  December 31, 2009, is the deadline by which anyone interested in participating in the bidding process must deliver the "Preliminary Bid Documents" (as defined in the Bidding Procedures);

b.     **Qualified Bid Deadline**:  January 5, 2010 at 5:00 p.m. prevailing Eastern Time, is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be actually received by the parties specified in the Bidding Procedures (the "*Bid Deadline*"); and

c.     **Auction**:  January 7, 2010 at 10:00 a.m. prevailing Eastern Time, is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York  10022.

## II. Bidding Procedures and Related Relief

### A. Bidding Procedures

6. The Bidding Procedures, substantially in the form annexed to the Motion as Exhibit B and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein. The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Acquired Assets shall do so strictly in accordance with the terms of the Bidding Procedures and this order.

7. The Bid Protections described in the Motion are hereby approved to the extent set forth herein. The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the APA, including the Break-up Fee and Expense Reimbursement, without further order of the Court, except as otherwise provided herein.

8. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the APA at the Sale Hearing. If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

9. If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Sale, the Auction will be conducted openly and shall be transcribed or videotaped.

K&E 15982335.

**B.      Bid Protections**

10.      The Bid Protections as set forth in the Motion and in the APA are hereby approved.  If the Stalking Horse Bidder becomes entitled to receive the Bid Protections in accordance with the terms of the APA, then the Stalking Horse Bidder shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the break-up fee and the expense reimbursement, under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

11.      The Debtors are authorized and directed, without further action or order by the Bankruptcy Court, to pay the Bid Protections in accordance with the terms and conditions of the APA and this Order.

12.      No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment.

**III.      Sale Hearing Notice and Related Relief**

13.      The Sale Notice, substantially in the form annexed as <u>Exhibit D</u> to the Motion, is hereby approved.  Within three (3) days of the entry of this order, the Debtors shall cause the Sale Notice to be served upon, without limitation, (i) the Master List (as defined in the Case Management Order, (ii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Acquired Assets, (iii) all parties to executory contracts or unexpired leases to be assumed and assigned or rejected as part of the Sale, (iv) all affected federal, state and local regulatory and taxing authorities and (v) all entities known or reasonably believed to have expressed an interest in acquiring any of the Acquired Assets.

**IV.      Assumption Procedures**

14.      The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to

section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other successful bidder arising from the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the APA, collectively, the "**Assumed Contracts**") in connection with the Sale are hereby approved to the extent set forth herein (the "**Assumption Procedures**").

15.     These Assumption Procedures shall govern the assumption and assignment of all Assumed Contracts assumed and assigned in connection with the Sale under the APA:

    a.    **Assumption Schedule**.  Within three (3) business days from entry of this order, the Debtors will file a schedule of the proposed Assumed Contracts and the corresponding amounts, if any, required to cure monetary defaults arising thereunder (the "**Assumption Schedule**"), and serve notice of same upon each non-debtor party to any Assumed Contract listed thereon.

    b.    **Objections**.  Objections, if any, to the assumption and assignment of any Assumed Contract, cure amount or adequate assurances proposed with respect thereto, <u>must</u>:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and Case Management Order; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served upon, so as to be **actually received** by, the Notice Parties before the Sale Objection Deadline; <u>*provided*</u>, that, if the Stalking Horse Bidder is not the Successful Bidder following the Auction, if one is held, the objection deadline for such counterparties shall be automatically extended through and until the conclusion of the Sale Hearing.

    c.    **Dispute Resolution**. Any objection to the assumption and assignment of an Assumed Contract or related cure or adequate assurances proposed in connection with the Sale that remain unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or other date as fixed by the Court).

16.     Any party failing to timely file an objection to the assumption and assignment of any Assumed Contract or related cure amount listed on the Assumption Schedule (a) shall be forever barred from objecting thereto, including, without limitation, making any demands for additional cure amounts, monetary compensation on account of any alleged defaults or assurance of future performance as against CompassLearning, any of the other Debtors, their estates, the

K&E 15982335.

Stalking Horse Bidder or other successful bidder arising from the Auction, if any, with respect to any such Assumed Contract and (b) shall be deemed to consent to the Sale and the assumption and assignment of all Assumed Contracts effectuated in connection therewith.

## V.     Closing Incentive Plan

17.     The Closing Incentive Plan is approved to the extent set forth herein.

18.     The Debtors are authorized, but not required, (a) to adopt and implement the Closing Incentive Plan, (b) make payments in accordance with the terms of the Closing Incentive Plan to Eligible Employees as necessary and appropriate in the Debtors' business judgment and (c) to take such other actions as may be necessary, desirable or appropriate to effect, implement or consummate the Closing Incentive Plan.

19.     Payments proposed to be made to Eligible Employees pursuant to the Closing Incentive Plan are, in each case, hereby allowed as administrative expenses of these estates.

20.     Notwithstanding anything herein to the contrary, the authorization granted hereby to make payments to Eligible Employees pursuant to the Closing Incentive Plan shall not create any obligation on the part of the Debtors or their officers, directors, attorneys, financial advisors, investment bankers, professional advisors or agents to make payments to such Eligible Employees whether arising under, related to or in connection with the Closing Incentive Plan, and none of the foregoing persons or entities shall have any liability on account of any decision by the Debtors for any reason whatsoever not to honor the Closing Incentive Plan.

21.     The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this order.

22.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

23.     The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from, based upon or related to this order.

Date: _____, 2009

_____
United States Bankruptcy Judge

K&E 15982335.