**Exhibit B**

**Proposed Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| THE READER'S DIGEST ASSOCIATION, ) | Case No. 09-23529 (RDD) |
| INC., *et al.*, ) | |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

## BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF DEBTOR COMPASSLEARNING, INC.

These bidding procedures (the "***Bidding Procedures***") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") entered on December [18], 2009 [Docket No. ___] (the "***Bidding Procedures Order***") on the docket of the lead case in the above-captioned jointly administered cases of The Reader's Digest Association, Inc. and certain of its affiliates (collectively, the "***Debtors***" or "***RDA***").[1]

These Bidding Procedures set forth the process by which Debtors WRC Media, Inc. and CompassLearning, Inc. ("***Compass***" and, together with WRC Media, Inc., the "***Sale Debtors***") are authorized to conduct the sale (the "***Sale***") by auction (the "***Auction***") of substantially all of the assets of Compass (defined as the "***Acquired Assets***" in the Asset Purchase Agreement dated as of November 30, 2009, by and among the Sale Debtors, CompassLearning Acquisition Corporation (the "***Stalking Horse Bidder***")) and Marlin Equity II, L.P., as guarantor (the "***Stalking Horse APA***") pursuant to the terms and conditions substantially in the form of the Stalking Horse APA. <u>Please take notice that</u> all Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse APA.

> Copies of the Bidding Procedures Order, Stalking Horse APA or other documents related thereto are available upon request to Kurtzman Carson Consultants LLC by calling (888) 733-1416, emailing kcc_rda@kccllc.com or visiting http://www.kccllc.net/readers.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

A.  **Assets to be Sold.**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for all of the Acquired Assets and all of the Assumed Liabilities, as identified in further detail and defined in the Stalking Horse APA.

B.  **Stalking Horse Bidder.**

On November 30, 2009, the Sale Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA for the sale of substantially all of the Acquired Assets pursuant to which: (i) the Stalking Horse Bidder agreed to pay $20,250,000 (the "*Stalking Horse Bid*") for the Acquired Assets, subject to the outcome of the Auction and Bankruptcy Court approval; and (ii) the Sale Debtors agreed, in part, in the event that the Bankruptcy Court approves the purchase of substantially all of the Acquired Assets by any Person other than the Stalking Horse Bidder to (a) pay the Stalking Horse Bidder a break up fee in the amount of three percent (3%) of the Stalking Horse Bid (the "*Break Up Fee*") and (b) reimburse the Stalking Horse Bidder's reasonable out-of-pocket expenses up to an aggregate amount equal to Three Hundred Thousand Dollars ($300,000) (the "*Reimbursable Expenses*").

C.  **Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in the Acquired Assets (a "*Potential Bidder*") must, on or before December 31, 2009, deliver (unless previously delivered) to each of (a) counsel to Compass, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Paul M. Basta, Esq., Nicole Greenblatt, Esq. and Kirk A. Radke, Esq.; (b) the financial advisor to Compass, Miller Buckfire, Inc., 153 East 53rd Street, New York, New York 10022, Attn: John Cesarz; (c) counsel to the agent for Compass' postpetition and prepetition secured lenders (the "*Lenders*"), Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Peter V. Pantaleo, Esq. And Morris J. Massel, Esq.; (d) counsel to the official committee of unsecured creditors (the "*Creditors' Committee*"), Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attn: Scott L. Hazan, Esq. and David M. Posner, Esq.; (e) and counsel to the Stalking Horse Bidder, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071, Attn: Gregory O. Lunt, Esq., the following documents (the "*Preliminary Bid Documents*") to participate in the bidding process:

> a.  an executed confidentiality agreement (the "*Confidentiality Agreement*") reasonably acceptable to RDA and containing terms in the aggregate no less favorable to RDA in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder, RDA and certain of their respective affiliates;

  b. a non-binding indication of interest with respect to the purchase of all of the Acquired Assets and the assumption of all of the Assumed Liabilities; and

  c. preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Sale Debtors and its advisors will determine.

Within two (2) Business Days after a Potential Bidder delivers the Preliminary Bid Documents, the Sale Debtors shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to Compass. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "***Acceptable Bidder***") may submit bids to purchase all of the Acquired Assets and all of the Assumed Liabilities. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**D. Obtaining Due Diligence Access.**

After receipt of an executed Confidentiality Agreement and notification of Acceptable Bidder status, the Sale Debtors shall provide each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Sale Debtors give any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, the Sale Debtors shall promptly provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Acceptable Bidders, the Sale Debtors shall not furnish any confidential information relating to Compass, the Acquired Assets, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

Compass along with its advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however*, the Sale Debtors may decline to provide such information to Acceptable Bidders who, in the Sale Debtors' reasonable business judgment, have not established that such Acceptable Bidders intend in good faith to or have the capacity to consummate the purchase of all of the Acquired Assets. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

> The Sale Debtors designate Miller Buckfire & Co., LLC to coordinate all reasonable requests for additional information and due diligence access.

**E.     Bid Requirements.**

To participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to Compass and its advisors a written irrevocable offer that must:

- a.   be in writing;

- b.   at a minimum, exceed the aggregate sum of the following: (i) the Stalking Horse Bid; (ii) the Break Up Fee; (iii) the maximum Reimbursable Expenses; and (iv) the minimum bid increment of Five Hundred Thousand Dollars ($500,000) (such aggregate sum, the "***Minimum Initial Bid Increment***") (all of which must be in cash, marketable securities that are freely tradable with readily ascertainable value, and/or the assumption of administrative expense liabilities);

- c.   constitute a good faith, bona fide offer to purchase all or substantially all of the Acquired Assets and to assume all or substantially all of the Assumed Liabilities;

- d.   be accompanied by a clean and a duly executed copy of the Stalking Horse APA and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA executed with Stalking Horse Bidder, which may not be materially more burdensome to the Sale Debtors or inconsistent with these Bidding Procedures;

- e.   identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required;

- f.   not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, and/or (iii) the outcome or completion of a due diligence review by the Potential Bidder; and

- g.   must remain irrevocable until 48 hours after the Auction.

In addition to the above, each Acceptable Bidder shall:

- a.   provide the Sale Debtors, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of RDA, that such Potential Bidder has the financial wherewithal and ability to consummate the acquisition of all or substantially all of the Acquired Assets and the assumption of all or substantially all of the Assumed Liabilities;

- b.   fully disclose the identity of each entity that will be bidding for or purchasing of all or substantially all of the Acquired Assets and assuming

4

all or substantially all of the Assumed Liabilities or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

c. on or before the Bid Deadline, submit a cash deposit equal to One and One-Half Million Dollars ($1,500,000) plus the maximum Reimbursable Expenses in the amount of Three Hundred Thousand Dollars ($300,000) for a total deposit of $1,800,000, by wire transfer of immediately available funds to an account or accounts designated by the Sale Debtors (the "**_Good Faith Deposit_**"); and

d. not be entitled to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

Bids fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders." Within two (2) Business Days after the Bid Deadline, the Sale Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with its advisors and the advisors to the Lenders and the Creditors' Committee and will notify the Acceptable Bidders and the Stalking Horse Bidder whether bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction (as defined below). Any bid that is not deemed a "Qualified Bid" shall not be considered by the Sale Debtors. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Stalking Horse APA submitted by the Stalking Horse Bidder and any additional bids timely submitted by the Stalking Horse Bidder (to the extent such bids are generally consistent with the terms of the Stalking Horse APA) shall be deemed Qualified Bids, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.     Bid Deadline.**

**Binding bids must be received by each of the Sale Debtors, the Stalking Horse Bidder, their respective advisors, the advisors to the Lenders and the Creditors' Committee, in each case so as to be actually received no later than 5:00 p.m. (prevailing Eastern Time) on January 5, 2010 (the "_Bid Deadline_").**

**G.     Evaluation of Qualified Bids.**

Prior to the Auction, the Sale Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Sale Debtors' judgment, the highest or otherwise best bid (the "**_Starting Bid_**"). Within 24 hours of such determination, but in no event later than one (1) Business Day prior to the date of the Auction, the Sale Debtors' shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid. The Sale Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H.  No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid (as defined herein) and, subject to the Sale Debtors' termination rights under the APA, the Sale Debtors will immediately pursue entry of an order by the Bankruptcy Court approving the Stalking Horse APA and authorizing the sale of the Acquired Assets and the transfer of the Assumed Liabilities to the Stalking Horse Bidder.

**I.  Auction.**

If one or more Qualified Bids are received by the Bid Deadline, then the Sale Debtors shall conduct an auction (the "*Auction*") with respect to the Acquired Assets.  The Auction shall commence on January 7, 2010 at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place as the Sale Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders following consultation with the advisors to the Lenders and the Creditors' Committee.

The Auction will be conducted in accordance with the following procedures (the "*Auction Procedures*"):

- a. the Auction will be conducted openly;

- b. only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

- c. the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

- d. only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Sale Debtors, their respective advisors, the advisors to the Lenders and the Creditors' Committee shall be permitted to attend the Auction;

- e. bidding at the Auction shall begin at the Starting Bid;

- f. subsequent bids at the Auction, including any bids by Stalking Horse Bidder, shall be made in minimum increments of Two Hundred and Fifty Thousand Dollars ($250,000);

- g. the Stalking Horse Bidder shall receive a credit equal to the sum of the Break Up Fee and the Reimbursable Expenses when bidding at the Auction.

- h. each Qualified Bidder will be informed of the terms of the previous bids;

- i. the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

j.  each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

k.  absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider bids made after the Auction is closed; and

l.  the Auction shall be governed by such other Auction Procedures as may be announced by the Sale Debtors, after consultation with its advisors as well as the advisors to the Lenders and the Creditors' Committee, from time to time on the record at the Auction; *provided*, that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court.

## J.  Acceptance of the Successful Bid.

Upon the conclusion of the Auction (if such Auction is conducted), the Sales Debtors, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors, shall identify the highest or otherwise best bid (the "***Successful Bid***"). The Qualified Bidder having submitted a Successful Bid will be deemed the "***Successful Bidder***." The Successful Bidder and the Sale Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Sale Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures, and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for all of the Acquired Assets and all of the Assumed Liabilities and is in the best interests of the Sale Debtors.

If an Auction is held, the Sale Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and the entry of an Order approving such Successful Bid.

## K.  Sale Hearing.

A hearing to consider approval of the Sale of all of the Acquired Assets and the transfer of all of the Assumed Liabilities to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "***Sale Hearing***") is presently scheduled to take place on January [__], 2010 at [10:00 a.m.] prevailing Eastern Time, or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, Room 116, 300 Quarropas Street, White Plains, New York 10601-4140.

7

**The Sale Hearing may be continued to a later date by the Sale Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Sale Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

L.   **Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the purchase of the Acquired Assets within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best bid for the Acquired Assets (the "***Back-Up Bidder***"), as determined by the Sale Debtors after consultation with their advisors at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein and to the advisors to the Lenders and the Creditors' Committee, will automatically be deemed to have submitted the highest or otherwise best bid, and the Sale Debtors and the Back-Up Bidder will be authorized, but not required, to consummate the Sale with the Back-Up Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court.

M.   **Break Up Fee and Expense Reimbursement.**

The Sale Debtors shall be obligated to pay to the Stalking Horse Bidder, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, all amounts due to the Stalking Horse Bidder, including the Break Up Fee and the Reimbursable Expenses, in each instance in accordance with the applicable provisions of the Stalking Horse APA.

N.   **Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of all of the Acquired Assets and all of the Assumed Liabilities, be credited to the purchase price paid for all of the Acquired Assets and all of the Assumed Liabilities. If the Successful Bidder fails to consummate the purchase of all of the Acquired Assets and all of the Assumed Liabilities, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, Compass.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Stalking Horse Bidder) will be returned within fifteen (15) days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of all of the Acquired Assets and all of the Assumed Liabilities. The Good Faith Deposit of the Stalking Horse Bidder shall be returned in accordance with the terms of the Stalking Horse APA.

**O.     Reservation of Rights.**

The Sale Debtors reserve their rights, following consultation with their advisors and the advisors to the Lenders and the Creditors' Committee, and with the consent of the Stalking Horse Bidder (whose consent shall not be unreasonably withheld) to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of all of the Acquired Assets and all of the Assumed Liabilities, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bidding Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids (excluding, for the avoidance of doubt, the Stalking Horse Bidder's offer pursuant to the Stalking Horse APA) if, in the Sale Debtors' business judgment, following consultation with their advisors, the Sale Debtors determine that such Qualified Bid (a) is inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (c) contrary to the best interests of the Sale Debtors; *provided*, that if the Sale Debtors cancel the Auction, or reject all Qualified Bids other than Stalking Horse Bidder's, the Sale Debtors shall promptly pursue entry of an order by the Bankruptcy Court authorizing consummation of the Sale of all of the Acquired Assets and the transfer of all of the Assumed Liabilities to the Stalking Horse Bidder.

The Sale Debtors shall provide to the Stalking Horse the information and documents specified in the Stalking Horse APA relating to the Auction and other bids within the time period and on the terms and conditions set forth in the Stalking Horse APA.

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any individual Lender, group of Lenders or collateral agent may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

K&E 15982337.3