# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) Case No. 09-23529 (RDD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## NOTICE OF FILING, IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF COMPASSLEARNING, INC., OF (A) RESULTS OF AUCTION, (B) AUCTION TRANSCRIPT, (C) AMENDMENTS TO APA, AND (D) CHART OF OBJECTIONS TO SALE MOTION

**PLEASE TAKE NOTICE** that on December 18, 2009, the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") entered an order [Docket No. 384] (the "***Bidding Procedures Order***")[1] in the above-captioned jointly administered cases of The Reader's Digest Association, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"),[2] approving, among other things, certain procedures for the assumption and rejection of contracts and leases pursuant to section 365 of title 11 of the United States Code (the "***Bankruptcy Code***") in connection with the proposed sale (the "***Sale***") of substantially all of the assets of CompassLearning, Inc. ("***CompassLearning***") free and clear of liens, claims, interests and encumbrances, to CompassLearning Acquisition Corporation, a Delaware corporate formed by Marlin Equity II, L.P. (the "***Stalking Horse Bidder***"), subject to higher or otherwise better offers, pursuant to the terms and conditions of the Asset Purchase Agreement dated November 30, 2009, among the respective parties (the "***APA***"), pursuant to the Debtors' motion filed with the Court on December 3, 2009 [Docket No. 331] (the "***CompassLearning Sale Motion***").

---

[1] Capitalized terms used herein and not otherwise defined shall have those meanings ascribed to them in the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1.

[2] The Debtors in these chapter 11 cases who are proponents of this Plan, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

**PLEASE TAKE NOTICE** that, pursuant to the Bidding Procedures, the Auction was conducted on January 7, 2010 at the offices of Kirkland & Ellis LLP, at the conclusion of which the Stalking Horse Bidder was declared the Successful Bidder, with a Successful Bid of $31,800,000, net of the Bid Protections (as defined in the Bidding Procedures Order).

**PLEASE TAKE FURTHER NOTICE** that, the Debtors, by their undersigned counsel, will seek entry of an order approving the Sale (the "*Sale Order*") at a hearing scheduled to commence at 10:00 a.m. on January 12, 2010 prevailing Eastern Time (the "*Sale Hearing*") before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE** that in support of the Sale Order, the Debtors attach hereto the following documents:

- **Exhibit A:** The transcript of the Auction.

- **Exhibit B**: Two stand-alone amendments to the version of the APA previously filed with the Court; and

- **Exhibit C:** A chart listing all objections and responses to the Sale Motion, the Debtors' response thereto and the status of each objection.

**PLEASE TAKE FURTHER NOTICE** that, copies of the Bidding Procedures Order, Bidding Procedures and APA, or any other pleadings filed in these cases, are available (i) upon request to Kurtzman Carson Consultants LLC (the noticing and claims agent retained in these chapter 11 cases), by calling (866) 967-0491 or emailing kcc_rda@kccllc.com, (ii) at the Debtors' expense by visiting the Debtors' restructuring website at http://www.kccllc.net/readers or (iii) for a fee via PACER by visiting http://www.nysb.uscourts.gov.

Dated: January 11, 2010
      New York, New York

/s/ *Nicole L. Greenblatt*

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel to the Debtors and Debtors in Possession

K&E 16151918.4

## Exhibit A

## Transcript of the Auction

```
            UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
In re:


THE READERS DIGEST ASSOCIATION, INC.,
et al.,


Chapter 11

Case No. 09-23529 (RDD)

Jointly Administered


                    Debtors.
-----------------------------------------X
                    DATE:  January 7, 2010
                    TIME:  11:05 a.m.
```

          AUCTION held in the above-captioned

matter, pursuant to a Court Order, held at

the offices of KIRKLAND & ELLIS, LLP, 153

East 53rd Street, New York, New York 10022,

before a Notary Public of the State of New

York.


JOB NO. 18485



**David Feldman**
W o r l d w i d e

ORIGINAL

From File to Trial™

1    A P P E A R A N C E S:

2

3

4    KIRKLAND & ELLIS, LLP
            Attorneys for the Debtor
5            153 East 53rd Street
            New York, New York 10022-4620
6            BY:  ROBERT A. RIZZO, ESQ.
                    Rrizzo@kirkland.com
7                    ALEXANDRA F. METZL, ESQ.
                    Ametzl@kirland.com
8                    PHILLIP W. NELSON, ESQ.
                    Phillip.nelson@kirkland.com

9

10

11

12    MILLER BUCKFIRE & CO., LLC
            153 East 53rd Street
13            New York, New York 10022-4611
            BY:  JOHN M. CESARZ, ESQ.
14                    John.cesarz@millberbuckfire.com
                    GINA PERAZZO, ESQ.
15                    Gina.perazzo@millerbuckfire.com
                    BRIAN C. NEWMAN, ESQ.
16                    Brian.newman@millerbuckfire.com

17

18

19    READER'S DIGEST
            One Reader's Digest Road
20            Pleasantville, New York 10570
            BY:  JOHN McKEOWN, ESQ.
21                    John_mckeown@readersdigest.com
                    LISA M. SPIVACK, ESQ.
22                    Lisa_spivack@rd.com

23

24

25

APPEARANCES (continued):

        ALIX PARTNERS, LLP
                Attorneys for Restructuring Advisors
                For Reader's Digest
                40 West 57th Street
                29th floor
                New York, New York 10019
                BY:  CHRISTIAN G. KASPER, ESQ.
                     Ckasper@alixpartners.com


        OTTERBOURG, STEINDLER, HOUSTON &
        ROSEN, P.C.
                Attorneys for the Creditors'
                Committee
                230 Park Avenue
                New York, New York 10169-0075
                BY:  DAVID M. POSNER, ESQ.
                     Dposner@oshr.com


        SIMPSON THACHER & BARTLETT, LLP
                Attorneys for the Debtors'
                Prepetition & Postpetition Lenders
                425 Lexington Avenue
                New York, New York 10017
                BY:  MORRIS J. MASSEL, ESQ.
                     Mmassel@stblaw.com


        MARLIN EQUITY PARTNERS
                2121 Rosecrans Avenue, Suite 4325
                El Segundo, California 90245
                BY:  NICK KAISER, President

APPEARANCES (continued):


        LATHAM & WATKINS, LLP
                Attorneys for Marlin
                355 South Grand Avenue
                Los Angeles, California 90071-1560
                BY:  GREGORY O. LUNT, ESQ.
                        Gregory.lunt@lw.com




        MARLIN EQUITY PARTNERS, LLC
                2121 Rosecrans Avenue, Suite 4325
                El Segundo, California 90245
                BY:  NICK KAISER, Partner




        KELLEY DRYE & WARREN, LLP
                Attorneys for K12
                101 Park Avenue
                New York, New York 10178
                BY:  BENJAMIN D. FEDER, ESQ.
                        Bfeder@kelleydrye.com




        K12
                2300 Corporate Park Drive
                Suite 200
                Herndon, VA 20171
                BY:  JANET MATRICCIANI, Senior Vice
                        President Corporate Development

APPEARANCES (continued):


    CADWALADER, WICKERSHAM & TAFT, LLP
        Attorneys for Vector Capital
        One World Financial Center
        New York, New York 10281
        BY:   JOSEPH P. GLYNN, ESQ.
             Joseph.glynn@cwt.com
             R. RONALD HOPKINSON, ESQ.
             Ron.hopkinson@cwt.com


    THE GORES GROUP
        10877 Wilshire Blvd., 18th floor
        Los Angeles, CA 90024
        BY:  ANTHONY CHIRIKOS, Vice
             President Mergers &
             Acquisitions


    MONITOR CLIPPER PARTNERS
        Two Canal Park
        Cambridge, MA 02141
        BY:  MEG DONIGAN, Principal
             TRAVIS R. METZ, Managing
             Partner


    MOORE & VAN ALLEN
        Attorneys for Monitor Clipper
        Charlotte, North Carolina 28207
        BY:  HAL LEVINSON, ESQ.
             Hallevinson@mudlaw.com


      *        *        *

1      MR. RIZZO:  Good morning,

2  everyone.  My name is Robert Rizzo

3  with Kirkland Ellis here on behalf

4  representing Reader's Digest, WRC

5  Media and CompassLearning.  I am

6  going to be one of the mediators

7  this morning at the auction.  The

8  other moderator will be John

9  Cesarz, Miller Buckfire, also here

10  on behalf of the sale debtors,

11  Reader's Digest, WRC Media and

12  CompassLearning.

13      We are here to conduct the

14  auction for the CompassLearning

15  business in connection with the

16  case pending before the United

17  States Bankruptcy Court of the

18  Southern District of New York.

19  The consolidated case number is

20  09-23529.  The other -- there is

21  certain other representatives up

22  here on behalf of the debtors

23  including John McKeown, Lisa

24  Spivack and Billy Carrigan with

25  Reader's Digest; Christian Kasper,

1       Alix Partners; Gina Perazzo, Brian

2       C. Newman with Miller Buckfire;

3       and Alexandra Metzl on behalf of

4       Kirkland Ellis.

5               At this point, I would ask

6       the spokesperson for each one of

7       the bidders to stand up, state

8       your name for the record and spell

9       your first and last name so the

10      Court Reporter can get it on the

11      record.

12              We also have David Posner

13      here representing the creditors

14      committee and Morris Massel from

15      Simpson Thacher representing JP

16      Morgan.  So I will just go down

17      the line.

18              Vector.

19          MR. GLYNN:  Joseph Glynn,

20      J-O-S-E-P-H G-L-Y-N-N, Cadwalader,

21      Wickersham & Taft on behalf of

22      Vector Capital.  Vector Capital

23      has not engaged in collusion in

24      connection with this bidding.

25          MR. RIZZO:  Can you also

1    state one more thing for the

2    record, that the bidder has not

3    engaged in any collusion with

4    respect to the bidding or the sale

5    of CompassLearning?

6            MR. GLYNN:  For the sale of

7    CompassLearning as well.

8            MS. MATRICCIANI:  Janet

9    Matricciani, J-A-N-E-T

10    M-A-T-R-I-C-C-I-A-N-I, K12.

11            MR. RIZZO:  And can you

12    state for the record that you

13    haven't engaged in any collusion?

14            MS. MATRICCIANI:  I haven't

15    engaged in any collusion with

16    CompassLearning.

17            MR. RIZZO:  With respect to

18    the sale of --

19            MS. MATRICCIANI:  With

20    respect to the sale of the

21    business.

22            MR. RIZZO:  Marlin.

23            MR. KAISER:  Nick Kaiser,

24    N-I-C-K K-A-I-S-E-R, of Marlin

25    Equity.  The bidder has not

1     engaged in any collusion with the

2     sale of the business.

3         MR. RIZZO:  Okay.  Monitor.

4         MR. LEVINSON:  Hal Levinson,

5     H-A-L L-E-V-I-N-S-O-N on behalf of

6     Monitor Clipper who has not

7     engaged in any collusion with

8     respect to this.

9         MR. RIZZO:  Thanks, Hal.

10        Horse.

11        MR. CHIRIKOS:  Anthony

12    Chirikos, A-N-T-H-O-N-Y

13    C-H-I-R-I-K-O-S.  Gores has not

14    engaged in any collusion with

15    respect to this sale.

16       MR. RIZZO:  Okay.  One other

17    matter that we communicated with

18    all the bidders about previously

19    is that there is one of the

20    bidders, Monitor Clipper Partners

21    has executed an Agreement with the

22    CEO of the company, Eric Loeffel.

23    We have provided copies of this

24    letter to each of the bidders and

25    I would now ask if -- for the

1   room, if anyone would acknowledge

2   that they have executed any

3   similar Agreement.  If you have,

4   please say it now.

5       Okay.  Let the record

6   reflect that no other bidder has

7   acknowledged any similar

8   Agreement.

9       As far as the Auction

10  procedures, we have explained them

11  all to you but I point out a

12  couple of things, again.  Which is

13  that the Auction is being held in

14  accordance with the Court Order

15  approving the Bidding Procedures

16  which, at the end, we will attach

17  as an exhibit to the transcript to

18  this Auction.

19      Kirkland Ellis & Miller

20  Buckfire reserve the right to

21  adjourn the Auction and recommence

22  at any time.  The Debtors, in

23  their reasonable and sound

24  business judgement and in

25  consultation with their advisors,

1  will determine which of the

2  qualifying bids submitted for the

3  Auction, at the Auction today, is

4  the highest and best offer.

5      Similarly, the debtors

6  reserve the right to reject any

7  bids that they deem to be

8  inadequate or insufficient or not

9  in conformity with the bidding

10  procedures or the terms and

11  conditions of the sale or contrary

12  -- are contrary at that time to

13  the best interests of the debtors,

14  their estates and their creditors.

15      The debtors, pursuant to the

16  bidding procedures, have the right

17  to impose such other terms and

18  conditions with respect to the

19  Auction as the debtors determine

20  may be in the best interest of the

21  debtors, their estates and their

22  creditors.  So --

23      MR. LEVINSON:  Just going

24  back to the conversation about

25  Monitor's Agreement with Eric.  We

1   want to know whether or not

2   anybody has documented that kind

3   of arrangement with any other

4   member of.

5        MR. RIZZO:  Okay.  So I

6   broaden the question I asked

7   earlier.  If any other bidder has

8   reached a similar arrangement with

9   any management not limited to Eric

10  Loeffel, please acknowledge that

11  now.

12        Let the record reflect that

13  no one has acknowledged that.

14  With respect to that, I will turn

15  it over to John Cesarz from Miller

16  Buckfire who will be conducting

17  the Auction; who we have

18  previously explained all the rules

19  to you.  So, you know, I think if

20  there are any other questions

21  about those, you can direct those

22  to John.

23        MR. CESARZ:  I will just go

24  through some general rules.

25        We will structure the

1  bidding in a Round Robin format

2  until we're down to two parties at

3  which point we will move to an

4  Open Bidding format.

5      The general rules are that

6  any bidder can request a

7  ten-minute break when they are

8  required to either bid or pass.

9      Prior to the start of each

10  round, we will use Microsoft

11  Excel's randomly generate the

12  order of the bidding.

13      Once a bidder is eliminated

14  from the Auction, the rules of the

15  Auction still apply.  The

16  eliminated bid may be asked to

17  leave for any reason as determined

18  by the debtors or their advisors.

19      I would like to reiterate

20  that once you pass twice and

21  acknowledge on the record that you

22  are out of the Auction, you cannot

23  reenter the Auction.  Bidders are

24  not permitted to communicate with

25  each other.  The Stalking Bidder

1  will receive a credit equal to the

2  sum of the Break-Up fee and

3  Reimbursable Expenses in bidding

4  during all rounds.  That amount is

5  $700,000 and at the end of the

6  Auction, we will confirm a

7  Successful Bidder and a Back-up

8  Bidder.

9      MR. RIZZO:  I would also ask

10  with respect to that, if you end

11  up being the Back-up Bidder and

12  for any reason that the sales is

13  not consummated with the

14  Successful Bidder, you will be

15  deemed to have been the highest

16  and otherwise best bid we receive

17  here today at the Auction.

18      MR. CESARZ:  With that, we

19  can begin the Auction.  As you are

20  all aware, the Starting Bid was

21  determined to be K12.  The bid

22  amount was $22,083,000.

23  Presumably all bidders will begin

24  with that amount.  So we are going

25  to raise the number to

1    $22,333,000.  And K12 is going to

2    bid last in this round.

3         The order shall be Gores,

4    Monitor, Marlin, Vector, and then

5    K12.  So we can begin with

6    $22,333,000.  I would ask Gores if

7    you will bid at that amount?

8         MR. CHIRIKOS:  We will bid.

9         MR. CESARZ:  Monitor

10   Clipper.

11        MR. LEVINSON:  On behalf of

12   Monitor, yes, we will bid.

13        MR. CESARZ:  Marlin.

14        MR. KAISER:  Marlin will

15   bid.

16        MR. CESARZ:  Vector.

17        MR. GLYNN:  Vector, we will

18   bid.

19        MR. RIZZO:  K12.

20        MS. MATRICCIANI:  We will

21   bid.

22        MR. CESARZ:  The next

23   bidding will be $223,583,000.  The

24   order for this round will be

25   Gores, Marlin, K12, Monitor, and

1    Vector.  So I will ask Gores for a

2    bid of $22,583,000.

3          MR. CHIRIKOS:  Gores.  We

4    will bid.

5          MR. CESARZ:  Marlin.

6          MR. KAISER:  We will bid.

7          MS. MATRICCIANI:  K12, we

8    will bid.

9          MR. CESARZ:  Monitor.

10          MR. LEVINSON:  Monitor bids.

11          MR. CESARZ:  Vector.

12          MR. GLYNN:  We will bid.

13          MR. CESARZ:  The next round

14    will be 22,833,000.

15          The order for this round

16    will be Vector, Gores, K12,

17    Monitor, Marlin.  So I will ask

18    Vector, at 22,833,000, if you bid.

19          MR. GLYNN:  We will bid.

20          MR. CESARZ:  Gores.

21          MR. CHIRIKOS:  We will bid.

22          MR. CESARZ:  K12.

23          MS. MATRICCIANI:  K12, we

24    will bid.

25          MR. CESARZ:  Monitor

Clipper.

    MR. LEVINSON:  We will bid.

    MR. CESARZ:  Marlin.

    MR. KAISER:  Marlin, we will
bid.

    MR. CESARZ:  The next round
of bidding is 22,083,000.  Gores,
Monitor Clipper, Marlin, Vector
and K12 so I will ask Gores, will
you bid at 23,083,000?

    MR. CHIRIKOS:  We will pass.

    MR. CESARZ:  Monitor
Clipper.

    MR. LEVINSON:  We will bid.

    MR. CESARZ:  Marlin.

    MR. KAISER:  We will bid.

    MR. CESARZ:  Vector.

    MS. MATRICCIANI:  We will
bid.

    MR. CESARZ:  K12.

    MS. MATRICCIANI:  We will
bid.

    MR. RIZZO:  So it goes back
to Gores.

    MR. CHIRIKOS:  Gores will

1  bid.

2      MR. CESARZ:  The next round

3  the bid increment will be

4  23,333,000 the order will be

5  Monitor Clipper, Vector, K12,

6  Gores, Marlin, so I will ask

7  Monitor Clipper, will you bid at

8  23,333,000?

9      MR. LEVINSON:  We will bid.

10      MR. CESARZ:  Vector.

11      MR. GLYNN:  We will bid.

12      MR. CESARZ:  K12.

13      MS. MATRICCIANI:  We will

14  bid.

15      MR. CESARZ:  Gores.

16      MR. CHIRIKOS:  We will bid.

17      MR. CESARZ:  Marlin.

18      MR. KAISER:  We will bid.

19      MR. CESARZ:  The next amount

20  will be $23,583,000.  The order

21  for this round will be Gores,

22  Marlin, K12, Monitor Clipper and

23  Vector.

24      So I will ask Gores, will

25  you bid at $23,583,000?

1        MR. CHIRIKOS:  We will bid.

2        MR. CESARZ:  Marlin.

3        MR. KAISER:  We will bid.

4        MR. CESARZ:  K12.

5        MS. MATRICCIANI:  We will

6    bid.

7        MR. CESARZ:  Monitor.

8        MR. LEVINSON:  Monitor will

9    bid.

10        MR. CESARZ:  Vector.

11        MR. GLYNN:  Vector will bid.

12        MR. CESARZ:  The next bid

13    will be $23,833,000.  The order

14    for this round will be Monitor,

15    Gores, Vector, K12, and Marlin.

16        So at $23,833,000, Monitor,

17    will you bid?

18        MR. LEVINSON:  Monitor will

19    bid.

20        MR. CESARZ:  Gores.

21        MR. CHIRIKOS:  Gores.  We

22    will bid.

23        MR. CESARZ:  Vector.

24        MR. GLYNN:  Vector bids.

25        MR. CESARZ:  K12.

1    MS. MATRICCIANI:  K12 will

2    bid.

3         MR. CESARZ:  Marlin.

4         MR. KAISER:  Marlin will

5    bid.

6         MR. CESARZ:  The next round

7    the bidding will be $24,083,000.

8    The order for this round will be

9    K12, Marlin, Monitor, Gores and

10   Vector.

11        So, K12, at $24,083,000,

12   will you bid?

13        MS. MATRICCIANI:  K12 will

14   bid.

15        MR. CESARZ:  Marlin.

16        MR. KAISER:  Marlin will

17   bid.

18        MR. CESARZ:  Monitor.

19        MR. LEVINSON:  Monitor will

20   bid.

21        MR. CESARZ:  Gores.

22        MR. CHIRIKOS:  Gores will

23   bid.

24        MR. CESARZ:  Vector.

25        MR. GLYNN:  Vector will bid.

1     MR. CESARZ:  Next round,

2     $24,333,000, the order in this

3     round will be Monitor, Marlin,

4     Vector, Gores, and K12.

5         So at $24,333,000, Monitor,

6     will you bid?

7         MR. LEVINSON:  Monitor will

8     bid.

9         MR. CESARZ:  Marlin.

10        MR. KAISER:  Marlin will

11    bid.

12        MR. CESARZ:  Vector.

13        MR. GLYNN:  Vector will bid.

14        MR. CESARZ:  Gores.

15        MR. CHIRIKOS:  Gores will

16    bid.

17        MR. CESARZ:  K12.

18        MS. MATRICCIANI:  K12 will

19    bid.

20        MR. CESARZ:  The next amount

21    will be $24,583,000.  The order

22    for this round will be Vector,

23    Gores, K12, Marlin, and Monitor.

24        So, Vector, will you bid

25    24,583,000?

1    MR. GLYNN:  Vector will bid.

2    MR. CESARZ:  Gores.

3    MR. CHIRIKOS:  Gores will

4    bid.

5    MR. CESARZ:  K12.

6    MS. MATRICCIANI:  K12 will

7    bid.

8    MR. CESARZ:  Marlin.

9    MR. KAISER:  Marlin will

10   bid.

11   MR. CESARZ:  Monitor.

12   MR. LEVINSON:  Monitor will

13   bid.

14   MR. CESARZ:  The next round

15   will be for $24,833,000.  The

16   order for this round will be

17   Monitor, Gores, Marlin, Vector and

18   K12.

19   So I will ask Monitor, will

20   you bid $24,833,000?

21   MR. LEVINSON:  Monitor will

22   bid.

23   MR. CESARZ:  Gores.

24   MR. CHIRIKOS:  Gores will

25   bid.

1        MR. CESARZ:  Marlin.

2        MR. KAISER:  Marlin bids.

3        MR. CESARZ:  Vector.

4        MR. GLYNN:  Vector bids.

5        MR. CESARZ:  K12.

6        MS. MATRICCIANI:  We request

7   a break.

8        MR. CESARZ:  So we will take

9   a ten-minute break.  The bid is to

10  K12.  All other floor participants

11  are at $24,833,000.  We will

12  reconvene, it is 11:20, at 11:30.

13        (Whereupon, a recess was

14  held.)

15        MR. CESARZ:  Before we get

16  back to the Auction, two points of

17  clarification.  If someone does

18  request a break, we are going to

19  equate that to a pass for that

20  round, just so you know.  In this

21  round, it is fine, because you are

22  the last bid.  So I guess,

23  actually, now that I think about

24  it, I am going to redact that.  I

25  will not say it because if you

1     were the last bid and you had

2     already passed once and you are

3     taking a break -- I take that

4     back. We are going to keep it as

5     is.

6         The only other thing, if

7     anyone does have any objections, I

8     would ask you to state that on the

9     record. Not do it in a sidebar.

10    So that would be it.

11        With that, the bid is

12    $24,833,000, and it is to K12 who

13    has passed once --

14        MS. MATRICCIANI: K12, we

15    will bid.

16        MR. CESARZ: The next amount

17    will be $25,083,000. Everyone has

18    bid at $24,833,000. So the next

19    bid amount will be $25,083,000.

20    The record will --

21        So I will ask Monitor to bid

22    at $25,083,000.

23        MR. LEVINSON: Monitor will

24    bid.

25        MR. CESARZ: K12.

1         MS. MATRICCIANI:  We will

2  bid.

3         MR. CESARZ:  Marlin.

4         MR. KAISER:  Marlin bids.

5         MR. CESARZ:  Gores.

6         MR. CHIRIKOS:  Gores bids.

7         MR. CESARZ:  Vector.

8         MR. GLYNN:  Vector bids.

9         MR. CESARZ:  The next bid is

10  $25,033,000.  The order for this

11  round is Marlin, Monitor, Vector,

12  Gores, K12.

13         I would ask Marlin, will you

14  bid the $25,033,000?

15         MR. KAISER:  Marlin bids.

16         MR. CESARZ:  Monitor.

17         MR. LEVINSON:  Monitor will

18  bid.

19         MR. CESARZ:  Vector.

20         MR. GLYNN:  Vector bids.

21         MR. CESARZ:  Gores.

22         MR. CHIRIKOS:  Gores, we

23  will bid.

24         MR. CESARZ:  K12.

25         MS. MATRICCIANI:  K12 bids.

1      MR. CESARZ:  The next round,

2    we be bidding $25,583,000.  The

3    order for this round will be

4    Monitor, Vector, K12, Gores,

5    Marlin.

6      So I will ask Monitor, will

7    you bid at $25,583,000?

8      MR. LEVINSON:  Monitor

9    bids.

10      MR. CESARZ:  K12.

11      MS. MATRICCIANI:  K12 bids.

12      MR. CESARZ:  Gores.

13      MR. CHIRIKOS:  Gores bids.

14      MR. CESARZ:  Marlin.

15      MR. KAISER:  Marlin bids.

16      MR. CESARZ:  The next round,

17    the bidding would be $25,833,000.

18    The order for this round will be

19    Gores, Vector, Monitor, K12,

20    Marlin.

21      I will ask Gores, will you

22    bid $25,833,000?

23      MR. CHIRIKOS:  Gores, pass.

24      MR. CESARZ:  Vector.

25      MR. GLYNN:  Vector bids.

1    MR. CESARZ:  Monitor

2  Clipper.

3    MR. LEVINSON:  Monitor will

4  bid.

5    MR. CESARZ:  K12.

6    MS. MATRICCIANI:  K12 bids.

7    MR. CESARZ:  Marlin.

8    MR. KAISER:  Marlin bids.

9    MR. CESARZ:  So we will go

10  back.  Gores, you passed.

11    MR. CHIRIKOS:  Gores will

12  bid.

13    MR. CESARZ:  The next round,

14  bidding will be at $26,083,000.

15  The order for this round will be

16  Monitor, K12, Gores, Marlin,

17  Vector.

18    Monitor, will you bid

19  $26,083,000?

20    MR. LEVINSON:  Monitor will

21  bid.

22    MR. CESARZ:  K12.

23    MS. MATRICCIANI:  K12 bids.

24    MR. CESARZ:  Gores.

25    MR. CHIRIKOS:  Gores bids.

1      MR. CESARZ:  Marlin.

2      MR. KAISER:  Marlin bids.

3      MR. CESARZ:  Vector.

4      MR. GLYNN:  Vector bids.

5      MR. CESARZ:  Next round

6  $26,333,000.  The order will be

7  Gores, Monitor, K12, Vector,

8  Marlin at $26,333,000.

9      MR. CHIRIKOS:  We will pass.

10     MR. CESARZ:  Monitor.

11     MR. LEVINSON:  Monitor will

12  bid.

13     MR. CESARZ:  K12.

14     MS. MATRICCIANI:  K12 will

15  bid.

16     MR. CESARZ:  Vector.

17     MR. GLYNN:  Vector bids.

18     MR. CESARZ:  Marlin.

19     MR. KAISER:  Marlin will

20  bid.

21     MR. CESARZ:  Back to Gores.

22     MR. CHIRIKOS:  Gores will

23  bid.

24     MR. CESARZ:  Next round will

25  be $26,583,000.  The order for

1    this round will be Monitor,

2    Marlin, K12, Vector, Gores.

3         Monitor, will you bid

4    $26,583,000?

5         MR. LEVINSON:  Monitor will

6    bid.

7         MR. CESARZ:  Marlin?

8         MR. KAISER:  Marlin bids.

9         MR. CESARZ:  K12.

10        MS. MATRICCIANI:  K12 bids.

11        MR. CESARZ:  Vector.

12        MR. GLYNN:  Vector bids.

13        MR. CESARZ:  Gores.

14        MR. CHIRIKOS:  Gores bids.

15        MR. CESARZ:  Next round

16   bidding will be $26,833,000.  The

17   order for this round will be

18   Gores, Marlin, Monitor, Vector,

19   K12.

20        Gores, will you bid

21   $26,833,000?

22        MR. CHIRIKOS:  Gores will

23   pass.

24        MR. CESARZ:  Marlin?

25        MR. KAISER:  Marlin bids.

1          MR. CESARZ:  Monitor.

2          MR. LEVINSON:  Monitor will

3     bid.

4          MR. CESARZ:  Vector.

5          MR. GLYNN:  Vector bids.

6          MS. MATRICCIANI:  K12 bids.

7          MR. CESARZ:  Back to Gores.

8          MR. CHIRIKOS:  Gores will

9     bid.

10         MR. CESARZ:  Next round

11    bidding will be for $27,083,000.

12    The order for this round will be

13    Marlin, Gores, K12, Monitor and

14    Vector.

15         So, Marlin, will you bid

16    $27,083,000?

17         MR. KAISER:  Marlin bids.

18         MR. CHIRIKOS:  Gores bids.

19         MR. CESARZ:  K12?

20         MS. MATRICCIANI:  K12 bids.

21         MR. CESARZ:  Monitor.

22         MR. LEVINSON:  Monitor will

23    bid.

24         MR. CESARZ:  Vector.

25         MR. GLYNN:  Vector bids.

1     MR. CESARZ:  Next round

2     bidding for $27,333,000.  The

3     order will be Marlin, Gores,

4     Monitor, K12, Vector.

5          So at $27,333,000.  Marlin?

6          MR. KAISER:  Marlin bids.

7          MR. CESARZ:  Gores.

8          MR. CHIRIKOS:  Gores bids.

9          MR. CESARZ:  Monitor.

10         MR. LEVINSON:  Monitor will

11    bid.

12         MR. CESARZ:  K12.

13         MS. MATRICCIANI:  K12 will

14    pass.

15         MR. CESARZ:  Vector.

16         MR. GLYNN:  Vector bids.

17         MR. CESARZ:  The bid is back

18    to K12.

19         MS. MATRICCIANI:  K12, we

20    will pass.

21         MR. CESARZ:  Pass?  So you

22    are out of the Auction?

23         MS. MATRICCIANI:  We are.

24         MR. CESARZ:  For the record,

25    K12 has dropped out of the

1   Auction, and you may not reenter.

2       The next round bidding will

3   be for $27,583,000.  The order for

4   this round will be Gores, Vector,

5   Marlin, Monitor.

6       At $27,583,000, Gores, will

7   you bid?

8       MR. CHIRIKOS:  Gores would

9   like to request a break.

10      MR. CESARZ:  Okay.  So we

11  will take a ten-minute break.  It

12  is 11:45.  We will come back here

13  at 11:55.

14      (Whereupon, a recess was

15  held.)

16      MR. CESARZ:  As everyone

17  knows, K12 dropped out of the

18  Auction in the last round.  During

19  the break, we received a request

20  from the attorneys to the Gores

21  Group for permission to speak with

22  K12.  We conferred with the

23  creditors and the lenders and

24  their counsel and at this point,

25  at the Auction, we are going to

1   deny that request; and the reason

2   for doing so.  The debtors'

3   reasonable business judgment, we

4   decided at this point that wasn't

5   the right thing for us to do.

6        Off the record.

7        (Whereupon, an

8   off-the-record discussion was

9   held.)

10       MR. RIZZO:  We are going to

11  go back on the record.  We are

12  going to resume the Auction.  I

13  just want to remind everyone that

14  the rules are what they are.  They

15  were disclosed to all parties

16  before the Auction started.  We

17  ask that the folks respect those

18  rules as they are written in.  If

19  they have a question about them,

20  please let us know, we will go off

21  the record and clarify the process

22  and what our view on the rules

23  are.  Again, I said at the

24  beginning, I will say it again, we

25  reserve the right to enforce the

1    rules and to the extent that any

2    bidders are eliminated from the

3    Auction, you know, we do have the

4    right to ask you to leave.  We are

5    not going to kick you out of the

6    building, but may ask you to leave

7    the Auction room.  Please respect

8    the rules and, again, if you have

9    any questions, we are happy to

10   answer them.  Just raise your

11   hand, speak up.

12        And the one rule that I

13   would highlight is that the

14   bidders here at this Auction today

15   are not permitted to communicate

16   with each other with respect to

17   their bids; past bids or potential

18   future bids.  So those are the

19   rules.  Again, please respect

20   them.  Please let us know if you

21   have questions and thank you very

22   much.

23        MR. LUNT:  Gregory Lunt.

24   One point of clarification.  So

25   there is no change from what you

1      were discussing before in terms of

2      the request to have Gores and K12

3      talk with each other?

4             MR. RIZZO:  No.  Our

5      position is what it was five

6      minutes ago when I said that.

7             MR. LUNT:  Thank you.

8             MR. RIZZO:  With that, we

9      will resume the Auction.

10            MR. CESARZ:  Just for

11     everyone's benefit, the bid is

12     $27,583,000.

13            The order for this round is

14     Gores, Vector, Marlin, Monitor.

15     Gores requested a break.  The bid

16     is to Gores.

17            MR. CHIRIKOS:  Gores will

18     bid.

19            MR. CESARZ:  Vector.

20            MR. GLYNN:  Vector bids.

21            MR. CESARZ:  Marlin.

22            MR. KAISER:  Marlin bids.

23            MR. CESARZ:  Monitor.

24            MR. LEVINSON:  Monitor will

25     bid.

1          MR. CESARZ:  The next round

2     the dollar amount will

3     $27,833,000.  The order for this

4     round will be Vector, Monitor,

5     Gores, Marlin.

6          Vector, will you bid

7     $27,833,000?

8          MR. GLYNN:  Vector bids.

9          MR. CESARZ:  Monitor.

10         MR. LEVINSON:  Monitor will

11    bid.

12         MR. CESARZ:  Gores.

13         MR. CHIRIKOS:  Gores will

14    bid.

15         MR. CESARZ:  Marlin.

16         MR. KAISER:  Marlin bids.

17         MR. CESARZ:  The next round

18    the amount will be $28,083,000.

19    The order for this round will be

20    Vector, Marlin, Monitor, Gores.

21         Vector, will bid

22    $28,083,000?

23         MR. GLYNN:  Vector bids.

24         MR. CESARZ:  Marlin.

25         MR. KAISER:  Marlin bids.

1       MR. CESARZ:  Monitor.

2       MR. LEVINSON:  Monitor will

3  bid.

4       MR. CESARZ:  Gores.

5       MR. CHIRIKOS:  Gores will

6  bid.

7       MR. CESARZ:  The next round,

8  the bidding will be $28,333,000.

9  The order for this round will be

10  Vector, Monitor, Marlin, Gores.

11       Vector, $28,333,000 to you?

12       MR. GLYNN:  Vector bids.

13       MR. CESARZ:  Monitor?

14       MR. LEVINSON:  Monitor will

15  bid.

16       MR. CESARZ:  Marlin.

17       MR. KAISER:  Marlin bids.

18       MR. CESARZ:  Gores.

19       MR. CHIRIKOS:  Gores bids.

20       MR. CESARZ:  The next round

21  bidding, $28,583,000.  The order

22  for this round will be Gores,

23  Monitor, Vector, Marlin.

24       Gores, do you bid

25  $28,583,000?

1        MR. CHIRIKOS:  Gores would

2    like to request a break.

3        MR. CESARZ:  Okay.  It is

4    about 12:20.  We will reconvene at

5    12:30.

6        Just a reminder, lunch will

7    be served at 1:00.

8        (Whereupon, an

9    off-the-record discussion was

10   held.)

11       MR. RIZZO:  Let's reconvene.

12   Go back on the record.

13       MR. CESARZ:  Okay.  Just for

14   everyone's benefit, the bidding is

15   at $28,583,000.  The order for

16   this round is Gores, Monitor,

17   Vector, Marlin.  Gores requested a

18   break but did not pass.

19       So the bid is to Gores at

20   $28,583,000.

21       MR. CHIRIKOS:  Gores will

22   bid.

23       MR. CESARZ:  Monitor.

24       MR. LEVINSON:  Monitor will

25   bid.

1          MR. CESARZ:  Vector.

2          MR. GLYNN:  Vector bids.

3          MR. CESARZ:  Marlin.

4          MR. KAISER:  Marlin bids.

5          MR. CESARZ:  The next round

6    of bidding will be $28,833,000.

7    The order for this round will be

8    Vector, Marlin, Monitor, Gores.

9    So, Vector, will you bid

10   $28,833,000?

11         MR. GLYNN:  Vector bids.

12         MR. CESARZ:  Marlin.

13         MR. KAISER:  Marlin bids.

14         MR. CESARZ:  Monitor.

15         MR. LEVINSON:  Monitor will

16   bid.

17         MR. CESARZ:  Gores.

18         MR. CHIRIKOS:  Gores bids.

19         MR. CESARZ:  The next round

20   of bidding will be $29,083,000.

21   The order for this round will be

22   Monitor, Marlin, Gores, Vector.

23         Monitor, will you bid

24   $29,083,000.

25         MR. LEVINSON:  Monitor will

1    bid.

2          MR. CESARZ:  Marlin?

3          MR. KAISER:  Marlin will

4    bid.

5          MR. CESARZ:  Gores.

6          MR. CHIRIKOS:  Gores bids.

7          MR. CESARZ:  Vector.

8          MR. GLYNN:  Vector bids.

9          MR. CESARZ:  Next round will

10   be $29,333,000.  The order for

11   this round will be Monitor, Gores,

12   Vector, Marlin.

13         Monitor, will you bid

14   29,333,000?

15         MR. LEVINSON:  Monitor will

16   bid.

17         MR. CESARZ:  Gores.

18         MR. CHIRIKOS:  Gores will

19   bid.

20         MR. CESARZ:  Vector.

21         MR. GLYNN:  Vector bids.

22         MR. CESARZ:  Marlin.

23         MR. KAISER:  Marlin bids.

24         MR. CESARZ:  Next round of

25   bids $29,583,000.  The order will

1      be Marlin, Vector, Monitor, Gores

2      at $29,583,000.

3          Marlin.

4          MR. KAISER:  Marlin bids.

5          MR. CESARZ:  Vector.

6          MR. GLYNN:  Vector bids.

7          MR. CESARZ:  Monitor.

8          MR. LEVINSON:  Monitor bids.

9          MR. CESARZ:  Gores.

10         MR. CHIRIKOS:  Gores bids.

11         MR. CESARZ:  The next round

12     of bidding will be $29,833,000.

13     The order for this round will be

14     Gores, Marlin, Monitor, Vector.

15         Gores, will you bid

16     $29,833,000?

17         MR. CHIRIKOS:  Gores will

18     pass.

19         MR. CESARZ:  Marlin.

20         MR. KAISER:  Marlin bids.

21         MR. CESARZ:  Monitor?

22         MR. LEVINSON:  Monitor bids.

23         MR. CESARZ:  Vector.

24         MR. GLYNN:  Vector bids.

25         MR. CESARZ:  Gores, the bid

1    is back to you at $29,833,000.

2         MR. CHIRIKOS:  Gores will

3    bid.

4         MR. CESARZ:  The next round

5    of bidding will be $30,083,000.

6    The order for this round will be

7    Monitor, Gores, Marlin, Vector.

8         Monitor, will you bid

9    $30,083,000?

10        MR. LEVINSON:  Monitor bids.

11        MR. CESARZ:  Gores?

12        MR. CHIRIKOS:  Gores bids.

13        MR. CESARZ:  Marlin?

14        MR. KAISER:  Marlin will

15   bid.

16        MR. CESARZ:  Vector.

17        MR. GLYNN:  Vector bids.

18        MR. CESARZ:  Next round will

19   be $30,333,000.  The order for

20   this round will be Monitor,

21   Vector, Gores, Marlin.

22        The bid is to Monitor at

23   $30,333,000.

24        MR. LEVINSON:  Monitor

25   passes.

1        MR. CESARZ:  Vector.

2        MR. GLYNN:  Vector bids.

3        MR. CESARZ:  Gores?

4        MR. CHIRIKOS:  Gores will

5  pass.

6        MR. CESARZ:  Marlin?

7        MR. KAISER:  Marlin bids.

8        MR. CESARZ:  At this point,

9  we go back to Monitor.

10        MR. LEVINSON:  Monitor

11  passes.

12        MR. CESARZ:  So Monitor is

13  dropping out of the Auction?

14        MR. LEVINSON:  Yes.

15        MR. CESARZ:  The bid is now

16  to Gores.

17        MR. CHIRIKOS:  Gores would

18  like to request a break.

19        MR. CESARZ:  Okay.  It is

20  12:30.  We will go to 12:40.  That

21  way we can get back in and try to

22  do a couple of more rounds before

23  lunch comes.

24        (Whereupon, a recess was

25  held.)

1    MR. RIZZO:  We will

2    reconvene.  Go back on the record.

3        MR. CESARZ:  Just to

4    reiterate, we are at $30,333,000.

5    Vector has bid.  Marlin has bid.

6    Monitor has passed twice and is

7    out of the Auction and cannot

8    return.  Gores has passed once and

9    the bid is to Gores of

10   $30,333,000.

11       MR. CHIRIKOS:  Gores will

12   pass.

13       MR. CESARZ:  So Gores is now

14   out of the Auction as well.  We

15   are down to Vector and Marlin.  I

16   guess I will ask you guys if you

17   want to start the open bidding

18   process now.  I know we talked

19   about taking a five-minute,

20   ten-minute break in between

21   starting.  I am happy to start now

22   while we have 15 minutes before

23   lunch.

24       Do you have any preference?

25       MR. GLYNN:  Yes, let's take

1    a break.

2         MR. CESARZ:  Let's break for

3    lunch.  It will be delivered in

4    ten minutes to your room, and we

5    will reconvene at 1:45.

6         (Whereupon, an

7    off-the-record discussion was

8    held.)

9         MR. RIZZO:  So we have got

10   everyone.  We will now reconvene.

11   Just to note for the record, that

12   Monitor Clipper, a bidder that was

13   involved in the Auction,

14   eliminated in a previous round,

15   has decided to leave the Auction.

16   So they are no longer here.

17        MR. CESARZ:  We are now

18   going to enter the open bidding

19   phase of the process.  We drew an

20   order before lunch.  Vector will

21   be bidding first.  Then Marlin.

22   And we will continue in that

23   order.

24        The previous bid was

25   $30,333,000.  Again, the minimum

1  overbid is 250,000 but at this

2  time, the parties can bid whatever

3  number they choose.  If you want

4  to round the number up or do

5  whatever you want, as long as it

6  is a minimum of $250,000 above the

7  previous bid, we are okay with it.

8  So the bid is to Vector.

9      MR. GLYNN:  Vector's initial

10  bid is an even $31 million.

11      MR. CESARZ:  Vector bids

12  $31 million.  The bid will be to

13  Marlin.

14      MR. KAISER:  Marlin's bid is

15  $31,250,000.

16      MR. CESARZ:  The bid is to

17  Marlin.  Marlin's bid is

18  $31,250,00.

19      The bid will go Vector.

20      MR. GLYNN:  Vector will take

21  a break.

22      MR. CESARZ:  We will take a

23  ten-minute break.  It is 1:50.

24  Let's reconvene at 2:00.

25      (Whereupon, a recess was

1          held.)

2              MR. CESARZ:  The last bid

3      was $31,250,000 by Marlin.  The

4      bid is to Vector.

5              MR. GLYNN:  Vector's next

6      bid is $32,250,000.

7              MR. CESARZ:  Vector bids

8      $32,250,000.  The bid is to

9      Marlin.

10             MR. KAISER:  Marlin bids

11     $32,500,000.

12             MR. CESARZ:  Marlin bids

13     $32,500,000.  The bid is to

14     Vector.

15             MR. GLYNN:  Vector requests

16     a break.

17             MR. CESARZ:  Okay.  We will

18     take another break.  Are you going

19     to need the full ten minutes

20     again?

21             MR. GLYNN:  Yes.

22             MR. CESARZ:  It is 2:01.  So

23     let's meet around 2:12, 2:15.

24             (Whereupon, a recess was

25     held.)

1          MR. CESARZ:  We will

2     reconvene.  The last bid was by

3     Marlin at $32,500,000.  The bid is

4     to Vector.

5          MR. GLYNN:  Vector will pass

6     at that price.

7          MR. CESARZ:  Okay.  I guess

8     with that, we have a Successful

9     Bidder in Marlin and Vector will

10    be designated the Back-up Bidder.

11         MR. RIZZO:  There were a

12    couple of things we wanted to

13    attach as exhibits to the

14    transcript.  One was the bidding

15    procedures so if we can do that

16    now, we should.

17         With that, I think we will

18    adjourn the Auction.

19         (Whereupon, at 2:13 p.m.,

20    the Auction was concluded.)

21

22

23      `

24

25

C E R T I F I C A T E

STATE OF NEW YORK )
                  : SS.:
COUNTY OF NASSAU  )

    I, REBECCA SCHAUMLOFFEL, a Notary Public for and within the State of New York, do hereby certify:

    That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

    I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

    IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of January, 2009.

*Rebecca Schaumloffel*

REBECCA SCHAUMLOFFEL

E R R A T A


     I wish to make the following changes,

for the following reasons:


PAGE LINE

\_\_\_ \_\_\_ CHANGE:_____

REASON:_____

\_\_\_ \_\_\_ CHANGE:_____

REASON:_____

\_\_\_ \_\_\_ CHANGE:_____

REASON:_____

\_\_\_ \_\_\_ CHANGE:_____

REASON:_____

\_\_\_ \_\_\_ CHANGE:_____

REASON:_____

\_\_\_ \_\_\_ CHANGE:_____

REASON:_____


_____    _____

  WITNESS' SIGNATURE         DATE

## A

above-caption... 1:14
acknowledge 10:1 12:10 13:21
acknowledged 10:7 12:13
Acquisitions 5:13
action 49:16
adjourn 10:21 48:18
Administered 1:8
advisors 3:4 10:25 13:18
ago 35:6
Agreement 9:21 10:3,8 11:25
al 1:4
Alexandra 2:6 7:3
Alix 3:4 7:1
ALLEN 5:21
Ametzl@kirla... 2:7
amount 14:4,22 14:24 15:7 18:19 21:20 24:16,19 36:2 36:18
Angeles 4:5 5:11
answer 34:10
Anthony 5:12 9:11
anybody 12:2
APPEARANC... 3:1 4:1 5:1
apply 13:15
approving 10:15
arrangement 12:3,8
asked 12:6 13:16
ASSOCIATI... 1:4
attach 10:16

48:13
attorneys 2:4 3:4,12,18 4:4 4:14 5:4,22 32:20
auction 1:14 6:7 6:14 10:9,13 10:18,21 11:3 11:3,19 12:17 13:14,15,22,23 14:6,17,19 23:16 31:22 32:1,18,25 33:12,16 34:3 34:7,14 35:9 43:13 44:7,14 45:13,15 48:18 48:20
Avenue 3:13,19 3:24 4:4,9,15
aware 14:20
A-N-T-H-O-N... 9:12
a.m 1:11

## B

back 11:24 17:23 23:16 24:4 27:10 28:21 30:7 31:17 32:12 33:11 38:12 42:1 43:9,21 44:2
Back-up 14:7,11 48:10
Bankruptcy 1:1 6:17
BARTLETT 3:18
beginning 33:24
behalf 6:3,10,22 7:3,21 9:5 15:11
benefit 35:11 38:14
BENJAMIN 4:16

best 11:4,13,20 14:16
Bfeder@kelle... 4:16
bid 13:8,16 14:16,20,21 15:2,7,8,12,15 15:18,21 16:12 16:4,6,8,12,18 16:19,21,24 17:2,5,10,14 17:16,19,22 18:1,3,7,9,11 18:14,16,18,25 19:1,3,6,9,11 19:12,17,19,22 20:2,5,12,14 20:17,20,23,25 21:6,8,11,13 21:16,19,24 22:1,4,7,10,13 22:20,22,25 23:9,22 24:1 24:11,15,18,19 24:21,24 25:2 25:9,14,18,23 26:7,22 27:4 27:12,18,21 28:12,15,20,23 29:3,6,20 30:3 30:9,15,23 31:11,17 32:7 35:11,15,18,25 36:6,11,14,21 37:3,6,15,24 38:19,22,25 39:9,16,23 40:1,4,13,16 40:19 41:15,25 42:3,8,15,22 43:15 44:5,5,9 45:24 46:2,7,8 46:10,12,14,16 46:17,19 47:2 47:4,6,8,13 48:2,3
bidder 8:2,25

10:6 12:7 13:6 13:13,25 14:7 14:8,11,14 45:12 48:9,10
bidders 7:7 9:18 9:20,24 13:23 14:23 34:2,14
bidding 7:24 8:4 10:15 11:9,16 13:1,4,12 14:3 15:23 17:7 20:7 26:2,17 27:14 29:16 30:11 31:2 32:2 37:8,21 38:14 39:6,20 41:12 42:5 44:17 45:18,21 48:14
bids 11:2,7 16:10 19:24 23:2,4 25:4,6,8 25:15,20,25 26:9,11,13,15 26:25 27:6,8 27:23,25 28:2 28:4,17 29:8 29:10,12,14,25 30:5,6,17,18 30:20,25 31:6 31:8,16 34:17 34:17,18 35:20 35:22 36:8,16 36:23,25 37:12 37:17,19 39:2 39:4,11,13,18 40:6,8,21,23 40:25 41:4,6,8 41:10,20,22,24 42:10,12,17 43:2,7 46:11 47:7,10,12
Billy 6:24
blood 49:16
Blvd 5:11
break 13:7 23:7 23:9,18 24:3

32:9,11,19 35:15 38:2,18 43:18 44:20 45:1,2 46:21 46:23 47:16,18
Break-Up 14:2
Brian 2:15 7:1
Brian.newma... 2:15
broaden 12:6
Buckfire 2:11 6:9 7:2 10:20 12:16
building 34:6
business 6:15 8:21 9:2 10:24 33:3

## C

C 2:1,15 7:2 49:1,1
CA 5:11
Cadwalader 5:4 7:20
California 3:24 4:5,10
Cambridge 5:17
Canal 5:16
Capital 5:4 7:22 7:22
Carolina 5:22
Carrigan 6:24
case 1:7 6:16,19
Center 5:5
CEO 9:22
certain 6:21
certify 49:8,14
Cesarz 2:13 6:9 12:15,23 14:18 15:9,13,16,22 16:5,9,11,13 16:20,22,25 17:3,6,12,15 17:17,20 18:2 18:10,12,15,17 18:19 19:2,4,7 19:10,12,20,23 19:25 20:3,6

20:15,18,21,24
21:1,9,12,14
21:17,20 22:2
22:5,8,11,14
22:23 23:1,3,5
23:8,15 24:16
24:25 25:3,5,7
25:9,16,19,21
25:24 26:1,10
26:12,14,16,24
27:1,5,7,9,13
27:22,24 28:1
28:3,5,10,13
28:16,18,21,24
29:7,9,11,13
29:15,24 30:1
30:4,7,10,19
30:21,24 31:1
31:7,9,12,15
31:17,21,24
32:10,16 35:10
35:19,21,23
36:1,9,12,15
36:17,24 37:1
37:4,7,13,16
37:18,20 38:3
38:13,23 39:1
39:3,5,12,14
39:17,19 40:2
40:5,7,9,17,20
40:22,24 41:5
41:7,9,11,19
41:21,23,25
42:4,11,13,16
42:18 43:1,3,6
43:8,12,15,19
44:3,13 45:2
45:17 46:11,16
46:22 47:2,7
47:12,17,22
48:1,7
**change** 34:25
50:10,12,14,16
50:18,20
**changes** 50:6
**Chapter** 1:6
**Charlotte** 5:22

**Chirikos** 5:12
9:11,12 15:8
16:3,21 17:11
17:25 18:16
19:1,21 20:22
21:15 22:3,24
25:6,22 26:13
26:23 27:11,25
28:9,22 29:14
29:22 30:8,18
31:8 32:8
35:17 36:13
37:5,19 38:1
38:21 39:18
40:6,18 41:10
41:17 42:2,12
43:4,17 44:11
**choose** 46:3
**Christian** 3:7
**Ckasper@alix...**
3:7
**clarification**
23:17 34:24
**clarify** 33:21
**Clipper** 5:16,22
9:6,20 15:10
17:1,8,13 18:5
18:7,22 27:2
45:12
**collusion** 7:23
8:3,13,15 9:1,7
9:14
**come** 32:12
**comes** 43:23
**committee** 3:12
7:14
**communicate**
13:24 34:15
**communicated**
9:17
**company** 9:22
**CompassLear...**
6:5,12,14 8:5,7
8:16
**concluded** 48:20
**conditions** 11:11

11:18
**conduct** 6:13
**conducting**
12:16
**conferred** 32:22
**confirm** 14:6
**conformity** 11:9
**connection** 6:15
7:24
**consolidated**
6:19
**consultation**
10:25
**consummated**
14:13
**continue** 45:22
**continued** 3:1
4:1 5:1
**contrary** 11:11
11:12
**conversation**
11:24
**copies** 9:23
**Corporate** 4:20
4:22
**counsel** 32:24
**COUNTY** 49:4
**couple** 10:12
43:22 48:12
**Court** 1:1,15
6:17 7:10
10:14
**credit** 14:1
**creditors** 3:12
7:13 11:14,22
32:23
**C-H-I-R-I-K-...**
9:13

**D**

**D** 4:16
**DATE** 1:10
50:24
**David** 3:14 7:12
**day** 49:20
**Debtor** 2:4
**debtors** 1:9 3:18
6:10,22 10:22

11:5,13,15,19
11:21 13:18
33:2
**decided** 33:4
45:15
**deem** 11:7
**deemed** 14:15
**delivered** 45:3
**deny** 33:1
**designated**
48:10
**determine** 11:1
11:19
**determined**
13:17 14:21
**Development**
4:22
**Digest** 1:4 2:19
2:19 3:5 6:4,11
6:25
**direct** 12:21
**disclosed** 33:15
**discussing** 35:1
**discussion** 33:8
38:9 45:7
**District** 1:1 6:18
**documented**
12:2
**doing** 33:2
**dollar** 36:2
**DONIGAN** 5:17
**Dposner@osh...**
3:14
**drew** 45:19
**Drive** 4:20
**dropped** 31:25
32:17
**dropping** 43:13
**DRYE** 4:14
**duly** 49:11

**E**

**E** 2:1,1 49:1,1
50:2
**earlier** 12:7
**East** 1:17 2:4,12
**either** 13:8
**El** 3:24 4:10

**eliminated** 13:13
13:16 34:2
45:14
**Ellis** 1:16 2:3 6:3
7:4 10:19
**enforce** 33:25
**engaged** 7:23
8:3,13,15 9:1,7
9:14
**enter** 45:18
**equal** 14:1
**equate** 23:19
**Equity** 3:23 4:9
8:25
**Eric** 9:22 11:25
12:9
**ESQ** 2:5,6,7,13
2:14,15,20,21
3:7,14,20 4:5
4:16 5:6,7,23
**estates** 11:14,21
**et** 1:4
**everyone's** 35:11
38:14
**examination**
49:10,11
**Excel's** 13:11
**executed** 9:21
10:2
**exhibit** 10:17
**exhibits** 48:13
**Expenses** 14:3
**explained** 10:10
12:18
**extent** 34:1

**F**

**F** 2:6 49:1
**far** 10:9
**FEDER** 4:16
**fee** 14:2
**Financial** 5:5
**fine** 23:21
**first** 7:9 45:21
**five** 35:5
**five-minute**
44:19
**floor** 3:6 5:11

23:10
**folks** 33:17
**following** 50:6,7
**format** 13:1,4
**forth** 49:10
**full** 47:19
**further** 49:14
**future** 34:18

### G

**G** 3:7
**general** 12:24
  13:5
**generate** 13:11
**Gina** 2:14 7:1
**Gina.perazzo...**
  2:14
**given** 49:12
**Glynn** 5:6 7:19
  7:19 8:6 15:17
  16:12,19 18:11
  19:11,24 20:25
  21:13 22:1
  23:4 25:8,20
  26:25 28:4,17
  29:12 30:5,25
  31:16 35:20
  36:8,23 37:12
  39:2,11 40:8
  40:21 41:6,24
  42:17 43:2
  44:25 46:9,20
  47:5,15,21
  48:5
**go** 7:16 12:23
  27:9 33:11,20
  38:12 43:9,20
  44:2 46:19
**goes** 17:23
**going** 6:6 11:23
  14:24 15:1
  23:18,24 24:4
  32:25 33:10,12
  34:5 45:18
  47:18
**Good** 6:1
**Gores** 5:10 9:13
  15:3,6,25 16:1

16:3,16,20
17:7,9,24,25
18:6,15,21,24
19:15,20,21
20:9,21,22
21:4,14,15,23
22:2,3,17,23
22:24 25:5,6
25:12,21,22
26:4,12,13,19
26:21,23 27:10
27:11,16,24,25
28:7,21,22
29:2,13,14,18
29:20,22 30:7
30:8,13,18
31:3,7,8 32:4,6
32:8,20 35:2
35:14,15,16,17
36:5,12,13,20
37:4,5,10,18
37:19,22,24
38:1,16,17,19
38:21 39:8,17
39:18,22 40:5
40:6,11,17,18
41:1,9,10,14
41:15,17,25
42:2,7,11,12
42:21 43:3,4
43:16,17 44:8
44:9,11,13
**Grand** 4:4
**Gregory** 4:5
  34:23
**Gregory.lunt...**
  4:6
**Group** 5:10
  32:21
**guess** 23:22
  44:16 48:7
**guys** 44:16
**G-L-Y-N-N** 7:20

### H

**Hal** 5:23 9:4,9
**Hallevinson@...**
  5:23

**hand** 34:11
  49:20
**happy** 34:9
  44:21
**held** 1:14,15
  10:13 23:14
  32:15 33:9
  38:10 43:25
  45:8 47:1,25
**hereinbefore**
  49:10
**hereunto** 49:20
**Herndon** 4:21
**highest** 11:4
  14:15
**highlight** 34:13
**HOPKINSON**
  5:7
**Horse** 9:10
**HOUSTON**
  3:11
**H-A-L** 9:5

### I

**impose** 11:17
**inadequate** 11:8
**including** 6:23
**increment** 18:3
**initial** 46:9
**insufficient** 11:8
**interest** 11:20
**interested** 49:17
**interests** 11:13
**involved** 45:13

### J

**J** 3:20
**Janet** 4:22 8:8
**January** 1:10
  49:21
**JOB** 1:21
**John** 2:13,20 6:8
  6:23 12:15,22
**John.cesarz@...**
  2:13
**John_mckeow...**
  2:21
**Jointly** 1:8

**Joseph** 5:6 7:19
**Joseph.glynn...**
  5:6
**JP** 7:15
**judgement**
  10:24
**judgment** 33:3
**J-A-N-E-T** 8:9
**J-O-S-E-P-H**
  7:20

### K

**Kaiser** 3:25 4:10
  8:23,23 15:14
  16:6 17:4,16
  18:18 19:3
  20:4,16 21:10
  22:9 23:2 25:4
  25:15 26:15
  27:8 28:2,19
  29:8,25 30:17
  31:6 35:22
  36:16,25 37:17
  39:4,13 40:3
  40:23 41:4,20
  42:14 43:7
  46:14 47:10
**Kasper** 3:7 6:25
**keep** 24:4
**KELLEY** 4:14
**kick** 34:5
**kind** 12:2
**Kirkland** 1:16
  2:3 6:3 7:4
  10:19
**know** 12:1,19
  23:20 33:20
  34:3,20 44:18
**knows** 32:17
**K-A-I-S-E-R**
  8:24
**K12** 4:14,20
  8:10 14:21
  15:1,5,19,25
  16:7,16,22,23
  17:9,20 18:5
  18:12,22 19:4
  19:15,25 20:1

20:9,11,13
21:4,17,18,23
22:5,6,18 23:5
23:10 24:12,14
24:25 25:12,24
25:25 26:4,10
26:11,19 27:5
27:6,16,22,23
28:7,13,14
29:2,9,10,19
30:6,13,19,20
31:4,12,13,18
31:19,25 32:17
32:22 35:2

### L

**LATHAM** 4:3
**leave** 13:17 34:4
  34:6 45:15
**lenders** 3:19
  32:23
**letter** 9:24
**let's** 38:11 44:25
  45:2 46:24
  47:23
**Levinson** 5:23
  9:4,4 11:23
  15:11 16:10
  17:2,14 18:9
  19:8,18 20:19
  21:7 22:12,21
  24:23 25:17
  26:8 27:3,20
  28:11 29:5
  30:2,22 31:10
  35:24 36:10
  37:2,14 38:24
  39:15,25 40:15
  41:8,22 42:10
  42:24 43:10,14
**Lexington** 3:19
**limited** 12:9
**line** 7:17 50:9
**Lisa** 2:21 6:23
**Lisa_spivack...**
  2:22
**LLC** 2:11 4:9
**LLP** 1:16 2:3 3:4

3:18 4:3,14 5:4
**Loeffel** 9:22
  12:10
**long** 46:5
**longer** 45:16
**Los** 4:5 5:11
**lunch** 38:6 43:23
  44:23 45:3,20
**Lunt** 4:5 34:23
  34:23 35:7
**L-E-V-I-N-S-...**
  9:5

**M**

**M** 2:13,21 3:14
**MA** 5:17
**management**
  12:9
**Managing** 5:18
**Marlin** 3:23 4:4
  4:9 8:22,24
  15:4,13,14,25
  16:5,17 17:3,4
  17:8,15 18:6
  18:17,22 19:2
  19:15 20:3,4,9
  20:15,16 21:3
  21:9,10,23
  22:8,9,17 23:1
  23:2 25:3,4,11
  25:13,15 26:5
  26:14,15,20
  27:7,8,16 28:1
  28:2,8,18,19
  29:2,7,8,18,24
  29:25 30:13,15
  30:17 31:3,5,6
  32:5 35:14,21
  35:22 36:5,15
  36:16,20,24,25
  37:10,16,17,23
  38:17 39:3,4,8
  39:12,13,22
  40:2,3,12,22
  40:23 41:1,3,4
  41:14,19,20
  42:7,13,14,21
  43:6,7 44:5,15

45:21 46:13,17
  47:3,9,10,12
  48:3,9
**Marlin's** 46:14
  46:17
**marriage** 49:16
**Massel** 3:20 7:14
**Matricciani** 4:22
  8:8,9,14,19
  15:20 16:7,23
  17:18,21 18:13
  19:5 20:1,13
  21:18 22:6
  23:6 24:14
  25:1,25 26:11
  27:6,23 28:14
  29:10 30:6,20
  31:13,19,23
**matter** 1:15 9:17
  49:18
**McKEOWN**
  2:20 6:23
**Media** 6:5,11
**mediators** 6:6
**meet** 47:23
**MEG** 5:17
**member** 12:4
**Mergers** 5:12
**METZ** 5:18
**Metzl** 2:6 7:3
**Microsoft** 13:10
**Miller** 2:11 6:9
  7:2 10:19
  12:15
**million** 46:10,12
**minimum** 45:25
  46:6
**minutes** 35:6
  44:22 45:4
  47:19
**Mmassel@stb...**
  3:21
**moderator** 6:8
**Monitor** 5:16,22
  9:3,6,20 15:4,9
  15:12,25 16:9
  16:10,17,25

17:8,12 18:5,7
  18:22 19:7,8
  19:14,16,18
  20:9,18,19
  21:3,5,7,23
  22:11,12,17,19
  22:21 24:21,23
  25:11,16,17
  26:4,6,8,19
  27:1,3,16,18
  27:20 28:7,10
  28:11 29:1,3,5
  29:18 30:1,2
  30:13,21,22
  31:4,9,10 32:5
  35:14,23,24
  36:4,9,10,20
  37:1,2,10,13
  37:14,23 38:16
  38:23,24 39:8
  39:14,15,22,23
  39:25 40:11,13
  40:15 41:1,7,8
  41:14,21,22
  42:7,8,10,20
  42:22,24 43:9
  43:10,12 44:6
  45:12
**Monitor's** 11:25
**MOORE** 5:21
**Morgan** 7:16
**morning** 6:1,7
**Morris** 3:20
  7:14
**move** 13:3
**M-A-T-R-I-C-...**
  8:10

**N**

**N** 2:1
**name** 6:2 7:8,9
**NASSAU** 49:4
**need** 47:19
**NELSON** 2:7
**New** 1:1,17,17
  1:18 2:5,5,12
  2:12,20 3:6,6
  3:13,13,20,20

4:15,15 5:5,5
  6:18 49:3,8
**Newman** 2:15
  7:2
**Nick** 3:25 4:10
  8:23
**North** 5:22
**Notary** 1:18
  49:7
**note** 45:11
**number** 6:19
  14:25 46:3,4
**N-I-C-K** 8:24

**O**

**O** 4:5
**objections** 24:7
**offer** 11:4
**offices** 1:16
**off-the-record**
  33:8 38:9 45:7
**okay** 9:3,16 10:5
  12:5 32:10
  38:3,13 43:19
  46:7 47:17
  48:7
**once** 13:13,20
  24:2,13 44:8
**open** 13:4 44:17
  45:18
**order** 1:15 10:14
  13:12 15:3,24
  16:15 18:4,20
  19:13 20:8
  21:2,21 22:16
  25:10 26:3,18
  27:15 28:6,25
  29:17 30:12
  31:3 32:3
  35:13 36:3,19
  37:9,21 38:15
  39:7,21 40:10
  40:25 41:13
  42:6,19 45:20
  45:23
**OTTERBOU...**
  3:11
**outcome** 49:17

**overbid** 46:1

**P**

**P** 2:1,1 5:6
**PAGE** 50:9
**Park** 3:13 4:15
  4:20 5:16
**participants**
  23:10
**parties** 13:2
  33:15 46:2
  49:15
**Partner** 4:10
  5:18
**Partners** 3:4,23
  4:9 5:16 7:1
  9:20
**pass** 13:8,20
  17:11 23:19
  26:23 28:9
  29:23 31:14,20
  31:21 38:18
  41:18 43:5
  44:12 48:5
**passed** 24:2,13
  27:10 44:6,8
**passes** 42:25
  43:11
**pending** 6:16
**Perazzo** 2:14 7:1
**permission**
  32:21
**permitted** 13:24
  34:15
**phase** 45:19
**PHILLIP** 2:7
**Phillip.nelson...**
  2:8
**Pleasantville**
  2:20
**please** 10:4
  12:10 33:20
  34:7,19,20
**point** 7:5 10:11
  13:3 32:24
  33:4 34:24
  43:8
**points** 23:16

**position** 35:5
**Posner** 3:14 7:12
**Postpetition** 3:19
**potential** 34:17
**preference** 44:24
**Prepetition** 3:19
**President** 3:25 4:22 5:12
**Presumably** 14:23
**previous** 45:14 45:24 46:7
**previously** 9:18 12:18
**price** 48:6
**Principal** 5:17
**Prior** 13:9
**procedures** 10:10,15 11:10 11:16 48:15
**process** 33:21 44:18 45:19
**provided** 9:23
**Public** 1:18 49:7
**pursuant** 1:15 11:15
**P.C** 3:11
**p.m** 48:19

**Q**

**qualifying** 11:2
**question** 12:6 33:19
**questions** 12:20 34:9,21

**R**

**R** 2:1 5:7,18 49:1 50:2,2
**raise** 14:25 34:10
**randomly** 13:11
**RDD** 1:7
**reached** 12:8
**READERS** 1:4
**Reader's** 2:19

2:19 3:5 6:4,11 6:25
**reason** 13:17 14:12 33:1 50:11,13,15,17 50:19,21
**reasonable** 10:23 33:3
**reasons** 50:7
**REBECCA** 49:6 49:23
**receive** 14:1,16
**received** 32:19
**recess** 23:13 32:14 43:24 46:25 47:24
**recommence** 10:21
**reconvene** 23:12 38:4,11 44:2 45:5,10 46:24 48:2
**record** 7:8,11 8:2,12 10:5 12:12 13:21 24:9,20 31:24 33:6,11,21 38:12 44:2 45:11 49:12
**redact** 23:24
**reenter** 13:23 32:1
**reflect** 10:6 12:12
**Reimbursable** 14:3
**reiterate** 13:19 44:4
**reject** 11:6
**related** 49:15
**remind** 33:13
**reminder** 38:6
**Reporter** 7:10
**representatives** 6:21
**representing** 6:4 7:13,15

**request** 13:6 23:6,18 32:9 32:19 33:1 35:2 38:2 43:18
**requested** 35:15 38:17
**requests** 47:15
**required** 13:8
**reserve** 10:20 11:6 33:25
**respect** 8:4,17 8:20 9:8,15 11:18 12:14 14:10 33:17 34:7,16,19
**Restructuring** 3:4
**resume** 33:12 35:9
**return** 44:8
**right** 10:20 11:6 11:16 33:5,25 34:4
**Rizzo** 2:5 6:1,2 7:25 8:11,17 8:22 9:3,9,16 12:5 14:9 15:19 17:23 33:10 35:4,8 38:11 44:1 45:9 48:11
**Road** 2:19
**Robert** 2:5 6:2
**Robin** 13:1
**RONALD** 5:7
**Ron.hopkinso...** 5:7
**room** 10:1 34:7 45:4
**Rosecrans** 3:24 4:9
**ROSEN** 3:11
**round** 13:1,10 15:2,24 16:13 16:15 17:6 18:2,21 19:14

20:6,8 21:1,3 21:22 22:14,16 23:20,21 25:11 26:1,3,16,18 27:13,15 28:5 28:24 29:1,15 29:17 30:10,12 31:1 32:2,4,18 35:13 36:1,4 36:17,19 37:7 37:9,20,22 38:16 39:5,7 39:19,21 40:9 40:11,24 41:11 41:13 42:4,6 42:18,20 45:14 46:4
**rounds** 14:4 43:22
**Rrizzo@kirkl...** 2:6
**rule** 34:12
**rules** 12:18,24 13:5,14 33:14 33:18,22 34:1 34:8,19

**S**

**S** 2:1
**sale** 6:10 8:4,6 8:18,20 9:2,15 11:11
**sales** 14:12
**SCHAUMLO...** 49:6,23
**Segundo** 3:24 4:10
**Senior** 4:22
**served** 38:7
**set** 49:10,20
**sidebar** 24:9
**SIGNATURE** 50:24
**similar** 10:3,7 12:8
**Similarly** 11:5
**Simpson** 3:18 7:15

**sound** 10:23
**South** 4:4
**Southern** 1:1 6:18
**speak** 32:21 34:11
**spell** 7:8
**Spivack** 2:21 6:24
**spokesperson** 7:6
**SS** 49:3
**Stalking** 13:25
**stand** 7:7
**start** 13:9 44:17 44:21
**started** 33:16
**starting** 14:20 44:21
**state** 1:18 7:7 8:1,12 24:8 49:3,7
**States** 1:1 6:17
**STEINDLER** 3:11
**Street** 1:17 2:4 2:12 3:5
**structure** 12:25
**submitted** 11:2
**Successful** 14:7 14:14 48:8
**Suite** 3:24 4:9,21
**sum** 14:2
**sworn** 49:11

**T**

**T** 49:1,1 50:2
**Taft** 5:4 7:21
**take** 23:8 24:3 32:11 44:25 46:20,22 47:18
**talk** 35:3
**talked** 44:18
**ten** 45:4 47:19
**ten-minute** 13:7 23:9 32:11 44:20 46:23
**terms** 11:10,17

56

35:1
testimony 49:12
Thacher 3:18
7:15
thank 34:21
35:7
Thanks 9:9
thing 8:1 24:6
33:5
things 10:12
48:12
think 12:19
23:23 48:17
time 1:11 10:22
11:12 46:2
today 11:3 14:17
34:14
transcript 10:17
48:14
TRAVIS 5:18
true 49:12
try 43:21
turn 12:14
twice 13:20 44:6
two 5:16 13:2
23:16

**U**

United 1:1 6:16
use 13:10

**V**

VA 4:21
VAN 5:21
Vector 5:4 7:18
7:22,22 15:4
15:16,17 16:1
16:11,16,18
17:8,17 18:5
18:10,23 19:10
19:11,15,23,24
20:10,24,25
21:4,12,13,22
21:24 22:1,17
23:3,4 25:7,8
25:11,19,20
26:4,19,24,25
27:17 28:3,4,7

28:16,17 29:2
29:11,12,18
30:4,5,14,24
30:25 31:4,15
31:16 32:4
35:14,19,20
36:4,6,8,20,21
36:23 37:10,11
37:12,23 38:17
39:1,2,8,9,11
39:22 40:7,8
40:12,20,21
41:1,5,6,14,23
41:24 42:7,16
42:17,21 43:1
43:2 44:5,15
45:20 46:8,11
46:19,20 47:4
47:7,14,15
48:4,5,9
Vector's 46:9
47:5
Vice 4:22 5:12
view 33:22

**W**

W 2:7
want 12:1 33:13
44:17 46:3,5
wanted 48:12
WARREN 4:14
wasn't 33:4
WATKINS 4:3
way 43:21 49:17
West 3:5
we're 13:2
WHEREOF
49:19
Wickersham 5:4
7:21
Wilshire 5:11
wish 50:6
witness 49:9,13
49:19 50:24
World 5:5
WRC 6:4,11
written 33:18

**X**

X 1:2,10

**Y**

York 1:1,17,17
1:19 2:5,5,12
2:12,20 3:6,6
3:13,13,20,20
4:15,15 5:5,5
6:18 49:3,8

**$**

$22,083,000
14:22
$22,333,000 15:1
15:6
$22,583,000 16:2
$223,583,000
15:23
$23,583,000
18:20,25
$23,833,000
19:13,16
$24,083,000 20:7
20:11
$24,333,000 21:2
21:5
$24,583,000
21:21
$24,833,000
22:15,20 23:11
24:12,18
$25,033,000
25:10,14
$25,083,000
24:17,19,22
$25,583,000 26:2
26:7
$25,833,000
26:17,22
$250,000 46:6
$26,083,000
27:14,19
$26,333,000 28:6
28:8
$26,583,000
28:25 29:4
$26,833,000

29:16,21
$27,083,000
30:11,16
$27,333,000 31:2
31:5
$27,583,000 32:3
32:6 35:12
$27,833,000 36:3
36:7
$28,083,000
36:18,22
$28,333,000 37:8
37:11
$28,583,000
37:21,25 38:15
38:20
$28,833,000 39:6
39:10
$29,083,000
39:20,24
$29,333,000
40:10
$29,583,000
40:25 41:2
$29,833,000
41:12,16 42:1
$30,083,000 42:5
42:9
$30,333,000
42:19,23 44:4
44:10 45:25
$31 46:10,12
$31,250,00 46:18
$31,250,000
46:15 47:3
$32,250,000 47:6
47:8
$32,500,000
47:11,13 48:3
$700,000 14:5

**0**

02141 5:17
09-23529 1:7
6:20

**1**

1:00 38:7

1:45 45:5
1:50 46:23
10th 49:20
10017 3:20
10019 3:6
10022 1:17
10022-4611 2:12
10022-4620 2:5
101 4:15
10169-0075 3:13
10178 4:15
10281 5:5
10570 2:20
10877 5:11
11 1:6
11:05 1:11
11:20 23:12
11:30 23:12
11:45 32:12
11:55 32:13
12:20 38:4
12:30 38:5 43:20
12:40 43:20
15 44:22
153 1:16 2:4,12
18th 5:11
18485 1:21

**2**

2:00 46:24
2:01 47:22
2:12 47:23
2:13 48:19
2:15 47:23
200 4:21
2009 49:21
2010 1:10
20171 4:21
2121 3:24 4:9
22,083,000 17:7
22,833,000 16:14
16:18
23,083,000 17:10
23,333,000 18:4
18:8
230 3:13
2300 4:20
24,583,000 21:25

**250,000** 46:1
**28207** 5:22
**29th** 3:6
**29,333,000** 40:14

---

### 3

**355** 4:4

---

### 4

**40** 3:5
**425** 3:19
**4325** 3:24 4:9

---

### 5

**53rd** 1:17 2:4,12
**57th** 3:5

---

### 7

**7** 1:10

---

### 9

**90024** 5:11
**90071-1560** 4:5
**90245** 3:24 4:10

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 2803, New York, NY 10123 (212)705-8585

DEPOSITION
EXHIBIT
A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) | Case No. 09-23529 (RDD) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

### ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES WITH STALKING HORSE BID PROTECTIONS IN CONNECTION WITH THE SALE OF THE COMPASSLEARNING, INC. BUSINESS; (B) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE BY AUCTION AND SALE HEARING; (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND NOTICING AND DETERMINING CURE AMOUNTS RELATED THERETO; (D) SCHEDULING THE SALE HEARING AND OTHER RELATED DATES AND DEADLINES; AND (E) AUTHORIZING ONE-TIME SALE-RELATED INCENTIVE PAYMENTS TO CERTAIN NON-INSIDERS

Upon the portion of the motion dated December 3, 2009 (the "*Motion*")[1] of The Reader's

Digest Association, Inc. and certain of its affiliates, as debtors and debtors in possession

(collectively, the "*Debtors*"),[2] for entry of an order (a) authorizing and approving bidding

procedures with stalking horse bid protections in connection with the sale of the

CompassLearning, Inc. ("*CompassLearning*") business; (b) approving the form and manner of

---

[1]  All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Allure Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

K&E 15982335.

notice of the auction by sale and sale hearing; (c) approving procedures for the assumption and assignment of contracts and leases and noticing of related cure amounts; (d) scheduling the sale hearing and setting other related dates and deadlines; and (e) authorizing and approving one-time, sale-related payments to certain non-insider employees pursuant to sections 105(a), 363 and 365 of chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), Rules 2002-1, 6004-1, 6006-1 and 9006-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "*Local Bankruptcy Rules*") and the Sale Guidelines for the Conduct of Asset Sales established and adopted by the United States Bankruptcy Court for the Southern District of New York pursuant to General Order M-331 (the "*Sale Guidelines*"); and upon the Declaration of John M. Cesarz in support of the Motion; and the Court having found that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and a hearing having been held on December 18, 2009 (the "*Hearing*"); and the Court having reviewed the Motion, the Declaration of John M. Cesarz and all of the exhibits thereto, and the arguments of counsel made and the evidence proffered or adduced, as applicable, at the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having found the form and manner of notice of the Hearing is good, sufficient and appropriate under the circumstances and that no other or

2

further notice need be provided or is necessary; and after due deliberation and sufficient cause appearing therefor, the Court FINDS AND DETERMINES THAT:

A.  <u>Bidding Procedures</u>. The Debtors have articulated good and sufficient reasons for authorizing and approving the bidding procedures attached hereto as <u>Exhibit 1</u> (the "***Bidding Procedures***"), which are fair, reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Acquired Assets.

B.  <u>Stalking Horse Bid Protections</u>. The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the break-up fee and the expense reimbursement (the "***Bid Protections***") to the Stalking Horse Bidder under the circumstances, including, without limitation, that:

i.  the Bid Protections are the product of negotiations among the Debtors, the Stalking Horse Bidder and the official committee of unsecured creditors appointed in these chapter 11 cases (the "***Committee***") conducted in good faith and at arm's-length, and the APA (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Acquired Assets in order to maximize the value of CompassLearning, Inc.'s estate;

ii.  the Bid Protections are an actual and necessary cost and expense of preserving the respective Debtors' estates;

iii.  the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale under the APA, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Acquired Assets will be received;

iv.  the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the APA, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

3

v.    the assurance of the payment of the Bid Protections has promoted more competitive bidding by inducing the Stalking Horse Bidder's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Acquired Assets, induced the Stalking Horse Bidder to conduct due diligence with respect to CompassLearning's business, assets, operations and liabilities, and propose the Sale contemplated by the APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Acquired Assets.

C.    <u>Sale Notice</u>. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the APA; (vi) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of contracts and leases to the Stalking Horse Bidder pursuant to the APA (or to another Successful Bidder arising from the Auction, if any) and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

D.    <u>Assumption Procedures</u>. The Motion and the Contract Assumption Notice are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any Cure Amounts relating thereto and the Assumption and Assignment Procedures.

K&E 15982335.

E.    Closing Incentive Plan.  The closing incentive bonus plan (the *"Closing Incentive Plan"*) represents a sound exercise of the Debtors' business judgment and is necessary and in the best interests of the Debtors, their estates, their creditors and other parties in interest.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is granted to the extent set forth herein.

## I.    **Important Dates and Deadlines**

2.    **Sale Hearing.**  January 12, 2010, at 10:00 a.m. prevailing Eastern Time, is the date and time the sale hearing (the *"Sale Hearing"*) will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, at:  the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, Room 118, 300 Quarropas Street, White Plains, New York  10601-4140.  Any obligations of the Debtors set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the APA are authorized as set forth herein and are fully enforceable as of the date of entry of this order.  **Please take notice that:** the Sale Hearing may be adjourned without further notice other than by announcement in open Court or on the Court's calendar.

3.    **Sale Objection Deadline.**  January 7, 2010 at 4:00 p.m. prevailing Eastern Time, is the deadline to object to entry of the proposed Sale Order (the *"Sale Objection Deadline"*), with the exception of objections based on the conduct of the Auction, if any,.  Objections, if any, **must**:  (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 92] (the *"Case Management Order"*); (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so *actually received* no later than the Sale Objection Deadline by the following parties (the *"Notice Parties"*), as well as by the judge's chambers:

5

| Debtors | Counsel to Debtors |
|---|---|
| The Reader's Digest Association, Inc.<br>1 Reader's Digest Road<br>Pleasantville, New York, 10570<br>Attn: Andrea Newborn, Senior Vice President,<br>General Counsel and Corporate Secretary | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Paul M. Basta and Nicole L. Greenblatt |
| **Counsel to the Committee** | **United States Trustee** |
| Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York 10169<br>Attn: Scott L. Hazan and David M. Posner | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Andrea Schwartz |
| **Counsel to the Agent for the Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attn: Peter V. Pantaleo and Morris J. Massel | Latham & Watkins LLP<br>355 South Grand Avenue<br>Los Angeles California 90071-1560<br>Attn: Gregory O. Lunt and Christopher R. Pflug |

---

**The failure to timely file an objection in accordance with this order may bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, including the assumption and assignment of contracts and leases to the Successful Bidder pursuant to the APA, and may be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

---

4.     **Response Deadline.**  January 11, 2010, at noon, is the deadline for filing a response to any timely-filed objection to entry of the Sale Order with the Court; *provided,* that such deadline may be extended by agreement of the Debtors and the affected objecting party.

5.     **Competitive Bidding**.  The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

a.     **Preliminary Bid Deadline:**  December 31, 2009, is the deadline by which anyone interested in participating in the bidding process must deliver the "Preliminary Bid Documents" (as defined in the Bidding Procedures);

b.     **Qualified Bid Deadline:**  January 5, 2010 at 5:00 p.m. prevailing Eastern Time, is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be <u>actually received</u> by the parties specified in the Bidding Procedures (the "*Bid Deadline*"); and

6

c. **Auction:** January 7, 2010 at 10:00 a.m. prevailing Eastern Time, is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors: Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

**II.**  **Bidding Procedures and Related Relief**

    **A.**  **Bidding Procedures**

6.  The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit 1</u> and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein. The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Acquired Assets shall do so strictly in accordance with the terms of the Bidding Procedures and this order.

7.  As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the APA at the Sale Hearing. If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

8.  If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Sale, the Auction will be conducted openly and shall be transcribed or videotaped.

    **B.**  **Bid Protections**

9.  The Bid Protections described in the Motion and set forth in the APA are hereby approved to the extent set forth herein.

7

10. If the Stalking Horse Bidder becomes entitled to receive the Bid Protections in accordance with the terms of the APA, (i) the Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the APA, including the Break-up Fee and Expense Reimbursement, without further action or order by the Bankruptcy Court, in accordance with the terms and conditions of the APA and this order, and (ii) the Stalking Horse Bidder shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the Break-up Fee and Expense Reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

11. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment.

### III. Sale Hearing Notice and Related Relief

12. The Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u> is hereby approved. Within three (3) days of the entry of this order, the Debtors shall cause the Sale Notice to be served upon, without limitation, (i) the Master List (as defined in the Case Management Order, (ii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Acquired Assets, (iii) all parties to executory contracts or unexpired leases to be assumed and assigned or rejected as part of the Sale, (iv) all affected federal, state and local regulatory and taxing authorities and (v) all entities known or reasonably believed to have expressed an interest in acquiring any of the Acquired Assets.

### IV. Assumption Procedures

13. The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other successful bidder arising from the Auction, if any) pursuant to section 365(f) of the Bankruptcy

8

Code (as defined in the APA, collectively, the "*Assumed Contracts*") in connection with the Sale are hereby approved to the extent set forth herein (the "*Assumption Procedures*").

14. These Assumption Procedures shall govern the assumption and assignment of all Assumed Contracts assumed and assigned in connection with the Sale under the APA:

   a. **Assumption Schedule**. Within three (3) business days from entry of this order, the Debtors will file a schedule of the proposed Assumed Contracts and the corresponding amounts, if any, required to cure monetary defaults arising thereunder (the "*Assumption Schedule*"), and serve notice of same upon each non-debtor party to any Assumed Contract listed thereon.

   b. **Objections**. Objections, if any, to the assumption and assignment of any Assumed Contract, cure amount or adequate assurances proposed with respect thereto, <u>must</u>: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and Case Management Order; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served upon, so as to be **actually received** by, the Notice Parties before the Sale Objection Deadline; *provided*, that, if the Stalking Horse Bidder is not the Successful Bidder following the Auction, if one is held, the objection deadline for such counterparties with regard to adequate assurance of future performance shall be automatically extended through and until the conclusion of the Sale Hearing, *provided* further, that the Debtors shall separately notice their request for an order authorizing the assumption and assignment of any <u>additional</u> Assumed Contracts designated by such Successful Bidder.

   c. **Dispute Resolution**. Any objection to the assumption and assignment of an Assumed Contract or related cure or adequate assurances proposed in connection with the Sale that remain unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or other date as fixed by the Court).

15. Any party failing to timely file an objection to the assumption and assignment of any Assumed Contract or related cure amount listed on the Assumption Schedule (a) shall be forever barred from objecting thereto, including, without limitation, making any demands for additional cure amounts, monetary compensation on account of any alleged defaults or assurance of future performance as against CompassLearning, any of the other Debtors, their estates, the

9

Stalking Horse Bidder or other successful bidder arising from the Auction, if any, with respect to any such Assumed Contract and (b) shall be deemed to consent to the Sale and the assumption and assignment of all Assumed Contracts effectuated in connection therewith.

**V.**     **Closing Incentive Plan**

16.     The Closing Incentive Plan is approved to the extent set forth herein.

17.     The Debtors are authorized, but not required, (a) to adopt and implement the Closing Incentive Plan, (b) make payments in accordance with the terms of the Closing Incentive Plan to Eligible Employees as necessary and appropriate in the Debtors' business judgment and (c) to take such other actions as may be necessary, desirable or appropriate to effect, implement or consummate the Closing Incentive Plan.

18.     Payments proposed to be made to Eligible Employees pursuant to the Closing Incentive Plan are, in each case, hereby allowed as administrative expenses of these estates.

19.     Notwithstanding anything herein to the contrary, the authorization granted hereby to make payments to Eligible Employees pursuant to the Closing Incentive Plan shall not create any obligation on the part of the Debtors or their officers, directors, attorneys, financial advisors, investment bankers, professional advisors or agents to make payments to such Eligible Employees whether arising under, related to or in connection with the Closing Incentive Plan, and none of the foregoing persons or entities shall have any liability on account of any decision by the Debtors for any reason whatsoever not to honor the Closing Incentive Plan.

20.     The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this order.

21.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

22.    This order shall be immediately effective and enforceable upon entry hereof.

23.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from, based upon or related to this order.

Dated:  December 18, 2009
        White Plains, New York

/s/ Robert D. Drain
United States Bankruptcy Judge

K&E 15982335.

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, | ) | Case No. 09-23529 (RDD) |
| INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF DEBTOR COMPASSLEARNING, INC.

These bidding procedures (the "*Bidding Procedures*") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*") entered on December [___], 2009 [Docket No. ___] (the "*Bidding Procedures Order*") on the docket of the lead case in the above-captioned jointly administered cases of The Reader's Digest Association, Inc. and certain of its affiliates (collectively, the "*Debtors*" or "*RDA*").[1]

These Bidding Procedures set forth the process by which Debtors WRC Media, Inc. and CompassLearning, Inc. ("*Compass*" and, together with WRC Media, Inc., the "*Sale Debtors*") are authorized to conduct the sale (the "*Sale*") by auction (the "*Auction*") of substantially all of the assets of Compass (defined as the "*Acquired Assets*" in the Asset Purchase Agreement dated as of November 30, 2009, by and among the Sale Debtors, CompassLearning Acquisition Corporation (the "*Stalking Horse Bidder*")) and Marlin Equity II, L.P., as guarantor (the "*Stalking Horse APA*") pursuant to the terms and conditions substantially in the form of the Stalking Horse APA. Please take notice that all Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse APA.

> Copies of the Bidding Procedures Order, Stalking Horse APA or other documents related thereto are available upon request to Kurtzman Carson Consultants LLC by calling (888) 733-1416, emailing kcc_rda@kccllc.com or visiting http://www.kccllc.net/readers.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

A.     **Assets to be Sold.**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for all of the Acquired Assets and all of the Assumed Liabilities, as identified in further detail and defined in the Stalking Horse APA.

B.     **Stalking Horse Bidder**

On November 30, 2009, the Sale Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA for the sale of substantially all of the Acquired Assets pursuant to which: (i) the Stalking Horse Bidder agreed to pay $20,250,000 (the "*Stalking Horse Bid*") for the Acquired Assets, subject to the outcome of the Auction and Bankruptcy Court approval; and (ii) the Sale Debtors agreed, in part, in the event that the Bankruptcy Court approves the purchase of substantially all of the Acquired Assets by any Person other than the Stalking Horse Bidder to (a) pay the Stalking Horse Bidder a break up fee in the amount of $500,000 (the "*Break Up Fee*") and (b) reimburse the Stalking Horse Bidder's reasonable out-of-pocket expenses up to an aggregate amount equal to Two Hundred Thousand Dollars ($200,000) (the "*Reimbursable Expenses*").

C.     **Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in the Acquired Assets (a "*Potential Bidder*") must, on or before December 31, 2009, deliver (unless previously delivered) to each of (a) counsel to Compass, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Paul M. Basta, Esq., Nicole Greenblatt, Esq. and Kirk A. Radke, Esq.; (b) the financial advisor to Compass, Miller Buckfire, Inc., 153 East 53rd Street, New York, New York 10022, Attn: John Cesarz; (c) counsel to the agent for Compass' postpetition and prepetition secured lenders (the "*Lenders*"), Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Peter V. Pantaleo, Esq. And Morris J. Massel, Esq.; (d) counsel to the official committee of unsecured creditors (the "*Creditors' Committee*"), Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attn: Scott L. Hazan, Esq. and David M. Posner, Esq.; (e) and counsel to the Stalking Horse Bidder, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071, Attn: Gregory O. Lunt, Esq., the following documents (the "*Preliminary Bid Documents*") to participate in the bidding process:

a.     an executed confidentiality agreement (the "*Confidentiality Agreement*") reasonably acceptable to RDA and containing terms in the aggregate no less favorable to RDA in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder, RDA and certain of their respective affiliates;

2

> b. a non-binding indication of interest with respect to the purchase of all of the Acquired Assets and the assumption of all of the Assumed Liabilities; and
>
> c. preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Sale Debtors and its advisors will determine.

Within two (2) Business Days after a Potential Bidder delivers the Preliminary Bid Documents, the Sale Debtors shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to Compass. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "*Acceptable Bidder*") may submit bids to purchase all of the Acquired Assets and all of the Assumed Liabilities. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

## D. Obtaining Due Diligence Access.

After receipt of an executed Confidentiality Agreement and notification of Acceptable Bidder status, the Sale Debtors shall provide each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Sale Debtors give any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, the Sale Debtors shall promptly provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Acceptable Bidders, the Sale Debtors shall not furnish any confidential information relating to Compass, the Acquired Assets, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

Compass along with its advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however*, the Sale Debtors may decline to provide such information to Acceptable Bidders who, in the Sale Debtors' reasonable business judgment, have not established that such Acceptable Bidders intend in good faith to or have the capacity to consummate the purchase of all of the Acquired Assets. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

> The Sale Debtors designate Miller Buckfire & Co., LLC to coordinate all reasonable requests for additional information and due diligence access.

K&E 15982337.7

### E.  Bid Requirements.

To participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to Compass and its advisors a written irrevocable offer that must:

    a.    be in writing;

    b.    at a minimum, exceed the aggregate sum of the following: (i) the Stalking Horse Bid; (ii) the Break Up Fee; (iii) the maximum Reimbursable Expenses; and (iv) the minimum bid increment of Two Hundred and Fifty Thousand Dollars ($250,000) (such aggregate sum, the "*Minimum Initial Bid Increment*") (all of which must be in cash, marketable securities that are freely tradable with readily ascertainable value, and/or the assumption of administrative expense liabilities);

    c.    constitute a good faith, bona fide offer to purchase all or substantially all of the Acquired Assets and to assume all or substantially all of the Assumed Liabilities;

    d.    be accompanied by a clean and a duly executed copy of the Stalking Horse APA and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA executed with Stalking Horse Bidder, which may not be materially more burdensome to the Sale Debtors or inconsistent with these Bidding Procedures;

    e.    identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required;

    f.    not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, and/or (iii) the outcome or completion of a due diligence review by the Potential Bidder; and

    g.    must remain irrevocable until 48 hours after the Auction.

In addition to the above, each Acceptable Bidder shall:

    a.    provide the Sale Debtors, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of RDA, that such Potential Bidder has the financial wherewithal and ability to consummate the acquisition of all or substantially all of the Acquired Assets and the assumption of all or substantially all of the Assumed Liabilities;

    b.    fully disclose the identity of each entity that will be bidding for or purchasing of all or substantially all of the Acquired Assets and assuming

4

all or substantially all of the Assumed Liabilities or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

c. on or before the Bid Deadline, submit a cash deposit equal to One and One-Half Million Dollars ($1,500,000) plus the maximum Reimbursable Expenses in the amount of Two Hundred Thousand Dollars ($200,000) for a total deposit of $1,700,000, by wire transfer of immediately available funds to an account or accounts designated by the Sale Debtors (the "*Good Faith Deposit*"), which shall be payable to the Sale Debtors on at least as favorable terms to the Sale Debtors as the Deposit under the Stalking Horse APA; and

d. not be entitled to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

Bids fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders." Within two (2) Business Days after the Bid Deadline, the Sale Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with its advisors and the advisors to the Lenders and the Creditors' Committee and will notify the Acceptable Bidders and the Stalking Horse Bidder whether bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction (as defined below). Any bid that is not deemed a "Qualified Bid" shall not be considered by the Sale Debtors. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Stalking Horse APA submitted by the Stalking Horse Bidder and any additional bids timely submitted by the Stalking Horse Bidder (to the extent such bids are generally consistent with the terms of the Stalking Horse APA) shall be deemed Qualified Bids, qualifying the Stalking Horse Bidder to participate in the Auction.

F. **Bid Deadline.**

**Binding bids must be received by each of the Sale Debtors, the Stalking Horse Bidder, their respective advisors, the advisors to the Lenders and the Creditors' Committee, in each case so as to be actually received no later than 5:00 p.m. (prevailing Eastern Time) on January 5, 2010 (the "*Bid Deadline*").**

G. **Evaluation of Qualified Bids.**

Prior to the Auction, the Sale Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Sale Debtors' judgment, the highest or otherwise best bid (the "*Starting Bid*"). Within 24 hours of such determination, but in no event later than one (1) Business Day prior to the date of the Auction, the Sale Debtors' shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid. The Sale Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

5

**H.     No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid (as defined herein) and, subject to the Sale Debtors' termination rights under the APA, the Sale Debtors will immediately pursue entry of an order by the Bankruptcy Court approving the Stalking Horse APA and authorizing the sale of the Acquired Assets and the transfer of the Assumed Liabilities to the Stalking Horse Bidder.

**I.     Auction.**

If one or more Qualified Bids are received by the Bid Deadline, then the Sale Debtors shall conduct an auction (the "*Auction*") with respect to the Acquired Assets. The Auction shall commence on January 7, 2010 at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place as the Sale Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders following consultation with the advisors to the Lenders and the Creditors' Committee.

The Auction will be conducted in accordance with the following procedures (the "*Auction Procedures*"):

    a.    the Auction will be conducted openly;

    b.    only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

    c.    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

    d.    only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Sale Debtors, their respective advisors, the advisors to the Lenders and the Creditors' Committee shall be permitted to attend the Auction;

    e.    bidding at the Auction shall begin at the Starting Bid;

    f.    subsequent bids at the Auction, including any bids by Stalking Horse Bidder, shall be made in minimum increments of Two Hundred and Fifty Thousand Dollars ($250,000);

    g.    the Stalking Horse Bidder shall receive a credit equal to the sum of the Break Up Fee and the Reimbursable Expenses when bidding at the Auction;

    h.    each Qualified Bidder will be informed of the terms of the previous bids;

    i.    the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

6

j.    each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

k.    absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider bids made after the Auction is closed; and

l.    the Auction shall be governed by such other Auction Procedures as may be announced by the Sale Debtors, after consultation with their advisors as well as the advisors to the Lenders and the Creditors' Committee, from time to time on the record at the Auction; *provided,* that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court and shall be consistent with the Debtors' fiduciary duties.

## J.    Acceptance of the Successful Bid.

Upon the conclusion of the Auction (if such Auction is conducted), the Sale Debtors, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors and the advisors to the Lenders and the Creditors' Committee, shall identify the highest or otherwise best bid (the *"Successful Bid"*). The Qualified Bidder having submitted a Successful Bid will be deemed the *"Successful Bidder."* The Successful Bidder and the Sale Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Sale Debtors will present for approval the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for all of the Acquired Assets and all of the Assumed Liabilities and is in the best interests of the Sale Debtors.

If an Auction is held, the Sale Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned however, upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

## K.    Sale Hearing.

A hearing to consider approval of the Sale of all of the Acquired Assets and the transfer of all of the Assumed Liabilities to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the *"Sale Hearing"*) is presently scheduled to take place on January 12, 2010 at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as counsel may be heard,

K&E 15982337.7

before the Honorable Robert D. Drain, United States Bankruptcy Judge at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, Room 116, 300 Quarropas Street, White Plains, New York 10601-4140.

**The Sale Hearing may be continued to a later date by the Sale Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Sale Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

L.    **Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the purchase of the Acquired Assets within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best bid for the Acquired Assets (the *"Back-Up Bidder"*), as determined by the Sale Debtors after consultation with their advisors at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein and to the advisors to the Lenders and the Creditors' Committee, will automatically be deemed to have submitted the highest or otherwise best bid, and the Sale Debtors and the Back-Up Bidder will be authorized, but not required, to consummate the Sale with the Back-Up Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court.

M.    **Break Up Fee and Expense Reimbursement.**

The Sale Debtors shall be obligated to pay to the Stalking Horse Bidder, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, all amounts due to the Stalking Horse Bidder, including the Break Up Fee and the Reimbursable Expenses, in each instance in accordance with the applicable provisions of the Stalking Horse APA.

N.    **Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of all of the Acquired Assets and all of the Assumed Liabilities, be credited to the purchase price paid for all of the Acquired Assets and all of the Assumed Liabilities. If the Successful Bidder fails to consummate the purchase of all of the Acquired Assets and all of the Assumed Liabilities, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, Compass.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Stalking Horse Bidder) will be returned within fifteen (15) days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of all of the Acquired Assets and all of the Assumed Liabilities. The Good Faith Deposit of the Stalking Horse Bidder shall be returned in accordance with the terms of the Stalking Horse APA.

8

**O.** **Reservation of Rights.**

The Sale Debtors reserve their rights, following consultation with their advisors and the advisors to the Lenders and the Creditors' Committee, and with the consent of the Stalking Horse Bidder (whose consent shall not be unreasonably withheld) to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of all of the Acquired Assets and all of the Assumed Liabilities, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bidding Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids (excluding, for the avoidance of doubt, the Stalking Horse Bidder's offer pursuant to the Stalking Horse APA) if, in the Sale Debtors' business judgment and consistent with their fiduciary duties, following consultation with their advisors, the Sale Debtors determine that such Qualified Bid (a) is inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (c) contrary to the best interests of the Sale Debtors; _provided_, that if the Sale Debtors cancel the Auction, or reject all Qualified Bids other than Stalking Horse Bidder's, the Sale Debtors shall promptly pursue entry of an order by the Bankruptcy Court authorizing consummation of the Sale of all of the Acquired Assets and the transfer of all of the Assumed Liabilities to the Stalking Horse Bidder.

The Sale Debtors shall provide to the Stalking Horse the information and documents specified in the Stalking Horse APA relating to the Auction and other bids within the time period and on the terms and conditions set forth in the Stalking Horse APA.

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any individual Lender, group of Lenders or collateral agent may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

K&E 15982337.7

**Exhibit 2**

**Form of the Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) | Case No. 09-23529 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on December 3, 2009, The Reader's Digest Association, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***") filed a motion [Docket No. 331] the ("***Sale Motion***") with the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") seeking, among other things, entry of an order authorizing and approving (i) the sale of substantially all of the assets of the CompassLearning, Inc. ("***CompassLearning***") business free and clear of liens, claims, interests and encumbrances to CompassLearning Acquisition Corporation, a Delaware corporate formed by Marlin Equity II, L.P. (the "***Stalking Horse Bidder***"), subject to higher or otherwise better and (ii) the assumption and assignment of executory contracts and unexpired leases to the Stalking Horse Bidder or other successful bidder after the auction (the "***Sale***"). Please note that all capitalized terms used but not defined herein have the meanings set forth in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all of the assets and assumption of substantially all of the liabilities of CompassLearning consistent with the bidding procedures (the "***Bidding Procedures***") approved by the Bankruptcy Court by entry of an order dated December [___], 2009 [Docket No. ___] (the "***Bidding Procedures Order***"). <u>All interested bidders should read carefully the Bidding Procedures and Bidding Procedures Order</u>. To the extent that there are any inconsistencies between this notice and the Bidding Procedures, the latter shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receives qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "***Auction***") of the CompassLearning assets on <u>January [7], 2010 at 10:00 a.m. prevailing Eastern Time</u> at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (or at any such other location as the Debtors may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale at a hearing scheduled to commence at <u>10:00 a.m. on January 12, 2010 prevailing Eastern Time</u> (the "***Sale Hearing***") before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York 10601-4140.

K&E 15982340.5

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Sale Motion in respect of the Sale, including objections to the assumption and assignment of contracts and leases and/or any proposed cure amounts related thereto, **must**: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 92] (the *"Case Management Order"*); (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so *actually received* no later than January 4, 2010 at 4:00 p.m. prevailing Eastern Time (the *"Objection Deadline"*) by the following parties (the *"Notice Parties"*):

| Debtors | Counsel to Debtors |
|---|---|
| The Reader's Digest Association, Inc.<br>1 Reader's Digest Road<br>Pleasantville, New York, 10570<br>Attn: Andrea Newborn, Senior Vice President,<br>General Counsel and Corporate Secretary | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Paul M. Basta and Nicole L. Greenblatt |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York 10169<br>Attn: Scott L. Hazan and David M. Posner | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Andrea Schwartz |
| **Counsel to the Agent for the Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attn: Peter V. Pantaleo and Morris J. Massel | Latham & Watkins LLP<br>355 South Grand Avenue<br>Los Angeles California 90071-1560<br>Attn: Gregory O. Lunt and Christopher R. Pflug |

**PLEASE TAKE FURTHER NOTICE** that a printed copy of any objection to the Sale Motion must also be delivered via first class mail within one business day of the Objection Deadline to the: Office of the United States Trustee for the Southern District of New York, Attn: Andrea B. Schwartz, 33 Whitehall Street, 21st Floor, New York, New York 10004.

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER MAY FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.**

K&E 15982340.5

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The proposed Sale Order provides that the Buyer will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Sale Debtors or related to the Acquired Assets other than as expressly set forth in the APA or (b) any Claims against the Sale Debtors or any of their predecessors or affiliates. Except as expressly provided in the APA with respect to Buyer, the Buyer Group shall have no liability whatsoever with respect to the Sale Debtors, (or their predecessors' or affiliates') respective businesses or operations or any of the Sale Debtors' (or their predecessors' or affiliates') obligations (as described below, *"Successor or Transferee Liability"*) based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing. Except to the extent expressly included in the Assumed Liabilities with respect to Buyer, the Buyer Group shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, and any exhibits thereto, including the Bidding Procedures Order, Bidding Procedures and APA, are available (i) upon request to Kurtzman Carson Consultants LLC (the noticing and claims agent retained in these chapter 11 cases), by calling (866) 967-0491 or emailing kcc_rda@kccllc.com, (ii) at the Debtors' expense by visiting the Debtors' restructuring website at http://www.kccllc.net/readers or (iii) for a fee via PACER by visiting http://www.nysb.uscourts.gov.

Dated: _____           */s/ Nicole L. Greenblatt*
    New York, New York            James H.M. Sprayregen P.C.
                               Paul M. Basta
                               Nicole L. Greenblatt
                               KIRKLAND & ELLIS LLP
                               601 Lexington Avenue
                               New York, New York  10022-4611

                               Counsel to the Debtors and Debtors in Possession

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE RESTRUCTURING HOTLINE AT (866) 967-0491**

---

K&E 15982340.5

## Exhibit B

## Amendments to the APA

AMENDMENT TO
ASSET PURCHASE AGREEMENT

THIS AMENDMENT TO ASSET PURCHASE AGREEMENT (this "Amendment") is made as of December 23, 2009, by and among WRC Media Inc., a corporation formed under the laws of the State of Delaware ("Parent"), CompassLearning, Inc., a corporation formed under the laws of the State of Delaware ("Compass," and together with Parent, "Sellers"), CompassLearning Acquisition Corporation, a corporation formed under the laws of the State of Delaware ("Buyer"), and Marlin Equity II, L.P., a limited partnership formed under the laws of the State of Delaware ("Guarantor"). Sellers, Buyer and Guarantor are referred to herein individually as a "Party" and collectively as the "Parties." Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Asset Purchase Agreement by and among the Parties, dated as of November 30, 2009 (the "Asset Purchase Agreement").

WHEREAS, Sellers filed a petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on August 24, 2009 and are party to the Chapter 11 Cases;

WHEREAS, Purchaser and Sellers entered into the Asset Purchase Agreement on November 30, 2009 pursuant to which Sellers shall sell to Buyer, and Buyer shall purchase from Sellers, the Acquired Assets, and Sellers shall assign to Buyer, and Buyer shall assume from Sellers, the Assumed Liabilities, in each case as of the Closing;

WHEREAS, pursuant to Section 9(d) of the Asset Purchase Agreement, the Parties may amend the Asset Purchase Agreement.

NOW THEREFORE, in consideration of the mutual agreements and covenants made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

Section 1.    Amendment to Definition of Reimbursable Expenses.  The Parties hereby agree that the definition of "Reimbursable Expenses" in Section 1 of the Asset Purchase Agreement is hereby replaced in its entirety with the following:

"Reimbursable Expenses" means the reasonable, documented out-of-pocket fees and expenses incurred by Buyer and its Affiliates prior to termination of this Agreement in connection with this Agreement, the Related Agreements, the Bidding Procedures, the Sale Order and the transactions contemplated hereby and thereby, including the reasonable fees and expenses of legal counsel, financial advisors, consultants and any other advisors that Buyer engages in its reasonable discretion; provided that the Reimbursable Expenses shall not exceed Two Hundred Thousand Dollars ($200,000) in the aggregate.

Section 2.    Amendment to Section 8(c)(v) of the Asset Purchase Agreement.  The Parties hereby agree that Section 8(c)(v) of the Asset Purchase Agreement is hereby replaced in its entirety with the following:

"(v)    In addition, in the event that:

(A)    Either Buyer or Sellers terminate this Agreement pursuant to (1) Section 8(a)(ii) (unless Buyer's termination is due solely to Sellers' failing to obtain each of the consents listed on Schedule 5(b)(iv) of the Disclosure Schedule) or (2) Section 8(a)(iv) (unless (a) the Buyer is then in material breach of any representation, warranty, covenant or agreement contained in this Agreement or (b) Buyer's termination is due solely to Sellers' failing to obtain each of the consents listed on Schedule 5(b)(iv) of the Disclosure Schedule), Section 8(a)(vi), Section 8(a)(ix), Section 8(a)(x) or Section 8(a)(xi); or

(B)    This Agreement is (1) terminated pursuant to Section 8(a) (other than Section 8(a)(v) or Section 8(a)(xi) (and with respect to a termination pursuant to Section 8(a)(xi), the Closing has not occurred on or before the Drop Dead Date solely because of Buyer's material failure to fulfill any of its obligations under this Agreement) and (2) Seller enters into a definitive agreement with respect to a Competing Transaction prior to the six-month anniversary of the date of the Bid Procedures Order,

then, in addition to the Reimbursable Expenses, Buyer shall also be entitled to a cash fee equal to Five Hundred Thousand Dollars ($500,000) (the "Break Up Fee"), such fee to be paid promptly and in any event within five (5) Business Days of such termination in the event of Section 8(c)(v)(A) or of entering into such agreement in the event of Section 8(c)(v)(B)."

Section 3.    Amendment to Bidding Procedures.  The Parties hereby agree that the minimum bid increment, which is clause (iv) of the Minimum Initial Bid Increment (as defined in Section E(b) of the Bidding Procedures), shall be amended from Five Hundred Thousand Dollars ($500,000) to Two Hundred and Fifty Thousand Dollars ($250,000).

Section 4.    Amendment to Annex A to the Asset Purchase Agreement.  The Parties hereby agree that Annex A to the Asset Purchase Agreement is hereby replace in its entirety with Schedule I hereto.

Section 5.    Amendment to Schedule 1.4(b) of the Disclosure Schedule.  The Parties hereby agree that Section 1.4(b) of the Disclosure Schedule is hereby replace in its entirety with Schedule II hereto.

Section 6.    Effectiveness.  Pursuant to Section 9(d) of the Asset Purchase Agreement, this Amendment shall be effective and binding upon the execution of this Amendment by the Parties.  Any reference in the Asset Purchase Agreement to "this Agreement" shall hereafter be deemed to refer to the Asset Purchase Agreement as amended by this Amendment.

**Section 7.**    Miscellaneous.

7.1.    Incorporation of Schedules.  The Schedules to this Amendment are incorporated herein by reference and made a part hereof.

7.2.    Governing Law; Jurisdiction.  This Amendment shall in all aspects be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of

New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York (other than Section 5 1401 of the New York general obligations law), except to the extent that the laws are superseded by the Bankruptcy Code, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws. For so long as Sellers are subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Amendment, the Asset Purchase Agreement, the other Related Agreements or the transactions contemplated hereby or thereby, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Sellers are no longer subject to the jurisdiction of the Bankruptcy Court or if the Bankruptcy Court is unwilling or unable to hear any matter arising under or in connection with this Amendment, the Asset Purchase Agreement, the other Related Agreements or the transactions contemplated hereby or thereby, such matter shall be brought in the courts of the State of New York sitting in the County of New York or of the United States for the Southern District of New York, and by execution and delivery of this Amendment, each of the Parties consents to the exclusive jurisdiction of those courts. Each of the Parties irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of forum *non conveniens*, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Amendment or the transactions contemplated in the Asset Purchase Agreement.

7.3. <u>WAIVERS OF JURY TRIAL</u>. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AMENDMENT OR THE TRANSACTIONS CONTEMPLATED IN THE ASSET PURCHASE AGREEMENT, AS AMENDED.

7.4. <u>Severability</u>. The invalidity or unenforceability of any provision of this Amendment shall not affect the validity or enforceability of any other provisions of this Amendment. In the event that any of the provisions of this Amendment shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated only to the minimum extent necessary so that this Amendment shall otherwise remain in full force and effect.

7.5. <u>No Third Party Beneficiaries</u>. This Amendment shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

7.6. <u>Construction</u>.

a) The definitions contained in this Amendment and the Asset Purchase Agreement are applicable to the singular as well as the plural forms of such terms. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of names and pronouns shall include the plural and vice versa. The word "<u>including</u>" and "<u>include</u>" and other words of similar import will be deemed to be followed by the phrase "<u>without limitation</u>". The words "<u>herein</u>", "<u>hereto</u>" and "<u>hereby</u>," and other words of similar import refer to this Amendment as a whole and not to any particular Section or other

subdivision of this Amendment. References to Articles, Sections, clauses, subclauses, subparagraphs, Annexes and Exhibits herein are references to Articles, Sections, clauses, subclauses, subparagraphs, Annexes and Exhibits of this Amendment. The word "if" and other words of similar import will be deemed to be followed by the phrase "and only if." Any reference herein to law or to a law, statute, rule or regulation of any Governmental Entity (or any provision thereof) shall include all laws and such law, statute, rule or regulation promulgated thereunder (or provision thereof), including any successor thereto, as it may be amended from time to time. Any reference herein to "dollars" or "$" shall mean United States dollars.

b) After the execution of this Amendment, Buyer may add or delete Assumed Contracts from Annex A of the Asset Purchase Agreement upon written notice to Sellers, which shall be delivered up until 12:00 PM New York time on the 10th day prior to Closing; provided that unless Buyer consents no disclosure pursuant to any such amendment by Buyer shall be deemed to amend or supplement any of the Disclosure Schedules, to prevent or cure any misrepresentation, breach of warranty or breach of covenant. For avoidance of doubt, any written notice delivered according to the terms of Section 9(f) of the Asset Purchase Agreement of additions or deletions of Assumed Contracts from Annex A of the Asset Purchase Agreement received by Sellers after 12:00 PM New York time on the 10th day prior to Closing shall be null and void in all respects.

7.7.    Computation of Time. In computing any period of time prescribed by or allowed with respect to any provision of this Amendment that relates to Sellers or the Chapter 11 Cases, the provisions of rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply.

7.8.    Mutual Drafting. The Parties have participated jointly in the negotiation and drafting of this Amendment. In the event an ambiguity or question of intent or interpretation arises, this Amendment shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Amendment.

7.9.    Headings. The Section headings contained in this Amendment are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Amendment.

7.10.    Counterparts; Facsimile or Email Signatures. This Amendment may be executed in one (1) or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Amendment or any counterpart may be executed and delivered by facsimile or email with scan attachment copies or pdf, each of which shall be deemed an original.

7.11.    Succession and Assignments. This Amendment and the Asset Purchase Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns. No Party may assign either this Amendment or the

Asset Purchase Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Parties.

7.12. <u>Full Force and Effect</u>. Except as specifically amended herein, the Parties hereby agree and acknowledge that all of the terms and provisions set forth in the Asset Purchase Agreement remain in full force and effect in all respects.

**[SIGNATURE PAGES FOLLOW]**

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment on the date first written above.

**SELLERS:**

**WRC MEDIA INC.**

By: _____
  Name: Thomas A. Williams
  Title: Vice President

**COMPASSLEARNING, INC.**

By: _____
  Name: Thomas A. Williams
  Title: Vice President

**BUYER:**

**COMPASSLEARNING ACQUISITION CORPORATION**

By: _____
  Name:
  Title:

**GUARANTOR:**

**MARLIN EQUITY II, L.P.**

**By:  Marlin Equity Partners II, L.P.**

**Its:   General Partner**

**By:  Marlin Ultimate GP, LLC**

**Its:  General Partner**

**By:** _____

**Name:**

**Title:**

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment on the date first written above.

**SELLERS:**

**WRC MEDIA INC.**

By: _____
    Name: Thomas A. Williams
    Title: Vice President

**COMPASSLEARNING, INC.**

By: _____
    Name: Thomas A. Williams
    Title: Vice President

**BUYER:**

**COMPASSLEARNING ACQUISITION CORPORATION**

By: _____
    Name: Nick Kaiser
    Title: President

**GUARANTOR:**

**MARLIN EQUITY II, L.P.**

By:  **Marlin Equity Partners II, L.P.**

Its:   **General Partner**

By:  **Marlin Ultimate GP, LLC**

Its:   **General Partner**

By: _____

**Name:** Nick Kaiser

**Title:** Partner

<u>Annex A</u> to the Asset Purchase Agreement

*[see attached]*

<u>**Annex A**</u>

<u>**Assumed Contracts**</u>

<u>**A. Written Agreement**</u>

As of the date hereof, Compass maintains the following active written agreements which constitute Assumed Contracts:

- Agreement by and between Acclaim Talent Inc. and CompassLearning, Inc., dated July 31, 2009.
- License Agreement by and between Appintec Corporation and Jostens Learning Corporation, dated August 14, 1990 and as amended by that certain Addendum, dated July 10, 2009.
- License Agreement by and between CompassLearning, Inc. and Allene M. White, dated August 1, 2009.
- Lease Agreement by and between CompassLearning, Inc. and AMLI Management Company, dated March 25, 2009.
- Permissions Agreement by and between CompassLearning, Inc. and Ancient-Greece.org, dated September 4, 2007.
- Confidentiality, Non-Disclosure, and Non-Use Agreement by and between Anoka-Hennepin Independent School District and CompassLearning, Inc., dated August 6, 2008.
- Independent Contractor Agreement by and between Alisa Hogle and CompassLearning, Inc., dated October 14, 2009.
- AT&T Corporate Digital Advantage Agreement by and between CompassLearning, Inc. and AT&T Mobility National Accounts LLC, effective as of July 29, 2008.
- AT&T Corporate Digital Advantage Agreement by and between CompassLearning, Inc. and AT&T Mobility National Accounts LLC, effective October 21, 2009.
- Agreement by and between Atlanta Public Schools and CompassLearning, Inc., dated June 29, 2009.
- Rental Agreement by and between LEAF Funding, Inc. (Austin Pure Water Treatment, Inc.) and CompassLearning, Inc., dated March 26, 2009.
- Channel Service Agreement by and between Avaya Inc. and CompassLearning, Inc., dated June [__], 2006
- Independent Contractor Agreement by and between CompassLearning, Inc. and Babs George, dated October 1, 2009.
- Letter Agreement by and between CompassLearning, Inc. and Baker Botts LLP, dated February 7, 2008.
- License Agreement by and between CompassLearning, Inc. and Bank Street College Education, date September 1, 2008.
- Letter of Agreement by and between Beacon Press and CompassLearning, Inc., dated December 14, 2007.
- Retention Agreement by and between Beatty Bangle Strama P.C. and CompassLearning, Inc., dated September 11, 2009.
- Subscription Customer Agreement by and between CompassLearning, Inc. and Big Machines, Inc. effective as of April 1, 2008.
- License Agreement by and between Bookette Software Company and CompassLearning, Inc. dated August 27, 2008.
- Software License and Distribution Agreement by and between CompassLearning, Inc. and Boxer Learning, Inc., effective as of December 2006.

- Agreement by and between Brandt and Hochman Literary Agents, Inc. and CompassLearning, Inc., dated October 29, 2007.
- Reprint Permission Rights by and between Brooks Permissions and CompassLearning, Inc., dated October 23, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Brushup Educational Consultants, dated October 31, 2008 and as further amended by that certain Independent Contractor Agreement dated July 30, 2009.
- Master Services Agreement by and between Bulldog Solutions, Inc. and CompassLearning, Inc., dated August 1, 2007, as amended by that certain Master Services Agreement Addendum, dated March 30, 2009 and as further amended by that certain Master Services Agreement Addendum, dated May 27, 2009.
- Operating Agreement by and between Business Objects Americas and CompassLearning, Inc., effective May 12, 2009.
- End User Agreement by and between Buyout Footage and CompassLearning, Inc. dated April 15, 2008.
- Electronic Publishing License Agreement by and between Carroll Atwater Bishop and CompassLearning, Inc. effective May 1, 2003.
- Master Subscription Services Agreement by and between CompassLearning, Inc. and Catapult Learning, LLC, dated April 30, 2009.
- Professional Services Agreement by and between Catapult Systems, Inc. and CompassLearning, Inc., dated October 9, 2009.
- Letter Purchase Order by and between Clarix Technologies, Inc. and CompassLearning, Inc., dated August 27, 2009.
- Service Agreement by and between Cogent Communications Inc. and CompassLearning, Inc., date June 12, 2008.
- Master Service Agreement by and between CompassLearning, Inc. and Collier Talent Agency, dated June 15, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Collier Talent Agency, dated July 31, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Connie Jean Cole, dated October 14, 2009.
- Master Service Agreement by and between Core NAP, L.P. and CompassLearning, Inc., dated August 29, 2008.
- Lease Agreement by and between CR IV Industrial, L.P. and CompassLearning, Inc., dated as of March 16, 2003.
- Professional Services Agreement by and between CompassLearning, Inc. and CTS Production Services, Inc., dated March 31, 2008, as amended by that certain Exhibit C - Statement of Work by and between CompassLearning, Inc. and CTS Production Services, Inc., dated August 10, 2009.
- Permission to Publish by and between Curtis Brown, Ltd. and CompassLearning, Inc., dated November 22, 2004.
- Permission to Publish by and between Curtis Brown, Ltd. and CompassLearning, Inc., effective as of November 13, 2008.
- Permission to Publish by and between Curtis Brown, Ltd. and CompassLearning, Inc., dated November 10, 2008.
- Independent Contractor Agreement by and between Cynthia Ash and CompassLearning, Inc. dated October 30, 2009.
- Independent Contractor Agreement by and between David Barker and CompassLearning, Inc. dated December 2, 2009.

- Independent Contractor Agreement by and between CompassLearning, Inc. and David Driscoll, dated November 10, 2008 and as further amended by that certain Independent Contractor Agreement dated July 30, 2009.
- Permissions Agreement by and between David Higham Associates and CompassLearning, Inc., dated October 16, 2007.
- Permission to Publish by and between Democritus Properties, LLC and CompassLearning, Inc., dated [____], 2008.
- Permission to Print by and between DK Images and CompassLearning, Inc., dated August 22, 2008.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Dolores Riley, dated January 30, 2009.
- Electronic Second Serial Contract by Don Congdon Associates, Inc., dated Novermber 4, 2008.
- Permission by and between Dorian Brooks/ Margaret Russell and CompassLearning, Inc., dated [____], 2008.
- License Agreement by and between CompassLearning, Inc. and Dr. Russell R. Hopcroft, dated November 16, 2007.
- Independent Contractor Agreement by and between E. Jason Liebrecht and CompassLearning, Inc. dated August 4, 2009.
- Reseller Agreement by and between E2020, Inc. and CompassLearning, Inc., dated January 1, 2006 as amended by that Amendment Number 1 to Reseller Agreement effective September 25, 2006, and as further amended by that Amendment Number 2 to Reseller Agreement effective August 31, 2007.
- Settlement and Release Agreement by and between E2020, Inc. and CompassLearning, Inc., dated March [____], 2008.
- Three-Party Service Escrow Agreement by and between E2020, Inc., CompassLearning, Inc., and Iron Mountain Intellectual Property Management, Inc., dated September 1, 2008.
- License Agreement by and between CompassLearning, Inc. and Elsa Marston, dated January [____], 2008.
- Tax, Audit, Audit Related & Other Services Request by and between CompassLearning, Inc. and Ernst & Young LLP, dated July 8, 2009.
- Statement of Work - Bidder Registry Certificate of Eligibility Renewal Assistance by and between CompassLearning, Inc. and Ernst & Young LLP, dated September 23, 2008.
- Statement of Work - Various Tax Registrations by and between CompassLearning, Inc. and Ernst & Young LLP, dated September 23, 2008.
- Statement of Work - Business Tax Returns Preparation by and between CompassLearning, Inc. and Ernst & Young LLP, dated October 9, 2008.
- Statement of Work - Business Tax Returns Preparation by and between CompassLearning, Inc. and Ernst & Young LLP, dated October 13, 2008.
- Independent Contractor Agreement by and between Eric Eckles and CompassLearning, Inc., dated November 17, 2009.
- Employment Agreement by and between WRC Media, Inc. and Eric Loeffel, effective December 1, 2006.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Erica Hopf, dated October 27, 2009.
- Amended and Restated Agreement by and between CompassLearning, Inc. and Erie One Boces, dated July 1, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Erin Leigh Shaw, dated September [ ], 2009.

- Reseller Agreement by and between EScience Labs, Inc. and CompassLearning, Inc., dated November 13, 2008.
- Permission by Estate of William Gropper, dated December 1, 2007.
- Licensing Agreement by and between Family Learning Association and CompassLearning, Inc., dated January 26, 2009.
- License Agreement by and between Farrar, Straus and Giroux, LLC and CompassLearning, Inc., dated November 12, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Florida School Services, dated January 1, 2008 and as amended by that Independent Contractor Agreement effective January 1, 2009.
- Permission Agreement by and between Frances Collin and CompassLearning, Inc., dated April 29, 2008.
- License Agreement by and between CompassLearning, Inc. and Fulcrum Publishing, dated October [____], 2008.
- Permission to Reprint by and between Gallup Poll and CompassLearning, Inc., dated March 4, 2008.
- License Agreement by and between CompassLearning, Inc. and Gareth Stevens Publishing, effective March 1, 2008.
- Permission to Print by and between CompassLearning, Inc. and Gareth Stevens, Inc., September 6, 2006.
- Sales Order by and between Getty Images and CompassLearning, Inc., dated April 8, 2008.
- Audio-Visual Duplication Agreement by and between Special Collections and Archives, Georgia State University Library and CompassLearning, Inc., date July 7, 2008.
- Free Document License by and between GNU and CompassLearning, dated [____].
- License Agreement by and between CompassLearning, Inc. and Gordon Skene Sound Collection, effective October 16, 2008.
- Permission to Reprint Agreement by and between Hachette Book Group USA, Inc. and CompassLearning, Inc., dated September 3, 2008.
- Limited Permission and License by and between CompassLearning, Inc. and Hacienda La Puente Unified School District, dated [____].
- Permission to Reprint by and between Harcourt Brace & Company and Jostens Learning, dated [____].
- Permissions Agreement by and between Harold Ober Associates, Inc. and CompassLearning, Inc., dated October 22, 2007.
- Permissions Agreement by and between Harold Ober Associates, Inc. and CompassLearning, Inc., dated Septemter 28, 2008.
- Permissions Agreement by and between Harold Ober Associates, Inc. and CompassLearning, Inc., dated June 30, 2008.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated June 27, 2005.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated November 15, 2007.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated March 4, 2008.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated September 5, 2008.
- Electronic Permission Agreement by and between HarperCollins Publisher and CompassLearning, Inc., dated October 18, 2007.

- Agreement for Permission to Reprint by and between CompassLearning, Inc. and Henry Holt and Company, LLC, dated December 16, 2008.
- Purchase Agreement by and between CompassLearning, Inc. and Hope Online, dated July 23, 2009.
- Permission to Reprint by and between Houghton Mifflin Harcourt and CompassLearning, Inc., effective October 1, 2008.
- Renewal of Permission to Reprint by and between CompassLearning, Inc. and Houghton Mifflin Company, dated March 22, 2002.
- License Agreement by and between Houghton Mifflin Company and CompassLearning, Inc., dated December 21, 2007.
- Permission to Reprint by and between Ibis Communications, Inc. and CompassLearning, Inc., dated September 30, 2008.
- Statement of Work by and between International Business Machines Corporation and CompassLearning, Inc., dated June 29, 2007 and as amended in that Statement of Work dated June 19, 2009.
- Retainer Agreement by and between CompassLearning, Inc. and Ice Miller LLP, effective January 7, 2008 and as amended in that Letter Agreement dated October 1, 2009.
- Purchase Agreement by and between CompassLearning, Inc. and Illinois Learning Technology Purchase Program, dated February 13, 2009.
- Customer Agreement by and between CompassLearning, Inc. and Iron Mountain Information Management, Inc., effective December 1, 2007.
- Customer Agreement by and between CompassLearning, Inc. and Iron Mountain Information Management, Inc. Records Management Division, dated [_____].
- Reseller Agreement by and between CompassLearning, Inc. and It's All About Kids, LLC., dated December 12, 2008.
- License Agreement by and between CompassLearning, Inc. and Jack Watson, effective December 9, 2008.
- Independent Contractor Agreement by and between Jeff Aronsky and CompassLearning, Inc., dated November 18, 2009.
- Independent Contractor Agreement by and between Jennifer Bajalia and CompassLearning, Inc., dated October 14, 2009.
- Permission to Reprint by and between John Hawkins & Associates, Inc. and CompassLearning, Inc., dated January 18, 2008.
- License Agreement by and between CompassLearning, Inc. and Javaka Steptoe, for the Estate of John Steptoe, effective September 22, 2008.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Jonathan Legendre, dated November 24, 2008 and as amended by that Independent Contractor Agreement dated April 15, 2009 and as amended by that Independent Contractor Agreement dated August 10, 2009.
- Services Agreement by and between CompassLearning, Inc. and Jones Lang LaSalle Brokerage, Inc., dated September 16, 2009.
- Independent Contractor Agreement by and between Julianna Wright and CompassLearning, Inc., dated August 12, 2009.
- Independent Contractor Agreement by and between Kathleen Trambley and CompassLearning, Inc., dated November 10, 2009.
- Independent Contractor Agreement by and between Kelli Bland and CompassLearning, Inc., dated August 12, 2009.
- Annual Agreement by and between Killer Tracks and CompassLearning, Inc., dated July 12, 2007.

- Permission to Reprint by and between King's College London and CompassLearning, Inc., dated **[____].**
- Independent Contractor Agreement by and between CompassLearning, Inc. and Kyle Ritter, dated October 14, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Laura E. Guida, dated February 12, 2008 and as amended by that Independent Contractor Agreement dated March 31, 2009.
- Letter of Agreement by and between Learner First LLC and CompassLearning, Inc., dated February 23, 2009.
- License Agreement by and between CompassLearning, Inc. and Licensebox, a Moda Entertainment Company, dated **[____].**
- License Agreement by and between CompassLearning, Inc. and Licensebox, a Moda Entertainment Company, dated January 3, 2009.
- Master Services Agreement by and between Limelight Networks, Inc. and CompassLearning, Inc., dated February 20, 2009.
- Software Agreement by and between Liveright Publishing Corporation and CompassLearning, Inc., dated **[____].**
- Self-Service Storage Rental Agreement by and between CompassLearning, Inc. and Lockaway Storage-Austin, LLC, dated **[____].**
- License Agreement by and between McRae Books and CompassLearning, Inc., dated Sepember 2, 2008.
- License Agreement by and between Map Resources and CompassLearning, Inc., dated September **[____]**, 2008.
- Extended License Agreement by and between Map Resources and CompassLearning, Inc., dated November 13, 2007.
- Professional Management Agreement by and between CompassLearning, Inc. and Marketo, Inc., dated September 8, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Matthew Bardoe, dated December 22, 2008 and as amended by that Independent Contractor Agreement dated Augutst 10, 2009.
- License Agreement by and between CompassLearning, Inc. and Sandra Markle, effective June 3, 2008.
- License Agreement by and between CompassLearning, Inc. and Meet the Author, effective March 12, 2008.
- Film Clip Usage Agreement by and between MGM Consumer Products and CompassLearning, Inc., dated February 29, 2000.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Michael Ross, dated, November 24, 2008 and as amended by that Independent Contractor Agreement dated April 10, 2009.
- Microsoft Volume Licensing Agreement by and between CompassLearning, Inc. and Microsoft Licensing, GP, effective as of April 1, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Mike Caciari, dated April 29, 2009 and as amended by that Independent Contractor Agreement dated May 19, 2009, and as further amended by that Independent Contractor Agreement date August 10, 2009.
- License Agreement by and between CompassLearning, Inc. and Naomi Long Madgett, effective July 1, 2008.
- Permission to Reprint by and between the National Council of Teachers of Mathematics and CompassLearning, Inc., dated April 24, 2008.

- Permission to Reprint by and between National Geographic and CompassLearning, Inc., dated February 5, 2008.
- Permission to Reprint by and between National Geographic and CompassLearning, Inc., dated January 28, 2008.
- Permission to Reprint by and between National Geographic and CompassLearning, Inc., dated September 5, 2008.
- Permission to Print by and between New Directors Publishing Corporation and CompassLearning, Inc., dated September 25, 2008.
- License Agreement by and between Net Transmit & Receive and CompassLearning, Inc., effective November 29, 2007.
- Reprint Permission Contract by and between New Directions Publishing Corporation and CompassLearning, Inc., dated November 21, 2008.
- License Agreement by and between CompassLearning, Inc. and Nikki Giovanni, University Distinguished Professor, effective November 30, 2007.
- License Agreement by and between CompassLearning, Inc. and Nikki Giovanni, University Distinguished Professor, effective November 30, 2007.
- Co-Marketing Agreement by and between Northwest Evaluation Association and CompassLearning, Inc., dated November 1. 2005.
- Permission to Reprint by and between the Oakland Museum of California and CompassLearning, Inc., dated February 5, 2008.
- Value Added Reseller Agreement by and between CompassLearning, Inc. and Parent Tutor Corporation, dated February 6, 2007.
- Permission to Reprint by and between PARS International Corp. and CompassLearning, Inc., dated November 28, 2007.
- Permission Agreement by and between PARS International Corp./The Washington Post and CompassLearning, Inc., dated [_____].
- License Agreement by and between American Guidance Service, Inc. and CompassLearning, Inc., dated August 14, 2004.
- Permission to Reprint by and between Allyn and Bacon and CompassLearning, Inc., dated October 29, 2007.
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [_____] (contract #97384).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [_____] (contract #97388).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [_____] (contract #97548).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [_____] (contract #97742).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [_____] (contract #93687).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [_____] (contract #97067).
- Permissions Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc. effective as of November 1, 2008.
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., effective August 1, 2009 (contract #97066).
- Permission to Reprint Copyrighted Material by and between PFD and CompassLearning, Inc., effective as of January 8, 2007.

- Permission to Print by and between Redux Pictures and CompassLearning, Inc., dated November 30, 2007.
- Maintenance Agreement by and between Imagistics and CompassLearning, Inc., dated December 11, 2003.
- Lease Agreement by and between Pitney Bowes Credit Corporation and CompassLearning, Inc., dated December 11, 2003.
- Reseller Agreement by and between CompassLearning, Inc. and Prolangs Co., Ltd., dated September 18, 2000.
- Distribution Agreement by and between Q Group PLC and CompassLearning, Inc., dated March 24, 2004 and as amended by Distribution Agreement dated December 6, 2005 and as further amended by that Distribution Agreement dated December 1, 2005.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Rachel Gossen, dated July 30, 2009.
- Managed Hosting Master Services Agreement by and between Rackspace, Ltd. and CompassLearning, Inc., dated August 8, 2003.
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #256625).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #265314).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #264704).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #263942).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #263941).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #2358384).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #257482).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #256632).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #256631).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #262540).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [_____] (contract #257481).
- Permission to Reprint by and between Reading Museum Service and CompassLearning, Inc., dated [_____].
- Independent Contractor Agreement by and between CompassLearning, Inc. and Renee D. O'Lear, dated February 12, 2009 and as amended by that Independent Contractor Agreement dated August 15, 2009, and as further amended by that Independent Contractor Agreement dated August 10, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Robert M. Talbot III, dated November 24, 2008 and as amended by that Independent Contractor Agreement dated May 19, 2009, and as further amended by that Independent Contractor Agreement dated August 10, 2009, and as further amended by that Independent Contractor Agreement dated August 15, 2009.

- License Agreement by and between CompassLearning, Inc. and Rolemodel.net, effective October 25, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Rudy Azcuy, dated July 20, 2009.
- Permission to Reprint by and between Russell & Volkening, Inc. and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Russell & Volkening, Inc. and CompassLearning, Inc., dated [____].
- Safekeeping Agreement by and between Safesite, Inc. and CompassLearning, Inc., dated September 28, 2009.
- UE Add-On Order License Agreement by and between salesfore.com, inc. and CompassLearning, Inc., dated June 4, 2008.
- UE Add-On Order License Agreement by and between salesfore.com, inc. and CompassLearning, Inc., effective as of October 28, 2007.
- Master Subscription Agreement by and between salesforce.com, inc. and CompassLearning, Inc., effective as of December 16, 2005.
- Independent Contractor Agreement by and between Sarah Goode and CompassLearning, Inc., dated October 14, 2009.
- Permission to Reproduce by and between Scholastic, Inc. and CompassLearning, Inc., dated October 28, 2004.
- License Agreement by and between CompassLearning, Inc. and Science & Public Policy Institute, effective December 5, 2007.
- Permission to Reprint by and between Science News and CompassLearning, Inc., dated December 17, 2008.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Scott Hardy, dated July 31, 2009.
- Independent Contractor Agreement by and between Shawn Sides and CompassLearning, Inc., dated July 31, 2009.
- License Agreement by and between CompassLearning, Inc. and Shelby County School System, dated July [____], 2009.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated September 3, 2008.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated September 3, 2008.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated December 18, 2008.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated January 29, 2008.
- Permission to Reprint by and between Simon & Schuster Inc. and CompassLearning, Inc., dated July 17, 2008.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Permission to Reprint by and between Simon & Schuster Inc., dated September 3, 2008.
- Permission to Reprint by and between Simon & Schuster Inc., dated September 3, 2008.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.

- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 17, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 17, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 17, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 1, 2009.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 1, 2009.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 1, 2009.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 2008.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 2008.
- Service Agreement by and between CompassLearning, Inc. and SimplexGrinnell LP, effective March 15, 2006.
- Letter Agreement by and between Skillsoft Corporation and CompassLearning, Inc., dated May 12, 2009.
- Insertion Order by and between SmartBrief Inc.and CompassLearning, Inc., dated November 18, 2009.
- Permission to Reprint by and between Sola Scriptura and CompassLearning, Inc., dated August 21, 2008.
- Permissions Agreement by and between Sourcebooks, Inc. and CompassLearning, Inc., effective December 2, 2008.
- Service Agreement by and between Sprint Solutions, Inc. and CompassLearning, Inc. dated September 17, 2009.
- Permission to Reproduce by and between the St. Petersburg Times and CompassLearning, Inc., dated October 19, 2007.
- Recovery Services Agreement by and between SunGard Availability Service LP and CompassLearning, Inc., dated April 2, 1996.
- Permission Agreement by and between Susan Bergholz Literary Services and CompassLearning, Inc., dated January 21, 2008.
- Permission Agreement by and between Susan Bergholz Literary Services and CompassLearning, Inc., dated June 20, 2008.
- Order Agreement by and between Symtrax Corporation and CompassLearning, Inc., dated August 17, 2005.
- Marketing Agreement by and between CompassLearning, Inc. and TCG Consulting, LP, effective December 1, 2007.
- Subscription Agreement by and between Telephonetics, Inc. and CompassLearning, Inc., dated July 17, 2006.
- License Agreement by and between CompassLearning, Inc. and Texas Education Society, effective [____].
- Preprint Permission by and between the Academy of Political Science and CompassLearning, Inc., dated [____].
- License Agreement by and between the Granger Collection and CompassLearning, Inc., dated May 16, 2008.
- Letter of Agreement by and between The Henry Ford Museum and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Lerner Publishing Media and CompassLeraning, Inc., dated July 17, 2000.
- License Agreement by and between the New York Times and CompassLearning, Inc., dated [____].
- Permission Agreement by and between The New York Times and CompassLearning, Inc., dated [____].

- Agreement for Services by and between CompassLearning, Inc. and The Patrick Company, dated January 15, 2006, as amended on each of June 21, 2006, September 5, 2006, February 9. 2007, August 6, 2007 and as further amended on February 27, 2009.
- Permission to Reprint by and between The Society of Authors and CompassLearning, Inc., dated January 22, 2009.
- Permission to Reprint by and between the Truman Capote Literary Trust and CompassLearning, Inc., dated January 7, 2008.
- Value Added Reseller Agreement by and between Thinkwell Corporation and CompassLearning, Inc., dated August 3, 2006.
- Permission to Reprint by and between Thompson and Thompson and CompassLearning, Inc., dated December 26, 2008.
- Access License Agreement by and between CompassaLearning, Inc. and Thought Equity Motion, Inc., effective December 8, 2008.
- Platinum Maintenance Agreement by and between ThyssenKrup Elevator and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Tilbury House Publishers and CompassLearning, Inc., dated October 21, 2008.
- Dedicated Access Service Agreement by and between CompassLearning, Inc. and Time Warner Cable, dated March 3, 2009.
- Reseller Agreement by and between CompassLearning, Inc. and Time4Learning, effective May 13, 2008 and as amended by that Reseller Agreement dated, July 14, 2009.
- Permission to Reprint by and between Trenhom Tech and CompassLearning, Inc., dated April 22, 2008.
- Independent Contractor Agreement by and between Tricial Files and CompassLearning, Inc., dated October 14, 2009.
- Permission to Print by and between University of Illinois at Urbana-Champaign and CompassLearning, Inc., dated January 21, 2009.
- Permission to Reprint by and between US News & World Report and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between the University of Houston and CompassLearning, Inc., dated November 6, 2008.
- Permission to Reprint by and between the University of Houston and CompassLearning, Inc., dated December 17, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Vernon Renegar, dated October 14, 2009.
- Software License Agreement by and between Vertex, Inc. and CompassLearning, Inc., effective November 12, 2008.
- Permission to Reprint by and between Visuals Unlimited and CompassLearning, Inc., dated November 12, 2007.
- Permission to Reprint by and between Wallace Literary Agency, Inc. and CompassLearning, Inc., dated October 18, 2007.
- Independent Contractor Agreement by and between CompasssLearning, Inc. and Wayne Blanton, dated March 25, 2008 and as amended by that Independent Contractor Agreement dated April 13, 2009.
- Permission for Cartoon by and between Weston Benshoof Rochefort Tubalcava & MacCuish LLP and CompassLearning, Inc., dated October 31, 2007.
- License Agreement by and between CompassLearning, Inc. and William B. Badke, effective December 2, 2008.

- Content License Agreement by and between CompassLearning, Inc. and Wordsmyth, LLC, effective April 21, 2008.
- Permission to Reprint by and between the World Almanac Education Group and CompassLearning, Inc., dated August 22, 2006.
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated [____] (Contract #15484).
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated [____] (Contract #16793).
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated [____] (Contract #16863).
- License Agreement by and between Appintec Corp. and Jostens Learning Corporation, dated August 14, 2009 and as amended by that certain License Agreement dated July 10, 2009.
- Service Agreement by and between American Registry for Internet Numbers, Ltd. and CompassLearning, Inc., dated February 127, 2009.
- Lease Schedule by and between CompassLearning, Inc. and CIT Communications Finance Corporation, dated June 24, 2006.
- Request for Equipment purchase by and between CompassLearning, Inc. and DreamFactory Software, Inc., dated October [____], 2008.
- Amendment to Independent Contractor Agreement by and between CompassLearning, Inc. and Linda Bennet, dated December 2, 2009.
- Contract for Professional Services by and between CompassLearning, Inc. and P16 Strategies, LP, effective August 1, 2009.
- Agreement by and between CompassLearning, Inc. and The Metropolitan Museum of Art, dated January 16, 2008.
- Letter of Understanding from CompassLearning, Inc. to The School District of Greenville County, dated June 10, 2009.
- Permission to Reprint by and between The University of Texas at Austin and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Thompson Learning Global Rights Group and CompassLearning, Inc., dated November 14, 2007.
- Compel Service Subscription Agreement by and between Centive, Inc. and CompassLearning, Inc., effective April 1, 2008.
- Permission to Reprint by and between The Kansas City Star and CompassLearning, Inc., date [____].
- Permission to Reprint by and between The New York Public Library and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Walker & Co. and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Warner/Chappell Music, Inc. and CompassLearning, Inc, dated [____].
- Permission to Reprint by and between Weekly Reader Corporation and CompassLearning, Inc., dated November 6, 2006.
- Permission to Reprint by and between Weekly Reader Corporation and CompassLearning, Inc., dated May 13, 2008.
- License Agreement by and between American Guidance Service, Inc. and CompassLearning, Inc., dated August 14, 2004.
- License Agreement by and between Alena Loiselle and CompassLearning, Inc., dated June 5, 2006.
- Permission to Print by and between Brent Ashabranner and CompassLearning, Inc., dated February 5, 1998.

- License Agreement by and between Charlotte Sheedy Literary Agency, Inc. and CompassLearning, Inc., dated December 22, 2004.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between The Christian Science Monitor and CompassLearning, Inc., dated February 15, 2001.
- License Agreement by and between Corbis Corporation and CompassLearning, Inc., dated January 17, 2005.
- Permission to Print by and between Curtis Brown, Ltd. and CompassLearning, Inc., dated September 4, 2003.
- Electronic Publishing License Agreement by and between Edith Baer and CompassLearning, Inc., dated March 26, 1993, as renewed on each of November 3, 1999, February 20, 2001 and December 3, 2003, and as amended by that certain Amendment to Electronic Publishing License Agreement, effective as of March 9, 2006.
- License Agreement by and between Ezra Jack Keats Foundation and CompassLearning, Inc., dated June 22, 2006.
- Permissions Agreement by and between Harold Ober Associates Incorporated and CompassLearning, Inc., dated July 29, 2005.
- Permissions Agreement by and between Harold Ober Associates Incorporated and CompassLearning, Inc., dated November 7, 2005.
- Permissions Agreement by and between Harold Ober Associates Incorporated and CompassLearning, Inc., dated January 20, 2003.
- Permission to Print by and between Harper Collins Publishers and CompassLearning, Inc., dated October 14, 2004.
- Permission to Print by and between Harper Collins Publishers and CompassLearning, Inc., dated September 8, 2006.
- Permission to Print by and between Harper Collins Publishers and CompassLearning, Inc., dated October 13, 2008.
- Permission to Print by and between Houghton Mifflin Harcourt Publishing Company and CompassLearning, Inc., dated September 15, 2008.
- Permission to Print by and between Houghton Mifflin Harcourt Publishing Company and CompassLearning, Inc., dated December 9 2009.
- Permission to Print by and between Houghton Mifflin Harcourt Publishing Company and CompassLearning, Inc., dated September 18, 2008.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.

- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Electronic Publishing License Agreement by and between Minden Pictures and CompassLearning, Inc., dated August 11, 1999 and as renewed by that certain Letter Agreement, dated August 23, 2005.
- Permission to Print by and between Nancy Galt Literary Agent and CompassLearning, Inc., dated January 17, 2003.
- Software Agreement by and between Penguin Group (USA) Inc. and CompassLearning, Inc., dated December 2, 2004.
- Internet Agreement by and between Random House, Inc. and CompassLearning, Inc., dated November 15, 2004.
- Internet Agreement by and between Random House, Inc. and CompassLearning, Inc., dated February 17, 2005.
- Electronic Agreement by and between Random House, Inc. and CompassLearning, Inc., dated August 21, 2008.
- Image Reproduction and Usage Application by and between San Diego Aerospace Museum and CompassLearning, Inc., dated January 27, 2005.
- Videogram License Agreement by and between Shapiro, Bernstein & Co., Inc. and CompassLearning, Inc., effective as of August 1, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Permission to Print by and between The Permission Company and CompassLearning, Inc., dated October 15, 2003.
- Agreement for Permission to Reprint by and between Thomson Gale and CompassLearning, Inc., dated December 13, 2004.
- Permission to Reprint by and between University of Cambridge Scott Polar Research Institute and CompassLearning, Inc., dated March 10, 2005.
- Permission to Print by and between U.S. News & World Report and CompassLearning, Inc., dated October 27, 2008.
- Electronic Publishing License Agreement by and between The Walter Farley Family Trust and Jostens Learning Corporation, dated January 6, 2000.
- Electronic Publishing License Agreement by and between Weekly Reader Corp. and CompassLearning, Inc., dated August 31, 2004.
- Electronic Publishing License Agreement by and between Will Hobbs and CompassLearning, Inc., dated March 7, 2000, as renewed by that certain Letter Agreement, dated August 23, 2005.
- Use Agreement by and between Wright State University Libraries and CompassLearning, Inc., dated March 1, 2005.
- Contract for Professional Services by and between Jan Wilcox and CompassLearning, Inc., effective as of December 1, 2009.
- License Agreement by and between ArchieMD, Inc. and CompassLearning, Inc., dated February 29, 2008.

- Permission to Print by and between Artist Rights Society and CompassLearning, Inc., dated March 3, 2009.
- Permission to Print by and between BBC Information and CompassLearning, Inc., dated October 3, 2008.
- Permission to Print by and between BBC Information and CompassLearning, Inc., dated November 6, 2007.
- Permission to Print by and between Bloomsbury and CompassLearning, Inc., dated September 5, 2008.
- Permission to Print by and between Cartoon Stock Ltd. and CompassLearning, Inc., dated October 7, 2008.
- Membership Agreement by and between ClipArt.com and CompassLearning, Inc., dated July 26, 2007.
- Permission to Print by and between Dinodia Photo Library PVT Ltd. and CompassLearning, Inc., dated November 26, 2007.
- License Agreement by and between DK Images and CompassLearning, Inc., dated August 22, 2008.
- Electronic Second Serial Contract by and between Don Congdon Associates, Inc. and CompassLearning, Inc., dated November 4, 2008.
- License Agreement by and between HarperCollins Publishers and CompassLearning, Inc., dated April 24, 2009.
- Content License Agreement by and between Instructional Resources Corporation and CompassLearning, Inc., dated March 2009.
- Permission to Reprint by and between Jack Jeffrey Photography and CompassLearning, Inc., dated October 31, 2007.
- License Agreement by and between Joe LeMonnier and CompassLearning, Inc., dated October 15, 2008.
- Permission to Reprint by and between Joe Dunder and CompassLearning, Inc., dated October 2007.
- Permission to Print by and between The Mariner's Museum and CompassLearning, Inc., dated September 3, 2008.
- Permission to Print by and between Matthew White and CompassLearning, Inc., dated April 21, 2008.
- Permission to Print by and between MonsterTrak and CompassLearning, Inc., dated September 12, 2007.
- Permission to Print by and between Museum of Reading and CompassLearning, Inc., dated September 17, 2008.
- Permission to Reprint by and between National Council for the Social Studies and CompassLearning, Inc., dated November 9, 2007.
- Permission to Reprint by and between National Organization for Women, Inc. and CompassLearning, Inc., dated July 1, 2008.
- Permission to Print by and between O.W. Toad Ltd. and CompassLearning, Inc., dated October 3, 2008.
- Permission to Publish by and between Patrick Manning and CompassLearning, Inc., dated September 4, 2008.
- Permission to Print by and between Paul Kunkel and CompassLearning, Inc., dated May 16, 2008.
- Permission to Print by and between American Documentary, Inc. and CompassLearning, Inc., dated November 28, 2007.

- Permission to Print by and between the Saturday Evening Post and CompassLearning, Inc., dated October 23, 2007.
- Permission to Print by and between Acorn Newspapers and CompassLearning, Inc., dated November 26, 2007.
- Permission to Print by and between Taxicab Geometry and CompassLearning, Inc., dated October 15, 2007.
- Permission to Print by and between The Michigan Daily and CompassLearning, Inc., dated October 12, 2007.
- Permission to Print by and between the Truman Capote Literacy Trust and CompassLearning, Inc., dated January 7, 2008.
- Permission to Print by and between USHistory.Org and CompassLearning, Inc., dated June 2, 2008.
- Permission to Print by and between USA Weekend and CompassLearning, Inc., dated February 26, 2008.
- License Agreement by and between Visionlearning, Inc. and CompassLearning, Inc., dated November 17, 2008.
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated January 15, 2009.
- Permission to Print by and between Yehuda Berlinger and CompassLearning, Inc., dated February 5, 2009.
- License Agreement by and between EduMedia Science and CompassLearning, Inc., dated January 21, 2009.

## B. Non-Written Agreements

In the ordinary course of business, Compass maintains certain relationships with vendors on a purchase order basis, including the following vendors:

- DK Images
- Family Learning Association
- Getty Images
- Texas ASCD
- Business Objects Americas
- Ibis Communications, Inc.
- Instructional Resources Corporation
- Jupiter Images
- Landov Murrow
- Market Data Retrieval
- PR Newswire Association, LLC
- Visuals Unlimited
- University of Illinois Library at Urbana-Champaign
- Trenholm Tech Archives
- Redux Pictures

The Distribution Agreement by and between Q Group PLC ("Q Group") and Compass expired pursuant to its terms on March 24, 2009. The parties thereto have not and do not plan to enter into a written renewal agreement, but continue to operate without a written agreement.

The Production Management, Warehousing and Fulfillment Agreement by and between Compass and GM Services LLC, dated January 31, 2008, expired pursuant to its terms on January 31, 2009. The parties agreed to proceed on a month to month basis going forward pursuant to the same terms as under the prior written agreement with a 90-day notice period for termination.

Compass conducts business with and pays royalties to Facts For Learning (Weekly Reader/Facts on File), a RDA affiliate, without a written agreement.

<u>Section 1.4(b) of the Disclosure Schedule</u>

*[see attached]*

# Schedule 1.4
# Permitted Liens

A lien on all of the personal property of Compass in favor of JPMorgan Chase Bank, N.A., pursuant to that certain DIP Credit Agreement (as defined in the Agreement). Such lien will exist as of the signing date, but will be released in connection with the Closing and the Bankruptcy Court's entry of the Sale Order.

Compass from time to time enters into financing arrangements with Kansas State Bank of Manhattan to facilitate an installment payment plan for certain school districts. Pursuant to this arrangement, Kansas State Bank of Manhattan, pays Compass a single lump sum payment and then collects interest on the installment payments by the relevant school district. In exchange for such upfront lump sum payment, the Kansas State Bank of Manhattan receives a lien on the relevant equipment and rental payments to which Compass is entitled pursuant to the relevant agreement. Such arrangements are performed in the ordinary course, though infrequent and typically with smaller school districts.

As of the Closing, Kansas State Bank of Manhattan is entitled liens on the equipment and rental payments in connection with arrangements with the following school districts:

- Chinle Unified School District No. 24
- Township Public Schools
- Camden Frontier School District
- Prarie Lea Independent School District
- Essexville-Hampton Public Schools
- Hemlock School District
- Matanuska-Susitna Borough School District
- Concrete School District No. 11
- La Feria ISD
- Metropolitan School District of Decatur Township
- Bellevue ISD
- Littlestown Area School District
- Archuleta School District 50 JT
- Brenham Independent School District
- Corvallis School District No. 1

A lien in favor of CIT Communications Finance Corporation on all equipment as of the date hereof or hereafter acquired sold to Compass and located at Compass' headquarters in Austin, Texas pursuant to that certain Lease No. X130000, including the Avaya, Inc. S8300 M server W/G700 M Gateway and all attachments, accessions, additions, replacements, rentals and software related thereto and proceeds therefrom.

SECOND AMENDMENT TO
ASSET PURCHASE AGREEMENT

This SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT (this "Amendment") is made as of January 13, 2010, by and among WRC Media Inc., a corporation formed under the laws of the State of Delaware ("Parent"), CompassLearning, Inc., a corporation formed under the laws of the State of Delaware ("Compass," and together with Parent, "Sellers"), CompassLearning Acquisition Corporation, a corporation formed under the laws of the State of Delaware ("Buyer"), and Marlin Equity II, L.P., a limited partnership formed under the laws of the State of Delaware ("Guarantor"). Sellers, Buyer and Guarantor are referred to herein individually as a "Party" and collectively as the "Parties."

WHEREAS, this Amendment amends the Asset Purchase Agreement by and among the Parties, dated as of November 30, 2009 (as amended by the First Amendment to Asset Purchase Agreement, dated as of December 23, 2009 (the "First Amendment"), the "Asset Purchase Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Asset Purchase Agreement.

WHEREAS, Sellers filed a petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on August 24, 2009 and are party to the Chapter 11 Cases;

WHEREAS, the Parties entered into the Asset Purchase Agreement, as amended by the First Amendment, pursuant to which Sellers shall sell to Buyer, and Buyer shall purchase from Sellers, the Acquired Assets, and Sellers shall assign to Buyer, and Buyer shall assume from Sellers, the Assumed Liabilities, in each case as of the Closing;

WHEREAS, the Buyer participated in and was deemed the Successful Bidder (as such term is defined in the Bidding Procedures Order) at the Auction held on January 7, 2010;

WHEREAS, pursuant to Section 9(d) of the Asset Purchase Agreement, the Parties may amend the Asset Purchase Agreement.

NOW THEREFORE, in consideration of the mutual agreements and covenants made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

Section 1. Amendment to Definition of Bidding Procedures Order. The Parties hereby agree that the applicable definitions in Section 1 of the Asset Purchase Agreement are hereby replaced in its entirety with the following:

1.1. "Bidding Procedures Order" means the Final Order entered by the Bankruptcy Court on December 18, 2009, attached hereto as Exhibit A, approving, among other things, the Bidding Procedures."

1.2. "Initial Purchase Price" means an amount equal to Thirty-Two Million Five Hundred Thousand Dollars ($32,500,000); provided, however, the Parties acknowledge that the cash consideration paid to Sellers at the Closing pursuant to Sections 2(d)(i) and 2(f)(ii)(H) of the Asset Purchase Agreement shall be an amount equal to Thirty-One Million

Eight Hundred Thousand Dollars ($31,800,000), which reflects a credit granted to the Buyer equal to the sum of the Break Up Fee and the Reimbursable Expenses."

Section 2. Amendment to Sections 2(d)(ii)(B) and 2(d)(ii)(C) to the Asset Purchase Agreement. The Parties hereby agree that Sections 2(d)(ii)(B) and 2(d)(ii)(C) of the Asset Purchase Agreement is hereby replaced in its entirety with the following:

"(B) if Sellers terminate this Agreement pursuant to Section 8(a)(iii) (solely with respect to Sections 7(b)(i), (ii) and (v)), Section 8(a)(v), or Section 8(a)(xi) (but in such termination only if the Closing has not occurred on or before the Drop Dead Date solely because of Buyer's failure to fulfill any of its obligations under this Agreement), then the Deposit, together with all accrued investment income or interest thereon, shall be delivered to the Sellers as liquidated damages (and not as a penalty) as Sellers' sole and exclusive remedy as a result of such termination; and

(C) if this Agreement is terminated (1) by Buyer pursuant to Sections 8(a)(ii), 8(a)(iv), 8(a)(vi), 8(a)(vii), 8(a)(viii), 8(a)(ix), 8(a)(x) or 8(a)(xi) (unless the Closing has not occurred on or before the Drop Dead Date solely because of Buyer's failure to fulfill any of its obligations under this Agreement), (2) by Sellers pursuant to Section 8(a)(iii) (solely with respect to Sections 7(b)(iii) and (iv)) or (3) by either Party or both Parties pursuant to Section 8(a)(i), then the Deposit, together with all accrued investment income or interest thereon, shall be delivered to Buyer."

Section 3. Amendment to Sections 8(c)(ii) and 8(c)(iii) of the Asset Purchase Agreement. The Parties hereby agree that Sections 8(c)(ii) and 8(c)(iii) of the Asset Purchase Agreement is hereby replaced in its entirety with the following:

"(ii) If Sellers terminate this Agreement pursuant to Section 8(a)(iii) (solely with respect to Sections 7(b)(i), (ii) and (v)), Section 8(a)(v), or Section 8(a)(xi), then the Deposit, together with all accrued investment income or interest thereon, shall be delivered to Sellers.

(iii) If this Agreement is terminated (1) by Buyer pursuant to Sections 8(a)(ii), 8(a)(iv), 8(a)(vi), 8(a)(vii), 8(a)(viii), 8(a)(ix), 8(a)(x) or 8(a)(xi), (2) by Sellers pursuant to Section 8(a)(iii) (solely with respect to Sections 7(b)(iii) and (iv)), or (3) by either Party or both Parties pursuant to Section 8(a)(i), then the Deposit, together with all accrued investment income or interest thereon, shall be delivered to Buyer."

Section 4. Amendment to Annex A to the Asset Purchase Agreement. The Parties hereby agree that Annex A to the Asset Purchase Agreement is hereby replaced in its entirety with Schedule I attached hereto.

Section 5. Amendment to Section 2(i) the Asset Purchase Agreement. The Parties hereby agree that Section 2(i) of the Asset Purchase Agreement is hereby replaced in its entirety with the following:

"Allocation. Within twenty (20) days after the determination of the Final Balance Sheet, and if applicable, adjustment to the Initial Purchase Price according to Section 2(h), Sellers and Buyer shall jointly and in good faith prepare an allocation of the Purchase

Price, to the extent properly taken into account under the IRC, (and all other capitalized costs) among the Acquired Assets in accordance with Section 1060 of the IRC and the Treasury regulations thereunder (and any similar provision of United States state or local or non United States law, as appropriate) (the "Allocation" and as finally resolved pursuant to this Section 2(i), the "Final Allocation").  Sellers and Buyer shall work in good faith to resolve any disputes relating to the Allocation.  If Sellers and Buyer are unable to resolve any such dispute within  thirty (30) days after determination of the Final Balance Sheet such dispute shall be resolved promptly by a nationally recognized accounting firm acceptable to Buyer and Sellers, the costs of which shall be borne equally by Buyer and Sellers and the determination of which shall be binding and conclusive on the Parties.  Buyer and Sellers shall report, act and file Tax Returns (including to Internal Revenue Service Form 8594) in all respects and for all purposes consistent with the Final Allocation.  Neither Buyer nor Sellers shall take any position (whether in audits, tax returns or otherwise), which is inconsistent with the Final Allocation unless required to do so by applicable Law; provided, however, that nothing contained herein shall prevent Buyer or Sellers from settling any proposed deficiency or adjustment by any taxing authority based upon or arising out of the Final Allocation, and neither Buyer nor Sellers shall be required to litigate before any court any proposed deficiency or adjustment by any taxing authority challenging such Final Allocation."

Section 6. Effectiveness.  Pursuant to Section 9(d) of the Asset Purchase Agreement, this Amendment shall be effective and binding upon the execution of this Amendment by the Parties.  Any reference in the Asset Purchase Agreement to "this Agreement" shall hereafter be deemed to refer to the Asset Purchase Agreement as amended by the First Amendment and this Amendment, as applicable.

Section 7.  Miscellaneous.

7.1.   Incorporation of Schedules.  The Schedules to this Amendment are incorporated herein by reference and made a part hereof.

7.2.   Governing Law; Jurisdiction.  This Amendment shall in all aspects be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York (other than Section 5 1401 of the New York general obligations law), except to the extent that the laws are superseded by the Bankruptcy Code, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.  For so long as Sellers are subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Amendment, the Asset Purchase Agreement, the other Related Agreements or the transactions contemplated hereby or thereby, and consent to the exclusive jurisdiction of, the Bankruptcy Court.  After Sellers are no longer subject to the jurisdiction of the Bankruptcy Court or if the Bankruptcy Court is unwilling or unable to hear any matter arising under or in connection with this Amendment, the Asset Purchase Agreement, the other Related Agreements or the transactions contemplated hereby or thereby, such matter shall be brought in the courts of the State of New York sitting in the County of New York or of the

United States for the Southern District of New York, and by execution and delivery of this Amendment, each of the Parties consents to the exclusive jurisdiction of those courts. Each of the Parties irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of forum *non conveniens*, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Amendment or the transactions contemplated in the Asset Purchase Agreement.

      7.3.    <u>WAIVERS OF JURY TRIAL</u>. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AMENDMENT OR THE TRANSACTIONS CONTEMPLATED IN THE ASSET PURCHASE AGREEMENT, AS AMENDED.

      7.4.    <u>Severability</u>. The invalidity or unenforceability of any provision of this Amendment shall not affect the validity or enforceability of any other provisions of this Amendment. In the event that any of the provisions of this Amendment shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated only to the minimum extent necessary so that this Amendment shall otherwise remain in full force and effect.

      7.5.    <u>No Third Party Beneficiaries</u>. This Amendment shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

      7.6.    <u>Construction</u>.

      a) The definitions contained in this Amendment and the Asset Purchase Agreement are applicable to the singular as well as the plural forms of such terms. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of names and pronouns shall include the plural and vice versa. The word "<u>including</u>" and "<u>include</u>" and other words of similar import will be deemed to be followed by the phrase "<u>without limitation</u>". The words "<u>herein</u>", "<u>hereto</u>" and "<u>hereby</u>," and other words of similar import refer to this Amendment as a whole and not to any particular Section or other subdivision of this Amendment. References to Articles, Sections, clauses, subclauses, subparagraphs, Annexes and Exhibits herein are references to Articles, Sections, clauses, subclauses, subparagraphs, Annexes and Exhibits of this Amendment. The word "<u>if</u>" and other words of similar import will be deemed to be followed by the phrase "<u>and only if</u>." Any reference herein to law or to a law, statute, rule or regulation of any Governmental Entity (or any provision thereof) shall include all laws and such law, statute, rule or regulation promulgated thereunder (or provision thereof), including any successor thereto, as it may be amended from time to time. Any reference herein to "<u>dollars</u>" or "<u>$</u>" shall mean United States dollars.

      b) After the execution of this Amendment, Buyer may add or delete Assumed Contracts from <u>Annex A</u> of the Asset Purchase Agreement upon written notice to Sellers, which shall be delivered up until 12:00 PM New York time on the 10th day

prior to Closing; provided that unless Buyer consents no disclosure pursuant to any such amendment by Buyer shall be deemed to amend or supplement any of the Disclosure Schedules, to prevent or cure any misrepresentation, breach of warranty or breach of covenant. For avoidance of doubt, any written notice delivered according to the terms of Section 9(f) of the Asset Purchase Agreement of additions or deletions of Assumed Contracts from Annex A of the Asset Purchase Agreement received by Sellers after 12:00 PM New York time on the 10th day prior to Closing shall be null and void in all respects.

7.7. <u>Computation of Time</u>. In computing any period of time prescribed by or allowed with respect to any provision of this Amendment that relates to Sellers or the Chapter 11 Cases, the provisions of rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply.

7.8. <u>Mutual Drafting</u>. The Parties have participated jointly in the negotiation and drafting of this Amendment. In the event an ambiguity or question of intent or interpretation arises, this Amendment shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Amendment.

7.9. <u>Headings</u>. The Section headings contained in this Amendment are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Amendment.

7.10. <u>Counterparts; Facsimile or Email Signatures</u>. This Amendment may be executed in one (1) or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Amendment or any counterpart may be executed and delivered by facsimile or email with scan attachment copies or pdf, each of which shall be deemed an original.

7.11. <u>Succession and Assignments</u>. This Amendment and the Asset Purchase Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns. No Party may assign either this Amendment or the Asset Purchase Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Parties.

7.12. <u>Full Force and Effect</u>. Except as specifically amended herein, the Parties hereby agree and acknowledge that all of the terms and provisions set forth in the Asset Purchase Agreement remain in full force and effect in all respects.

**[SIGNATURE PAGES FOLLOW]**

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment on the date first written above.

**SELLERS:**

**WRC MEDIA INC.**

By: _____
       Name: Thomas A. Williams
       Title: Vice President

**COMPASSLEARNING, INC.**

By: _____
       Name: Thomas A. Williams
       Title: Vice President

**BUYER:**

**COMPASSLEARNING ACQUISITION CORPORATION**

By: _____
       Name:
       Title:

**GUARANTOR:**

**MARLIN EQUITY II, L.P.**

**By: Marlin Equity Partners II, L.P.**

**Its: General Partner**

**By: Marlin Ultimate GP, LLC**

**Its: General Partner**

By: _____
       Name:
       Title:

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment on the date first written above.

**SELLERS:**

**WRC MEDIA INC.**

By: _____
    Name: Thomas A. Williams
    Title: Vice President

**COMPASSLEARNING, INC.**

By: _____
    Name: Thomas A. Williams
    Title: Vice President

**BUYER:**

**COMPASSLEARNING ACQUISITION CORPORATION**

By: _____
    Name: Nick Kaiser
    Title: President

**GUARANTOR:**

**MARLIN EQUITY II, L.P.**

**By: Marlin Equity Partners II, L.P.**

**Its: General Partner**

**By: Marlin Ultimate GP, LLC**

**Its: General Partner**

By: _____
    Name: Nick Kaiser
    Title: Partner

<u>Annex A</u> to the Asset Purchase Agreement

*[see attached]*

<u>**Annex A**</u>

<u>**Assumed Contracts**</u>

<u>**A. Written Agreement**</u>

As of the date hereof, Compass maintains the following active written agreements which constitute Assumed Contracts:

- Agreement by and between Acclaim Talent Inc. and CompassLearning, Inc., dated July 31, 2009.
- License Agreement by and between Appintec Corporation and Jostens Learning Corporation, dated August 14, 1990 and as amended by that certain Addendum, dated July 10, 2009.
- License Agreement by and between CompassLearning, Inc. and Allene M. White, dated August 1, 2009.
- Lease Agreement by and between CompassLearning, Inc. and AMLI Management Company, dated March 25, 2009.
- Permissions Agreement by and between CompassLearning, Inc. and Ancient-Greece.org, dated September 4, 2007.
- Confidentiality, Non-Disclosure, and Non-Use Agreement by and between Anoka-Hennepin Independent School District and CompassLearning, Inc., dated August 6, 2008.
- Independent Contractor Agreement by and between Alisa Hogle and CompassLearning, Inc., dated October 14, 2009.
- AT&T Corporate Digital Advantage Agreement by and between CompassLearning, Inc. and AT&T Mobility National Accounts LLC, effective as of July 29, 2008.
- AT&T Corporate Digital Advantage Agreement by and between CompassLearning, Inc. and AT&T Mobility National Accounts LLC, effective October 21, 2009.
- Agreement by and between Atlanta Public Schools and CompassLearning, Inc., dated June 29, 2009.
- Rental Agreement by and between LEAF Funding, Inc. (Austin Pure Water Treatment, Inc.) and CompassLearning, Inc., dated March 26, 2009.
- Channel Service Agreement by and between Avaya Inc. and CompassLearning, Inc., dated June [__], 2006
- Independent Contractor Agreement by and between CompassLearning, Inc. and Babs George, dated October 1, 2009.
- Letter Agreement by and between CompassLearning, Inc. and Baker Botts LLP, dated February 7, 2008.
- License Agreement by and between CompassLearning, Inc. and Bank Street College Education, date September 1, 2008.
- Letter of Agreement by and between Beacon Press and CompassLearning, Inc., dated December 14, 2007.
- Retention Agreement by and between Beatty Bangle Strama P.C. and CompassLearning, Inc., dated September 11, 2009.
- Subscription Customer Agreement by and between CompassLearning, Inc. and Big Machines, Inc. effective as of April 1, 2008.
- License Agreement by and between Bookette Software Company and CompassLearning, Inc. dated August 27, 2008.
- Software License and Distribution Agreement by and between CompassLearning, Inc. and Boxer Learning, Inc., effective as of December 2006.

- Agreement by and between Brandt and Hochman Literary Agents, Inc. and CompassLearning, Inc., dated October 29, 2007.
- Reprint Permission Rights by and between Brooks Permissions and CompassLearning, Inc., dated October 23, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Brushup Educational Consultants, dated October 31, 2008 and as further amended by that certain Independent Contractor Agreement dated July 30, 2009.
- Master Services Agreement by and between Bulldog Solutions, Inc. and CompassLearning, Inc., dated August 1, 2007, as amended by that certain Master Services Agreement Addendum, dated March 30, 2009 and as further amended by that certain Master Services Agreement Addendum, dated May 27, 2009.
- Operating Agreement by and between Business Objects Americas and CompassLearning, Inc., effective May 12, 2009.
- End User Agreement by and between Buyout Footage and CompassLearning, Inc. dated April 15, 2008.
- Electronic Publishing License Agreement by and between Carroll Atwater Bishop and CompassLearning, Inc. effective May 1, 2003.
- Master Subscription Services Agreement by and between CompassLearning, Inc. and Catapult Learning, LLC, dated April 30, 2009.
- Professional Services Agreement by and between Catapult Systems, Inc. and CompassLearning, Inc., dated October 9, 2009.
- Letter Purchase Order by and between Clarix Technologies, Inc. and CompassLearning, Inc., dated August 27, 2009.
- Service Agreement by and between Cogent Communications Inc. and CompassLearning, Inc., date June 12, 2008.
- Master Service Agreement by and between CompassLearning, Inc. and Collier Talent Agency, dated June 15, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Collier Talent Agency, dated July 31, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Connie Jean Cole, dated October 14, 2009.
- Master Service Agreement by and between Core NAP, L.P. and CompassLearning, Inc., dated August 29, 2008.
- Lease Agreement by and between CR IV Industrial, L.P. and CompassLearning, Inc., dated as of March 16, 2003.
- Professional Services Agreement by and between CompassLearning, Inc. and CTS Production Services, Inc., dated March 31, 2008, as amended by that certain Exhibit C - Statement of Work by and between CompassLearning, Inc. and CTS Production Services, Inc., dated August 10, 2009.
- Permission to Publish by and between Curtis Brown, Ltd. and CompassLearning, Inc., dated November 22, 2004.
- Permission to Publish by and between Curtis Brown, Ltd. and CompassLearning, Inc., effective as of November 13, 2008.
- Permission to Publish by and between Curtis Brown, Ltd. and CompassLearning, Inc., dated November 10, 2008.
- Independent Contractor Agreement by and between Cynthia Ash and CompassLearning, Inc. dated October 30, 2009.
- Independent Contractor Agreement by and between David Barker and CompassLearning, Inc. dated December 2, 2009.

- Independent Contractor Agreement by and between CompassLearning, Inc. and David Driscoll, dated November 10, 2008 and as further amended by that certain Independent Contractor Agreement dated July 30, 2009.
- Permissions Agreement by and between David Higham Associates and CompassLearning, Inc., dated October 16, 2007.
- Permission to Publish by and between Democritus Properties, LLC and CompassLearning, Inc., dated [____], 2008.
- Permission to Print by and between DK Images and CompassLearning, Inc., dated August 22, 2008.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Dolores Riley, dated January 30, 2009.
- Electronic Second Serial Contract by Don Congdon Associates, Inc., dated Novermber 4, 2008.
- Permission by and between Dorian Brooks/ Margaret Russell and CompassLearning, Inc., dated [____], 2008.
- License Agreement by and between CompassLearning, Inc. and Dr. Russell R. Hopcroft, dated November 16, 2007.
- Independent Contractor Agreement by and between E. Jason Liebrecht and CompassLearning, Inc. dated August 4, 2009.
- Reseller Agreement by and between E2020, Inc. and CompassLearning, Inc., dated January 1, 2006 as amended by that Amendment Number 1 to Reseller Agreement effective September 25, 2006, and as further amended by that Amendment Number 2 to Reseller Agreement effective August 31, 2007.
- Settlement and Release Agreement by and between E2020, Inc. and CompassLearning, Inc., dated March [____], 2008.
- Three-Party Service Escrow Agreement by and between E2020, Inc., CompassLearning, Inc., and Iron Mountain Intellectual Property Management, Inc., dated September 1, 2008.
- License Agreement by and between CompassLearning, Inc. and Elsa Marston, dated January [____], 2008.
- Tax, Audit, Audit Related & Other Services Request by and between CompassLearning, Inc. and Ernst & Young LLP, dated July 8, 2009.
- Statement of Work - Bidder Registry Certificate of Eligibility Renewal Assistance by and between CompassLearning, Inc. and Ernst & Young LLP, dated September 23, 2008.
- Statement of Work - Various Tax Registrations by and between CompassLearning, Inc. and Ernst & Young LLP, dated September 23, 2008.
- Statement of Work - Business Tax Returns Preparation by and between CompassLearning, Inc. and Ernst & Young LLP, dated October 9, 2008.
- Statement of Work - Business Tax Returns Preparation by and between CompassLearning, Inc. and Ernst & Young LLP, dated October 13, 2008.
- Independent Contractor Agreement by and between Eric Eckles and CompassLearning, Inc., dated November 17, 2009.
- Employment Agreement by and between WRC Media, Inc. and Eric Loeffel, effective December 1, 2006.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Erica Hopf, dated October 27, 2009.
- Amended and Restated Agreement by and between CompassLearning, Inc. and Erie One Boces, dated July 1, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Erin Leigh Shaw, dated September [ ], 2009.

- Reseller Agreement by and between EScience Labs, Inc. and CompassLearning, Inc., dated November 13, 2008.
- Permission by Estate of William Gropper, dated December 1, 2007.
- Licensing Agreement by and between Family Learning Association and CompassLearning, Inc., dated January 26, 2009.
- License Agreement by and between Farrar, Straus and Giroux, LLC and CompassLearning, Inc., dated November 12, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Florida School Services, dated January 1, 2008 and as amended by that Independent Contractor Agreement effective January 1, 2009.
- Permission Agreement by and between Frances Collin and CompassLearning, Inc., dated April 29, 2008.
- License Agreement by and between CompassLearning, Inc. and Fulcrum Publishing, dated October [____], 2008.
- Permission to Reprint by and between Gallup Poll and CompassLearning, Inc., dated March 4, 2008.
- License Agreement by and between CompassLearning, Inc. and Gareth Stevens Publishing, effective March 1, 2008.
- Permission to Print by and between CompassLearning, Inc. and Gareth Stevens, Inc., September 6, 2006.
- Sales Order by and between Getty Images and CompassLearning, Inc., dated April 8, 2008.
- Audio-Visual Duplication Agreement by and between Special Collections and Archives, Georgia State University Library and CompassLearning, Inc., date July 7, 2008.
- Free Document License by and between GNU and CompassLearning, dated [____].
- License Agreement by and between CompassLearning, Inc. and Gordon Skene Sound Collection, effective October 16, 2008.
- Permission to Reprint Agreement by and between Hachette Book Group USA, Inc. and CompassLearning, Inc., dated September 3, 2008.
- Limited Permission and License by and between CompassLearning, Inc. and Hacienda La Puente Unified School District, dated [____].
- Permission to Reprint by and between Harcourt Brace & Company and Jostens Learning, dated [____].
- Permissions Agreement by and between Harold Ober Associates, Inc. and CompassLearning, Inc., dated October 22, 2007.
- Permissions Agreement by and between Harold Ober Associates, Inc. and CompassLearning, Inc., dated Septemter 28, 2008.
- Permissions Agreement by and between Harold Ober Associates, Inc. and CompassLearning, Inc., dated June 30, 2008.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated June 27, 2005.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated November 15, 2007.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated March 4, 2008.
- Permission to Reprint by and between HarperCollins Publishers and CompassLearning, Inc., dated September 5, 2008.
- Electronic Permission Agreement by and between HarperCollins Publisher and CompassLearning, Inc., dated October 18, 2007.

- Agreement for Permission to Reprint by and between CompassLearning, Inc. and Henry Holt and Company, LLC, dated December 16, 2008.
- Purchase Agreement by and between CompassLearning, Inc. and Hope Online, dated July 23, 2009.
- Permission to Reprint by and between Houghton Mifflin Harcourt and CompassLearning, Inc., effective October 1, 2008.
- Renewal of Permission to Reprint by and between CompassLearning, Inc. and Houghton Mifflin Company, dated March 22, 2002.
- License Agreement by and between Houghton Mifflin Company and CompassLearning, Inc., dated December 21, 2007.
- Permission to Reprint by and between Ibis Communications, Inc. and CompassLearning, Inc., dated September 30, 2008.
- Statement of Work by and between International Business Machines Corporation and CompassLearning, Inc., dated June 29, 2007 and as amended in that Statement of Work dated June 19, 2009.
- Retainer Agreement by and between CompassLearning, Inc. and Ice Miller LLP, effective January 7, 2008 and as amended in that Letter Agreement dated October 1, 2009.
- Purchase Agreement by and between CompassLearning, Inc. and Illinois Learning Technology Purchase Program, dated February 13, 2009.
- Customer Agreement by and between CompassLearning, Inc. and Iron Mountain Information Management, Inc., effective December 1, 2007.
- Customer Agreement by and between CompassLearning, Inc. and Iron Mountain Information Management, Inc. Records Management Division, dated [____].
- Reseller Agreement by and between CompassLearning, Inc. and It's All About Kids, LLC., dated December 12, 2008.
- License Agreement by and between CompassLearning, Inc. and Jack Watson, effective December 9, 2008.
- Independent Contractor Agreement by and between Jeff Aronsky and CompassLearning, Inc., dated November 18, 2009.
- Independent Contractor Agreement by and between Jennifer Bajalia and CompassLearning, Inc., dated October 14, 2009.
- Permission to Reprint by and between John Hawkins & Associates, Inc. and CompassLearning, Inc., dated January 18, 2008.
- License Agreement by and between CompassLearning, Inc. and Javaka Steptoe, for the Estate of John Steptoe, effective September 22, 2008.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Jonathan Legendre, dated November 24, 2008 and as amended by that Independent Contractor Agreement dated April 15, 2009 and as amended by that Independent Contractor Agreement dated August 10, 2009.
- Services Agreement by and between CompassLearning, Inc. and Jones Lang LaSalle Brokerage, Inc., dated September 16, 2009.
- Independent Contractor Agreement by and between Julianna Wright and CompassLearning, Inc., dated August 12, 2009.
- Independent Contractor Agreement by and between Kathleen Trambley and CompassLearning, Inc., dated November 10, 2009.
- Independent Contractor Agreement by and between Kelli Bland and CompassLearning, Inc., dated August 12, 2009.
- Annual Agreement by and between Killer Tracks and CompassLearning, Inc., dated July 12, 2007.

- Permission to Reprint by and between King's College London and CompassLearning, Inc., dated [____].
- Independent Contractor Agreement by and between CompassLearning, Inc. and Kyle Ritter, dated October 14, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Laura E. Guida, dated February 12, 2008 and as amended by that Independent Contractor Agreement dated March 31, 2009.
- Letter of Agreement by and between Learner First LLC and CompassLearning, Inc., dated February 23, 2009.
- License Agreement by and between CompassLearning, Inc. and Licensebox, a Moda Entertainment Company, dated [____].
- License Agreement by and between CompassLearning, Inc. and Licensebox, a Moda Entertainment Company, dated January 3, 2009.
- Master Services Agreement by and between Limelight Networks, Inc. and CompassLearning, Inc., dated February 20, 2009.
- Software Agreement by and between Liveright Publishing Corporation and CompassLearning, Inc., dated [____].
- Self-Service Storage Rental Agreement by and between CompassLearning, Inc. and Lockaway Storage-Austin, LLC, dated [____].
- License Agreement by and between McRae Books and CompassLearning, Inc., dated Sepember 2, 2008.
- License Agreement by and between Map Resources and CompassLearning, Inc., dated September [____], 2008.
- Extended License Agreement by and between Map Resources and CompassLearning, Inc., dated November 13, 2007.
- Professional Management Agreement by and between CompassLearning, Inc. and Marketo, Inc., dated September 8, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Matthew Bardoe, dated December 22, 2008 and as amended by that Independent Contractor Agreement dated Augutst 10, 2009.
- License Agreement by and between CompassLearning, Inc. and Sandra Markle, effective June 3, 2008.
- License Agreement by and between CompassLearning, Inc. and Meet the Author, effective March 12, 2008.
- Film Clip Usage Agreement by and between MGM Consumer Products and CompassLearning, Inc., dated February 29, 2000.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Michael Ross, dated, November 24, 2008 and as amended by that Independent Contractor Agreement dated April 10, 2009.
- Microsoft Volume Licensing Agreement by and between CompassLearning, Inc. and Microsoft Licensing, GP, effective as of April 1, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Mike Caciari, dated April 29, 2009 and as amended by that Independent Contractor Agreement dated May 19, 2009, and as further amended by that Independent Contractor Agreement date August 10, 2009.
- License Agreement by and between CompassLearning, Inc. and Naomi Long Madgett, effective July 1, 2008.
- Permission to Reprint by and between the National Council of Teachers of Mathematics and CompassLearning, Inc., dated April 24, 2008.

- Permission to Reprint by and between National Geographic and CompassLearning, Inc., dated February 5, 2008.
- Permission to Reprint by and between National Geographic and CompassLearning, Inc., dated January 28, 2008.
- Permission to Reprint by and between National Geographic and CompassLearning, Inc., dated September 5, 2008.
- Permission to Print by and between New Directors Publishing Corporation and CompassLearning, Inc., dated September 25, 2008.
- License Agreement by and between Net Transmit & Receive and CompassLearning, Inc., effective November 29, 2007.
- Reprint Permission Contract by and between New Directions Publishing Corporation and CompassLearning, Inc., dated November 21, 2008.
- License Agreement by and between CompassLearning, Inc. and Nikki Giovanni, University Distinguished Professor, effective November 30, 2007.
- License Agreement by and between CompassLearning, Inc. and Nikki Giovanni, University Distinguished Professor, effective November 30, 2007.
- Co-Marketing Agreement by and between Northwest Evaluation Association and CompassLearning, Inc., dated November 1. 2005.
- Permission to Reprint by and between the Oakland Museum of California and CompassLearning, Inc., dated February 5, 2008.
- Value Added Reseller Agreement by and between CompassLearning, Inc. and Parent Tutor Corporation, dated February 6, 2007.
- Permission to Reprint by and between PARS International Corp. and CompassLearning, Inc., dated November 28, 2007.
- Permission Agreement by and between PARS International Corp./The Washington Post and CompassLearning, Inc., dated [____].
- License Agreement by and between American Guidance Service, Inc. and CompassLearning, Inc., dated August 14, 2004.
- Permission to Reprint by and between Allyn and Bacon and CompassLearning, Inc., dated October 29, 2007.
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [____] (contract #97384).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [____] (contract #97388).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [____] (contract #97548).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [____] (contract #97742).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [____] (contract #93687).
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., dated [____] (contract #97067).
- Permissions Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc. effective as of November 1, 2008.
- Internet Agreement by and between Penguin Group USA Inc. and CompassLearning, Inc., effective August 1, 2009 (contract #97066).
- Permission to Reprint Copyrighted Material by and between PFD and CompassLearning, Inc., effective as of January 8, 2007.

- Permission to Print by and between Redux Pictures and CompassLearning, Inc., dated November 30, 2007.
- Maintenance Agreement by and between Imagistics and CompassLearning, Inc., dated December 11, 2003.
- Lease Agreement by and between Pitney Bowes Credit Corporation and CompassLearning, Inc., dated December 11, 2003.
- Reseller Agreement by and between CompassLearning, Inc. and Prolangs Co., Ltd., dated September 18, 2000.
- Distribution Agreement by and between Q Group PLC and CompassLearning, Inc., dated March 24, 2004 and as amended by Distribution Agreement dated December 6, 2005 and as further amended by that Distribution Agreement dated December 1, 2005.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Rachel Gossen, dated July 30, 2009.
- Managed Hosting Master Services Agreement by and between Rackspace, Ltd. and CompassLearning, Inc., dated August 8, 2003.
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #256625).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #265314).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #264704).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #263942).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #263941).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #2358384).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #257482).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #256632).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #256631).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #262540).
- Internet Agreement by and between Random House, inc. and CompassLearning, Inc., dated [____] (contract #257481).
- Permission to Reprint by and between Reading Museum Service and CompassLearning, Inc., dated [____].
- Independent Contractor Agreement by and between CompassLearning, Inc. and Renee D. O'Lear, dated February 12, 2009 and as amended by that Independent Contractor Agreement dated August 15, 2009, and as further amended by that Independent Contractor Agreement dated August 10, 2009.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Robert M. Talbot III, dated November 24, 2008 and as amended by that Independent Contractor Agreement dated May 19, 2009, and as further amended by that Independent Contractor Agreement dated August 10, 2009, and as further amended by that Independent Contractor Agreement dated August 15, 2009.

- License Agreement by and between CompassLearning, Inc. and Rolemodel.net, effective October 25, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Rudy Azcuy, dated July 20, 2009.
- Permission to Reprint by and between Russell & Volkening, Inc. and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Russell & Volkening, Inc. and CompassLearning, Inc., dated [____].
- Safekeeping Agreement by and between Safesite, Inc. and CompassLearning, Inc., dated September 28, 2009.
- UE Add-On Order License Agreement by and between salesfore.com, inc. and CompassLearning, Inc., dated June 4, 2008.
- UE Add-On Order License Agreement by and between salesfore.com, inc. and CompassLearning, Inc., effective as of October 28, 2007.
- Master Subscription Agreement by and between salesforce.com, inc. and CompassLearning, Inc., effective as of December 16, 2005.
- Independent Contractor Agreement by and between Sarah Goode and CompassLearning, Inc., dated October 14, 2009.
- Permission to Reproduce by and between Scholastic, Inc. and CompassLearning, Inc., dated October 28, 2004.
- License Agreement by and between CompassLearning, Inc. and Science & Public Policy Institute, effective December 5, 2007.
- Permission to Reprint by and between Science News and CompassLearning, Inc., dated December 17, 2008.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Scott Hardy, dated July 31, 2009.
- Independent Contractor Agreement by and between Shawn Sides and CompassLearning, Inc., dated July 31, 2009.
- License Agreement by and between CompassLearning, Inc. and Shelby County School System, dated July [____], 2009.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated September 3, 2008.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated September 3, 2008.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated December 18, 2008.
- Permission to Reprint by and between Simon & Schuster Inc and CompassLearning, Inc., dated January 29, 2008.
- Permission to Reprint by and between Simon & Schuster Inc. and CompassLearning, Inc., dated July 17, 2008.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Permission to Reprint by and between Simon & Schuster Inc., dated September 3, 2008.
- Permission to Reprint by and between Simon & Schuster Inc., dated September 3, 2008.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.

- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 17, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 17, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 17, 2006.
- Agreement by and between Simon & Schuster and CompassLearning, Inc., dated April 5, 2006.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 1, 2009.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 1, 2009.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 1, 2009.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 2008.
- Permission to Reprint by and between Simon & Schuster Inc., effective as of August 2008.
- Service Agreement by and between CompassLearning, Inc. and SimplexGrinnell LP, effective March 15, 2006.
- Letter Agreement by and between Skillsoft Corporation and CompassLearning, Inc., dated May 12, 2009.
- Insertion Order by and between SmartBrief Inc. and CompassLearning, Inc., dated November 18, 2009.
- Permission to Reprint by and between Sola Scriptura and CompassLearning, Inc., dated August 21, 2008.
- Permissions Agreement by and between Sourcebooks, Inc. and CompassLearning, Inc., effective December 2, 2008.
- Service Agreement by and between Sprint Solutions, Inc. and CompassLearning, Inc. dated September 17, 2009.
- Permission to Reproduce by and between the St. Petersburg Times and CompassLearning, Inc., dated October 19, 2007.
- Recovery Services Agreement by and between SunGard Availability Service LP and CompassLearning, Inc., dated April 2, 1996.
- Permission Agreement by and between Susan Bergholz Literary Services and CompassLearning, Inc., dated January 21, 2008.
- Permission Agreement by and between Susan Bergholz Literary Services and CompassLearning, Inc., dated June 20, 2008.
- Order Agreement by and between Symtrax Corporation and CompassLearning, Inc., dated August 17, 2005.
- Marketing Agreement by and between CompassLearning, Inc. and TCG Consulting, LP, effective December 1, 2007.
- Subscription Agreement by and between Telephonetics, Inc. and CompassLearning, Inc., dated July 17, 2006.
- License Agreement by and between CompassLearning, Inc. and Texas Education Society, effective [____].
- Preprint Permission by and between the Academy of Political Science and CompassLearning, Inc., dated [____].
- License Agreement by and between the Granger Collection and CompassLearning, Inc., dated May 16, 2008.
- Letter of Agreement by and between The Henry Ford Museum and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Lerner Publishing Media and CompassLeraning, Inc., dated July 17, 2000.
- License Agreement by and between the New York Times and CompassLearning, Inc., dated [____].
- Permission Agreement by and between The New York Times and CompassLearning, Inc., dated [____].

- Agreement for Services by and between CompassLearning, Inc. and The Patrick Company, dated January 15, 2006, as amended on each of June 21, 2006, September 5, 2006, February 9. 2007, August 6, 2007 and as further amended on February 27, 2009.
- Permission to Reprint by and between The Society of Authors and CompassLearning, Inc., dated January 22, 2009.
- Permission to Reprint by and between the Truman Capote Literary Trust and CompassLearning, Inc., dated January 7, 2008.
- Value Added Reseller Agreement by and between Thinkwell Corporation and CompassLearning, Inc., dated August 3, 2006.
- Permission to Reprint by and between Thompson and Thompson and CompassLearning, Inc., dated December 26, 2008.
- Access License Agreement by and between CompassaLearning, Inc. and Thought Equity Motion, Inc., effective December 8, 2008.
- Platinum Maintenance Agreement by and between ThyssenKrup Elevator and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Tilbury House Publishers and CompassLearning, Inc., dated October 21, 2008.
- Dedicated Access Service Agreement by and between CompassLearning, Inc. and Time Warner Cable, dated March 3, 2009.
- Reseller Agreement by and between CompassLearning, Inc. and Time4Learning, effective May 13, 2008 and as amended by that Reseller Agreement dated, July 14, 2009.
- Permission to Reprint by and between Trenhom Tech and CompassLearning, Inc., dated April 22, 2008.
- Independent Contractor Agreement by and between Tricial Files and CompassLearning, Inc., dated October 14, 2009.
- Permission to Print by and between University of Illinois at Urbana-Champaign and CompassLearning, Inc., dated January 21, 2009.
- Permission to Reprint by and between US News & World Report and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between the University of Houston and CompassLearning, Inc., dated November 6, 2008.
- Permission to Reprint by and between the University of Houston and CompassLearning, Inc., dated December 17, 2007.
- Independent Contractor Agreement by and between CompassLearning, Inc. and Vernon Renegar, dated October 14, 2009.
- Software License Agreement by and between Vertex, Inc. and CompassLearning, Inc., effective November 12, 2008.
- Permission to Reprint by and between Visuals Unlimited and CompassLearning, Inc., dated November 12, 2007.
- Permission to Reprint by and between Wallace Literary Agency, Inc. and CompassLearning, Inc., dated October 18, 2007.
- Independent Contractor Agreement by and between CompasssLearning, Inc. and Wayne Blanton, dated March 25, 2008 and as amended by that Independent Contractor Agreement dated April 13, 2009.
- Permission for Cartoon by and between Weston Benshoof Rochefort Tubalcava & MacCuish LLP and CompassLearning, Inc., dated October 31, 2007.
- License Agreement by and between CompassLearning, Inc. and William B. Badke, effective December 2, 2008.

- Content License Agreement by and between CompassLearning, Inc. and Wordsmyth, LLC, effective April 21, 2008.
- Permission to Reprint by and between the World Almanac Education Group and CompassLearning, Inc., dated August 22, 2006.
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated [____] (Contract #15484).
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated [____] (Contract #16793).
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated [____] (Contract #16863).
- License Agreement by and between Appintec Corp. and Jostens Learning Corporation, dated August 14, 2009 and as amended by that certain License Agreement dated July 10, 2009.
- Service Agreement by and between American Registry for Internet Numbers, Ltd. and CompassLearning, Inc., dated February 127, 2009.
- Lease Schedule by and between CompassLearning, Inc. and CIT Communications Finance Corporation, dated June 24, 2006.
- Request for Equipment purchase by and between CompassLearning, Inc. and DreamFactory Software, Inc., dated October [____], 2008.
- Amendment to Independent Contractor Agreement by and between CompassLearning, Inc. and Linda Bennet, dated December 2, 2009.
- Contract for Professional Services by and between CompassLearning, Inc. and P16 Strategies, LP, effective August 1, 2009.
- Agreement by and between CompassLearning, Inc. and The Metropolitan Museum of Art, dated January 16, 2008.
- Letter of Understanding from CompassLearning, Inc. to The School District of Greenville County, dated June 10, 2009.
- Permission to Reprint by and between The University of Texas at Austin and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Thompson Learning Global Rights Group and CompassLearning, Inc., dated November 14, 2007.
- Compel Service Subscription Agreement by and between Centive, Inc. and CompassLearning, Inc., effective April 1, 2008.
- Permission to Reprint by and between The Kansas City Star and CompassLearning, Inc., date [____].
- Permission to Reprint by and between The New York Public Library and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Walker & Co. and CompassLearning, Inc., dated [____].
- Permission to Reprint by and between Warner/Chappell Music, Inc. and CompassLearning, Inc, dated [____].
- Permission to Reprint by and between Weekly Reader Corporation and CompassLearning, Inc., dated November 6, 2006.
- Permission to Reprint by and between Weekly Reader Corporation and CompassLearning, Inc., dated May 13, 2008.
- License Agreement by and between American Guidance Service, Inc. and CompassLearning, Inc., dated August 14, 2004.
- License Agreement by and between Alena Loiselle and CompassLearning, Inc., dated June 5, 2006.
- Permission to Print by and between Brent Ashabranner and CompassLearning, Inc., dated February 5, 1998.

- License Agreement by and between Charlotte Sheedy Literary Agency, Inc. and CompassLearning, Inc., dated December 22, 2004.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between Children's Better Health Institute and CompassLearning, Inc., dated September 18, 2000.
- Permission to Print by and between The Christian Science Monitor and CompassLearning, Inc., dated February 15, 2001.
- License Agreement by and between Corbis Corporation and CompassLearning, Inc., dated January 17, 2005.
- Permission to Print by and between Curtis Brown, Ltd. and CompassLearning, Inc., dated September 4, 2003.
- Electronic Publishing License Agreement by and between Edith Baer and CompassLearning, Inc., dated March 26, 1993, as renewed on each of November 3, 1999, February 20, 2001 and December 3, 2003, and as amended by that certain Amendment to Electronic Publishing License Agreement, effective as of March 9, 2006.
- License Agreement by and between Ezra Jack Keats Foundation and CompassLearning, Inc., dated June 22, 2006.
- Permissions Agreement by and between Harold Ober Associates Incorporated and CompassLearning, Inc., dated July 29, 2005.
- Permissions Agreement by and between Harold Ober Associates Incorporated and CompassLearning, Inc., dated November 7, 2005.
- Permissions Agreement by and between Harold Ober Associates Incorporated and CompassLearning, Inc., dated January 20, 2003.
- Permission to Print by and between Harper Collins Publishers and CompassLearning, Inc., dated October 14, 2004.
- Permission to Print by and between Harper Collins Publishers and CompassLearning, Inc., dated September 8, 2006.
- Permission to Print by and between Harper Collins Publishers and CompassLearning, Inc., dated October 13, 2008.
- Permission to Print by and between Houghton Mifflin Harcourt Publishing Company and CompassLearning, Inc., dated September 15, 2008.
- Permission to Print by and between Houghton Mifflin Harcourt Publishing Company and CompassLearning, Inc., dated December 9 2009.
- Permission to Print by and between Houghton Mifflin Harcourt Publishing Company and CompassLearning, Inc., dated September 18, 2008.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.

- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Permission to Print by and between Meadowbrook Press and CompassLearning, Inc., dated October 10, 2006.
- Electronic Publishing License Agreement by and between Minden Pictures and CompassLearning, Inc., dated August 11, 1999 and as renewed by that certain Letter Agreement, dated August 23, 2005.
- Permission to Print by and between Nancy Galt Literary Agent and CompassLearning, Inc., dated January 17, 2003.
- Software Agreement by and between Penguin Group (USA) Inc. and CompassLearning, Inc., dated December 2, 2004.
- Internet Agreement by and between Random House, Inc. and CompassLearning, Inc., dated November 15, 2004.
- Internet Agreement by and between Random House, Inc. and CompassLearning, Inc., dated February 17, 2005.
- Electronic Agreement by and between Random House, Inc. and CompassLearning, Inc., dated August 21, 2008.
- Image Reproduction and Usage Application by and between San Diego Aerospace Museum and CompassLearning, Inc., dated January 27, 2005.
- Videogram License Agreement by and between Shapiro, Bernstein & Co., Inc. and CompassLearning, Inc., effective as of August 1, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Agreement for Permission to Reprint by and between Simon & Schuster and CompassLearning, Inc., dated March 29, 2006.
- Permission to Print by and between The Permission Company and CompassLearning, Inc., dated October 15, 2003.
- Agreement for Permission to Reprint by and between Thomson Gale and CompassLearning, Inc., dated December 13, 2004.
- Permission to Reprint by and between University of Cambridge Scott Polar Research Institute and CompassLearning, Inc., dated March 10, 2005.
- Permission to Print by and between U.S. News & World Report and CompassLearning, Inc., dated October 27, 2008.
- Electronic Publishing License Agreement by and between The Walter Farley Family Trust and Jostens Learning Corporation, dated January 6, 2000.
- Electronic Publishing License Agreement by and between Weekly Reader Corp. and CompassLearning, Inc., dated August 31, 2004.
- Electronic Publishing License Agreement by and between Will Hobbs and CompassLearning, Inc., dated March 7, 2000, as renewed by that certain Letter Agreement, dated August 23, 2005.
- Use Agreement by and between Wright State University Libraries and CompassLearning, Inc., dated March 1, 2005.
- Contract for Professional Services by and between Jan Wilcox and CompassLearning, Inc., effective as of December 1, 2009.
- License Agreement by and between ArchieMD, Inc. and CompassLearning, Inc., dated February 29, 2008.

- Permission to Print by and between Artist Rights Society and CompassLearning, Inc., dated March 3, 2009.
- Permission to Print by and between BBC Information and CompassLearning, Inc., dated October 3, 2008.
- Permission to Print by and between BBC Information and CompassLearning, Inc., dated November 6, 2007.
- Permission to Print by and between Bloomsbury and CompassLearning, Inc., dated September 5, 2008.
- Permission to Print by and between Cartoon Stock Ltd. and CompassLearning, Inc., dated October 7, 2008.
- Membership Agreement by and between ClipArt.com and CompassLearning, Inc., dated July 26, 2007.
- Permission to Print by and between Dinodia Photo Library PVT Ltd. and CompassLearning, Inc., dated November 26, 2007.
- License Agreement by and between DK Images and CompassLearning, Inc., dated August 22, 2008.
- Electronic Second Serial Contract by and between Don Congdon Associates, Inc. and CompassLearning, Inc., dated November 4, 2008.
- License Agreement by and between HarperCollins Publishers and CompassLearning, Inc., dated April 24, 2009.
- Content License Agreement by and between Instructional Resources Corporation and CompassLearning, Inc., dated March 2009.
- Permission to Reprint by and between Jack Jeffrey Photography and CompassLearning, Inc., dated October 31, 2007.
- License Agreement by and between Joe LeMonnier and CompassLearning, Inc., dated October 15, 2008.
- Permission to Reprint by and between Joe Dunder and CompassLearning, Inc., dated October 2007.
- Permission to Print by and between The Mariner's Museum and CompassLearning, Inc., dated September 3, 2008.
- Permission to Print by and between Matthew White and CompassLearning, Inc., dated April 21, 2008.
- Permission to Print by and between MonsterTrak and CompassLearning, Inc., dated September 12, 2007.
- Permission to Print by and between Museum of Reading and CompassLearning, Inc., dated September 17, 2008.
- Permission to Reprint by and between National Council for the Social Studies and CompassLearning, Inc., dated November 9, 2007.
- Permission to Reprint by and between National Organization for Women, Inc. and CompassLearning, Inc., dated July 1, 2008.
- Permission to Print by and between O.W. Toad Ltd. and CompassLearning, Inc., dated October 3, 2008.
- Permission to Publish by and between Patrick Manning and CompassLearning, Inc., dated September 4, 2008.
- Permission to Print by and between Paul Kunkel and CompassLearning, Inc., dated May 16, 2008.
- Permission to Print by and between American Documentary, Inc. and CompassLearning, Inc., dated November 28, 2007.

- Permission to Print by and between the Saturday Evening Post and CompassLearning, Inc., dated October 23, 2007.
- Permission to Print by and between Acorn Newspapers and CompassLearning, Inc., dated November 26, 2007.
- Permission to Print by and between Taxicab Geometry and CompassLearning, Inc., dated October 15, 2007.
- Permission to Print by and between The Michigan Daily and CompassLearning, Inc., dated October 12, 2007.
- Permission to Print by and between the Truman Capote Literacy Trust and CompassLearning, Inc., dated January 7, 2008.
- Permission to Print by and between USHistory.Org and CompassLearning, Inc., dated June 2, 2008.
- Permission to Print by and between USA Weekend and CompassLearning, Inc., dated February 26, 2008.
- License Agreement by and between Visionlearning, Inc. and CompassLearning, Inc., dated November 17, 2008.
- Software Agreement by and between WW Norton & Company and CompassLearning, Inc., dated January 15, 2009.
- Permission to Print by and between Yehuda Berlinger and CompassLearning, Inc., dated February 5, 2009.
- License Agreement by and between EduMedia Science and CompassLearning, Inc., dated January 21, 2009.
- Permission to Print by and between Sophia Fischer and CompassLearning, Inc., dated November 26, 2007.

**B. Non-Written Agreements**

In the ordinary course of business, Compass maintains certain relationships with vendors on a purchase order basis, including the following vendors:

- DK Images
- Family Learning Association
- Getty Images
- Texas ASCD
- Business Objects Americas
- Ibis Communications, Inc.
- Instructional Resources Corporation
- Jupiter Images
- Landov Murrow
- Market Data Retrieval
- PR Newswire Association, LLC
- Visuals Unlimited
- University of Illinois Library at Urbana-Champaign
- Trenholm Tech Archives
- Redux Pictures
- CWLU Herstory Project
- Hyperion Books for Children
- Paul McWhorter
- Polaris

- University of Nebraska
- Wright's Reprints

The Distribution Agreement by and between Q Group PLC ("Q Group") and Compass expired pursuant to its terms on March 24, 2009. The parties thereto have not and do not plan to enter into a written renewal agreement, but continue to operate without a written agreement.

The Production Management, Warehousing and Fulfillment Agreement by and between Compass and GM Services LLC, dated January 31, 2008, expired pursuant to its terms on January 31, 2009. The parties agreed to proceed on a month to month basis going forward pursuant to the same terms as under the prior written agreement with a 90-day notice period for termination.

Compass conducts business with and pays royalties to Facts For Learning (Weekly Reader/Facts on File), a RDA affiliate, without a written agreement.

<u>Exhibit A</u> to the Asset Purchase Agreement
Form of Bidding Procedures

*[see attached]*

## Exhibit C

**Chart of Objections and Responses to the Sale Motion**

**Status of Sale Motion/Cure Amount Objections and Responses**

| | Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|---|
| 1. | Northwest Evaluation Association ("***NWEA***") | 432 | 1. Debtors have not proposed to cure default amount of $125,815.42.<br><br>2. Debtors have not provided adequate assurance of future performance.<br><br>3. Notice to NWEA was inadequate. | 1. Debtors have re-issued the a lost check for $71,630.01 of the $125,815.42. The Debtors and NWEA agree that the remaining cure amount is $54,185.41.<br><br>2. Debtors submit that the Buyer, the Staking Horse Bidder, will have adequate means to perform under the NWEA agreements.<br><br>3. Debtors provided notice to NWEA consistent with the Bidding Procedures Order.<br><br>**This objection is resolved and has been withdrawn by NWEA [Docket No. 523].** |
| 2. | Oracle USA, Inc. ("***Oracle***") | 436 | 1. The Debtors may not assign their Oracle systems licenses to, or share them with, the Buyer under the Transition Services Agreement contemplated by the APA without Oracle's consent. | 1. The Debtors and Oracle have agreed on language to be incorporated into the Sale Order that will grant the Buyer a limited right to use the same number of Oracle licenses currently used by the CompassLearning business for a limited period of time to operate the business post-Sale and transition business data to a new system.<br><br>**This objection is resolved by the language included in the revised Sale Order.** |

| 3. | Random House, Inc. ("**_RHI_**") | 439 | 1. Schedule of Assumed Contracts fails to identify RHI agreements in a way that will allow RHI to determine whether any cure amounts exist. | 1. The Debtors have provided information to RHI with respect to the individual Assumed Contracts with RHI, and RHI has confirmed that there are no applicable cure amounts.<br><br>**This objection is resolved and has been withdrawn by RHI [Docket No. 515].** |
|---|---|---|---|---|
| 4. | Business Objects | N/A | 1. Business Objects requested further information with respect to identifying which of the Debtors' agreements with Business Objects are Assumed Contracts. | 1. The Debtors have specifically identified the two Business Objects licenses that are Assumed Contracts for Business Objects and will list the licenses on the schedules to the Sale Order.<br><br>**Resolved.** |
| 5. | U.S. Trustee | N/A | 1. The U.S. Trustee has requested that the Sale Order include certain language with respect to any personally identifiable information. | 1. The Debtors are continuing to work with the Buyer and the U.S. Trustee to resolve this issue.<br><br>**Contested.** |

K&E 16147856.9