**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | No. 09-23529 (RDD) |
| Debtors. | Jointly Administered |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING**
**THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF THE READER'S DIGEST ASSOCIATION, INC. AND ITS DEBTOR AFFILIATES**

The Reader's Digest Association, Inc. and certain of its affiliates, as debtors and debtors

in possession (collectively, the "***Debtors***"),[1] having:

    a.    commenced these chapter 11 cases (collectively, the "***Chapter 11 Cases***")[2] by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Debtors' corporate headquarters is:  1 Reader's Digest Road, Pleasantville, NY 10570.

[2]    Unless otherwise noted, capitalized terms not defined in the Findings of Fact, Conclusions of Law and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association,
(Continued…)

K&E 16032090.

b.    continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.    filed, on October 10, 2009, the Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 163] and the Disclosure Statement for the Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 162], which plan and related documents were subsequently amended as set forth herein;

d.    filed, on October 21, 2009, the Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Fixing Dates and Deadlines Related to Confirmation of the Plan; (III) Approving Certain Procedures for Soliciting and Tabulating the Votes On, and for Objecting to, the Plan; (IV) Approving the Procedures Related to the Rights Offering and Authorizing the Retention of Financial Balloting Group LLC in Connection Therewith; and (V) Approving the Manner and Form of the Various Notices and Documents Relating Thereto [Docket No. 187] (the "*Solicitation Procedures Motion*");

e.    filed, on November 3, 2009, the First Amended Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 220] and the Disclosure Statement for the First Amended Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 219] which plan and related documents were subsequently amended as set forth herein;

f.    filed, on November 19, 2009, the Second Amended Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 292] and the Disclosure Statement for the Second Amended Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 291] which plan and related documents were subsequently amended as set forth herein;

g.    filed, on November 24, 2009, the Third Amended Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 310] and the Disclosure Statement for the Third Amended Proposed Joint Chapter 11 Plan of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 309] which plan and related documents were subsequently amended as set forth herein;

---

Inc. and its Debtor Affiliates (the "*Confirmation Order*"), shall have the meanings ascribed to them in the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates, dated January 11, 2010 [Docket No. 310] (as the same may have been subsequently modified, supplemented and amended (the "*Plan*"). The rules of interpretation set forth in Article I.A of the Plan shall apply to the Confirmation Order.

h.  distributed solicitation materials, on or before December 4, 2009, to Holders of Claims entitled to vote on the Plan, contract and lease counterparties and parties in interest, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Fixing Dates and Deadlines Related to Confirmation of the Plan, (III) Approving Certain Procedures for Soliciting and Tabulating the Votes on, and for Objecting to, the Plan, (IV) Authorizing the Retention of Financial Balloting Group LLC as Securities Solicitation Agent, and (V) Approving the Manner and Form of the Notices and Other Documents Related Thereto, entered on November 30, 2009 [Docket No. 318] (the "***Solicitation Procedures Order***"), which Solicitation Procedures Order also approved, among other things, solicitation procedures and related notices, forms, ballots and master ballots (collectively, the "***Solicitation Packages***") as evidenced by the Affidavit of Service of Jonathan D. Carameros re: 1) Disclosure Statement for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates; 2) Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates; and 3) Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Fixing Dates and Deadlines Related to Confirmation of the Plan, (III) Approving Certain Procedures for Soliciting and Tabulating the Votes on, and for Objecting to, the Plan, (IV) Authorizing the Retention of Financial Balloting Group LLC as Securities Solicitation Agent, and (V) Approving the Manner and Form of the Notices and Other Documents Related Thereto [Docket No. 374] (the "***KCC Affidavit***") and the Affidavit of Solicitation Mailing of Christina F. Pullo [Docket No. 354] (the "***FBG Affidavit***");

i.  published, on December 4, 2009, notice of the Confirmation Hearing (the "***Confirmation Hearing Notice***") in the Wall Street Journal and USA Today to provide notice to creditors who are unknown or not reasonably ascertainable by the Debtors and creditors whose identities are known but whose addresses are unknown by the Debtors, as evidenced by the Affidavit of Publication of Notice of the Hearing to Consider Confirmation of the Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates in the USA Today [Docket No. 339] and Affidavit of Publication of Notice of the Hearing to Consider Confirmation of the Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates in The Wall Street Journal [Docket No. 340] (the "***Publication Affidavits***");

j.  filed, on December 11, 2009, the Plan Supplement for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of the Reader's Digest Association, Inc. and Its Debtor Affiliates    [Docket No. 358], which, in accordance with the Solicitation Procedures Order, includes the following documents:  (i) the form of the Exit Credit Agreement; (ii) the form of the New Second Priority Term Loan Agreement; (iii) the form of the New Warrant Agreement; (iv) the list of the Compensation and Benefit Programs to be rejected and/or assumed; (v) the form of the Registration Rights Agreement (vi) the form

3

of the Shareholders Agreement; (vii) the form of the Amended and Restated Certificate of Incorporation; (viii) the form of the Amended and Restated Bylaws; (ix) the forms of the Enterprise Value Maximization Plan and the Variable Compensation Plan; and (x) the Interim Severance Policy (together with other all other agreements, documents and instruments at any time executed and/or delivered in connection with or related thereto, ancillary or otherwise, and all exhibits, attachments and schedules referred to therein, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time prior to the Effective Date, including, without limitation, by the First Supplement to the Plan Supplement, and following the Effective Date, in accordance with each Reorganized Debtor's applicable constituent documents, collectively, the "*Plan Supplement*");[3]

k.      filed, on December 15, 2009, the Schedule of Executory Contracts and Unexpired Leases Proposed to be Assumed Pursuant to the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of the Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 366] (as may be amended from time to time prior to the Effective Date, the "*Assumption Schedule*"); on December 16, 2009, the Schedule of Executory Contracts and Unexpired Leases Proposed to be Rejected Pursuant to the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of the Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 367] (as may be amended from time to time prior to the Effective Date, the "*Rejection Schedule*"), and served on December 17, 2019 upon all non-Debtor parties to the Executory Contracts and Unexpired Leases listed on the Assumption Schedule notice of the filing of the Assumption Schedule and the Assumption Schedule (each notice, a "*Cure Notice*");

l.      filed, on December 30, 2009, the First Supplement to the Plan Supplement for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of the Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 423];

m.      filed, on December 30, 2009, the First Supplement to the Contract/Lease Schedule for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of the Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 424];

n.      filed, on January 6, 2010, the Second Supplement to the Plan Supplement for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 466];

---

[3]   To the extent that forms of documents have been filed in connection with the Plan, the documents actually executed and delivered will be substantially in the form of such filed documents.

K&E 16032090.

o.      filed, on January 8, 2010, the Amended Exhibits to the Plan Supplement for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 514];

p.      filed, on January 11, 2010 the Certification of Alison M. Tearnen Pursuant to Local Bankruptcy Rule 3018-1(a) with respect to the Tabulation of Votes on the Debtors' Third Amended Joint Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 530] (the "***KCC Voting Certification***") and the Declaration of Christina F. Pullo of Financial Balloting Group LLC Regarding Voting on, and Tabulation of, Ballots Accepting and Rejecting the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 527] (the "***FBG Voting Certification***," and together with the KCC Voting Certification, the "***Voting Certifications***");

q.      filed, on January 11, 2010, (i) the Debtors' (A) Reply to Objections to Confirmation of the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates and (B) Memorandum of Law in Support of Confirmation of the Plan [Docket No. 531] (the "***Plan Confirmation Brief***"); (ii) the Declaration of Thomas A. Williams, Chief Financial Officer and Senior Vice President of Reader's Digest (the "***Williams Declaration***"); (iii) the Declaration of Albert L. Perruzza, Senior Vice President, Global Operations, Information Technology and Business Redesign of Reader's Digest (the "***Perruzza Declaration***"); (iv) the Declaration of Jeffrey R. Finger, a Director of Miller Buckfire & Co, LLC, in Support of the Plan (the "***Finger Declaration***");  (v) the Declaration of Lawrence Young, a Managing Director of AlixPartners, LLP, in Support of the Plan (the "***Young Declaration***"); and (vi) the Declaration of Douglas J. Friske, a Managing Principal of Towers Watson Pennsylvania Inc., in Support of the Plan (collectively, the "***Declarations In Support of Confirmation***");

r.      filed, on January 14, 2010, the Third Supplement to the Plan Supplement for the Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates [Docket No. 556], which contained the identities of the members of the New Board; and

s.      filed, on January 14, 2010, the Notice of Immaterial Modifications to Debtors' Third Amended Proposed Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 559].

The United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***" or the "***Court***") having:

a.      entered the Solicitation Procedures Order on November 30, 2009 [Docket No. 318];

5

b.      set January 15, 2010 at 10:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

c.      reviewed the Plan, Disclosure Statement, the Plan Supplement, the Plan Confirmation Brief, the Declarations in Support of Confirmation, the Voting Certifications and all other filed pleadings, exhibits, statements, affidavits, declarations and comments regarding Confirmation of the Plan, including all objections thereto and statements and reservations of rights made with respect thereto;

d.      heard the statements, arguments and objections made by counsel in respect of Confirmation of the Plan;

e.      considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation of the Plan;

f.      overruled,  including for the reasons stated on the record of the Confirmation Hearing any and all objections to the Plan and Confirmation thereof, and all statements and reservations of rights, not consensually resolved or withdrawn, unless otherwise indicated; and

g.      taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing, as well as the representations made by the Debtors on the record of the Confirmation Hearing, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law and order:

K&E 16032090.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED

THAT:

**A.    Jurisdiction and Venue**

1.    Venue in the Bankruptcy Court was proper as of the Commencement Date

pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11

Cases.    Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2)(L).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant

to 28 U.S.C. § 1334.  The Bankruptcy Court has exclusive jurisdiction to determine whether the

Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.    Eligibility for Relief**

2.    The Debtors were and are Entities eligible for relief under section 109 of the

Bankruptcy Code.

**C.    Commencement and Joint Administration of the Chapter 11 Cases**

3.    Beginning on the Commencement Date, each of the Debtors commenced a case

by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order

of the Bankruptcy Court, these Chapter 11 Cases have been consolidated for procedural purposes

only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 24].  The

Debtors have operated their businesses and managed their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been

appointed in these Chapter 11 Cases.

**D.    Judicial Notice**

4.    The Bankruptcy Court takes judicial notice of (and deems admitted into evidence

for Confirmation) the docket of these Chapter 11 Cases, including all pleadings and other

7

K&E 16032090.

documents on file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.  Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.

**E.      Claims Bar Date**

5.      On October 7, 2009, the Bankruptcy Court entered the Claims Bar Date Order, which, among other things, (a) set bar dates for filing Proofs of Claim, (b) approved procedures for filing Proofs of Claim and (c) approved notice of the Claims Bar Date.  The Claims Bar Date Order established, as applicable, (a) 5:00 p.m. prevailing Pacific Time on November 16, 2009, (b) the Governmental Bar Date or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims as the deadline for filing Proofs of Claim.

**F.      Solicitation Procedures Order**

6.      On November 30, 2009, the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed November 25, 2009 as the Record Date; (c)  fixed January 5, 2010 at 4:00 p.m. prevailing Eastern Time, as the Plan Objection Deadline; (d) fixed January 8, 2010 at 4:00 p.m. prevailing Pacific Time, as the Voting Deadline; (e) fixed January 15, 2010 at 10:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Debtors' solicitation and voting procedures (the "***Solicitation and Voting Procedures***"), the Solicitation Packages and other materials relating to solicitation, including the Notices of Non-Voting Status sent to Holders of Claims and interests not entitled to vote on the Plan.

8

### G.    Transmittal and Mailing of Solicitation Materials; Notice

7.    Due, adequate and sufficient notice of the Plan (including the Debtor Release, Releasing Party Release, exculpation provisions and injunction provisions contained therein), the Disclosure Statement and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to known Holders of Claims and interests in compliance with Bankruptcy Rules 2002(b), 3017(d), (e) and (f), as evidenced by the KCC Affidavit and the FBG Affidavit.  The Solicitation Packages and all other materials relating in any way to the solicitation process (including notice of the filing of the Plan Supplement and Cure Notices) were transmitted and served in substantial compliance with the Solicitation Procedures Order and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "*Local Rules*"), the Solicitation and Voting Procedures and all other applicable rules, laws and regulations. Additionally, in accordance with the Solicitation Procedures Order, the Debtors published the Confirmation Hearing Notice in the publications listed in the Publication Affidavits.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

### H.    Adequacy of Solicitation

8.    The Debtors, with the assistance of the Noticing and Claims Agent and the Securities Solicitation Agent, distributed Solicitation Packages to all Holders of Claims and sufficient time was given for such Holders of Claims entitled to vote on the Plan to accept or reject the Plan in substantial compliance with the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation and Voting Procedures and all other applicable rules, laws and regulations. Additionally, the Debtors, with the assistance of the Noticing and Claims Agent, provided

9

(a) courtesy copies of the Solicitation Packages to the Office of the United States Trustee for the Southern District of New York (the "*U.S. Trustee*"), counsel to the Creditors' Committee, counsel to the Debtors' prepetition and postpetition secured lenders and (b) copies of the Disclosure Statement (and all exhibits thereto) in CD-ROM format to the 2002 List and the counterparties to the Debtors' Executory Contracts and Unexpired Leases. Transmittal and service were adequate and sufficient, and no further notice is or shall be required. In addition, Holders of Claims or Interests in Classes that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials approved by the Court in compliance with the Solicitation Procedures Order. Pursuant to the Solicitation Procedures Order, the Debtors were excused from distributing Solicitation Packages to those entities at addresses from which Disclosure Statement Hearing notices were returned as undeliverable by the United States Postal Service unless the Debtors were able, using reasonable efforts, to obtain an accurate address for such entities before the Solicitation Date, and failure to distribute Solicitation Packages to such entities does not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d). All procedures used to distribute Solicitation Packages to Holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

## I.      <u>Voting Certifications</u>

9.      On January 11, 2009, the Noticing and Claims Agent and the Securities Solicitation Agent filed the Voting Certifications with the Court. All procedures used to tabulate the Ballots and the Master Ballots were fair and conducted in accordance with the Solicitation

K&E 16032090.

Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

10.      As set forth in the Plan and Disclosure Statement, only Holders of Claims in Classes 3, 4, 5, 6 and 10 (collectively, the "***Voting Classes***") are eligible to vote on the Plan.  In addition, Holders of Claims in Classes 1, 2 and 9 are Unimpaired (collectively, the "***Presumed Accepting Classes***") and presumed to have accepted the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims in Class 7 , Holders of Equity Interests in Class 8 and Holders of Intercompany Interests in Class 9 (collectively, the "***Deemed Rejecting Classes***") are deemed to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

11.      As evidenced by the Voting Certifications, Classes 3, 4, 6 and 10 voted to accept the Plan.  As further evidenced in the Voting Certifications, Holders of Claims in Class 5 (together with the Deemed Rejected Classes, the "***Rejecting Classes***") voted to reject the Plan.

12.      Based on the foregoing, and as evidenced by the Voting Certifications, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**J.      Plan Supplement**

13.      On December 11, 2009, as supplemented on December 30, 2009, January 6, 2010 and January 8, 2010 and January 14, 2010, the Debtors filed the Plan Supplement with the Bankruptcy Court and served notice of such filing on the 2002 List and all Holders of Claims entitled to vote on the Plan, on December 30, 2009.  The documents contained in the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  The

11

Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents constitutes good and proper notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.  The Debtors reserve their right to modify the Plan Supplement prior to the Effective Date to be consistent with and pursuant to the Plan.

### K.  Modifications to the Plan

14.    The modifications to the Plan described in the Plan Confirmation Brief and reflected in the blacklined version of the Plan [Docket No. 559] constitute non-material or technical changes and do not materially adversely affect or change the treatment of any Claims or interests under the Plan (the "***Technical Modifications***").

15.    The filing and the description of the Technical Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases.  The Technical Modifications do not materially or adversely affect the treatment of any Claims against or Equity Interests in the Debtors under the Plan.  The Technical Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of vote on the Plan under section 1126 of the Bankruptcy Code and Bankruptcy Rules 3018 or 3019.

16.    In accordance with section 1127 of the bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Plan as amended consistent with the Technical Modifications.

17.    No Holder of a Claim against the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Technical Modifications.

K&E 16032090.

18.     The Technical Modifications incorporated in the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

### L.     Bankruptcy Rule 3016

19.     The Plan is dated and identifies the Entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

### M.     Burden of Proof

20.     The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  The Debtors have met their burden of proving that the Plan complies with each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

### N.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code

21.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

### (a)     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

22.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

### (a)     Sections 1122 and 1123(a)(1)—Proper Classification

23.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into ten Classes, based on differences in the legal nature or priority of such Claims and Interests (other than

Administrative Expense Claims, DIP Facility Claims and Priority Tax Claims, which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

24.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### (b)     Section 1123(a)(2)—Specification of Unimpaired Classes

25.     Article III of the Plan specifies that Claims in Classes 1 and 2 and Intercompany Interests in Class 9 are Unimpaired under the Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (c)     Section 1123(a)(3)—Specification of Treatment of Impaired Classes

26.     Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 3, 4, 5, 6, 7, 9 and 10. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (d)     Section 1123(a)(4)—No Discrimination

27.     Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

14

**(e)        Section 1123(a)(5)—Adequate Means for Plan Implementation**

28.        The Plan and the various documents and agreements set forth in the Plan

Supplement provide adequate and proper means for the Plan's implementation, including,

without limitation:   (a) the restructuring of the Debtors' prepetition secured debt and other

financial transactions under the Plan; (b) the continued corporate existence of the Debtors; (c) the

vesting of assets in the Reorganized Debtors; (d) the treatment of Intercompany Interests; (e) the

entry into and consummation of the Exit Credit Agreement and the New Second Priority Term

Loan Agreement, and the use of the Reorganized Debtors' cash balances for distributions under

the Plan; (f) entry into the New Warrant Agreement; (g) the issuance and distribution of the

New Common Stock and other securities issued under the Plan; (h) the appointment of the New

Board; (h) certain amendments to the Debtors' constitutional documents, including, without

limitation, adoption and filing of the Amended and Restated Certificate of Incorporation and the

adoption of the Amended and Restated Bylaws; (i) adoption and implementation of the

Enterprise Value Maximization Plan and the Variable Compensation Plan; (j) adoption and

implementation of the Interim Severance Plan included in the Plan Supplement; and (k) the

cancellation of the Senior Subordinated Notes and Equity Interests.

**(f)        Section 1123(a)(6)—Voting Power of Equity Securities**

29.        The Amended and Restated Certificate of Incorporation contained in the Plan

Supplement prohibits the issuance of non-voting securities.   The Plan, therefore, satisfies the

requirements of section 1123(a)(6) of the Bankruptcy Code.

**(g)        Section 1123(a)(7)—Selection of Officers and Directors**

30.        The identity and affiliations of the initial New Board have been disclosed prior to

the Confirmation Hearing.   The New Board shall consist of up to eight (8) directors.   The

Prepetition Lenders identified potential directors through use of a search firm acceptable to the

K&E 16032090.

Prepetition Agent and initially designated all such directors upon consultation with the Debtors'

Chief Executive Officer.   The existing officers of the Debtors shall remain in their current

capacities as officers of the Reorganized Debtors on the Effective Date, subject to the ordinary

rights and powers of the board of directors to remove or replace them in accordance with the

Debtors' organizational documents and any applicable employment agreements.   The selection

of the initial directors and officers of the Reorganized Debtors was, is and will be consistent with

the interests of Holders of Claims and Interests and public policy.   Accordingly, the requirements

of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### (h)      Section 1123(b)—Discretionary Contents of the Plan

31.      The Plan contains various provisions that may be construed as discretionary and

not required for Confirmation under the Bankruptcy Code.   As set forth below, such

discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not

inconsistent with the applicable provisions of the Bankruptcy Code.   Thus, section 1123(b) of the

Bankruptcy Code is satisfied.

### i.      Section 1123(b)(1)–(2)—Claims and Executory Contracts

32.      Article III of the Plan impairs or leaves Unimpaired, as the case may be, each

Class of Claims and Interests, and Article VI of the Plan provides that all of the Debtors'

Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date

except any Executory Contract or Unexpired Lease (a) previously assumed or rejected by the

Debtors during the Chapter 11 Cases, (b) identified on the Contract/Lease Schedule as an

Executory Contract or Unexpired Lease designated for rejection or (c) which is the subject of a

separate motion or notice to reject filed by the Debtors and pending as of the Confirmation

Hearing.

ii.     **Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action**

33.     **Compromise and Settlement**.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The compromise and settlement of such Claims and Interests embodied in the Plan is in the best interests of the Debtors, the Estates and all Holders of Claims and Interests, and is fair, equitable and reasonable.

34.     In reaching an ultimate decision on such settlement's substantive fairness, the Court considered the following factors, among others:  (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation and risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the settlement; (d) the competency of counsel reviewing the settlement; (e) the nature and breadth of releases to be obtained by officers and directors; and (f) the extent to which the settlement is the product of arm's length bargaining.

35.     **Debtor Release**.  The releases and discharges of Claims and Causes of Action by the Debtors described in Article X.E of the Plan (the "***Debtor Release***") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment.  Pursuing any such claims against the Released Parties (as defined herein) is not in the best interests of the Debtors' various constituencies, as the costs involved likely would outweigh any potential benefits from pursuing such claims.  In addition, the Released Parties provided good and valuable consideration in exchange for the Debtor Release, including the service of the

17

Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

36.     The releases of the Released Parties by the Debtors and the Releasing Parties are critically important to the success of the Debtors' Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders and reflects and implements the concessions and compromises made by the parties to the Restructuring Support Agreement.

37.     Each of the Released Parties afforded value to the Debtors and aided in the reorganization process.  The Released Parties played an integral role in the formulation of the Plan and have expended significant time and resources analyzing and negotiating the issues presented by the Debtors' prepetition capital structure.  The Plan reflects the settlement and resolution of several complex issues, and the releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.  Indeed, the release provisions in the Plan were a critical component of, and gating item for, the Debtors' ability to achieve consensus on the Restructuring Support Agreement and a prearranged plan of reorganization that maximizes recoveries to the Debtors' creditors and affords the Debtors the opportunity to restructure their businesses to compete effectively post-emergence.

38.     The Debtors, with the assistance of counsel, spent considerable time investigating potential Avoidance Actions and other Causes of Action against the parties being released pursuant to the Plan, including the Consenting Shareholders, and determined there is no evidence suggesting viable claims that would result in substantial recoveries (if any) to general unsecured creditors. The results of the release investigation were presented to the independent directors of the Board of Directors of Readers' Digest, who determined, in an exercise of their business judgment, that the Debtors' release of third parties pursuant to the Plan is appropriate and

18

reasonable under the circumstances because the relative strength of the claims being released are more than offset by the significant benefits the Debtors are receiving under the Plan.

39.    In approving the Debtor Release, the Bankruptcy Court determined that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, (b) a good faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (d) fair, equitable and reasonable; (e) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (f) a bar to any of the Debtors or the Reorganized Debtors asserting any claim released by the Debtor Release against any of the Released Parties.

40.    **Releasing Party Release**.  The circumstances of these Chapter 11 Cases render the releases of Claims and Causes of Action by Holders of Claims and Interests described in Article X.F of the Plan (the "***Releasing Party Release***") important to the success of the Plan.

41.    In consideration for entering into the Restructuring Support Agreement, the Releasing Parties required that the Releasing Party Release be included in the Plan.

42.    The Debtors have proven that the Restructuring Support Agreement is the linchpin of the Plan, without which the Debtors' restructuring goals and expeditious emergence would have been unobtainable, the Plan would not be confirmable or feasible and the recoveries for many parties in interest in these cases would fail to exist.  Thus, these facts justify the approval of the Releasing Party Release.

43.    In approving the Releasing Party Release, the Court determined the Releasing Party Release is in:  (a) in exchange for the good and valuable consideration provided by the Released Parties, (b) a good faith settlement and compromise of the claims released by the

19

Releasing Parties; (c) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for hearing and opt out; and (f) a bar to any of the Releasing Parties asserting any Claim released by the Releasing Party Release against any of the Released Parties.

44.     **Exculpation**.  The exculpation provisions set forth in Article X.G of the Plan are essential to the Plan.  The record of the Chapter 11 Cases fully supports the Exculpation, and the Exculpation provisions set forth in Article X.G of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and are hereby approved; *provided that* nothing in the Plan shall (a) exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires acts as determined by a Final Order or (b) limit the liability of the professionals of the Exculpated Parties to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

45.     Notwithstanding anything in the Plan to the contrary, no Person shall be discharged, released or relieved from any liability with respect to the Pension Plan as a result of the Chapter 11 Cases or the Plan, nor shall the PBGC, the Pension Plan or any other Person be enjoined or precluded from enforcing any liability with respect to the Pension Plan as a result of the Chapter 11 Cases, the provisions of the Plan or Confirmation of the Plan.

46.     **Injunction**.  The injunction provisions set forth in Article X. H of the Plan are essential to the Plan and are necessary to preserve and enforce the Debtor Release, the Releasing Party Release and the exculpation provisions in Article X of the Plan, and are narrowly tailored to achieve that purpose.

K&E 16032090.

47.     Each of the Debtor Release, the Releasing Party Release, the exculpation provision and the injunction set forth in the Plan:  (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, the Estates and their creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129 of the Bankruptcy Code, any other provisions of the Bankruptcy Code and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Release, the Releasing Party Release, the exculpation provisions and the injunction contained in Article X of the Plan.

48.     **No Release of Any Claims Held by the United States or State and Local Authorities**.  Nothing in this Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Released Parties for any liability whatever, including, without limitation, any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its

21

agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

49. **Preservation of Claims and Causes of Action**. Article IV.O of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, the Estates and Holders of Claims and Interests.

**(b)    Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

50. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

51. Votes to accept or reject the Plan were solicited by the Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

52. The Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy

22

Rules, the Local Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article X.G of the Plan.

53.     The Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not (and on account of such distributions, will not be) liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

(c)     **Section 1129(a)(3)—Proposal of the Plan in Good Faith**

54.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading its formulation.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

55.     The Plan is the product of extensive, good faith, arm's length negotiations between the Debtors and certain of their principal constituencies, including the Consenting Lenders, Consenting Shareholders and the Creditors' Committee.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of Holders of Claims and Interests.  Consistent with the

23

overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

     **(d)**     **Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable**

56.     Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

     **(e)**     **Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

57.     The Debtors have disclosed the identity and affiliations of the individuals proposed to serve as the directors and officers of the Reorganized Debtors, to the extent known, and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The appointment of the remaining directors and officers, if any, and the compensation of all of the Reorganized Debtors' directors will be consistent with each Reorganized Debtor's applicable constituent documents, the amended forms of which were filed as part of the Plan Supplement. The proposed directors and officers for the Reorganized Debtors Plan are qualified, and the appointments to, or continuance in, such offices of the proposed directors and officers is consistent with the interests of holders of Claims and Interests

24

and with public policy.   Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**(f)      Section 1129(a)(6)—Approval of Rate Changes**

58.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**(g)      Section 1129(a)(7)—Best Interest of Creditors Test**

59.      Each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

60.      The liquidation analysis attached as Exhibit E to the Disclosure Statement (the "*Liquidation Analysis*") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, Holders of Allowed Claims in every Class will recover as much or more under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

K&E 16032090.

**(h)      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

61.      Classes 1 and 2 are Unimpaired Classes of Claims and Class 9 is a Class of Unimpaired Intercompany Interests, each of which are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Certifications, Classes 3, 4, 6 and 10 have voted to accept the Plan and Class 5 has voted to reject the Plan. Classes 7 and 8 are not receiving any distributions under the Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

62.      Because the Plan has not been accepted by Class 5 and because Classes 7 and 8 are conclusively deemed to reject the Plan, the Debtors sought Confirmation under section 1129(b), rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and, thus, satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

**(i)      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

63.      The Treatment of Allowed Administrative Expense Claims, Allowed DIP Facility Claims and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(9) are satisfied.

**(j)      Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

64.      As set forth in the Voting Certifications, Classes 3, 4, 6 and 10 voted to accept the Plan.  As such, there is at least one Class of Claims that is Impaired under the Plan that has

K&E 16032090.

accepted the Plan without including any acceptance of the Plan by any insider.[4]  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(10) of the Bankruptcy Code.

### (k)    Section 1129(a)(11)—Feasibility of the Plan

65.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing:  (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan except as provided in the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.  Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

### (l)    Section 1129(a)(12)—Payment of Bankruptcy Fees

66.    Article XI.D  of  the  Plan  provides  that  all  fees  payable  pursuant  to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid prior to the closing of these Chapter 11 Cases when due or as soon thereafter as practicable. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

---

[4]    The acceptance by Class 10 (Intercompany Claims) includes insiders and is not being counted in satisfaction of section 1129(a)(10).

K&E 16032090.

(m)     **Section 1129(a)(13)—Retiree Benefits**

67.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code.  Article V.D of the Plan provides that, on and after the Effective Date, all retiree benefits shall continue to be paid for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, and subject to any contractual rights to terminate or modify such benefits in accordance with applicable law. Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

(n)     **Sections 1129(a)(14), (15) and 16—Non-Applicability of Certain Sections**

68.     The Debtors do not owe any domestic support obligations, are not individuals and are not non-profit non-profit corporations.  Therefore, sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

(o)     **Section 1129(b)—Confirmation of the Plan Over Non-Acceptance of Impaired Classes**

69.     The Plan may be confirmed  pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1128(a)(8) have not been met, because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Class 5 (the only impaired Class that voted to reject the Plan).

70.     As explained in more detail in the Court's bench ruling, the discrimination in treatment among Class 4 and Class 5 under the Plan is not "unfair" because (a) there are reasonable, legitimate and equitable reasons for the enhanced recovery to Class 4 under the Plan,

(b) the disparate treatment is necessary to achieve a successful reorganization and consummate the Plan, (c) the Debtors have acted in good faith in determining to provide additional recoveries to the Holders of Class 4 Claims compared to Class 5 recoveries and (d) the discrimination is reasonably proportional to the rationale therefor, including the net benefits to the Debtors, their estates, the holders of Claims in Class 5 and the reorganized enterprise post-emergence, as set forth on the record.

71.    The Plan is "fair and equitable" with respect to Class 5 because no junior Class of Claims or Interests will receive or retain any property under the Plan on account of such Claims or Interests.  Likewise, the Plan is "fair and equitable" with respect to Classes 7 and 8 because no junior Class of Claims or Interests will receive or retain any property under the Plan on account of such Claims or Interests.

72.    The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims:  (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence.

73.    The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**(p)    Section 1129(c)—Only One Plan**

74.    Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the Debtors have satisfied the requirements of section 1129(c) of the Bankruptcy Code.

29

**(q)    Section 1129(d)—Principal Purpose of the Plan Is Not the Avoidance of Taxes**

75.    No governmental unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the Debtors have satisfied the requirements of section 1129(d) of the Bankruptcy Code.

**(r)    Section 1129(e)—Small Business Case**

76.    None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**O.    Satisfaction of Confirmation Requirements**

77.    Based upon the foregoing, all other filed pleadings, documents exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**P.    Implementation of Other Necessary Documents and Agreements**

78.    All documents and agreements necessary to implement the Plan are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, the Estates and Holders of Claims and interests.  The Debtors have exercised reasonable business judgment in determining which such agreements to enter and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have

30

been negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved.

**Q.    Good Faith**

79.    Based on the record in the Chapter 11 Cases (a) the Debtors and their non-Debtor affiliates; (b) the Prepetition Agent and the Consenting Lenders; (c) the DIP Agent and the DIP Lenders; (d) the Creditors' Committee, the Holders of Senior Subordinated Notes Claims and the Indenture Trustee; (e) the Consenting Shareholders; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' current or former subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investments bankers, consultants, representatives and other Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, without limitation, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X.G of the Plan.

**R.    Executory Contracts and Unexpired Leases**

80.    The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan.

**S.    Transfers by Debtors:  Vesting of Assets**

81.    Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each

31

respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness that is Unimpaired by the Plan).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**T.**    **Disclosure:  Agreements and Other Documents**

82.    The Debtors have disclosed all material facts regarding: (a) the adoption of the Amended and Restated Certificate of Incorporation and the Amended and Restated ByLaws; (b) the selection of the members of the New Board and certain new officers for the applicable Reorganized Debtors; (c) the Reorganized Debtors' obligations under the Exit Credit Agreement and the New Second Priority Term Loan Agreement; (iv) the sources and distribution of Cash under the Plan; (v) the terms and issuance of the New Common Stock and the Reorganized Debtors' reliance on the exemption under section 1145(a) of the Bankruptcy Code; (vi) the terms of the New Warrant Agreement, the Shareholders Agreement and the Registration Rights Agreement; (vii) the cancellation of the Senior Subordinated Notes and the Equity Interests; (viii) the adoption, execution and delivery of all contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing; and (ix) the adoption, execution and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors.

**U.**    **Approval of the Exit Credit Agreement**

83.    The Exit Credit Agreement is an essential element of the Plan, and entry into the Exit Credit Agreement is in the best interests of the Debtors, the Estates and all Holders of

Claims.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Credit Agreement and have provided sufficient and adequate notice of the material terms of the Exit Credit Facility, as the form of the Exit Credit Agreement was filed as part of the Plan Supplement.  The terms and conditions of the Exit Credit Agreement are fair and reasonable, and the Exit Credit Agreement has been negotiated in good faith and at arm's length.  The Debtors are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder.

## V.    Approval of the New Second Priority Term Loan Agreement

84.    The New Second Priority Term Loan Agreement is an essential element of the Plan, and entry into the New Second Priority Term Loan Agreement is in the best interests of the Debtors, the Estates and all Holders of Claims.  The Debtors have exercised reasonable business judgment in determining to enter into the New Second Priority Term Loan Agreement and have provided sufficient and adequate notice of the New Second Priority Term Loan Agreement and have provided sufficient and adequate notice of the material terms of the New Second Priority Term Loan Agreement, as the form of the New Second Priority Term Loan Agreement was filed as part of the Plan Supplement.  The terms and conditions of the New Second Priority Term Loan Agreement are fair and reasonable, and the New Second Priority Term Loan Agreement has been negotiated in good faith and at arm's length.  The Debtors are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder.

## W.    Approval of the New Warrant Agreement

85.    The New Warrant Agreement is an essential element of the Plan, and entry into the New Warrant Agreement is in the best interests of the Debtors, the Estates and all Holders of

33

Claims.  The Debtors have exercised reasonable business judgment in determining to enter into the New Warrant Agreement and have provided sufficient and adequate notice of the New Warrant Agreement and have provided sufficient and adequate notice of the material terms of the New Warrant Agreement, as the form of the New Warrant Agreement was filed as part of the Plan Supplement.  The terms and conditions of the New Warrant Agreement are fair and reasonable, and the New Warrant Agreement has been negotiated in good faith and at arm's length.  The Debtors are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder.

### X.    Issuance of New Common Stock and New Warrants

86.    The issuance of New Common Stock and New Warrants is an essential element of the Plan and is in the best interests of the Debtors, their Estates and all Holders of Claims.

### Y.    Approval of the Management Incentive Programs

87.    The Variable Compensation Plan, the Enterprise Value Maximization Plan and the Management Equity Plan (collectively, the "***Management Incentive Programs***") are essential elements of the Plan, and the terms of the Management Incentive Programs and the payments contemplated therein are reasonable, in line with the market for compensation of top executives of similar companies, appropriate and calculated to incentivize performance by management.  The Compensation Committee of the Debtors' board of directors approved the terms of the Management Incentive Programs, and the Debtors have exercised reasonable business judgment in approving the Management Incentive Programs.  Additionally, the Debtors have provided sufficient and adequate notice of the material terms of the Management Incentive Programs.  The terms and conditions of the Management Incentive Programs have been negotiated in good faith and at arm's length with the Prepetition Lenders.  The Debtors are

34

authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder.

### Z.    UK Pension Settlement

88.    The Debtors have demonstrated good, sufficient, and sound business purposes and justification for entering into that certain UK Pension Settlement Agreement, which was executed by Reader's Digest, The Reader's Digest Association Limited ("***RDA UK***"), a non-debtor subsidiary of The Readers' Digest Association Inc., The Reader's Digest Pension Trustees No. 2 Limited acting in its capacity as trustee of the UK Pension Scheme (the "***UK Pension Trustee***"), and the Board of the Pension Protection Fund (together with RDA UK and the UK Pension Trustee, the "***UK Parties***") and filed with the Bankruptcy Court on January 14, 2010 [Docket No. 560].  As established in the related pleadings, including, without limitation, the Disclosure Statement, the Debtors' motion to approve the UK Pension Settlement Agreement [Docket No. 538] (the "***UK Settlement Motion***"), the UK Pension Trustee's statement in support [Docket No. 557], and the record established at the hearing, the consideration provided under the UK Pension Settlement Agreement constitutes reasonably equivalent value and fair consideration in satisfaction of the liability related to the UK Pension Scheme, and the terms of the Settlement Agreement are fair and equitable, and in the best interests of the estates.

### AA.    Conditions Precedent to Effective Date

89.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A. of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied, *provided*, *however*, that no waiver of the conditions precedent to the Effective Date shall have occurred without the consent of the Prepetition Agent and the Required Consenting Lenders.

35

**BB.**   **Retention of Jurisdiction**

90.    The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article XII and other applicable provisions of the Plan.

* * * * * * * *

## ORDER

Based on the foregoing, it is hereby ORDERED:

**A.**   **Order**

91.    All requirements for Confirmation of the Plan have been satisfied.  The Plan is confirmed in its entirety pursuant to section 1129 of the Bankruptcy Code.  A copy of the confirmed Plan is attached hereto as **Exhibit 1**.  The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

**B.**   **Objections**

92.    To the extent that any objections, reservations of rights, statements or joinders to Confirmation have not been resolved, withdrawn, waived or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

**C.**   **Findings of Fact and Conclusions of Law**

93.    The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following constitute findings of fact or conclusions of law, they are adopted as such.  To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

36

D.      **Solicitation and Notice**

94.      Notice of the Confirmation Hearing complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.   The solicitation of votes on the Plan and the Solicitation Packages complied with the Solicitation and Voting Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

E.      **References to Plan Provisions**

95.      The failure specifically to include or to refer in the Confirmation Order to any particular article, section or provision of the Plan, Plan Supplement or any related document shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

F.      **Plan Classification Controlling**

96.      The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.   Except with respect to Class 4, the classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors and Reorganized Debtors except for voting purposes.

G.      **Immediate Binding Effect**

37

97.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims or Equity Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## H.    Cancellation of Agreements, Unsecured Notes and Equity Interests

98.    On the later of the Effective Date and the date on which distributions are made pursuant to the Plan, except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtors under the Prepetition Credit Agreement, the Prepetition Loan Documents, the Senior Subordinated Notes Indenture and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, by-laws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation

38

of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; <u>except that</u>:

- The Prepetition Credit Agreement shall continue in effect solely for the purpose of: (a) allowing Holders of the Prepetition Credit Agreement Claims to receive the distributions provided for hereunder; (b) allowing the Prepetition Agent to receive distributions from the Debtors and to make further distributions to the Holders of Prepetition Credit Agreement Claims on account of such Claims, as set forth in Article VII.A of the Plan; and (c) preserving the Prepetition Agent's right to indemnification from the Debtors pursuant and subject to the terms of the Prepetition Credit Agreement in respect of any claim or cause of action asserted against the Prepetition Agent; <u>*provided*</u> that any claim or right to payment on account of such indemnification shall be an unsecured claim and shall not be secured in any of the assets of the Debtors, the Reorganized Debtors or their affiliates and shall not reduce the amount otherwise available to Holders of Claims in Class 5 Other General Unsecured Claims; and

- The foregoing shall not affect the cancellation of shares issued pursuant to the Plan nor any other shares held by one Debtor in the capital of another Debtor; and *provided*, *further*, *however*, that to the extent provided in the Exit Credit Agreement and the New Second Priority Term Loan Agreement, the guarantees of and Liens securing obligations under the Prepetition Credit Agreement shall not be cancelled and shall guarantee or secure obligations under and as set forth in the Exit Credit Agreement and the New Second Priority Term Loan Agreement and only such obligations.

## I.    Approval of Exit Credit Agreement and New Second Priority Term Loan Agreement

99.    The Reorganized Debtors are authorized to enter into the Exit Credit Agreement and the New Second Priority Term Loan Agreement.

100.    The Exit Credit Agreement (and issuance of the New First Priority Term Loan and Reinstated Euro Term Loan) and the New Second Priority Term Loan Agreement (and issuance of the Second Priority Term Loan) are hereby approved.    The Debtors and the Reorganized Debtors, as the case may be, are hereby authorized to enter into and execute the Exit Credit Agreement and the New Second Priority Term Loan Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or

39

documents related thereto, and are hereby authorized to enter into and to consummate any and all transactions contemplated thereby.

101.    The liens contemplated by and related to the Exit Credit Agreement and the New Second Priority Term Loan Agreement are valid, binding and enforceable liens on the collateral specified in the relevant agreements executed by the Reorganized Debtors in connection with the Exit Credit Agreement and the New Second Priority Term Loan Agreement.  The guarantees, mortgages, pledges, liens and other security interests granted pursuant to or in connection with the Exit Credit Agreement and the New Second Priority Term Loan Agreement are granted in good faith as an inducement to the lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such liens and security interests shall be as set forth in the intercreditor agreement and other definitive documentation executed in connection with the Exit Credit Agreement and the New Second Priority Term Loan Agreement.

102.    Notwithstanding anything to the contrary in this Order or the Plan, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection with the Exit Credit Agreement and the New Second Priority Term Loan Agreement or any rights or remedies related thereto.

**J.    New Common Stock**

103.    In accordance with the terms of Article IV.I of the Plan, on the Effective Date, the Reorganized Debtors shall issue or reserve for issuance all of the New Common Stock.  The New Common Stock shall represent all of the Equity Interests in Reorganized Holdings as of the Effective Date and shall be issued to Holders of Prepetition Credit Agreement Claims, subject to dilution by equity issued in connection with the Management Equity Plan or shares issued upon

40

exercise of the New Warrants. From and after the Effective Date, subject to the right of the stockholders to amend the certificate of incorporation of RDA Holding Co., Reorganized Holdings shall have one class and one series of New Common Stock; *provided* that the Shareholders Agreement shall provide an option for Holders to receive limited voting stock. The issuance of the New Common Stock by Reorganized Holdings, including options or other equity awards reserved for the Management Equity Plan, is authorized without the need for further corporate action and all of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. For purposes of distribution, the New Common Stock will be deemed to have the Plan Equity Value, regardless of the date of distribution. Distributions of New Common Stock will only be made through broker accounts via electronic issuance of the Shares and Reorganized Holdings will not issue separate stock certificates.

### K.     New Warrants

104.    On the Effective Date, the Reorganized Debtors will issue the New Warrants to the Holders of Claims in Class 6 who have voted to accept the Plan pursuant to the terms of the New Warrant Agreement. All of the New Warrants issued pursuant to the Plan shall be fully authorized, validly issued, fully paid and non-assessable.

### L.     Section 1145 Exemption

105.    The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non bankruptcy law applies to the solicitation.

106.    Pursuant to Section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the New Common Stock, the New Warrants and the New Common Stock deliverable upon exercise of the New Warrants and/or implementation of the Management

41

Equity Plan are exempt from, among other things, the registration requirements of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities. In addition, under Section 1145 of the Bankruptcy Code, such New Common Stock and New Warrants will be freely tradable in the United States, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities Exchange Commission, if any, applicable at the time of any further transfer of such securities and instruments and subject to any restrictions in the Shareholders Agreement, Registration Rights Agreement and the Amended and Restated Certificate of Incorporation.

**M.**    **Provisions Governing Distributions**

107.    The distribution provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan, the Reorganized Debtors shall make all distributions required under the Plan.

**N.**    **Procedures for Resolving Contingent, Unliquidated and Disputed Claims**

108.    The Claims resolution procedures contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

**O.**    **Treatment of Executory Contracts and Unexpired Leases**

109.    The Executory Contract and Unexpired Lease provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.

**(a)**    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

110.    Pursuant to Article VI.A of the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date *except* any Executory Contract or Unexpired Lease (a) previously assumed or rejected by the Debtors during these

42

Chapter 11 Cases, (b) identified on the Contract/Lease Schedule as an Executory Contract or Unexpired Lease designated for rejection or (c) which is the subject of a separate motion or notice to reject filed by the Debtors and pending as of the Confirmation Hearing.

111.    Any Executory Contracts or Unexpired Lease identified on the Contract/Lease Schedule as an Executory Contract or Unexpired Lease designated for rejection shall be deemed rejected by the Debtors on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**(b)     Cure of Defaults of Assumed Executory Contracts and Unexpired Leases**

112.    Pursuant to Article VI.B of the Plan, any provisions or terms of the Debtors' Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, through the payment of the Cure amounts set forth on the revised Contract/Lease Assumption Schedule [Docket No. 561] , or by an agreed-upon waiver of Cure, to be paid on or as soon as reasonably practicable after the Effective Date; *provided*, *however*, that notwithstanding the foregoing, the Debtors will continue to honor all postpetition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms, regardless of whether such obligations are listed as a Cure amount, and payment of Cure shall not be deemed to release the Debtors from such obligations.

**(c)     Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

113.    Entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption, assignment or rejection, as the case may be, of the Executory Contracts and

43

Unexpired Leases assumed, assigned or rejected pursuant to the Plan. The effect of Confirmation, the results thereof and the transactions resulting therefrom or any other effect of these Chapter 11 Cases, including, specifically, the changes to the Debtors' board of directors or managers and Equity Interests, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the Executory Contracts and Unexpired Leases assumed and assigned pursuant to the Plan.

      (d)    **Bar Date** **for Claims Based on Rejection of Executory Contracts and Unexpired Leases**

114.    Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise must be filed by Holders of such Claims in accordance with the terms of the Plan and the Claims Bar Date Order **no later than thirty (30) days after the later of (a) notice of the Effective Date or (b) notice of the effective date of earlier rejection** for such Holders to be entitled to receive distributions under the Plan on account of such Claims.

      (e)    **Directors and Officers Insurance Policies and Agreements**

115.    To the extent the Debtors' D&O Liability Insurance Policies or agreements are deemed Executory Contracts, notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.

116.    None of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Commencement Date, with respect to conduct occurring prior thereto, and all directors and

K&E 16032090.

officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

### (f)    Indemnification and Reimbursement Obligations

117.    On and from the Effective Date, and except as prohibited by applicable law or subject to the limitations set forth in the Plan and this Order, the Reorganized Debtors shall assume all indemnification obligations currently in place, whether in the bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts or other agreements for the current and former directors, officers, managers, employees, attorneys, other professionals and agents of the Debtors and such current and former directors', officers', managers', and employees' respective Affiliates (collectively, the "***Indemnified Parties***") to the extent set forth herein.  Without limiting the foregoing and except as prohibited by applicable law, the Debtors shall indemnify and hold harmless each of the Indemnified Parties for all costs, expenses, loss, damage or liability incurred by any such Indemnified Party arising from or related in any way to any and all Causes of Action whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, including any claims or causes of action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those arising from or related in any way to: (a) any action or omission of any such Indemnified Party with respect to any indebtedness of or any Equity Interest in the Debtors (including any action or omission of any such Indemnified

K&E 16032090.

Party with respect to the acquisition, holding, voting or disposition of any such investment); (b) any action or omission of any such Indemnified Party in such Indemnified Party's capacity as an officer, director, member, employee, partner or agent of, or advisor to any Debtor; (c) any disclosure made or not made by any Indemnified Party to any current or former Holder of any such indebtedness of or any such Equity Interest in the Debtors; (d) any consideration paid to any such Indemnified Party by any of the Debtors in respect of any services provided by any such Indemnified Party to any Debtor; and (e) any action taken or not taken in connection with the Chapter 11 Cases or the Plan.  In the event that any such Indemnified Party becomes involved in any action, proceeding or investigation brought by or against any Indemnified Party, as a result of matters to which the foregoing "Indemnification" may relate, the Reorganized Debtors shall promptly reimburse any such Indemnified Party for its reasonable and documented legal and other expenses (including advancing the costs of any investigation and preparation prior to final adjudication) incurred in connection therewith as such expenses are incurred and after a request for indemnification is made in writing, with reasonable documentation in support thereof; *provided, however,* that, with respect to former officers and directors, the Debtors' obligation to indemnify such individuals shall be limited to the extent of available coverage under their D&O Liability Insurance Policies (and payable from the proceeds of such D&O Liability Insurance Policies), including advancing the costs of any investigation and preparation prior to final adjudication as such expenses are incurred and after a request for indemnification is made in writing, with reasonable documentation in support thereof.

## P.    Vesting of Assets in the Reorganized Debtors

118.    Except as otherwise provided in the Plan, this Order or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of each

46

Estate (including, without limitation, Causes of Action) and any property acquired including by any of the Debtors pursuant hereto shall vest in each respective Reorganized Debtor, free and clear of all liens, Claims, charges or other encumbrances. Except as may be provided herein or in the Plan, on and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, *provided*, *however* that a Claims Oversight Committee, as contemplated by Article VIII.A.3 of the Plan, shall have the authority to monitor the Claims Administration conducted by the Reorganized Debtors and address the Bankruptcy Court if the Claims Oversight Committee disagrees with the Reorganized Debtors' determination with respect to Claims resolution in accordance with the powers afforded to it in Article VIII.A.3 of the Plan. The Claims Oversight Committee shall be compensated for the reasonable fees and expenses of the Claims Oversight Committee and its members, including the reasonable fees and expenses of a single counsel and a single financial advisor (each at standard hourly rates), without further order of the Bankruptcy Court. The Claims Oversight Committee shall dissolve on the 60th day (and if such day is not a Business Day, the next day that is a Business Day) subsequent to the Effective Date (the "***Claims Oversight Committee End Date***"), *provided*, *however*, that the Claims Oversight Committee may request an extension of the Claims Oversight Committee End Date from the Prepetition Agent and the Debtors, which request shall be considered in good faith, but may be denied by the Prepetition Agent in its absolute discretion.

K&E 16032090.

### Q.    Discharge of Debtors

119.    Except as otherwise provided in the Plan, this Order or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Cases and (c) the final distribution made to holders of Allowed Claims in Article VII of the Plan, all Claims and Equity Interests in the Debtors shall be discharged and released in full.  All Persons and Entities shall be precluded from asserting against the Debtors, their successors or assigns, including, without limitation, the Reorganized Debtors, their agents and employees, or their respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts or legal bases therefor were known or existed prior to the Effective Date regardless of whether a proof of Claim or Equity Interest was filed.

### R.    Compromise and Settlement

120.    Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

121.    In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities in accordance with Article VIII of the Plan.

48

### S.    Subordinated Claims

122.    The allowance, classification and treatment of Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordinations, section 510(b) of the Bankruptcy Code, or otherwise.

123.    Except as provided in the Plan, no Holder of a Senior Subordinated Note Claim shall receive any distribution on account of such Senior Subordinated Note Claims, and all Senior Subordinated Note Claims shall be extinguished.

### T.    Settlement, Release, Injunction and Related Provisions

124.    The following releases, injunction, exculpation and related provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety:

**(a)    Debtor Release**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Debtors, the Reorganized Debtors and any Person seeking to exercise the rights of the Estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code shall be deemed to forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including, without limitation, those that any of the Debtors, the Reorganized Debtors, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission or the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the**

subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or related agreements, instruments or other documents, or upon any other act or omission, transaction, or occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes criminal conduct, willful misconduct or gross negligence.

Notwithstanding anything to the contrary herein, the foregoing "Debtor Release" shall not operate to waive or release any Causes of Action of any Debtor: (1) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan, including, without limitation, the Exit Credit Agreement, New Second Priority Term Loan Agreement, the New Warrant Agreement or the Shareholders Agreement or documents, agreements or instruments executed in connection therewith or (2) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents.

Entry of this Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors or the Reorganized Debtors asserting any claim released by the Debtor Release against any of the Released Parties.

(b)    Releasing Party Release

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including, without limitation, those that any of the Debtors, the Reorganized Debtors, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission or the purchase or sale of any Security of the Debtors or the

50

Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or related agreements, instruments or other documents, or upon any other act or omission, transaction, or occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes criminal conduct, willful misconduct or gross negligence.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order Shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the consensual Releasing Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Releasing Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the Releasing Party Release against any of the Released Parties.

Notwithstanding anything in the Plan, no Person shall be discharged, released, or relieved from any liability with respect to the Pension Plan as a result of the Chapter 11 Cases or the Plan, nor shall the PBGC, the Pension Plan or any other Person be enjoined or precluded from enforcing any liability with respect to the Pension Plan as a result of the Chapter 11 Cases, the provisions of the Plan or confirmation of the Plan.

(c)     Exculpation

Upon and effective as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants and other professional advisors and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code , including section 1125(e) of the Bankruptcy Code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan supplement or related documents, the Exculpated Parties shall neither have nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or arising from or relating in any way to, the Chapter 11 Cases, including, without limitation, the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; formulating, negotiating, preparing, disseminating, implementing and/or effecting the Restructuring Support Agreement, the

K&E 16032090.

DIP Credit Agreement, the Disclosure Statement and the Plan (including the Plan Supplement and any related contract, instrument, release or other agreement or document created or entered into in connection therewith); the solicitation of votes for the Plan and the pursuit of Confirmation and Consummation of the Plan; the administration of the Plan and/or the property to be distributed under the Plan; the offer and issuance of any securities under the Plan, including pursuant to the New Warrant Agreement; and or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors.  In all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its respective duties under, pursuant to or in connection with, the Plan.

Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall (1) exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires acts as determined by a Final Order or (2) limit the liability of the professionals of the Exculpated Parties to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

(d)    Injunction

The satisfaction, release and discharge pursuant to this Article X of the Plan shall also act as an injunction against any Person bound by such provision against commencing or continuing any action, employment of process or act to collect, offset, or recover any claim or Cause of Action satisfied, released, or discharged under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

U.    **Release of Liens**

125.    Except as expressly provided in the Plan or the Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII of the Plan, all liens, judgment liens, Claims, Interests, mortgages, deeds of trust, encumbrances or other security interests against any property of the Estates shall be fully released and discharged (except to the extent reinstated under the Plan), and all right, title and interest of any holder of such mortgages, deeds of trust, liens, judgment liens

or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

**V.    Maintenance of Causes of Action**

126.    The provisions of Article IV.O of the Plan are hereby approved in their entirety. Subject to the releases set forth in Articles IX.E and Article X.F of the Plan, and in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Commencement Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, including any related rights under section 502(d) of the Bankruptcy Code.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

127.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action, including any related rights under section 502(d) of the Bankruptcy Code, against any Entity, except as otherwise expressly provided in the Plan.

**W.    Management Equity Plan**

128.    On or as soon as practical after the Effective Date, the New Board will adopt and implement a Management Equity Plan whereby equity awards (in the form of restricted stock, options or warrants) for 7.5% of the New Common Stock (on a fully diluted basis) of the Reorganized Debtors will be granted to continuing employees of the Debtors and members of the

K&E 16032090.

New Board with pricing, vesting and exercise terms to be determined by the New Board upon consultation with the Reorganized Debtors' Chief Executive Officer; provided, that such equity awards shall not include more than 2.5% in the form of restricted New Common Stock. The Debtors reserve the right to amend the Management Equity Plan with the consent of the Prepetition Agent and the Required Consenting Lenders, and on notice to the Creditors' Committee, at any time prior to the Effective Date.

**X.**      **Enterprise Value Maximization Plan and the Variable Compensation Plan**

129.      On the Effective Date, the Enterprise Value Maximization Plan and the Variable Compensation Plan shall become effective without any further action by the Reorganized Debtors.

**Y.**      **Compensation and Benefits Programs**

130.      In accordance with Article V.C of the Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of section 365 and 1123 of the Bankruptcy Code, except for (a) Compensation and Benefits Programs listed in the Plan Supplement to be rejected or terminated; (b) Compensation and Benefits Programs that have previously been rejected or terminated; and (c) Compensation and Benefits Programs that, as of the entry of the Confirmation Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

131.      The assumption or continuation of Compensation and Benefits Programs as set forth herein shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Compensation and Benefits Program counterparty timely objects to the assumption or continuation contemplated by this Section in which case any such Compensation and Benefits Program shall be deemed rejected or

K&E 16032090.

discontinued as of immediately prior to the Commencement Date).  No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to Article V.C of the Plan other than those applicable immediately prior to such assumption or continuation.

**Z.    Continuation of Retiree Benefits and Pension Plan**

132.    Notwithstanding anything in the Plan, this Confirmation Order or otherwise, the Reorganized Debtors' obligations with respect to the payment of "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code) shall continue for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, and subject to any contractual rights to terminate or modify such benefits.

133.    The Debtors or the Reorganized Debtors, as applicable, shall continue the Pension Plan in accordance with its terms, and the Debtors or Reorganized Debtors, as applicable, shall satisfy the minimum funding standards and administer the Pension Plan in accordance with the provisions of ERISA and the Internal Revenue Code, subject to any contractual or statutory rights to terminate or modify such plan.

**AA.    Workers' Compensation Programs**

134.    As of the Effective Date, except as set forth in the Plan or the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (a) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self insurer workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.

135.    All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; _provided_, _however_, that nothing in the Plan shall limit, diminish, or otherwise

alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; *provided*, *further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

**BB.**    **Allowance and Payment of Certain Administrative Expense Claims**

   **(a)**    **Administrative Claims Bar Date**

136.    All requests for payment of an Administrative Claim that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors **no later than sixty (60) days after notice of the Effective Date** (the "***Administrative Claim Bar Date***"), *provided*, *however*, that the Administrative Claim Bar Date shall not apply to the allowed Administrative Claim of SG Chappaqua A LLC and SG Chappaqua B LLC pursuant to the Order Approving Settlement Agreements Between the Debtors, SG Chappaqua A LLC and SG Chappaqua B LLC [Docket No. 399]

137.    The Reorganized Debtors, in their sole and absolute discretion, may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Order.  The Debtors may also choose to object to any Administrative Claim no later than ninety (90) days after the Administrative Claim Bar Date, subject to extensions for cause by the Bankruptcy Court or on motion of a party in interest made before the expiration of the Administrative Claims Bar Date and approved by the Bankruptcy Court.

138.    Unless the Debtors or Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized

K&E 16032090.

Debtors (or other party with standing) object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

      **(b)**    **Professional Claims**

139.   <u>Final Fee Applications</u>.   All final requests for Professional Compensation and Reimbursement Claims shall be filed **<u>no later than 45 days after the Effective Date</u>**.   After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court.

140.   <u>Payment of Interim Amounts</u>.   Except as otherwise provided in the Plan, Retained Professionals shall be paid pursuant to the Interim Compensation Order.

141.   <u>Professional Fee Escrow Account</u>.   On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount (as defined herein) for all Retained Professionals.   The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.   Such funds shall not be considered property of the Reorganized Debtors.   The remaining amount of Professional Compensation and Reimbursement Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.   When all Claims by Professional have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors

57

142.    <u>Professional Fee Reserve Amount</u>.    To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate their Accrued Professional Compensation (net of any unapplied retainer amounts) prior to and as of the Effective Date and shall deliver such estimate to the Debtors.    If a Retained Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; *<u>provided</u>*, *<u>however</u>*, that such estimate shall not be considered an admission with respect to the fees and expenses of such Retained Professional.

143.    <u>Post-Effective Date Fees and Expenses</u>.    Except as otherwise specifically provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall pay in Cash the reasonable legal fees and expenses incurred by that Reorganized Debtor after the Effective Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.    Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered and expenses incurred after such date shall terminate, and each Reorganized Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

144.    <u>Substantial Contribution Compensation and Expenses</u>.    Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules.

K&E 16032090.

## CC.    DIP Facility Claims

145.    In full and final satisfaction, settlement, release and discharge of and in exchange for release of all DIP Facility Claims (other than Claims under the DIP Facility that expressly survive the termination thereof), on the Effective Date, the DIP Facility Claims shall (a) subject to the terms of the DIP Facility, convert into the New First Priority Term Loan pursuant to the Exit Credit Agreement or (b) be paid in full in Cash.

## DD.    United States Trustee Statutory Fees

146.    The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' businesses, until the entry of a Final Order, dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

## EE.    Payment of Fees and Expenses of Indenture Trustee

147.    On or before the Effective Date, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Indenture Trustee and its counsel incurred through the Effective Date and shall pay the usual and customary fees of the Indenture Trustee for services rendered post-Effective Date to implement the Plan; *provided* that reasonably detailed fee invoices are provided to the Debtors as a condition of such payment, and *provided further* that in no event shall such fees and expenses exceed $275,000 in the aggregate.

## FF.    Payment of Fees and Expenses of the Ad Hoc Noteholders' Committee's Counsel and Financial Advisor

148.    On or before the Effective Date, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Ad Hoc Noteholders' Committee's counsel and financial advisor incurred through the Confirmation Hearing, *provided* that

K&E 16032090.

reasonably detailed fee invoices are provided to the Debtors as a condition of such payment, and *provided further* that in no event shall such fees and expenses exceed $100,000 in the aggregate.

### GG. Exemption from Certain Transfer Taxes and Recording Fees

149.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### HH. Retention of Jurisdiction

150.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, except as otherwise provided in the Plan and the Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to,

K&E 16032090.

the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code,

including jurisdiction to:

- Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

- Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

- Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

- Ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

- Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

- Adjudicate, decide or resolve any and all matters related to Causes of Action;

- Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

- Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

- Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- Resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

61

- Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

- Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

- Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

- Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

- Enter an order or final decree concluding or closing the Chapter 11 Cases;

- Adjudicate any and all disputes arising from or relating to distributions under the Plan;

- Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

- Determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

- Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Exit Credit Agreement, the New Second Priority Term Loan Agreement and any intercreditor agreement, which disputes shall be adjudicated in accordance with the terms of such agreements);

- Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

- Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of

the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- Enforce all orders previously entered by the Bankruptcy Court; and

- Hear any other matter not inconsistent with the Bankruptcy Code.

## II.    Other Essential Documents and Agreements

151.    The Amended and Restated Certificate of Incorporation, the Amended and Restated Bylaws, the New Warrant Agreement, the Registration Rights Agreement, the Shareholders Agreement, any other agreements, instruments, certificates or documents related thereto and the transactions contemplated by each of the foregoing are approved and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Amended and Restated Certificate of Incorporation, the Amended and Restated Bylaws, the New Warrant Agreement, the Registration Rights Agreement, the Shareholders Agreement and any other agreements, instruments, certificates or documents related thereto shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule.  The Debtors, and after the Effective Date, the Reorganized Debtors, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, pay all fees due thereunder or in connection therewith.

152.    On or upon the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and upon request all Holders of Claims or Interests receiving distributions pursuant to

63

the Plan and all other parties in interest, shall, from time to time, prepare, execute and delivery

any agreements or documents and take any other actions as may be necessary or advisable to

effectuate the provisions and intent of the Plan.

### JJ.    Return of Deposits

153.    All utilities, including any Person who received a deposit or other form of

adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during these

Chapter 11 Cases (collectively, the "Deposits"), including, without limitation, gas, electric,

telephone, trash and sewer services, shall return such Deposits to the Debtors and/or the

Reorganized Debtors, as applicable, either by setoff against postpetition indebtedness or by cash

refund, by no later than ten days following the Effective Date, and, as of the Effective Date, such

utilities are not entitled to make requests for or receive Deposits.

### KK.    Governing Law

154.    Unless a rule of law or procedure is supplied by federal law (including the

Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the

State of New York, without giving effect to the principles of conflict of laws, shall govern the

rights, obligations, construction and implementation of the Plan, any agreements, documents,

instruments or contracts executed or entered into in connection with the Plan (except as

otherwise set forth in those agreements, in which case the governing law of such agreement shall

control) and corporate governance matters; *provided*, *however*, that (a) corporate governance

matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York

shall be governed by the laws of the state of incorporation of the applicable Debtor or

Reorganized Debtor, as applicable; and (b) with respect to the Exit Credit Agreement and the

New Second Priority Term Loan Agreement, the terms of such agreements shall apply.

**LL.**   **Effectiveness of All Actions**

155.   Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, members or stockholders of the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

**MM.**   **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

156.   Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law, as applicable, and any comparable provision of the business corporation laws of any other state, each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the Plan Supplement, the Exit Credit Agreement, the New Second Priority Term Loan Agreement, the New Warrant Agreement, the Registration Rights Agreement, the Shareholders Agreement and any other Plan documents, including the election or appointment, as the case may be, of directors and officers of the New Board as contemplated in the Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.   Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth

in the documents relating to the Plan and including without limitation, the Plan Supplement, the Exit Credit Agreement, the New Second Priority Term Loan Agreement, the New Warrant Agreement, the Registration Rights Agreement, the Shareholders Agreement and any other Plan documents, including the election or appointment, as the case may be, of directors and officers of the New Board as contemplated in the Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto and that may be required or necessary for its performance thereunder without the need for any stockholder or board of directors' approval.  On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the New Board are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.  Subject to the terms of this Confirmation Order, each of the Debtors, the Reorganized Debtors and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

157.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and

66

any documents, instruments, securities, agreements and any amendments or modifications thereto.

## NN.    Modifications or Amendments

158.    Except as otherwise specifically provided in the Plan, and subject to the Restructuring Support Agreement and conditions to the Effective Date, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to the applicable restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII.A of the Plan.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127 of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## OO.    Effect of Conflict Between Plan and Confirmation Order

159.    If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

## PP.    Dissolution of Creditors' Committee

160.    On the Effective Date the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the

Chapter 11 Cases; *provided*, *however*, that after the entry of the Confirmation Order, the Creditors' Committee's functions shall be restricted to, and the Creditors' Committee shall not be heard on any issue except, (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (ii) motions or litigation seeking enforcement of the provisions of the Plan and the transactions contemplated hereunder or under the Confirmation Order and (iii) pending appeals and related proceedings.

## QQ.    Reservation of Rights

161.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

## RR.    Notice of Entry of the Confirmation Order.

162.    In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve a notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with notice of the Confirmation Hearing; *provided*, *however*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

163.     To supplement the notice described in the preceding sentence, within twenty (20) days of the date of the Confirmation Order the Debtors shall publish notice of entry of the Confirmation Order on one occasion in the national editions of *The Wall Street Journal* and *USA Today*.  Mailing and publication of the notice of entry of the Confirmation Order in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

**SS.**     **Injunctions and Automatic Stay**

164.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.   All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

165.     This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released pursuant to the Plan.

**TT.**     **Nonseverability of Plan Provisions Upon Confirmation**

166.     Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Administrative Agent; and (c) nonseverable and mutually dependent.

K&E 16032090.

## UU.    Waiver or Estoppel

167.    Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.

## VV.    Authorization to Consummate

168.    The Debtors are authorized to consummate the Plan on any business day selected by the Debtors after the entry of the Confirmation Order, but no later than January 31, 2010, subject to satisfaction or waiver (by the required parties) of the conditions to the Effective Date set forth in Article IX of the Plan.

## WW.    Resolutions of Objections and Concerns of Non-Debtor Parties

169.    <u>UK Pension Settlement Agreement</u>.  The UK Settlement Motion is granted and the UK Pension Settlement Agreement is hereby authorized and approved pursuant to sections 363(b) and 1123(b)(3) of the Bankruptcy Code.  The Debtors are authorized, but not directed, to enter into the UK Pension Settlement Agreement with the UK Parties and are further authorized to take all actions necessary to effectuate the relief granted pursuant to this confirmation order in accordance with the UK Settlement Motion and as contemplated under the UK Pension Settlement Agreement.

170.    <u>Fairfax Lease</u>.  With respect to that certain Deed of Lease Agreement dated October 6, 2004 (the "***Original Fairfax Lease***"), by and between Direct Holdings Americas, Inc.'s ("***DHA***") (as tenant) and KBSII Willow Oaks, LLC (as landlord and successor in interest to Cognac Willow Oaks, LLC, identified as the landlord under the Original Fairfax Lease in the Contract/Lease Schedule) as amended by that certain First Amendment to Deed of Lease

70

Agreement dated January 13, 2010 ("***Fairfax Lease Amendment***" and, together with the Original Fairfax Lease, the "***Amended Fairfax Lease***"):  (i) DHA's assumption of the Amended Fairfax Lease is hereby approved; (ii) the Amended Fairfax Lease is hereby deemed assumed by DHA pursuant to 11 U.S.C. § 365, with such assumption effective upon the Effective Date; (iii) Reader's Digest is hereby authorized to execute and deliver the Lease Guaranty (as defined in the Fairfax Lease Amendment); and (iv) notwithstanding anything herein or in Article VI.B or any other provision of the Plan to the contrary, upon the assumption of the Amended Fairfax Lease, which assumption becomes effective on the Effective Date, DHA, as debtor and/or as a reorganized debtor, shall not have the right to reject the Amended Fairfax Lease or nullify the assumption of the Amended Fairfax Lease.

171.    <u>SG Chappaqua A LLC and SG Chappaqua B LLC</u>.  Pursuant to that certain Stipulation and Order Between the Debtors and SG Chappaqua A LLC Settling Objection to Debtors' Motion for Authority to Enter into New Leases and Settling Parties' Respective Claims and Rights Under Leases and Related Agreements between the Debtors and SG Chappaqua A LLC (the "***SGA Stipulation***") and that certain Stipulation and Order Between the Debtors and SG Chappaqua B LLC Settling Objection to Debtors' Motion for Authority to Enter into New Leases and Settling Parties' Respective Claims and Rights Under Leases and Related Agreements between the Debtors and SG Chappaqua B LLC (the "***SGB Stipulation***" and, together with the SGA Stipulation, the "***Chappaqua Stipulations***"), as approved by the Court pursuant to the Order Approving Settlement Agreements Between the Debtors, SG Chappaqua A LLC and SG Chappaqua B LLC [Docket No. 399]:

- the A Lease, the B Lease and the Related Agreements (all as defined in the Chappaqua Stipulations) shall be deemed rejected effective as of the Effective Date;

K&E 16032090.

- on the Effective Date, Reader's Digest shall deed fee simple title to the four Option Parcels (as defined in the SGB Stipulation) to SGB (or an entity designated by SGB);

- on the Effective Date, the Rothberg Lease (as defined in the SGB Stipulation) and the month-to month lease between Reader's Digest and HCL American Inc. (the "*HCL Lease*") shall be deemed assumed and assigned to SG Chappaqua B LLC ("*SGB*") pursuant to section 365(a) and (f) of the Bankruptcy Code. On the Effective Date, Reader's Digest shall transfer the $7,600 security deposit provided under the Rothberg Lease to SGB;

- on the Effective Date, pursuant to Article VI.B of the Plan, any provisions or terms of the Rothberg Lease and the HCL Lease to be assumed and assigned to SGB that are, or may be, alleged to be in default, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, through the payment of the Cure amounts set forth on the revised Contract/Lease Assumption Schedule (if any), or by an agreed-upon waiver of Cure, to be paid on or as soon as reasonably practicable after the Effective Date;

- the Reorganized Debtors shall transfer to (i) SGA effective as of the earlier of the date that the Reorganized Debtors move out of the A Lease premises and December 31, 2010 (or such earlier date agreed upon by the Reorganized Debtors and SGA), the modular work stations and standard office furniture located on the A Lease premises and (ii) SGB effective as of the earlier of the date that the Reorganized Debtors move out of the B Lease premises and December 31, 2010 (or such earlier date agreed upon by the Reorganized Debtors and SGB), the modular work stations and standard office furniture located on the B Lease premises, but in each case specifically excluding any antique furniture, fine art and other agreed-upon furniture located on the A Lease premises, the B Lease premises or the guest house which shall remain the property of the Reorganized Debtors and may be removed by the Reorganized Debtors in their sole discretion in a commercially reasonable manner (the "*Standard Office Furniture*"); and

- transfer of the four Option Parcels, the Rothberg Lease and the Standard Office Furniture pursuant to the Chappaqua Stipulations, as authorized by the Settlement Order and this Order, shall be free and clear of all liens, claims, encumbrances, charges and interests in accordance with section 1141(c) of the Bankruptcy Code and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing

72

instruments or other documents without the payment of any such tax or governmental assessment.

172.    260 Madison Lease.  With respect to that certain Agreement of Lease, made as of June 18, 1997, by and between 260/261 Madison Equities Corp. ("***Madison Equities***") and Reader's Digest (the "***260 Madison Lease***"), the Debtors shall (a) work in good faith with Madison Equities to reconcile all unpaid amounts arising under or in connection with the 260 Madison Lease due from and after the Commencement Date through the date of entry of this Order (if any), and shall promptly pay all such amounts to Madison Equities upon reconciliation of such unpaid amounts (if any), provided that if the Debtors and Madison Equities are unable to reconcile such unpaid amounts (if any), Madison Equities will maintain the right to file an administrative claim with respect to such unpaid amounts on or before the deadline established by this Order for filing administrative claims, subject to any extension of such deadline by the Debtors on behalf of Madison Equities and (b) timely pay to Madison Equities, as and when due, all additional amounts arising under or in connection with the Debtors' continued use or occupation of the 260 Madison Lease premises pursuant to the terms of the 260 Madison Lease, as modified by the terms of this Order.  The 260 Madison Lease shall be deemed rejected as of July 31, 2010, provided, however, that: (a) the Debtors may extend their occupancy under the 260 Madison Lease, at the same monthly rent payable as of July 31, 2010 (the "Current Monthly Rent"), (1) for the month of August 2010 upon written notice to Madison Equities pursuant to the 260 Madison Lease no later than June 15, 2010 and, subsequently, (2) for the month of September 2010 upon written notice to Madison Equities pursuant to the 260 Madison Lease no later than July 15, 2010; and (b) if the Debtors remain in possession of the 260 Madison premises after September 30, 2010, until the Debtors actually vacate the 260 Madison Lease premises (1) rent for the month of October 2010 shall be 1.5 times the Current Monthly Rent and (2) rent for

73

each month that the Debtors remain in possession of the 260 Madison Lease premises after October 31, 2010 shall be 2 times the Current Monthly Rent.  The Debtors shall be responsible for leaving the 260 Madison Lease premises in a condition that is in accordance with the terms of the 260 Madison Lease upon vacating the 260 Madison Lease premises, which responsibility shall be a postpetition obligation.

173.    34th Street Lease.  With respect to that certain Agreement of Lease, made as of September 8, 2006, by and between Wohio Holding Inc. ("*Wohio*") and Reader's Digest (the "***34th Street Lease***"), the 34th Street Lease shall be deemed rejected as of July 31, 2010, *provided, however*, that the Debtors' occupancy of the premises described in the 34th Street Lease may thereafter continue on a month to month basis, beginning and ending on the first and last day, respectively, of each calendar month, at the same monthly "Fixed Rent" and "Additional Rent" (as such terms are defined in the 34th Street Lease) payable as of July 31, 2010 (the "***Current Monthly Rent***"), and on the other terms set forth in the 34th Street Lease (except those relating to the Lease term, its "Expiration Date" and any "Renewal Option" (as such terms are defined in the 34th Street Lease)).  Such month to month tenancy shall be subject to termination by Debtors or Wohio by notice specifying a date for termination, which shall be a date that is the last day of a calendar month and which is no less than 45 days after the date such notice is given (the "***Termination Date***"), but with respect to any termination by Wohio, the Termination Date shall be not earlier than September 30, 2010.  At any Termination Date, Debtors shall vacate and surrender the premises in accordance with the terms of the 34th Street Lease.  If Debtors remain in possession of the 34th Street Lease premises after the Termination Date: (a) rent for each month (or portion thereof) that Debtors remain in occupancy following the Termination Date shall be a percentage  of the Current Monthly Rent as set forth below (the

"*Applicable Percentage*") for the periods indicated until the Debtors vacate and surrender the premises in accordance with the 34th Street Lease; (b) the Debtors shall be deemed for all purposes to be a holdover tenant; and (c) Wohio may avail itself of all rights under law with respect to eviction of the Debtors from the 34th Street Lease premises without any need to seek relief from the automatic stay.  Any notice shall be given in accordance with Section 28 of the 34th Street Lease, and Debtors waive all other notices or manner of giving or delivering notice, including specifically, but without limitation, the notice provisions set forth in section 232-a of the New York State Real Property Law.  Pursuant to the foregoing, if the Debtors hold over after Termination Date, the Debtors shall pay Wohio as holdover rental for each month or part of the month during the holdover period, an amount equal to the Applicable Percentage of the Current Monthly Rent as follows: (a) 200% of the Current Monthly Rent for one month, or any portion thereof; (b) 250% of the Current Monthly Rent for the second month, or any portion thereof; (c) 300% of the Current Monthly Rent for the third month, or any portion thereof, and any successive months after the third month, or any portion thereof.  The Debtors and Wohio shall work in good faith to resolve Wohio's lease rejection damages claim with respect to the 34th Street Lease.

## XX.    Waiver of Bankruptcy Rule 3020(e)

174.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, the 14-day stay provided under Bankruptcy Rule 3020(e) shall be waived only to the limited extent necessary to allow the Debtors to select an Effective Date prior to month end.  On the last Business Day of the month (or such later date as the Debtors may select), the Plan shall be effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or

K&E 16032090.

Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## YY.  **Final Order**

175.    This Confirmation Order is intended to be a final order and the period in which an appeal must be filed to commence upon the entry hereof.

IT IS SO ORDERED.

Date:  January 19, 2010        /s/Robert D. Drain
White Plains, New York        United States Bankruptcy Judge

K&E 16032090.